IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GERALD L. ROGERS,

                          Plaintiff,

v.

HARVEY LLOYD PITT, SECURITIES AND
EXCHANGE COMMISSION; JAMES G.
NEWSOME, COMMODITY FUTURES
TRADING COMMISSION; MICHAEL J.
GAINES, UNITED STATES PAROLE
COMMISSION,

                          Defendants.

Case No. 1:07cv00687 (RMC)

## MOTION TO DISMISS

Defendants Harvey Lloyd Pitt, et al., through undersigned counsel, move to dismiss the

Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for

lack of jurisdiction and for failure to state a claim upon which relief may be granted.  A

memorandum of points of authorities and proposed order are submitted herewith.

Dated: August 9, 2007              Respectfully submitted,


            /s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


            /s/
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


            /s/  Robin M. Meriweather
ROBIN M. MERIWEATHER, D.C. Bar. # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 514-7198  Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

**Of Counsel:**

Bella Rozenberg
COMMODITY FUTURES TRADING
  COMMISSION
Office of General Counsel
1155 21st Street, N.W.
Washington, D.C.  20581
Telephone:  (202) 418-5119
Facsimile:  (202) 418-5524
E-mail:  brozenberg@cftc.gov
*Counsel for the CFTC*


Kevin Solonsky
SECURITIES AND EXCHANGE COMMISSION
Office of General Counsel
100 F Street, NE
Washington, DC 20549-9612
Telephone:  (202) 551-5140
Facsimile:  (202) 772-9263
E-mail:  solonskykd@sec.gov
*Counsel for the SEC*

Douglas Thiessen
UNITED STATES PAROLE COMMISSION
Office of General Counsel
*Counsel for the USPC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GERALD L. ROGERS,

                Plaintiff,

        v.

HARVEY LLOYD PITT, SECURITIES AND
EXCHANGE COMMISSION; JAMES G.
NEWSOME, COMMODITY FUTURES
TRADING COMMISSION; MICHAEL J.
GAINES, UNITED STATES PAROLE
COMMISSION,

                Defendants.

Case No. 1:07cv00687 (RMC)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION AND SUMMARY**

Plaintiff Gerald Rogers challenges actions taken by Defendants the Commodity Futures

Trading Commission ("CFTC"), Securities and Exchange Commission ("SEC"), and the United

States Parole Commission ("USPC") (collectively "Defendants"), in connection with SEC and

CFTC enforcement proceedings in the United States District Court for the Northern District of

Texas (the "Texas enforcement actions"), and the USPC's enforcement of Plaintiff's sentence for

violations of federal law.  Specifically, Plaintiff contends that: (1) the CFTC and USPC lacked

authority to initiate the Texas enforcement actions; (2) USPC lacked authority to enforce the

United States District Court for the District of Colorado order sentencing Plaintiff to prison

based on mail fraud and securities fraud convictions; (3) the CFTC and SEC violated the law and

Plaintiff's constitutional rights by seizing Plaintiff's assets; and (4) USPC violated the law and

Plaintiff's constitutional rights by ordering that he be incarcerated.

Plaintiff's claims are deficient in several respects. First, Rogers' APA claims against the CFTC and SEC challenge discretionary enforcement decisions that are beyond the reach of the APA, and also are barred by the doctrines of issue and claim preclusion. Second, Rogers' claims against the SEC duplicate the arguments Rogers has raised in pending enforcement proceedings involving Rogers and the SEC, and the SEC should not be required to litigate those claims in two forums. Third, the federal habeas statutes provide the exclusive remedy for Rogers to challenge his conviction and sentence, and bar Rogers from using the 'APA' claims against the USPC to collaterally attack the validity of the conviction and sentence.

The Court's analysis could begin and end with the jurisdictional defects and issue and claim preclusion. However, if the Court were to reach the merits of Rogers' claims, Rule 12(b)(6) would require dismissal for failure to state a claim. Rogers' APA claims against all three Defendants rest on the notion that the United States District Court for the Northern District of Texas and the United States District Court for the District of Colorado are not legitimate "Article III courts," and thus lacked jurisdiction over the criminal and civil actions concerning Rogers' unlawful activities. That argument, albeit creative, has no merit. Both courts are federal district courts, with authority pursuant to Article III of the Constitution, and there is no plausible ground for questioning their status as such. For all those reasons, Defendants respectfully request that the Court dismiss Rogers' complaint.

## BACKGROUND

**A.     Rogers' 1990 Criminal Convictions and Related Proceedings**

**1.     Convictions and Parole Proceedings**

Plaintiff Gerald Rogers was convicted of mail fraud and securities fraud in the United

States District Court for the District of Colorado, and sentenced on October 22, 1990, to a

25- year term (hereafter the "Colorado convictions").  See Exh. 1 (Sentencing Order).  That

sentence was to be consecutive with Rogers' prior conviction in the U.S. District Court for the

Central District of California for mail fraud, and aiding and assisting in preparation of false

income tax returns, which caused Rogers to be sentenced on March 26, 1990, to a term of 10

years imprisonment with a five year term of probation.  See United States v. Rogers, 960 F.2d

1501, 1504 (10th Cir. 1992) (describing district court proceedings and sentence).  Rogers

appealed the Colorado convictions to the Tenth Circuit, which affirmed Rogers' conviction on

nine counts.  See id. at 1514-15.

Rogers was paroled on December 1, 2000, and he was to remain under parole supervision

until December 29, 2024.  See Exhibit 2 (Parole Order).  Rogers' violation of the conditions of

his parole led to a series of parole revocation hearings.  Rogers' parole was revoked October 21,

2003, and he was reparoled December 24, 2003.  See Exhs. 3 (Parole Revocation),  4 (Reparole).

Rogers' parole was revoked again by notice of action dated August 1, 2005, based on further

parole violations.  See Exh. 5 (Aug. 1, 2005 Notice).  The USPC subsequently determined that

Rogers' case should be reopened, and scheduled a reconsideration hearing.  The reconsideration

hearing was held to determine whether Rogers had violated his parole by committing criminal

fraud, and was based on the events that led the SEC to initiate criminal fraud charges against

Rogers.  See Exh. 6 (Hearing Summary).  The examiner found that Rogers violated the

conditions of his parole by committing fraud in violation of United States and Texas law,

resulting in a loss of at least $8.5 million to his victims.  See id. at 14.  Rogers filed an

administrative appeal, and the National Appeals Board affirmed the USPC's decision in an

October 2, 2006 decision.  See Exh. 7 (USPC Appeal Order).

### 2. Litigation Arising From Rogers' Convictions and Parole Proceedings

Rogers has challenged his sentences and the revocation of his parole in numerous federal

district and circuit court actions.  Indeed, the frivolous and harassing nature of several of those

suits led the United States District Court for the Central District of California to declare Rogers

to be a "vexatious litigant," and to bar Rogers from filing new actions arising out of his criminal

convictions or related civil actions unless he first established that his criminal convictions had

been invalidated.  Rogers v. Takasugi, No. 96-56054, 1996 WL 654428, at *1 (9th Cir. Nov. 8,

1996) (affirming district court order).  The United States District Court for the District of

Arizona dismissed a subsequent suit Rogers filed in that Court, because it violated the vexatious

litigant order, and its decision was affirmed by the Ninth Circuit.  See Rogers v. United States

Parole Comm'n, No. 03-17353, 2004 WL 2668419, at * 1 (9th Cir. Nov. 22, 2004).  Four of

Rogers' cases are relevant to the instant challenge to the USPC's enforcement of Rogers'

sentence: (1) habeas corpus proceedings which originated in the District of Colorado and were

appealed to the Tenth Circuit; (2) subsequent habeas petitions Rogers filed in the District of

Colorado; (3) a habeas corpus proceeding initiated in this Court and then transferred to the

Western District of Texas; and (4) a habeas petition filed in the Western District of Oklahoma

challenging aspects of the USPC's initial parole revocation hearings.

Rogers filed a habeas petition in the United States District Court for the District of

Colorado on February 28, 1994, seeking to vacate his conviction and sentence.  See United

States v. Rogers, No, 95-1519, 1997 WL 543365, at *1 n.1 (10th Cir. Sept. 3, 1997). The district court concluded that Rogers was not entitled to habeas relief. See id. at *2. The Tenth Circuit affirmed the district court's ruling. See id. Notwithstanding the Tenth Circuit's judgment, Rogers filed several subsequent habeas petitions, none of which were successful. See United States v. Rogers, No. 06-1267, 2006 WL 3735514, at *1 (10th Cir. Dec. 20, 2006) (describing history of Rogers' petitions).

On May 4, 2006, Rogers filed another successive habeas petition in the District of Colorado — titled a "Motion to Void Judgment of Conviction for Lack of Subject Matter Jurisdiction" — which the district court denied. See id. at *1(describing proceedings below). Thereafter, Rogers filed a "Motion for Plaintiff to Show Cause Why This Court Did Not Lack Subject Matter Jurisdiction in this Instant Matter," which the district court denied as frivolous. Id. Rogers appealed the district court's rulings to the Tenth Circuit. See id. The Tenth Circuit held that the district court lacked jurisdiction to review Rogers' post-judgment motions because they were successive habeas petitions, which Rogers could file only after obtaining leave from the appellate court. See id. at *1-*2. However, the Tenth Circuit construed Rogers' notice of appeal as a request for authorization to file a successive habeas petition, and denied that request for failure to establish a prima facie case. See id. at *2.

On August 2, 2006 Rogers filed another habeas petition in this Court, naming the USPC as a defendant. See Exh. 8 (Dkt. To No. 06-1390 (D.D.C.)). The Court issued an order to show cause why the case should not be transferred to the United States District Court for the Western District of Texas. See id.; Exh. 9 at 1 (D.D.C. Transfer Order). Plaintiff argued that the United States District Court for the District of Columbia "is the only district court that has jurisdiction to rule on violations of federal statutes." Exh. 9 at 1 (D.D.C. Transfer Order). The Court rejected

that argument, finding it "incorrect as a matter of law," and transferred the case to the Western District of Texas.  Id.

The Western District of Texas proceedings commenced in February, 2007, and remain pending.  See Exh. 10 (Dkt. to 5:07-cv-00170 (W.D. Tex.)).  Rogers argues there, as he does here, that the USPC lacked authority to enforce his sentence because the United States District Court for the District of Colorado is not an Article III court.  See Exh. 11 (habeas petition). USPC has filed a response to Rogers' habeas petition, and has opposed Rogers' motion for judgment on the pleadings.  See Exh. 10 (Dkt. to 5:07-cv-00170 (W.D. Tex.)).

Rogers filed a habeas petition in the Western District of Oklahoma June 24, 2005, and amended that petition to include claims against USPC concerning the parole revocation hearings that were commenced shortly after the habeas petition was filed.  See Exh. 12 at 3 (WD Ok. Magistrate R&R).  Rogers raised due process claims arguing that the USPC delayed initiation of parole revocation proceedings, and failed to provide notice that it would depart from the Sentencing Guidelines.  See id. at 6-11.  The district court dismissed those claims, and several other motions that Rogers had pending, and adopted the recommendation and report issued by the magistrate judge.  See Exh. 13 (W.D. Ok. Order).  The court did not permit Rogers to amend his habeas petition to include challenges to the validity of his sentence, as those claims could be raised only in a habeas motion filed in the sentencing court pursuant to 28 U.S.C. § 2255, and not a Section 2241 habeas petition challenging the execution of a sentence.  See Exh. 12 at 4-5 (WD Ok. Magistrate R&R).

B.    The CFTC Texas Enforcement Proceedings

On March 20, 2005, the United States District Court for the Northern District of Texas issued a statutory restraining order freezing the assets of Premium Income Corporation and its

owner and President, Gerald L. Rogers, as well as other corporate and individual defendants. See CFTC v. Premium Income, Corp., 2007 WL 429092 (N.D. Tex. June 26, 2007). The order stemmed from a CFTC complaint filed the same day, alleging that the defendants in that case had violated the Commodity Exchange Act ("CEA") and CFTC regulations by defrauding customers they had solicited to trade foreign currency options.[1] The complaint alleged that Rogers did not disclose to customers that their invested funds were transferred immediately from PIC bank accounts to domestic and offshore accounts under the sole control of Rogers. According to the complaint, some of these funds were used for purposes unrelated to foreign currency options trading, including the payment of personal expenses and the payment of commissions to individuals who had solicited the customers, none of which had been disclosed to customers.

At the time of filing the Texas complaint, Rogers had a three-decade history of committing white collar offenses involving multi-million dollar financial scams relating to false investment programs, fictitious companies, and off-shore bank accounts. See Exh. 14 at ¶¶ 3-4 (CFTC v. Premium Income Corp., Complaint). Rogers orchestrated the financial scam that was the subject of the Texas complaint within thirty days of being released from prison after having been incarcerated for thirteen years for other fraud-related crimes. See id. at 5.

On January 26, 2007, the district court issued a judgment holding Rogers and PIC liable for violations of the CEA's anti-fraud provisions, ordering a permanent injunction against them and ordering them to pay $12,374,104 in restitution and a $37,122,312 civil monetary penalty.

---

[1] The CFTC's Office of Cooperative Enforcement coordinated this action with a related emergency enforcement action filed by the Securities and Exchange Commission against the same defendants, Civil Action No. 3-05-CV-0415-M (N.D. Tex).

See Premium Income Corp., 2007 WL 429092, at *12-*14.  The district court continued the asset freeze pending satisfaction of the restitution and civil monetary payments.  See id. at *15.

### C.    The SEC Texas Enforcement Proceedings

On March 2, 2005, the SEC sought, and obtained, an ex parte Temporary Restraining Order from the United States District Court for the Northern District of Texas.  See Exh. 15 (SEC TRO).  That order enjoined Rogers and other corporate individual defendants from engaging in certain securities transactions, and froze their assets.  See id. at 3-6.  The restraining order was based on an SEC complaint filed the same day, alleging that the defendants had violated the Securities Act of 1933 and the Securities Exchange Act of 1934.  See id. at 1-2. Approximately ten days later, the district court issued a preliminary injunction against Rogers and other defendants.  See Exh. 16 (Dkt. in 3-05-cv-05-0415 (N.D. Tex.)) ("SEC docket").  The Rogers preliminary injunction order noted that Rogers had "agreed to the entry of this Order, without admitting or denying the allegations contained in the Commission's complaint," and "has agreed that this Court has jurisdiction over him and subject matter of this action."  See Exh. 17 (SEC PI Order).

In the approximately two years since the SEC filed its complaint, Rogers has filed numerous motions, several of which post-date his commencement of this action.  See Exh. 16 (SEC Docket).  On July 3, 2007, Rogers filed a motion seeking to submit new evidence to substantiate his claim that the district court lacked subject matter jurisdiction.  See id. at Dkt. Entry 249.  The district court denied that motion in a July 16, 2007 order.  See id. at Dkt. Entry 254.  The district court has denied several of plaintiff's prior motions containing jurisdictional arguments, and has specifically rejected plaintiff's assertion that it is not a "district court of the United States."  See Exh. 18 at 3 (Order); see, e.g., Exh. 16 at Dkt. Entries 107, 124, 240.

The Northern District of Texas heard argument on Defendants' summary judgment motion on July 25, 2007, and issued a decision in an August 1, 2007 Memorandum Order. See Exh. 16 at Dkt. Entry 248. The Court awarded summary judgment to Defendant. The court permanently enjoined Rogers from violating the federal securities laws, ordered a disgorgement of $10,959,181 plus pre-judgment interest, and ordered Rogers to pay a civil penalty of $120,000. See Exh. 19 at 13 (Mem. Order).

### D.    The Instant Action

Plaintiff characterizes this action as arising under the Administrative Procedures Act. The complaint seeks a declaratory ruling that the CFTC and SEC's initiation of their respective Texas enforcement proceedings was "without statutory authority," and in violation of the APA. Complaint ¶ 25(ii). The Complaint also challenges the USPC's authority to enforce the sentences that resulted from the Colorado convictions, on the grounds that the District Court for the District of Colorado is not a legitimate federal district court and Colorado is not a "federal state." Id. ¶ 25(iii), (iv). Plaintiff further seeks a declaratory ruling that Defendants' seizure of plaintiff's personal and corporate assets "together with ordering his incarceration in a federal prison" was unconstitutional and in violation of the APA, 5 U.S.C. §706(2). Id. ¶ 25(v). Finally, Rogers accuses all three defendants of being engaged in a conspiracy to deprive him of his assets and freedom. Id. ¶¶ 9, 14.

### STANDARD OF REVIEW

When reviewing a motion to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), a court generally must accept as true all material allegations of the complaint and must construe the complaint in the light most favorable to the complaining party. Warth v. Seldin, 422 U.S. 490, 501 (1975). But where a motion to dismiss challenges the factual basis for a

court's jurisdiction, the court "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." <u>Phoenix Consult., Inc. v. Republic of Angola</u>, 216 F.3d 36, 40 (D.C. Cir. 2000).  "The plaintiff bears the burden of persuasion to establish subject matter jurisdiction by a preponderance of the evidence." <u>Pitney Bowes, Inc. v. United States Postal Serv.</u>, 27 F. Supp.2d 15, 19 (D.D.C. 1998).

Defendant also moves for dismissal under Rule 12(b)(6), because plaintiff fails to state a claim upon which relief can be granted.  Rule 12(b)(6) requires dismissal if a plaintiff fails to plead "enough facts to state a claim for relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 127 S.Ct. 1955, 1974 (2007) (abrogating prior standard which required the moving party to show that plaintiff can prove no set of facts in support of its claim which would entitle it to relief").  This Court must accept all well-pleaded facts as true. <u>Doe v. United States Dep't of Justice</u>, 753 F.2d 1092, 1102 (D.C. Cir. 1985).  The Court also must resolve all factual doubts in favor of the plaintiff, and allow the plaintiff the benefit of all inferences. <u>See</u> <u>EEOC v. St. Francis Xavier Parochial Sch.</u>, 117 F.3d 621, 624 (D.C. Cir. 1997). "However, the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." <u>Kowal v. MCI Communications Corp.</u>, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## **ARGUMENT**

I.    **PLAINTIFF'S APA CLAIMS SHOULD BE DISMISSED FOR LACK OF JURISDICTION AND UNDER THE DOCTRINES OF CLAIM AND ISSUE PRECLUSION AND FOR LACK OF JURISDICTION.**

    A.    **The APA Does Not Give This Court Authority To Review the CFTC's and SEC's Discretionary Decision to Initiate and Pursue Enforcement Proceedings.**

The APA authorizes judicial review of final agency actions.  See 5 U.S.C. § 702. However, the APA does not permit judicial review of agency actions that are committed to agency discretion by law, see 5 U.S.C. § 701(a)(2), and agency "enforcement actions generally are within this exclusion."  Association of Irritated Residents v. EPA, ____ F.3d ___, 2007 WL 2033262, at * 3 (D.C. Cir. July 17, 2007).  The Supreme Court has held that an agency's decision not to prosecute or initiate civil or criminal enforcement proceedings "is a decision generally committed to an agency's absolute discretion and therefore is presumptively unreviewable."  Heckler v. Chaney, 470 U.S. 821, 831 (1985); see Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1256 (D.C. Cir. 2005) (quoting same).  The same principle should apply to an agency's decision to initiate civil or criminal enforcement proceedings.  That presumption of unreviewability may only be overcome if the relevant statutes limit the agency's enforcement authority in a matter that effectively deprives the agency of discretion.  See Drake v. FAA, 291 F.3d 59, 71 (D.C. Cir. 2004).

The relevant statutes give the CFTC and SEC discretion to initiate and pursue enforcement actions against individuals and entities that violate federal securities laws or engage in other unlawful market transactions.  Congress has determined that the CFTC "may bring an action" in a federal district court to enjoin any act or practice that violates the Commodity Exchange Act and/or CFTC regulations.  7 U.S.C. § 13-a-1.  Similarly, the SEC "may, in its discretion, bring an action" in any federal district court to enjoin any act or practice that violates the federal securities laws.  15 U.S.C. § 77t(b).  Those statutes do not constrain the agencies' discretion.  Accordingly, the decisions Rogers challenges here — i.e., the CFTC's and SEC's commencement of enforcement proceedings — are not reviewable under the APA.  See

Association of Irritated Residents, ____ F.3d ___, 2007 WL 2033262, at * 3; Jerome Stevens

Pharm., Inc., 402 F.3d at 1256.

>    **B.    Plaintiff May Neither Appeal Nor Re-Litigate the Texas Enforcement Actions Here.**

Even if the CFTC and SEC actions at issue were not unreviewable discretionary

decisions, the "APA" claims Rogers has raised against the CFTC and SEC would not state a

claim upon which relief could be granted.  Plaintiff's "prayer for relief" clearly indicates that

those claims are nothing more than an attempt to relitigate issues that Plaintiff has raised in the

Texas enforcement actions.  Plaintiff's request for a declaratory ruling that the CFTC's initiation

of the Texas enforcement actions was "without statutory authority,"  Compl. ¶ 25, is an improper

collateral attack on the final judgment resolving the CFTC Texas enforcement action, and is

barred by the doctrine of res judicata (claim preclusion).  Rogers' attack on the SEC's  authority

to initiate its enforcement proceedings duplicates arguments raised and rejected in the SEC

Texas enforcement action, and Rogers may not conduct parallel proceedings on those issues

here.  To the extent that argument rests on Rogers' dubious assertion that the United States

District Court for the Northern District of Texas is not an "Article III court," the claims against

the SEC also are barred by issue preclusion ("collateral estoppel").

>    **1.   The Doctrine of Claim Preclusion Bars Plaintiff's Collateral Attack on the CFTC Enforcement Action.**

Plaintiff's claims present an improper collateral attack on the final decision the Northern

District of Texas issued in the CFTC enforcement action.  See CFTC v. Premium Income Corp.,

No. 3:05cv0416B, 2007 WL 429092 (N.D. Tex. Jan. 26, 2007).  This Court cannot sit as an

appellate court to review a decision of that court.  See Smalls v. United States, 471 F.3d 186, 191

(D.C. Cir. 2006) ("A federal district court lacks jurisdiction to review decisions of other federal

courts."); see also Dynaquest Corp. v. United States Postal Serv., 242 F.3d 1070, 1075 (D.C. Cir. 2001) (noting that D.C. Circuit "has no authority to collaterally review the decisions of a sister circuit."). If Plaintiff questioned that court's authority to resolve the case and/or the validity of the underlying complaint, he should have filed a notice of appeal to the Fifth Circuit within sixty days of the entry of the final judgment. See Fed. R. App. P. 4(a)(2)(B). He cannot circumvent that requirement by making the same claims before this Court and labeling it an "APA" action.

The doctrine of claim preclusion (res judicata) also bars Plaintiff's claims against the CFTC. Claim preclusion prevents a party from relitigating issues that were actually litigated in an earlier action as well as those that could have been litigated but were not. See Apotex, Inc. v. Food and Drug Admin., 393 F.3d 210, 217-18 (D.C. Cir. 2004); see also Allen v. McCurry, 449 U.S. 90, 94 (1980); I.A.M. National Pension Fund v. Industrial Gear Mfg. Co., 723 F2d 944, 946, 950 (D.C. Cir. 1983). The doctrine helps "conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and [ ] prevent serial forum-shopping and piecemeal litigation." Hardison v. Alexander, 655 F.2d 1281, 1299 (D.C. Cir. 1981). A claim is precluded if (1) there is a sufficient identity between the parties in the two suits, (2) there is a final judgment on the merits in an earlier action, and (3) there is a sufficient identity of the cause of action in the two suits. See Stanford v. Potomac Electric Power Co., 394 F. Supp.2d 81, 88 (D.D.C. 2005). "Whether two cases implicate the same cause of action turns on whether they share the same nucleus of facts." Apotex, Inc., 393 F.3d at 217-18.

The elements of claim preclusion are met in this case. The claims in which Plaintiff asserts that the CFTC lacked authority to initiate the enforcement proceedings, that his assets should not have been seized, and that the Northern District of Texas lacked jurisdiction to conduct that litigation, either were or should have been raised by Rogers in that action. Both the

CFTC and plaintiff were parties in the civil enforcement action, and they are the parties in the present case. The civil enforcement action resulted in a final judgment that was rendered by the United States District Court for the Northern District of Texas. Premium Income Corp., 2007 WL 429092. There can be no dispute that plaintiff's current claims implicate the same nucleus of facts as the CFTC Texas enforcement action. Plaintiff accuses the CFTC of engaging in misconduct in that action and argues that the Texas district court lacked jurisdiction to adjudicate that action.

Indeed, the claims raised in Rogers' complaint are strikingly similar to the arguments he made in the Texas enforcement action. Plaintiff filed a motion to dismiss arguing that the United States District Court for the Northern District of Texas is not a "federal district court" and therefore lacked authority to preside over the CFTC enforcement action. See Exh. 20 (Rogers Mot. To Dismiss). The Northern District of Texas rejected Rogers' creative interpretation of the definition of a "federal district court," and reaffirmed that conclusion in the portion of its final order that addressed the court's jurisdiction. See Premium Income Corp., 2007 WL 429092, at * 1; Exh. 21 (Order denying MTD). Those orders were final judgments resolving the precise issues Rogers has raised here, and therefore preclude Rogers from repeating those arguments in this case.

### 2. Rogers Cannot Relitigate the SEC Texas Enforcement Action In this Court.

This Court should dismiss all of Plaintiff's claims that concern the SEC's enforcement action because they duplicate claims raised in the pending proceedings in the Northern District of Texas and Rogers' recent appeal to the Fifth Circuit. "[S]eparate parallel proceedings have been long recognized as a judicial inconvenience." Handy v. Shaw, Bransford, Veilleux & Roth, 325 F.3d 346, 349 (D.C. Cir. 2003) (quoting Columbia Plaza Corp. v. Sec. Nat'l Bank, 525 F.2d 620,

626 (D.C. Cir. 1975) ("sound judicial administration counsels against separate proceedings, and the wasteful expenditure of energy and money incidental to separate litigation of identical issues should be avoided")).  Where two actions involving the same parties and identical issues are pending in different federal courts, the United States Supreme Court has stated that the "general principle is to avoid duplicative litigation."  Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (citations omitted).

That is exactly the situation here.  The Northern District of Texas has granted the SEC's summary judgment motion, see Exh. 16, but has not yet entered final judgment establishing the precise amount of Rogers' liability.  Thus, unlike the CFTC Texas enforcement action, the SEC Texas enforcement action remains pending.[2]  See id.  Plaintiff has argued there, as he does in the instant complaint, that the Northern District of Texas is not an Article III court. See Exh. 18 at 2 (N.D. Tex. Order).  The Northern District of Texas has rejected that argument.[3]  See id.  Plaintiff seeks to usurp that court's jurisdiction by raising the same issue in this case.  Plaintiff also contested the validity of the SEC's complaint in his opposition to the SEC motion for summary judgment and other motions.  The Northern District of Texas has rejected those arguments, and determined that the SEC is entitled to summary judgment.

Rogers has filed a notice of interlocutory appeal of the summary judgment ruling.  See Exh. 16 at Dkt. Entry 258.  Thus, there will be Fifth Circuit proceedings in that appeal of the

---

[2] The summary judgment ruling will have claim preclusive effect and serve as res judicata once the court's ruling is final.  The court asked the SEC to submit a proposed final judgment which calculated prejudgment interest, and the SEC submitted that proposed final judgment August 7, 2007.  See Exh. 16 at Dkt. Entry 257; Exh. 19 at 13 (Mem. Order) (requesting revised proposed final judgment).

[3] This Court has rejected the same argument.  See Exh. 9 (DDC Transfer Order).  In that case, Rogers claimed that the court should not transfer his habeas petition to the Western District of Texas because the United States District Court for the District of Columbia is the only legitimate federal district court.  See id. at 2.

Northern District of Texas's summary judgment order.  Plaintiff's challenge to the validity of the

SEC's complaint and the jurisdiction of the Northern District of Texas presumably will be

litigated again in those proceedings.

The Court should dismiss this case in order to avoid the unnecessary time and expense of

litigating the same claim between the same parties before two different federal courts.  In

addition, dismissal would prevent the potential that the courts would reach inconsistent results if

the claims proceed in two separate cases.  Thus, even if the Court had jurisdiction to hear claims

that are pending in another court, dismissal of these claims would be an appropriate exercise of

the Court's discretion to dismiss claims that also are raised in another proceeding.  See Handy,

325 F.3d at 350-51.[4]

> **3.      The Northern District of Texas's Determination That It is a "Federal
> District Court" Collaterally Estops Rogers from Raising the Same
> Argument Against the SEC Here.**

The doctrine of issue preclusion (collateral estoppel) bars Rogers from invoking his

theory that the United States District Court for the Northern District of Texas is not a legitimate

federal district court as a grounds for challenging the SEC's initiation and participation in the

SEC enforcement action.  Under that doctrine, "once a court has decided an issue of fact or law

necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a

different cause of action involving a party to the first case."  Yamaha Corp. of Amer. v. United

States, 961 F.2d 245, 254 (D.C. Cir. 1992); see also Nextwave Personal Communications, Inc. v.

---

[4] Handy involved review of the District Court's dismissal of a lawsuit also brought in
D.C. Superior Court and noted that federal courts should decline jurisdiction over such cases
only in "exceptional circumstances."  Here, however, Plaintiff is seeking review of jurisdictional
and statutory issues that concern parallel federal lawsuits in two different districts.  Consistent
with the D.C. Circuit's direction, here the Court should dismiss the claims in this case that
concern the pending SEC Texas enforcement action.

FCC, 254 F.3d 130, 147 (D.C. Cir. 2001) ("a final judgment on the merits in a prior suit

precludes subsequent relitigation of issues actually litigated and determined in the prior suit,

regardless of whether the subsequent suit is based on the same cause of action."), aff'd on other

grounds, 537 U.S. 293 (2003); IAM Nat'l Pension Fund, 723 F.2d at 947 (same).  There are three

elements necessary for issue preclusion:

> (1) the same issue now being raised must have been contested by the parties and
> submitted for judicial determination in the prior case; (2) the issue must have been
> actually and necessarily determined by a court of competent jurisdiction in that
> prior case; and (3) preclusion in the second case must not work a basic unfairness
> to the party bound by the first determination.

Yamaha Corp., 961 F.2d at 254.  The doctrine protects the finality of judgments, and "is intended

to free courts and parties from the onerous and unnecessary task of relitigating issues that already

have been decided in a full and fair proceeding."  McLaughlin v. Bradlee, 803 F.2d 1197, 1204

(D.C. Cir. 1986).  The defense of issue preclusion may be invoked by parties that were not

involved in the prior proceedings.  See id. at 1204.

All the elements of issue preclusion are present here.  As noted supra, this precise issue

was litigated by Rogers and the CFTC in the CFTC enforcement action, and Rogers submitted a

motion to dismiss arguing that the Northern District of Texas was not an Article III court.  See

Exh. 20 (Rogers CFTC MTD).  The Northern District of Texas rejected that dubious argument,

and reaffirmed that conclusion in the portion of its final order that addressed the court's

jurisdiction.  See Premium Income Corp., 2007 WL 429092, at * 1; Exh. 21 (Order denying

Rogers MTD).   The Northern District of Texas had jurisdiction to make that decision, because

courts always have authority to determine their own jurisdiction.  See Consolidated Edison Co.

v. Bodman, 449 F.3d 1254, 1257 (D.C. Cir. 2006) ("A court has jurisdiction to determine its

jurisdiction.").  Indeed, that court's ruling would have preclusive effect on Rogers' ability to

raise the same jurisdictional issue in other matters even if the Court had reached the opposite

conclusion, and determined that it <u>lacked</u> subject matter jurisdiction over Rogers' merits claims.

<u>See</u> <u>GAF Corp.</u>, 818 F.2d 901, 912-13 (D.C. Cir. 1987).  It would be eminently fair to bind

Rogers to that ruling, as he has had a full opportunity to litigate it (and also has raised the same

or similar claims in several other actions).

 The fact that the CFTC was not a party to the SEC enforcement action neither diminishes

the preclusive effect of that Northern District of Texas ruling nor prevents the SEC from raising

issue preclusion as a defense.  "[I]t has come to be widely accepted that usually little good and

much harm can come from allowing a determined plaintiff to retry the same issues in exhausting

fashion against successive defendants." <u>McLaughlin</u>, 803 F.2d at 1204-05.  Those principles are

particularly apt here, given Rogers' history of filing frivolous lawsuits.

  **B.**  **Rogers' Challenges to the Validity of the Colorado Conviction and  USPC's Enforcement of That Sentence Cannot Be Litigated Here.**

 Rogers' complaint challenges the validity of his sentence and the USPC's authority to

enforce that sentence.  Specifically, Rogers alleges that: (1) the USPC lacked statutory authority

to enforce his sentence because Colorado is not a "federal state," <u>id.</u> ¶ 25(iii); (2) the USPC acted

arbitrarily, capriciously, and/or in violation of law by enforcing his sentence despite allegedly

knowing that there was no order from a "district court of the United States" for it to enforce,

Compl. ¶ 23; and (3) the Northern District of Colorado lacked subject matter jurisdiction, <u>id.</u> ¶

20.  Those claims should be dismissed on jurisdictional grounds for three reasons.  First, the

arguments in which Rogers challenges the validity of his conviction and sentence in the District

of Colorado can only be brought pursuant to the federal habeas corpus statutes, and this Court is

not the proper forum in which to seek such relief.  Second, to the extent Rogers' claims

challenging the USPC's statutory authority to enforce his sentence can be separated from his

attack on the merits of the underlying conviction and sentence, those claims could and should

have been raised in the Western District of Oklahoma habeas proceedings against the USPC, and

therefore are barred by res judicata (claim preclusion).  Finally, Rogers has raised similar

arguments in a case pending in the Western District of Texas, and allowing him to press those

claims here would generate unnecessary parallel proceedings.

> **1.  Rogers' Challenge to the Validity of His Sentence and Conviction Can Only Be Brought in Habeas Proceedings Before the Sentencing Court.**

Rogers' claims against the USPC rest on the premise that his sentence and conviction

were invalid because the United States District Court for the District of Colorado is not a

"federal court" and lacked subject matter jurisdiction, and because the violations of federal law

occurred in Colorado, which allegedly is not a "federal state."  See Compl. ¶¶19, 20, 23, 25(iii).

Rogers frames these as APA claims, arguing that the USPC's enforcement of his sentence in

those circumstances was arbitrary and capricious and exceeded the USPC's statutory authority.

But the APA is not the proper vehicle for presenting such claims.  Instead, they may only be

raised in a habeas action, as they challenge the lawfulness of Rogers' conviction and

confinement.

"Challenges to the lawfulness of confinement or to particulars affecting its duration are

the province of habeas corpus."  Hill v. McDonough, ___ U.S. ___, 126 S. Ct. 2096, 2101

(2006).  Accordingly, it is well settled that a federal prisoner's attack on the  "fact or duration" of

his confinement may be raised only in a petition for habeas relief.  Chatman-Bey v. Thornburgh,

864 F.2d 804 (D.C. Cir. 1988) (en banc); see also Williams v. Hill, 74 F.3d 1339, 1340 (D.C.

Cir. 1996) (stating that a prisoner cannot use a civil claim for injunctive and declaratory relief to

seek relief from his conviction or sentence).  Habeas is an exclusive remedy even if the

prisoner's claims do not directly challenge the sentence. It also is the sole method for prisoners

to raise claims that indirectly attack a conviction or sentence by seeking declaratory relief that

"would necessarily imply the unlawfulness of a (not previously invalidated) conviction or

sentence." Wilkinson v. Dotson, 544 U.S. 74, 81 (2005); see also Rizzoli v. Federal Bureau of

Prisons, 230 F.3d 371, 373 (D.C. Cir. 2000).

      Rogers' assertion that Colorado is not a federal state, that the District of Colorado is not a

"federal district court," that he was incarcerated "without statutory authority," and that the

District of Colorado lacked jurisdiction over the criminal case, are precisely the type of claims

for which habeas provides the exclusive remedy. All four arguments question the legitimacy of

Rogers' sentence and conviction, despite being styled as an attack on the USPC's authority to

enforce the conditions of Rogers' parole. That is, if Rogers did not commit crimes in a federal

state, and/or the convicting and sentencing court were not a federal district court with authority

to sentence him, then Rogers could not have been convicted of federal crimes or sentenced for

those crimes. Thus the necessary implication of a ruling in Rogers' favor would be that the

Colorado convictions and sentence are invalid. That goes to the core of habeas, and habeas

provides Rogers' exclusive remedy.

      In fact, the federal habeas laws expressly address claims like Rogers', and provide that a

prisoner who contends that "the sentence was imposed in violation of the Constitution or laws of

the United States, or that the court was without jurisdiction to impose such sentence. . . may

move the court which imposed the sentence to vacate, set aside or correct the sentence." 28

U.S.C. § 2255. Perhaps recognizing that, Rogers already has filed multiple § 2255 petitions in

the District of Colorado, the third of which directly challenged that court's subject matter

jurisdiction over the criminal proceedings. See Rogers, 2006 WL 3735514, at *1. The first

habeas petition was denied for failure to establish a right to habeas relief, and the District of

Colorado and Tenth Circuit denied Rogers leave to raise those jurisdictional arguments in the

successive habeas petitions.  See Rogers, 2006 WL 3735514, at *1.  Rogers also has raised these

claims in the habeas petition he filed in this Court, which was transferred to the Western District

of Texas.  See Exh. 11 (habeas petition).

The APA does not provide an alternative remedy for claims like Rogers'.  It is true that

much of the precedent concerning collateral attacks on a federal sentence involve Section 1983

or Bivens claims for damages.  See, e.g., Heck v. Humphrey, 512 U.S. 477, 486-87 (1994)

(finding § 1983 claim barred where habeas was exclusive remedy); Williams v. Hill, 878 F.

Supp. 269, 272 (D.D.C. 1995) (dismissing Bivens claim because it challenged validity of his

conviction and sentence).  However, the reasoning in those opinions applies with equal force to

an APA claim.  See Gomez v. Department of Justice, No. 06-1346, 2006 WL 3780776, at * 3 n.1

(concluding that habeas would be the exclusive remedy for 'APA' claims if plaintiff challenged

the agency's calculation of his sentence instead of the broader agency rules governing those

calculations).  Moreover, the D.C. Circuit has held that district courts lack jurisdiction over all

suits seeking declaratory judgment on matters for which habeas relief is available in another

district.  See LoBue v. Christopher, 82 F.3d 1081, 1082-84 (D.C. Cir. 1996) (where the plaintiff

has available a habeas remedy in another district, he cannot pursue declaratory relief in the

District of Columbia).  The LoBue Court also noted that prior D.C. precedent allowing an APA

claim to proceed when habeas relief was also available cannot be reconciled with intervening

Supreme Court precedent clarifying that the APA does not provide an independent source of

jurisdiction for any claim.  See id. at 1083.

Even if Rogers had filed a § 2255 motion instead of an APA complaint, this Court would still lack jurisdiction to hear his claims.  Congress has determined that challenges to the sentencing court's authority must be filed with the sentencing court, here the District of Colorado.  See 28 U.S.C. § 2255; In re Moore, 196 F.3d 252, 254 (D.C. Cir. 1999) (stating prisoner must challenge sentence in the "court which sentenced him"); Vasquez v. Gonzales, No. 07-0486, 2007 WL 2225898, at * 1 (D.D.C. Aug. 1, 2007) (dismissing claims challenging sentencing court's subject matter jurisdiction because it had to be raised in a 2255 motion filed with sentencing court).  For that reason, this Court transferred a prior habeas action challenging Rogers' Texas convictions to the Western District of Texas.  See Exh. 9 (D.D.C. Order).  A Section 2255 claim also would be time-barred, as this case is well beyond the one-year statute of limitations. See McCants v. United States, 480 F. Supp. 2d 276, 278-79 (D.D.C. 2007) (finding 2255 claim time-barred because it was filed more than a year after conviction became final); 28 U.S.C. § 2255.

### 2.	Even If Any of Rogers' Challenges to the USPC's Authority to Enforce His Sentence Were Severable From His Attack On the Validity of His Conviction and Sentence, The Claims Would Be Barred By Res Judicata.

As explained supra, Rogers' attacks on the USPC's authority to enforce his sentence, if legally correct, also would require invalidation of his entire conviction and sentence.  Thus the federal habeas statutes provide Rogers' sole avenue for relief.  However, even if Rogers' challenge to the USPC's enforcement authority rested on legal arguments that could be brought outside the habeas context, this Court still would lack jurisdiction to review them.  Such claims could, and should, have been raised in the Western District of Oklahoma habeas proceedings in which Rogers sued the USPC.  Accordingly, the doctrine of res judicata bars Rogers from raising them in this action.

Res judicata, or claim preclusion, prevents a party from re-litigating issues that were, or could have been, raised in prior litigation between the parties.  See supra;  Apotex, Inc., 393 F.3d at 217-18.  That doctrine protects parties from "the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."  Apotex, Inc., 393 F.3d at 217.  There are three elements: (1) sufficient identity between the parties; (2) a final judgment on the merits; and (3) sufficient identity in the cause of action in the two suits.

Claim preclusion clearly operates as a bar to Rogers' challenge to the USPC's authority to enforce his sentence.  Both Rogers and the USPC were parties to the Western District of Oklahoma proceedings.  See Exh. 22 (Dkt. to No. 05-00724 (W.D. Okl.)).  That court issued a final judgment dismissing the action, and had jurisdiction to do so.  See Exh. 13; 28 U.S.C. § 2241 (authorizing federal district courts to review habeas petitions).  The cause of action is identical, as that suit concerned parole revocation proceedings which enforced Rogers' criminal sentences, and the instant complaint challenges "USPC's enforcement of the United States District Court for the District of Colorado's sentence."  Compl. ¶ 25(iii).  Thus all the elements of claim preclusion are satisfied.

> **3.      Allowing Rogers' Claims Against the USPC To Proceed Also Would Unnecessarily Duplicate the Habeas Proceedings in the Western District of Texas.**

Like Rogers' challenge to the SEC enforcement action, Rogers' claims against the USPC duplicate the allegations Rogers has raised in other pending litigation.  USPC currently is defending another Rogers matter in the Western District of Texas, in which Rogers contends that the USPC lacked the authority to enforce his sentence.  See Exh. 11 (habeas petition).  The claims Rogers has raised there are strikingly similar to those raised in this complaint, which was

filed less than two months after this Court transferred Rogers' habeas petition to the Western District of Texas. The habeas petition states that the USPC "lacks either authority and/or jurisdiction to maintain or order additional incarceration of Rogers." See id. at 2. In the "statement of facts and legal reasons" submitted with that petition, Rogers argues that the United States District Court for the District of Colorado is not an Article III court, and that Colorado is not a "federal state." Id. at ¶¶ 3, 7. Those allegations are almost identical to the issues raised in paragraphs 16, 19, and 25 of the instant complaint.

Rogers should not be permitted to re-raise those claims in this Court. Numerous federal district courts and United States Attorney's Offices have expended significant resources on litigation arising out of Rogers' convictions and imprisonment, and the USPC has had to defend itself in at least two other federal actions. Conducting separate litigation in this Court would waste judicial resources, and cause additional "wasteful expenditure[s] of energy and money." Columbia Plaza Corp., 525 F.2d at 626. Thus Rogers' duplicative claims should be dismissed for lack of jurisdiction. In the alternative, if the Court concludes that it has jurisdiction to review claims pending in another federal district court, Defendants respectfully request that the Court abstain from exercising that jurisdiction.

## II.    PLAINTIFF'S NARROW DEFINITION OF THE TERMS "ARTICLE III COURT" AND "FEDERAL STATE" ALSO ARE INCORRECT AS A MATTER OF LAW.

This Court need not reach the merits of Rogers' claims, as there are numerous grounds on which to dismiss them. However, it bears noting that the 'APA' claims against Defendants all rest on an erroneous view of which courts are "Article III courts," and which states or territories are "federal states." Rogers relies on his creative definition of those terms to support his theory that the CFTC and SEC acted arbitrarily and capriciously by initiating and participating in

24

enforcement proceedings in a court that lacked jurisdiction and was not an Article III court, and in a state that was not a federal state. Likewise, Rogers claims that the USPC arbitrarily and capriciously exceeded its authority because the District of Colorado is not a legitimate Article III court, and Colorado is not a federal state.

Plaintiff's contention that the United States District Court for the Northern District of Texas is "a court that was not promulgated as a district court of the United States" within the meaning of the Commodities Exchange Act ("CEA") and the federal securities laws is frivolous. Complaint ¶¶ 18, 20. Section 6c(a) of the CEA authorizes the Commission to institute an action in a "district court of the United States" when it appears that "any registered entity or other person has engaged, is engaging, or is about to engage" in conduct that violates the CEA. 7 U.S.C. § 13a-1(a). The SEC has similar statutory authority to institute actions in a federal district court to enjoin any act or practice that violates the federal securities laws. 15 U.S.C. § 77t(b). The United States District Court for the Northern District of Texas clearly is a federal district court, and thus it had jurisdiction over the enforcement actions. See 28 U.S.C. § 124(a) (defining Northern District of Texas). The district court recognized its jurisdiction in its opinion resolving the CFTC enforcement action. See CFTC v. Premium Income Corp., 2007 WL 4290992, at *1. It is unclear what Rogers means by arguing that Texas is not a "federal state." However, the fact that Texas is part of the United States cannot seriously be disputed. Rogers' contrary assertions are baseless.

Rogers' challenges to the legitimacy of the United States District Court for the Northern District of Colorado, and to Colorado's status as a "federal state," are equally meritless. That court is a federal district court, see 28 U.S.C. § 85, and Colorado is part of the United States.

Thus there is no basis to question the USPC's authority to enforce a criminal sentence issued by the District of Colorado for crimes committed within that district.

## CONCLUSION

For the reasons stated above, Rogers's Complaint should be DISMISSED.

Dated: August 9, 2007                    Respectfully submitted,

       /s/

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

       /s/

RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

      /s/ Robin M. Meriweather

ROBIN M. MERIWEATHER, D.C. Bar. # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 514-7198    Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

**Of Counsel:**

Bella Rozenberg
COMMODITY FUTURES TRADING
  COMMISSION
Office of General Counsel
1155 21st Street, N.W.
Washington, D.C.  20581
Phone: (202) 418-5119    Fax: (202) 418-5524
E-mail:  brozenberg@cftc.gov
***Counsel for the CFTC***

Kevin Solonsky
SECURITIES AND EXCHANGE COMMISSION
Office of General Counsel
100 F Street, NE
Washington, DC 20549-9612
Phone: (202) 551-5140  Facsimile:  (202) 772-9263
E-mail:  solonskykd@sec.gov
***Counsel for the SEC***

Douglas Thiessen
UNITED STATES PAROLE COMMISSION
Office of General Counsel
**_Counsel for the USPC_**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 9th day of August, 2007, I caused the foregoing Motion to be

filed via the Court's Electronic Case Filing system, and to be served upon <u>pro se</u> plaintiff by

first-class mail, postage prepaid, addressed as follows:

Gerald L. Rogers
# 12327-086
Sheridan Federal Correction Institution
PO Box 6000
Sheridan, OR 97378


<u>    /s/   *Robin M. Meriweather*          </u>
ROBIN M. MERIWEATHER, D.C. Bar # 490114

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GERALD L. ROGERS,

                    Plaintiff,

        v.

HARVEY LLOYD PITT, SECURITIES AND
EXCHANGE COMMISSION; JAMES G.
NEWSOME, COMMODITY FUTURES
TRADING COMMISSION; MICHAEL J.
GAINES, UNITED STATES PAROLE
COMMISSION,

                    Defendants.

Case No. 1:07cv00687 (RMC)

## **ORDER**

       Upon consideration of Defendants' Motion to Dismiss, it is this _____ day of

_____, 2007,

       ORDERED that Defendants' Motion to Dismiss be, and hereby is, GRANTED;

       it is further ORDERED that Plaintiff's complaint be, and hereby is, DISMISSED WITH

PREJUDICE.

                     SO ORDERED.

                     _____

                     United States District Judge

AO 245 (Rev. 8/87) Judgment in a Crim

**FILED**
UNITED STATES DISTRICT
DENVER, COLORADO

# United States District Court

### DISTRICT OF   COLORADO

NOV 5 1990

JAMES R. MANSPEAKER
CLERK
BY_____
DEP. CLERK

UNITED STATES OF AMERICA

V.

GERALD LEO ROGERS
  aka T.T. Smith III, Claude de Bleu,
  Allan J. Martin, James F. Stokes,
  J.R. Kingston and Ambrose I. Goldsmith

**JUDGMENT IN A CRIMINAL CASE**

Case Number:   84-CR-337-1

(Name and Address of Defendant)

Charles Szekely, Asst. Federal Public Defender
Advisory       ~~Attorney/Pro/Defendant~~  Counsel

## THE DEFENDANT ENTERED A PLEA OF:

[□ guilty   □ nolo contendere] as to count(s)_____, and
□ not guilty as to count(s)_____.

## THERE WAS A:
[□ finding   ☒ verdict] of guilty as to count(s) I thru X and XII thru XIV on September 6, 1990

## THERE WAS A:
[□ finding   □ verdict] of not guilty as to count(s)_____
□ judgment of acquittal as to count(s)_____
  The defendant is acquitted and discharged as to this/these count(s).

---

THE DEFENDANT IS CONVICTED OF THE OFFENSE(S) OF:   Mail Fraud in violation of 18 U.S.C.
§1341 as to Counts I,II,III,IV,V,VI,VII,VIII,IX and X and Securities Fraud in violation of 15 U.S.C.
§77q(a)and 77x and 18 U.S.C. §2 as to Counts XII,XIII and XIV.

**GOVERNMENT EXHIBIT**
1

IT IS THE JUDGMENT OF THIS COURT THAT:   Defendant is committed to the custody of the
Attorney General or his duly authorized representative as to five (5) years imprisonment as to Counts
I,XII and XIII to be served concurrently; five (5) years as to Counts II,V and VI to be served concur-
rently with each other and consecutively to Counts I, XII and XIII.  Defendant is further committed
to five (5) years on each of Counts III,VII and VIII to be served concurrently with each other and
consecutively to Counts I,II,V,VI,XII and XIII; five (5) years as to Counts IV,IX and X to be served
concurrently with each other and consecutively to Counts I,II,III,V,VI,VII,VIII,XII and XIII; five (5)
years on Count XIV to be served consecutively to the terms imposed in Counts I thru X, XII and
XIII for a total term of imprisonment of twenty-five (25) years.  All terms are consecutive to
Docket #82-CR-292 imposed in the Central District of California on March 26, 1990.
    IT IS FURTHER ORDERED as to Counts I thru X that defendant shall pay a fine of $1,000.00
per Count for a total of $10,000.00.
    IT IS FURTHER ORDERED as to Counts XII, XIII and XIV that defendant shall pay a fine of
$10,000.00 per Count for a total of $30,000.00.  Total fine imposed on all Counts is $40,000.00,
payable upon execution.

In addition to any conditions of probation imposed above, IT IS ORDERED that the conditions of proba-
tion set out on the reverse of this judgment are imposed.

## CONDITIONS OF PROBATION

robation has been ordered the defendant shall:

frain from violation of any law (federal, state, and local) and get in touch immediately with your probation officer if arrested or questioned by a law-enforcement officer;
associate only with law-abiding persons and maintain reasonable hours;
work regularly at a lawful occupation and support your legal dependents, if any, to the best of your ability. (When out of work notify your probation officer at once, and consult him prior to job changes);
i) not leave the judicial district without permission of the probation officer;
i) notify your probation officer immediately of any changes in your place of residence;
i) follow the probation officer's instructions and report as directed.

he court may change the conditions of probation, reduce or extend the period of probation, and at any time during the probation period r within the maximum probation period of 5 years permitted by law, may issue a warrant and revoke probation for a violation occurring uring the probation period.

T IS FURTHER ORDERED that the defendant shall pay a total special assessment of $ _____
ursuant to Title 18, U.S.C. Section 3013 for count(s)_____ as follows:


T IS FURTHER ORDERED THAT counts_____are DISMISSED
n the motion of the United States.

T IS FURTHER ORDERED that the defendant shall pay to the United States attorney for this district any amount mposed as a fine, restitution or special assessment. The defendant shall pay to the clerk of the court any mount imposed as a cost of prosecution. Until all fines, restitution, special assessments and costs are fully aid, the defendant shall immediately notify the United States attorney for this district of any change in name nd address.

T IS FURTHER ORDERED that the clerk of the court deliver a certified copy of this judgment to the United States marshal of this district.

☒ The Court orders commitment to the custody of the Attorney General and recommends:
    Designation to a Federal prison facility on the West Coast.

October 22, 1990
ate of Imposition of Sentence

_Signature of Judicial Officer_

SHERMAN G. FINESILVER, Chief Judge
Name and Title of Judicial Officer

November   5   , 1990
                Date

I, the undersigned, Clerk of the United States District Court for the District of Colorado, do certify that the foregoing is a true copy of an original document remaining on file and record in my office.
    WITNESS my hand and SEAL of said Court this 7 day of _November 1990_
        JAMES R. MANSPEAKER
    By _____
                                Deputy

**RETURN**

have executed this Judgment as follows:

_____

_____

_____

efendant delivered on _____ to _____ at
                Date

_____, the institution designated by the Attorney
eneral, with a certified copy of this Judgment in a Criminal Case.

_____
United States Marshal

By _____
Deputy Marshal

## U.S. Department of Justice
## United States Parole Commission

### CERTIFICATE OF PAROLE
### [AMENDED]

Know all Men by these Presents:

It having been made to appear to the United States Parole Commission that **ROGERS, Gerald Leo**, Register No. **12327-086**, a prisoner incarcerated in the **Phoenix FCI** is eligible to be **PAROLED**, and in that said prisoner substantially observed the rules of the institution, and in the opinion of the Commission said prisoner's release would not depreciate the seriousness of this offense or promote disrespect for the law, and would not jeopardize the public welfare, it is ORDERED by the said United States Parole Commission that said prisoner be **PAROLED** on **December 1, 2000**, and that said prisoner is to remain within the limits of **District of Arizona** to and including **December 29, 2024**.

Given under the hands and the seal of the United States Parole Commission on **December 1, 2000.**

UNITED STATES PAROLE COMMISSION

*Juanita E. Holmes*

By: **Juanita E. Holmes, Parole Info. Specialist**

Initial Risk Category: SFS: 10 (Very Good)
Chief U.S. Probation Officer: Magdeline E. Jensen, District of Arizona

I have read, or had read to me, the conditions of release printed on the attached Conditions of Release form and received a copy thereof. I fully understand them and know that if I violate any, I may be recommitted. I also understand that the law requires the Parole Commission to revoke my parole if I am found by the Commission to have possessed any illegal controlled substance. I also understand that special conditions may be added or modifications of any condition may be made by the Parole Commission upon notice required by law.

| | |
|---|---|
| *G J Rogers* | *12327-086* |
| Name | Reg. No. |

Witnessed: *X March, Case Manager*     12-01-00

| | |
|---|---|
| Name and Title | Date |

The above-named person was released on the ___1st___ day of ___December___, 20 _00_ with a total of __8,794__ days remaining to be served.

*M Jenkins*

Michael J. Jenkins, ISM
**Official Certifying Release**

BOP-Phoenix FCI

GOVERNMENT EXHIBIT 2

This CERTIFICATE will become effective on the day of release indicated above. If the releasee fails to comply with any of the conditions listed on the attached page, the releasee may be summoned to a hearing or retaken on a warrant issued by a Commissioner of the U.S. Parole Commission and reimprisoned pending a hearing to determine if the release should be revoked.

## CONDITIONS OF RELEASE

1. You shall go directly to the district shown on the CERTIFICATE OF RELEASE (unless released to the custody of other authorities). Within three days after your arrival, you shall report to your parole advisor if you have one, and the United States Probation Officer whose name appears on the Certificate. If in any emergency you are unable to get in touch with your parole advisor, or your Probation Officer or the United States Probation Office, you shall communicate with the United States Parole Commission, Department of Justice, Chevy Chase, Maryland 20815.

2. If you are released to the custody of other authorities, and after your release from physical custody of such authorities, you are unable to report to the United States Probation Officer to whom you are assigned within three days, you shall report instead to the nearest United States Probation Office.

3. You shall not leave the limits fixed by the CERTIFICATE OF RELEASE without written permission from your Probation Officer.

4. You shall notify your Probation Officer within 2 days of any change in your place of residence.

5. You shall make a complete and truthful written report (on a form provided for that purpose) to your Probation Officer between the first and third day of each month, and on the final day of parole. You shall also report to your Probation Officer at other times as your Probation Officer directs, providing complete and truthful information.

6. You shall not violate any law, nor shall you associate with persons engaged in criminal activity. You shall get in touch within 2 days with your Probation Officer or the United States Probation Office if you are arrested or questioned by a law-enforcement officer.

7. You shall not enter into any agreement to act as an informer or special agent for any law-enforcement agency.

8. You shall work regularly unless excused by your Probation Officer, and support your legal dependents, if any, to the best of your ability. You shall report within 2 days to your Probation Officer any changes in employment.

9. You shall not drink alcoholic beverages to excess. You shall not purchase, possess, use or administer marijuana or narcotic or other habit-forming or dangerous drugs, unless prescribed or advised by a physician. You shall not frequent places where such drugs are illegally sold, dispensed, used or given away.

10. You shall not associate with persons who have a criminal record unless you have permission by your Probation Officer.

11. You shall not possess a firearm, ammunition or other dangerous weapons.

12. You shall permit confiscation by your Probation Officer of any materials which your Probation Officer believes may constitute contraband in your possession and which your Probation Officer observes in plain view in your residence, place of business or occupation, vehicle(s) or on your person.

13. You shall make a diligent effort to satisfy any fine, restitution order, court costs or assessment, and/or court ordered child support or alimony payment that has been, or

BOP-Phoenix FCI

may be, imposed, and shall provide such financial information as may be requested, by your Probation Officer, relevant to the payment of the obligation. If unable to pay the obligation in one sum, you will cooperate with your Probation Officer in establishing an installment payment schedule.

14. You shall submit to a drug test whenever ordered by your Probation Officer.

15. If you have been convicted of any sexual offense under District of Columbia or federal law (including Uniform Code of Military Justice offenses), you must report for registration with your state sex offender registration agency as directed by your U.S. Probation Officer. You are required to report for registration in any state in which you live, work, attend school, or pursue any vocation. You must be registered in compliance with applicable state law that applies to current or prior federal, state or local convictions for sexual offenses, and in compliance with 42 U.S.C. §14072(i) (which makes it a federal crime for any offender covered by 18 U.S.C. §4042 not to register in accordance with state law). If there is any question as to whether or where you are required to register, you must seek and follow the guidance of your U.S. Probation Officer.

By signing this Parole Certificate, I consent to the unrestricted communication between any treatment facility administering a drug or alcoholic treatment program in which I am, or will be participating, and the U.S. Parole Commission and the Probation Office. I further consent to the disclosure by such facility to the U.S. Parole Commission and the Probation Office of any information requested; and the redisclosure of such information to any agencies that require it for the performance of their official duties. This consent shall be irrevocable until the termination of parole supervision, or the occurrence of one of the items specified in 42 C.F.R. 2.35(b), whichever is earlier.

You shall also abide by the below listed special condition(s) as indicated:

- You shall provide complete disclosure of financial records involving all money and property owned or controlled by you, or held for your benefit. This disclosure includes the signing of a consent form for disclosure of the foreign bank accounts you maintained in Switzerland and Panama while in fugitive status.

- You shall comply with all IRS reporting and financial obligations and provide proof of meeting all IRS obligations to your U.S. Probation Officer.

- Neither you nor any person acting on your behalf shall open any checking account or lines of personal or commercial credit without prior approval of your U.S. Probation Officer and the U.S. Parole Commission.

- You shall under no circumstance provide financial advice to any person or solicit financial investments of any kind from any person for any purpose.

- You shall secure a full-time salaried job with an established business with which you have had no prior connection, and which does not require you to undertake any fiduciary responsibility or to work with securities or financial matters. Your employment must be subject to ongoing, on-site verification by your U.S. Probation Officer. Verification of your compliance with this special employment condition may not depend to any degree upon information submitted by you, nor

BOP-Phoenix FCI

shall your employment involve any relative, business partner, or associate of yours.

- You shall not threaten any person with legal action or file liens or lawsuits against any person for the purpose of harassment or vexation, or to gain some benefit to which you are not clearly entitled, as exemplified by the conduct described in the May 9, 1995 Report and Recommendation in Rogers v. Takasugi, et. al., Case No. CV 94-7957-JSL.

- Travel outside your district of supervision is prohibited until such time as the Parole Commission concurs with your U.S. Probation Officer that you can be depended upon not to abscond from parole, and that you are complying in good faith with the conditions of your parole. You shall not apply for or possess a U.S. passport without the Parole Commission's permission.

Information concerning a releasee under the supervision of the U.S. Parole Commission may be disclosed to a person or persons who may be exposed to harm through contact with that particular releasee if such disclosure is deemed to be reasonably necessary to give notice that such danger exists. Information concerning a releasee may be released to a law enforcement agency as required for the protection of the public or the enforcement of the conditions of the release.

BOP-Phoenix FCI



U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland  20815-7201

**Notice of Action**

---

Name:  ROGERS, Gerald

Institution:  Tucson FCI

Register Number:  12327-086

Date:        October 31, 2003

In the case of the above-named, the following parole action was ordered:

## **Local Revocation**

Revoke parole. All of the time spent on parole shall be credited. Re-parole effective (12-24-2003) after the service of 6 months.

1. You shall provide complete disclosure of financial records involving all money and property owned or controlled by you, or held for your benefit. This disclosure includes the signing of a consent form for disclosure of the foreign bank accounts maintained in Switzerland and Panama while in fugitive status.

2. You shall comply with all IRS reporting and financial obligations and provide proof of meeting all IRS obligations to your USPO

3. Neither you nor any person acting on your behalf shall open any checking account or lines of personal or commercial credit without prior approval of your USPO and the US Parole Commission.

4. You shall under no circumstances provide financial advice to any person or solicit financial investments of any kind from any person for any purpose

5. You shall secure a full-time salaried job with an established business with which you have no prior connection and which does not require you to undertake any fiduciary responsibility or to work with securities or financial matters. Employment must be subject to ongoing, onsite verification by your USPO, verification of your compliance with this special employment condition may not depend to any degree upon information submitted by you nor shall your employment involve any relative, business partner, previous associate or friend.

6. You shall not threaten any person with legal action or file liens or lawsuits against any person for the purpose of harassing or vexation, or to gain some benefit to which you are not clearly entitled, as exemplified by the conduct described in the 5/9/95 report and recommendation in <u>Rogers v. Takasugi</u>, Case No. CD 94-7957-JSL. You shall provide your probation officer with documentation to show that you are clearly entitled to any benefit prior to filing any litigation, liens, or lawsuits against any person or business.

7. Travel outside your District of Supervision is prohibited until such time as the Parole Commission concurs with your USPO that you can be depended upon not to abscond from parole, and that you are complying in good faith with the conditions of your parole. You shall not apply for or possess a US Passport without the Parole Commission's written permission.

---

GOVERNMENT EXHIBIT
3

**FINDINGS OF FACT:**

The Commission finds as a fact that you violated conditions of release as charged as indicated below:

Charge No. 3 - Falsifying Supervision Reports.

Basis: Information contained in violation report dated 08-30-2003 from USPO Graber, testimony provided by USPO Graber at the hearing, monthly reports for March and April of 2003 and your statements during the hearing.

Charge No. 4 – Violation of Special Condition (You shall not threaten anyone with legal action or file liens or lawsuits against any person for the purpose of harassment or vexation, or to gain some benefit to which you are not clearly entitled).

Basis: Information contained in violation report dated 08-30-2003 from USPO Graber, testimony provided by USPO Graber at the hearing, your statements during the hearing, and copies of materials sent from you to Mr. Holm.

The Commission makes no findings concerning the following charges:

Charge No. 1 – Violation of Special Condition (You shall under no circumstances provide financial advise to any person or solicit financial investments of any kind from any person for any purpose).

Charge No. 2 – Violation of Special Condition (You shall secure a full-time, salaried job with an established business which does not require you to undertake any fiduciary responsibility or to work with securities or financial matters).

Basis: Insufficient evidence.

**REASONS:**

Your parole violation behavior has been rated as Category One severity because it involved administrative violation(s). Your salient factor score is 6. See the attached sheet for an explanation of your individual Salient Factor Score items. The table at the bottom presents the points for Salient Factor Score Item C. As of your hearing date of 10-09-2003, you have been in confinement as a result of your violation behavior for a total of 3 month(s). Guidelines established by the Commission indicate a customary range of 0-8 months to be served before release. After review of all relevant factors and information, a departure from the guidelines at this consideration is not warranted.

The above decision is appealable to the National Appeals Board pursuant to 28 C.F.R. 2.26.

You may obtain appeal forms from your caseworker or U.S. Probation Officer and they must be filed with the Commission within thirty days of the date this Notice was sent.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:    Neil Graber
      U.S. Probation Office
      District of Arizona
      4000 N. Central, Suite 2300
      Phoenix, AZ 85012-3516

      J. Paul Breshears
      Federal Public Defenders Office
      District of Arizona
      97 East Congress
      Suite 130
      Tucson, AZ  85701-1716



ROGERS 12327-086          -3-          Clerk:  MDD
Queued: 10-31-2003 10:33:49 BOP-Tucson FCI | USPO-District of Arizona, 1 - Main (Phoenix) | FPD-District of Arizona, Tucson |

## SALIENT FACTOR SCORE (SFS-98)

| Your Pts | Salient Factor Score (SFS-98) Item Explanations |
|---|---|
| 1 | **A** - Prior convictions/adjudications (adult or juvenile) None = 3; One = 2; Two or three = 1; Four or more = 0 |
| 1 | **B** - Prior commitments of more than thirty days (adult or juvenile) None = 2; One or two = 1; Three or more = 0 |
| 3 | **C** - Age at commencement of the current offense/prior commitments of more than thirty days (adult or juvenile) (see table below for an explanation) |
| 0 | **D** - Recent commitment free period (three years) No prior commitment of more than thirty days (adult or juvenile), or released to the community from last such commitment at least three years prior to the commencement of the current offense = 1; Otherwise = 0 |
| 0 | **E** - Probation/parole/confinement/escape status violator this time Neither on probation, parole, confinement, or escape status at the time of the current offense; nor committed as a probation, parole, confinement or escape status violator this time = 1; Otherwise = 0 |
| 1 | **F** - Older offenders If the offender was 41 years or more at the commencement of the current offense (and the total score from Items A-E above is 9 or less) = 1; Otherwise = 0 |
| 6 | **Salient Factor Score (SFS-98)** (sum of points for A-F above) |

| Points For SFS Item C | | | |
|---|---|---|---|
| Age | Prior Commitments | | |
| | 0-3 | 4 | 5+ |
| 26 & Up | 3 | 2 | 1 |
| 22-25 | 2 | 1 | 0 |
| 20-21 | 1 | 0 | 0 |
| 0-19 | 0 | 0 | 0 |

**U.S. Department of Justice**
**United States Parole Commission**

## CERTIFICATE OF PAROLE

Know All Men By These Presents:

It having been made to appear to the United States Parole Commission that **Rogers, Gerald**, Register No. **12327-086**, a prisoner incarcerated in the **Tucson FCI** is eligible to be PAROLED, and in that said prisoner substantially observed the rules of the institution, and in the opinion of the Commission said prisoner's release would not depreciate the seriousness of this offense or promote disrespect for the law, and would not jeopardize the public welfare, it is ORDERED by the said United States Parole Commission that said prisoner be PAROLED on **December 24, 2003**, and that said prisoner is to remain within the limits of **District of Arizona** until midnight December 29, 2024.

Given under the hands and the seal of the United States Parole Commission on December 18, 2003.

UNITED STATES PAROLE COMMISSION

*Steven M. Brunson*

By: Steven M. Brunson, Case Analyst

Initial Risk Category:  SFS - 6
Chief U.S. Probation Officer:  Magdeline E. Jensen, District of Arizona

I have read, or had read to me, the conditions of release printed on the attached Conditions of Release form and received a copy thereof. I fully understand them and know that if I violate any, I may be recommitted. I also understand that the law requires the Parole Commission to revoke my parole if I am found by the Commission to have possessed any illegal controlled substance. I also understand that special conditions may be added or modifications of any condition may be made by the Parole Commission upon notice required by law.

*GERALD L ROGERS*                                    *12327-086*
Name                                                        Reg. No.

Witnessed: *Allen M Slenquist*  *Case Manager*        *12-22-03*
Name and Title                                             Date

The above-named person was released on the *24* day of *December*, 20 *03* with a total of *7676* days remaining to be served.

*Patti S Owen*

Official Certifying Release

GOVERNMENT
EXHIBIT
4

This CERTIFICATE will become effective on the day of release indicated above. If the releasee fails to comply with any of the conditions listed on the attached page, the releasee may be summoned to a hearing or retaken on a warrant issued by a Commissioner of the U.S. Parole Commission and reimprisoned pending a hearing to determine if the release should be revoked.

## CONDITIONS OF RELEASE

1. You shall go directly to the district shown on the CERTIFICATE OF RELEASE (unless released to the custody of other authorities). Within three days after your arrival, you shall report to your parole advisor if you have one, and the United States Probation Officer whose name appears on the Certificate. If in any emergency you are unable to get in touch with your parole advisor, or your Probation Officer or the United States Probation Office, you shall communicate with the United States Parole Commission, Department of Justice, Chevy Chase, Maryland 20815.

2. If you are released to the custody of other authorities, and after your release from physical custody of such authorities, you are unable to report to the United States Probation Officer to whom you are assigned within three days, you shall report instead to the nearest United States Probation Office.

3. You shall not leave the limits fixed by the CERTIFICATE OF RELEASE without written permission from your Probation Officer.

4. You shall notify your Probation Officer within 2 days of any change in your place of residence.

5. You shall make a complete and truthful written report (on a form provided for that purpose) to your Probation Officer between the first and third day of each month, and on the final day of parole. You shall also report to your Probation Officer at other times as your Probation Officer directs, providing complete and truthful information.

6. You shall not violate any law, nor shall you associate with persons engaged in criminal activity. You shall get in touch within 2 days with your Probation Officer or the United States Probation Office if you are arrested or questioned by a law-enforcement officer.

7. You shall not enter into any agreement to act as an informer or special agent for any law-enforcement agency.

8. You shall work regularly unless excused by your Probation Officer, and support your legal dependents, if any, to the best of your ability. You shall report within 2 days to your Probation Officer any changes in employment.

9. You shall not drink alcoholic beverages to excess. You shall not purchase, possess, use or administer marijuana or narcotic or other habit-forming or dangerous drugs, unless prescribed or advised by a physician. You shall not frequent places where such drugs are illegally sold, dispensed, used or given away.

10. You shall not associate with persons who have a criminal record unless you have permission by your Probation Officer.

11. You shall not possess a firearm, ammunition or other dangerous weapons.

12. You shall permit confiscation by your Probation Officer of any materials which your Probation Officer believes may constitute contraband in your possession and which your Probation Officer observes in plain view in your residence, place of business or occupation, vehicle(s) or on your person.

13. You shall make a diligent effort to satisfy any fine, restitution order, court costs or assessment, and/or court ordered child support or alimony payment that has been, or may be, imposed, and shall provide such financial information as may be requested, by your Probation Officer, relevant to the payment of the obligation. If unable to pay the obligation in one sum, you will cooperate with your Probation Officer in establishing an installment payment schedule.

14. You shall submit to a drug test whenever ordered by your Probation Officer.

15. If you have been convicted of any sexual offense under District of Columbia or federal law (including Uniform Code of Military Justice offenses), you must report for registration with your state sex offender registration agency as directed by your U.S. Probation Officer. You are required to report for registration in any state in which you live, work, attend school, or pursue any vocation. You must be registered in compliance with applicable state law that applies to current or prior federal, state or local convictions for sexual offenses, and in compliance with 42 U.S.C. 14072(i) (which makes it a federal crime for any offender covered by 18 U.S.C. 4042 not to register in accordance with state law). If there is any question as to whether or where you are required to register, you must seek and follow the guidance of your U.S. Probation Officer.

16. You will provide a DNA sample if collection of such sample is authorized pursuant to 3 of the DNA Analysis Backlog Elimination Act of 2000.

By signing this Parole Certificate, I consent to the unrestricted communication between any treatment facility administering a drug or alcoholic treatment program in which I am, or will be participating, and the U.S. Parole

Commission and the Probation Office. I further consent to the disclosure by such facility to the U.S. Parole Commission and the Probation Office of any information requested, and the redisclosure of such information to any agencies that require it for the performance of their official duties. This consent shall be irrevocable until the termination of parole supervision, or the occurrence of one of the items specified in 42 C.F.R. 2.35(b), whichever is earlier.

**You shall also abide by the below listed special condition(s) as indicated:**

You shall provide complete disclosure of financial records involving all money and property owned or controlled by you, or held for your benefit. This disclosure includes the signing of a consent form for disclosure of the foreign bank accounts maintained in Switzerland and Panama while in fugitive status.

You shall comply will all IRS reporting and financial obligations and provide proof of meeting all IRS obligations to your USPO.

Neither you nor any person acting on your behalf shall open any checking account or lines of personal or commercial credit without prior approval of your USPO and the U.S. Parole Commission.

You shall under no circumstances provide financial advise to any person or solicit financial investments or any kind from any person for any purpose.

You shall secure a full-time salaried job with an established business with which you have no prior connections and which does not require you to undertake any fiduciary responsibility or to work with securities or financial matters. Employment must be subject to ongoing onsite verification by your USPO; verification of your compliance with this special employment condition may not depend to any degree upon information submitted by you nor shall your employment involve any relative, business partner, previous associate or friend.

You shall not threaten any person with legal action or file any liens or lawsuits against any person for the purpose of harassing or vexation, or to gain some benefit to which you are not clearly entitled as exemplified by the conduct described in the 5/9/95 report and recommendation in Rogers v. Takasugi, Case No. CD 94-7957-JSL. You shall provide your probation officer with documentation to show that you are clearly entitled to any benefit prior to filing any litigation, liens, or lawsuits against any person or business.

Travel outside of your District of Supervision is prohibited until such time as the Parole Commission concurs with your USPO that you can be depended upon not to abscond from parole, and that you are complying in good faith with the conditions of your parole. You shall not apply for or possess a US passport without the Parole Commission's written permission.

Information concerning a releasee under the supervision of the U.S. Parole Commission may be disclosed to a person or persons who may be exposed to harm through contact with that particular releasee if such disclosure is deemed to be reasonably necessary to give notice that such danger exists. Information concerning a releasee may be released to a law enforcement agency as required for the protection of the public or the enforcement of the conditions of the release.

U.S. Department of Justice          **Notice of Action**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

---

Name: ROGERS, Gerald          Institution: Oklahoma FTC

Register Number: 12327-086          Date:    August 1, 2005

---

As a result of the hearing conducted on July 12, 2005, the following action was ordered:

Revoke parole. All of the time spent on parole shall be credited. Re-parole effective February 25, 2006 after the service of 12 months.

In addition, you shall provide complete disclosure of financial records involving all money and property owned or controlled by you, or held for your benefit. This disclosure includes the signing of a consent form for disclosure of the foreign bank accounts maintained in Switzerland and Panama while in fugitive status.

In addition, you shall comply with all IRS reporting and financial obligations and provide proof of meeting all IRS obligations through your USPO.

In addition, neither you nor any person acting on your behalf shall open any checking accounts on lines of personal or commercial credit without prior approval of your USPO and the Parole Commission.

Also, you shall under no circumstances provide financial advice to any person or solicit financial investments of any kind from any person for any purpose.

Also, you shall secure a full time salary with an established business with which you have no prior connections and which does not require you to undertake any fiduciary responsibility or to work with securities or financial matters. Employment must be subject to ongoing, onsite verification by your USPO. Verification of your compliance with this Special Employment Condition may not depend to any degree upon information submitted by you nor shall your employment involve any relative, business partner, previous associate or friend.

Further, you shall not threaten any person with legal action or file any liens or lawsuits against any person for the purpose of harassing or vexation or to gain some benefit to which you are not clearly entitled as exemplified by the conduct described in the 5/9/95 Report in recommendation in Rogers v. Takasugi, Case No. CD94-7957-JSL. You shall provide your Probation Officer with documentation to show that you are clearly entitled to any benefit prior to filing any litigation, liens or losses against any person or business.

Furthermore, travel outside of your district of supervision is prohibited until such time as the Parole Commission concurs with your USPO that you can be depended upon not to abscond from parole, and that you are complying in good faith with all conditions of your parole. You shall not apply for or possess a US Passport without the Parole Commission's written permission.

**FINDINGS OF FACT:**

---

GOVERNMENT EXHIBIT
5

The Commission finds as a fact that you violated conditions of release as charged as indicated below:

Charge No. 1 – Violation of Special Condition (Provide Disclosure of Financial Records Involving Money and Property).

Basis:  Your admission to the examiner and information contained in the Violation Report dated 02-23-2005 from USPO Banks.

Charge No. 2 – Violation of Special Condition (Provide Disclosure of Financial Records Involving Money and Property).

Basis:  Your statements to the examiner and information contained in the Violation Report dated 02-23-2005 from USPO Banks.

The Commission makes no findings concerning the following charges:

Charge No. 3 – Violation of Special Condition (Provide Financial Assistance or Solicit Financial Investments from any Person).

Basis:  Insufficient evidence.

**REASONS:**

Your parole violation behavior has been rated as administrative violation(s) of Category One severity. Your salient factor score is 7. See the attached sheet for an explanation of your individual Salient Factor Score items.  The table at the bottom presents the points for Salient Factor Score Item C. As of 07-12-2005, you have been in confinement as a result of your violation behavior for a total of 5 month(s). Guidelines established by the Commission indicate a customary range of 0-8 months to be served before release.  After review of all relevant factors and information, a decision above the guidelines is warranted because you are a poorer parole risk than indicated by your Salient Factor Score in that you have developed a pattern of participating in employment that is in violation of the special conditions of your parole. You have developed a pattern of failure to comply with disclosure of your financial dealings to your USPO as required. Your original offense involved Fraudulent Moving Tax Shelter Schemes and Preparation of False Income Tax Returns. You were involved in fraudulent tax shelter schemes for gamma and development expenses. Following your supervision, you have continued to become involved in questionable business activities that involved investors and financial transactions. Based on your activities in the community and your failure to adhere to disclosure requirement made by the special conditions, you present a more serious monetary threat to the community and based on your previous activities, it is unlikely that you will comply with the conditions of release.

THE ABOVE DECISION IS APPEALABLE.

You may obtain appeal forms from your caseworker or supervising officer and they must be filed with the Commission within thirty days of the date this Notice was sent.

Copies of this Notice are sent to your institution and to your supervising officer.  In certain cases, copies may also be sent to the sentencing court.  You are responsible for advising any others you wish to notify.

cc:   Seatac FDC
      2425 South 200th Street
      Seatac, WA  98198

      U.S. Probation Office
      Western District of Washington
      700 Stewart Street
      11101 U.S. Courthouse
      Seattle, WA  98101-1271

## SALIENT FACTOR SCORE (SFS-98)

| Your Pts | Salient Factor Score (SFS-98) Item Explanations |
|---|---|
| 2 | A - Prior convictions/adjudications (adult or juvenile) None = 3; One = 2; Two or three = 1; Four or more = 0 |
| 1 | B - Prior commitments of more than thirty days (adult or juvenile) None = 2; One or two = 1; Three or more = 0 |
| 3 | C - Age at commencement of the current offense/prior commitments of more than thirty days (adult or juvenile) (see table below for an explanation) |
| 0 | D - Recent commitment free period (three years) No prior commitment of more than thirty days (adult or juvenile), or released to the community from last such commitment at least three years prior to the commencement of the current offense = 1; Otherwise = 0 |
| 0 | E - Probation/parole/confinement/escape status violator this time Neither on probation, parole, confinement or escape status at the time of the current offense, nor committed as a probation, parole, confinement or escape status violator this time = 1; Otherwise = 0 |
| 1 | F - Older offenders If the offender was 41 years or more at the commencement of the current offense (and the total score from Items A-E above is 9 or less) = 1; Otherwise = 0 |
| 7 | Salient Factor Score (SFS-98) (sum of points for A-F above) |

| Points For SFS Item C | | |
|---|---|---|
| Age | Prior Commitments | | |
| | 0-3 | 4 | 5+ |
| 26 & Up | 3 | 2 | 1 |
| 22-25 | 2 | 1 | 0 |
| 20-21 | 1 | 0 | 0 |
| 0-19 | 0 | 0 | 0 |

Queued: 08-01-2005 11:39:43 BOP-Oklahoma FTC | BOP-Seatac FDC | USPO-Western District of Washington, 1 - Main (Seattle) |

# SPECIAL RECONSIDERATION/CONTINUED REVOCATION HEARING SUMMARY

**Name:  Rogers, Gerald**                                    **Reg No:  12327-086**

## Hearing Parameters

Hearing Format ............................: **In Person**

Hearing Type ...............................: **Reconsideration/Revocation (Local)**

Hearing Date   : 5/25/06
Examiner      : Patricia L. Denton
Institution      : La Tuna FCI
Second Designation   :

## Sentence Parameters

Sentence Type...............................: **Federal**

MR/Statutory Release Date..........: 6/23/2018

Full Term Date.............................: 12/29/2024

Months in Custody........................: 15 as of 5/26/06

Detainer........................................: None

## Warrant Parameters

Supervision ...................................: **Parole**

Revoking District & Office..........: Western District of Washington, Seattle

Warrant Execution Date       : 2/25/2005
Probable Cause Date          : 4/7/2005

**Additional text regarding the above parameters:** *By NOA dated 11/15/05, this case was reopened and scheduled for a special reconsideration hearing to be conducted using the procedures for a parole revocation hearing. The warrant was supplemented on 12/22/05 with Charge No. 4 – Law Violation – Fraud. Rogers has been given disclosure of the documents to be used at the hearing, was allowed to request adverse witnesses and have an attorney represent him at this hearing.*

**Prior Action:** Rogers is serving a 35-year aggregate term plus a 5-year probation from two district courts, the Central District of California and the District of Colorado. These terms are for aiding and assisting in the Preparation of False Income Tax Returns; Mail Fraud and Security Fraud, Aiding and Abetting. The offense in the C/CA involved a fraudulent movie tax shelter scheme, which, according to the PSI, resulted in the loss of in excess of $3.5 million to the IRS. The offense in the District of Colorado involved two fraudulent tax shelter schemes for goldmine development expenses. The PSI from Colorado indicates that the subject took in $72 million and caused $280 million in false tax deductions taken by victims/investors between 1978 and 1978. A superseding indictment indicated that in Counts 1 through 5, there were losses to investors of $80 million and Counts 6 through 10, caused losses to investors of $10 million. Subsequent to the conviction in the C/CA, but during pretrial litigation in Colorado, the subject became a fugitive. Court documents indicate that he filed a false

GOVERNMENT EXHIBIT

6

motion with the courts to obtain a passport and subsequently used it to flee the country. When arrested in Switzerland in 1990, he had three false passports in his possession. After his arrest, he was convicted and sentenced to time served and turned over to the United States pursuant to a fugitive warrant. He was returned to the United States to the C/CA and was sentenced to 10 years plus 5 years probation for mail fraud, and aiding and assisting in the preparation of false income tax returns. In the District of Colorado, he was sentenced to a 25-year term for Mail Fraud, Security Fraud, Aiding and Abetting.

In 1999, he had an initial hearing and the decision was to continue to a presumptive parole after the service of 150 months on 7/3/02 with five special conditions centering around financial employment issues. This decision was based upon a Category Seven, SFS of 10 and guidelines of 52-80 months. He had one institutional misconduct which created an aggregate range of 52-94 months to be served. An above the guideline decision was based upon the amount of fraud/income tax evasion exceeding the minimum threshold of the offense severity by more than tenfold. The subject appealed this decision, which was later affirmed.

The subject appealed the Colorado criminal conviction. The 10th Circuit Court held that the district court erred in determining that the doctrine of collateral estoppel did not apply to Counts 1 through 5 of the superseding indictment and remanded the case to the District of Colorado for dismissal of the four counts. These four counts were subsequently dismissed and following his initial hearing, the case was referred to the General Counsel for review of the litigation in the case. A recommendation was made to the Commission to reopen his case and void the decision to depart from the guidelines because the deletion of Counts 1 through 5 resulted in a loss that was no longer more than tenfold the amount required for a Category Seven offense. By NOA dated 4/10/00, the Commission ordered that subject's case be opened and the decision of 12/13/99 be voided. A Special Reconsideration Hearing was ordered to determine subject's fitness for parole in light of his history of fugitive activity. In his July 1994 letter to AUSA Lester, Rogers said he would "probably disappear" if given freedom and access to funds. The special conditions of parole were amended. The subject had a Special Reconsideration Hearing on 9/5/00 and the decision from that hearing was parole effective after the service of 131 months, 12/1/00, on the condition that subject agree to comply with the special conditions stipulated on the NOA dated 4/10/00. The subject was released to supervision on 12/1/00 and signed the parole certificate, which contained seven special conditions.

In May 2003, subject's supervising U.S. Probation Officer reported that subject had been working at an investment business and failed to disclose that information. The business was actually set up by subject and involved currency trading. The probation officer also received information that Rogers had threatened to sue an individual if he failed to settle financially with him for harms committed in prior years. A warrant was requested on 5/30/03 for these violations of the special conditions and issued on 6/4/03. Rogers was taken into custody on 6/25/03 and the revocation hearing was conducted on 10/9/03. The decision of the Commission to revoke parole, all time spent on parole was credited and he was to reparole on 12/24/03 after the service of 6 months. Rogers was again was ordered to comply with seven special conditions. Although the alleged violations were administrative and dealt primarily with the special conditions, the only finding that was made in that case was on the standard condition for falsifying monthly supervision reports. Rogers's guidelines were calculated as 0-8 months. Subject was reparoled on December 24, 2003, and he was to remain under parole supervision until December 29, 2024.

In February 2005, subject's probation officer reported that the Texas Securities Board had contacted him. They were investigating a company called Premium Income Corp. (PIC) in which the principal of the company was Gerald Rogers. According to the report, the company claimed that investors were guaranteed a return of 13-14% through the investment of their money in a Swiss Bank account and the subsequent sale of the cash on the world market once the exchange rate on the dollar was most advantageous. The investigators for the Texas Securities Board determined that nearly $6 million had gone through the account set up by the company and that most of the money had been wired out of the country. The investigators also determined that the company was targeting retirees. The Texas Securities Board obtained an emergency Cease and Desist order against the company.

The Commission issued a warrant on February 25, 2005, charging Rogers with violation of the special condition on providing disclosure of financial records involving money and property. The warrant was supplemented on March 8, 2005, with the following violations: violation of the special condition to provide disclosure of financial records involving money and property and violation of the special condition to provide financial advice or soliciting financial investments from any person. The two supplemental charges related to subject's opening of a checking account and the information provided by the Texas Board of Securities.

By letter dated March 30, 2005, the Commission received a packet of information from the U.S. Attorney's Office in the Western District of Washington related to the criminal investigation of Rogers in regard to PIC and the formation of two additional companies. The U.S. Attorney's Office reported that Rogers collected $8.5 million from investor/victims and that $7 million was sent to offshore accounts. The U.S. Attorney's Office (USAO) provided a copy of a complaint filed by the Securities and Exchange Commission (SEC) in the U.S. District Court for the Northern District of Texas setting forth the various securities violations and a summary of the investment scheme. Rogers was ordered by the Court to provide the appointed receiver with an accounting of all accounts and assets. The USAO reported that Rogers defied the court's order stating that he would not cooperate with respect to the foreign accounts until he was presented a deal from prosecutors.

Rogers received a parole revocation hearing on July 12, 2005. The hearing examiner made findings on the first two charges, but determined that there was insufficient evidence in regard to the third charge. The examiner determined that there was not enough evidence to establish that Rogers violated the special condition that he not directly provide financial advice or solicit funds. The hearing examiner made the recommendation without considering the information from the U.S. Attorney's Office because the examiner noted that the information from the U.S. Attorney's Office had not been disclosed to Rogers and that the warrant had not been supplemented with any law violation charges, i.e., fraud. The examiner stated that she had not even read the packet from the USAO because the packet had not been disclosed to Rogers and that consideration of any law violations would require an additional hearing, most likely a local revocation hearing. The hearing examiner stated that she contacted Case Operations and was told that a decision had been made not to supplement the warrant with a criminal charge because the criminal investigation was still on-going.

The hearing examiner calculated subject's guidelines as 0-8 months based on the two administrative violations and recommended a reparole date after the service of 12 months based on subject's history of violating the conditions of his parole because of his repeated failure to disclose his financial holdings. The Commission concurred with the hearing examiner and a Notice of Action dated August 1, 2005 advised subject of the decision. Roger's appealed this decision. At the time the appeal was considered,

the information regarding the on-going criminal investigation was reviewed. As a result, it was determined that the case should be reopened to consider this charge since the reparole date was near. By NOA dated 11/15/05, the case was reopened for a special reconsideration hearing to be conducted as a revocation hearing and the warrant was supplemented on 12/22/05 with the new law violation. Roger's requested 4 adverse witnesses, which the Commission declined to subpoena since they did not provide information on which the violation is based.


**Counsel:** Waived – see procedural considerations.

**Witnesses:** Special Agent Deborah Neyhart
Internal Revenue Service
Seattle, WA
206-220-5862

Letha Sparks
Investigator/Financial Analyst
Texas State Securities Board
Austin, TX
512-305-8392

**Procedural Considerations:** Rogers had several procedural considerations. Some of these considerations are also outlined in the document entitled Defendant's Opposition to Plaintiffs' Application in Support of Entry of Final Judgment With Motion to Dismiss. This Motion was submitted to the U.S. District Court for the Northern District of Texas and Rogers provided this document to the examiner for consideration since it outlines his position on a number of issues that are being considered at this hearing. Since this document does not address all of his procedural concerns, the examiner will summarize those items that are outlined in the document and provide a reference point for the reader in the original document. For those items that are not mentioned in the document and pertain only to this hearing, the examiner will outline more fully his objection for this summary. Since this document also more fully explains some of his testimony during the hearing, I will also indicate certain sections that apply when outlining his testimony.

The warrant was supplemented on 12/22/05 and transmitted to FCI Seagoville where subject was being housed while on Writ. He stated that he requested an attorney for this charge while at Seagoville, but the Magistrate refused to appoint one. He was then returned to FCI La Tuna. The case analyst faxed the parole Form F-2 to the case manager at La Tuna on 3/10/06 and requested that the subject complete the portion of the form that related to attorney representation. The completed form was faxed back to the case analyst on 3/28/06. Subject declined attorney representation and stated an attorney was not necessary if the hearing was for "reconsideration" and also indicated he would provide an attorney at his own expense. He also provided a list of adverse witnesses for the hearing. During the reading of the opening statement, Rogers stated that he wanted an attorney for this hearing and indicated he had tried to get one while he was at Seagoville. After he was returned to La Tuna, he decided that it was an "effort in futility" to ask for one. The examiner told him that if he wanted an attorney for this hearing, the hearing would be continued to allow for an attorney to be present. This was discussed with him and he was told several times that the hearing could be continued to obtain attorney representation. He said he

would rather go on with the hearing and that it was "rigged" anyway and that the examiner had already made her decision. Since Rogers did not want a continuance for counsel, the hearing continued.

Rogers objected to the Commission's not granting his requested adverse witnesses. The Commission had previously made a good cause finding not to subpoena the subject's requested witnesses since they did not provide information that would be used against Rogers. After reviewing the information and although documents provided by these witnesses were reviewed by the examiner and considered, these documents were not the sole basis for the examiner's findings nor where they a focus for the examiner's findings. The documents and testimony that were the primary basis for the examiner's findings were from witnesses that were present and that subject was allowed to cross examine during the hearing. After hearing the testimony, if the examiner determined that these requested witnesses were necessary to make a finding, the examiner would have continued the hearing to allow for their presence. The examiner agreed with the previous good cause finding made by the Commission.

In relation to Roger's requested adverse witnesses, it is his position that the company was solvent at the time of his arrest on the parole warrant. It is his position that the government, which includes the investigating FBI agent, the SEC counsel and the receiver, caused his company to be insolvent and have stolen money from the company. At one point, he also indicated that Sr. Judge Buchmeyer, N/D TX, was also involved in theft of monies in his case. It was explained to him that his issues with other agencies should be addressed with them and were not part of the violation that would be considered at this hearing. Throughout the hearing, subject focused on the government's mismanagement of his business after its seizure and alleged that everything in the government documents were "lies". Some of his concerns are outlined in his Motion to Dismiss, Section II – Substantive Accounting Errors.

Rogers objected to this hearing in that it constituted double jeopardy since these charges had already been considered at the previous revocation hearing. It was explained to subject that although the Commission was aware of this investigation, the examiner at the revocation hearing had not read the documents and had not considered the current new law allegation at the time of the revocation hearing. As a result, the information that would be considered at this hearing had not previously been considered by the Commission in setting a release date. The objection was overruled.

Rogers did not receive disclosure of all of the documents to be considered at this hearing from the Commission. He does have copies of the documents since they were provided to him by the government during his hearings in the N/D TX. The examiner gave him copies of documents that would be considered. One critical document that is being considered, but that he did not have, was a summary of victim interviews completed by the IRS agent. The agent testified concerning additional interviews. Since the agent did not tape the interviews and the victims were not present for subject to question, he objected since it was heresay. It was explained that the Commission procedures allowed for the consideration of heresay evidence and his objection was overruled.

Subject also objected to the Commission considering a new law violation that had not been prosecuted or adjudicated in court. The examiner explained that the Commission had the authority to make independent findings on new criminal conduct and had the authority to subpoena witnesses. When he questioned what gave the Commission that authority, he was referred to 28 C.F.R. and this objection was overruled. He also stated that the charge as outlined in the supplemented warrant was ambiguous and did not indicate what Fraud statute he violated. He was referred to the SEC complaint and told that the charge would be more fully addressed by the testimony of the witnesses. It is the examiner's

opinion that the charge as outlined in the supplement and NOA dated 11/15/05 are sufficient to give him notice of the issues that would be considered at this hearing and the objection was overruled.

During the opening statement, Rogers stated that he had not been given notice of when the hearing would be conducted until 6 pm the night before the hearing (the 24th). This was confirmed by the case manager. The institution was not notified of the date/time of the hearing until it received a fed-ex. The letter in the fed-ex was dated 5/17/06 and had a hand written note that another case would be added to the docket. The fed-ex was sent to the case manager who was off duty. The fed-ex arrived at the institution on either Friday or Monday (the 19th or 22nd of May). The examiner asked if subject wanted a continuance so that he could have more time prior to the hearing. Rogers declined a continuance and stated that he knew it was coming and had prepared.

Rogers objected to the jurisdiction of the Commission and the sentencing court. This objection is fully outlined in the above mentioned Motion to Dismiss in Section I – Jurisdiction. Subject stated that the court did not have authority to sentence him and as a result, the Commission did not have jurisdiction. It was explained that until the Commission was notified that he was not longer serving the current sentence, the Commission would retain jurisdiction in his case. This objection was overruled.

At the end of the opening statement, the examiner gave subject the sheet that outlines the procedures following the hearing and also gave him an appeal form. Roger implied that by giving him the appeal form prior to the end of the hearing, the examiner had already made a decision in his case. It was explained that both documents were given at the same time to make sure that he received them. It was also pointed out that he had a number of issues that he raised and that it was obvious to the examiner that he might want to appeal those issues since the examiner did not rule in his favor. It was explained that he could appeal any issues he felt were not resolved or if he felt the decision the Commission made was inappropriate.

At several points during the hearing, the examiner admonished Rogers concerning his demeanor and statements to the witnesses.

**Charges:**

**Charge Number:    1**
Offense:................................ **Criminal - Law Violation - Fraud.**
Violation Behavior:............... Since on or about January 2004, the releasee formed a company called Premium Income Corp., with its parent company as Tri-Forex International, Ltd. In addition, the releasee formed a company called Inforex, Ltd. These companies provided financial advice guaranteeing between 8 to 14 percent returns on investments by placing a customer's money in Swiss bank accounts and selling accounts on the World Market. The releasee collected approximately $8.5 million from investor/victims. The releasee engaged in false and misleading statements and failed to disclose material facts in securing the investments when the investments involved substantial risk and could not produce a guaranteed rate of return. This charge is based on the information from the Texas Securities Board and the SEC complaint filed in the U.S. District Court for the Northern District of Texas.

**Evidence Presented:** The subject denied the above charge. Rogers stated that he has no knowledge that he ever talked to anyone that resulted in the deposit of currency into the company. He never used the word "guaranteed" and did not tell anyone they would get an 8 to 14 percent return. This was not an investment, but a currency transaction. The company was selling accounts on the world market. People put in cash deposits and options were sold on the currency cash call. The receiver shows that the company lost money, but the money was seized by the SEC. He tried to cover his outstanding transactions by sending a friend a letter while he was at Seatac to close the accounts in the foreign banks. He told the friend to fax the banks using his signature. The company was healthy until the government came in. It has now lost in excess of $5 million. If the government had not concealed the documents that authorized the closing of the accounts there would not be a loss. The government seized the company the day he was arrested on the parole violator warrant. Norris from the SEC (Securities Exchange Commission) told them not to pass the letter on. This was not a Ponzi scheme. The government receiver is looting the company. They only had 110 clients. The government inserted clients, probably their girlfriends. The company was run as a cash business. When the company was liquidated there was $2 million which deprived the clients of $800,000.

Subject stated that they took in cash deposits which were then transferred to European banks and held to collateralize the calls. He did talk to some clients when they called, but only gave them the mechanics of the investment. Sometimes he called to verify that there was not a spouse involved in the investment and on one occasion talked to the bank after several redemptions to verify there was no identify theft. He was involved in setting up the website and read the information to make sure the representations were proper. Subject provided the examiner with a print copy of the website. They did not sell accounts that guaranteed premium, although the investors averaged 1.5 percent per month. The company wrote calls on a weekly basis and were paying 28 percent annually. Sometimes they would pay 6.5 or 7.0 percent per week.

There has been no court determination that he was selling a security. The risk of writing the call is the underlying collateral when the calls' option is up. If you write calls for 10 years, the underlying money deteriorates which is the underlying risk. Everything was on the "up and up". If he wanted to defraud the clients, he knows how to do that. They did not target older investors except that older investors have the money. The clients/investors went to their financial planners to make sure that the projected risk to the client was correct. They received 100 percent of their business from financial planners and the company did not have a sales work site.

Rogers showed the examiner a copy of a letter from the USPO to Banks. The government and the USPO were interfering in this business. There was not a receiver appointed until 3/2/05 which caused a $5 million loss. Currency markets were going up on Friday. They were short currency which resulted in an additional $600,000 plus the $5 million.

He stated that he put $46,000 of his own money into the business for start-up. He did not take a salary and may have used some investor money for personal obligations. The money that he put into the business was being credited as additional clients/investors.

Special Agent Deborah Neyhart, IRS, testified that she had been with the IRS since 1998. She became involved in this case when the AUSA requested the assistance of IRS in the summer or late fall of 2005. The FBI was already investigating this case and she was given access to their reports and the documents that were seized from the PIC (Premium Income Corporation) offices. There were also additional

documents from other agencies. After she went through the documents, she interviewed some of the client/investors. She interviewed investors taken from the PIC records and interviewed one investor that was also an agent. They told her about the PIC product. The product was offered to people who were already retired through mail flyers. Some had also seen advertisements in the newspapers. The product offered a guaranteed rate with no chance of loss on the investment. They were told they could get their money back within 5 days and that the money was being held in a bank. Some were told the bank was in Switzerland and others were not clear on this point. Sales commissions were not to be paid from the investment funds, but from PIC's profits. The main issue was that they were told their principal was secure. Some of this information was provided by their sales agent and come from PIC in the paperwork they received.

Agent Neyhart stated that Bill Singleton and Sonya Novak were the main representatives of PIC. The sales agents worked through them. The sales agents were mainly from insurance companies or were financial planners. PIC did not have a sales office. Some of the sales agents also invested in PIC. The investors that were interviewed talked to subject on the phone after they had first talked to their agent. The following is a partial list of investors interviewed and their remarks:
*Warren Brown* – He spoke to subject because his main concern was the safety of his principal. Rogers assured him that he would not lose his principal.
*Dorothy Snyder* – She talked to Rogers after her sales agent. He told her the investment was safe and liquid. He stressed that the risk of the investment was equivalent to a bank certificate of deposit.
*Jerry Broussard* – investor/sales agent – After he had discussion with Singleton about the sales, he was told that the commissions would not come out of investor funds. Each client would have a separate account. He then talked to Rogers who explained the mechanics of the investment. Rogers' statements were consistent with those of Singleton. There was a guaranteed rate of return, the principal was safe and the money was held as collateral, not used.
*Billy Patterson* – He approached an agent and was told he could liquidate within 5 days. The rate of return was guaranteed. He spoke with the agent 2 to 3 times and once with the agent while they were on speaker phone. He then talked to Rogers who explained it the same way.

There are additional documented interviews with investors included with the hearing documents.

Rogers' statements were always consistent with the information the investors got from the sales agents. Some sales agents had literature that was also consistent. Rogers' statements to investors were consistent with agent comments and sometimes, he added additional information. Rogers went through everything and his statements were the same as outlined in the documents. Agent Neyhart had no recollection of his targeting retired investors, but knows that the mailers went out to retired individuals. She was not sure who sent the mailers.

*Rogers questioned Agent Neyhart about her statements and her involvement in the case.* She stated that Special Agent Quinn from the FBI was still assigned to the case. The AUSA requests IRS involvement in a case when there is a possibility of tax evasion or money laundering. Although there is no indication of tax evasion in this case, there may be money laundering offenses since the money was sent to Europe and obtained through fraud. If the money was obtained from the investors fraudulently and then transferred out of the country to be used in another manner, it would then be money laundering. Rogers showed intent to defraud when he made false statements to get money from the investors; then sent the money out of the country. Rogers asked the agent to look at a print-out of the PIC website. After the agent reviewed the documents, she stated that she did not see that it stated a guarantee a rate of return,

but the wording would lead investors to believe that the money was safe. She stated that she had seen different versions of the mailers, but all lead the investor to think it would be as safe as if the money were in a bank since its holdings are secured by the FDIC. Investors were lead to believe that the money would remain in the bank and they were not told the money was going to be taken out and used for another speculative venture. Rogers committed fraud when he told the investors the money would be left in the accounts, but then used the money for currency trading. The investors were told the money would be held in accounts deposited in the bank as collateral for covered calls. They do not have a full picture of losses and money movement since they do not yet have the full records from the European banks yet. The receiver found approximately $500,000, but the rest of the money was gone. When Rogers accused FBI Special Agent Quinn of taking the money, Agent Neyhart stated that Agent Quinn did not have access to the money.

The agent stated that Rogers did not sign up investors, but he was the owner of the company. Rogers hired the sales staff then trained the sales agents. The agents identified the investors. She did not know the percentage of investors that were retired. She stated that subject would receive calls from investors that were trying to verify PIC's claims and after talking with Rogers, were more inclined to invest. The investors were also told that their money would be held in individual bank accounts. PIC did not deal directly with investors, but through the sales agents. During the investigation, it was determined that there were no individual accounts and all the money was consolidated into one bank account. The commissions were paid from the same consolidated account which would indicate the commissions were paid from investor funds. The company had not been around long enough to have profits and the commissions would then have been paid out of investor funds. She did not know if the company was solvent in 2/05, but the losses have been rising over time. When investors got monthly statements, the rate of return shown on the statements were the same as each investor was told they would get. What the investors saw on the statements was consistent with what they were told when they were signing the paperwork to invest.

The examiner asked the agent to outline what statements were made to investors that were shown through the investigation to be fraudulent. Agent Neyhart stated that the investors were told: 1) there would be a guaranteed rate of return on their investment; 2) none of the investors' money would be used to pay sales commissions; 3) their principal investment was safe; 4) the invested money remained deposited and would never be withdrawn or used for other transactions, and 5) the investor could liquidate their account within 5 days. Agent Neyhart stated that if the money had been deposited in the account, then it would still be there. The money was used to trade in currency, which is very speculative. There was $12 million transferred to the European banks. Rogers asked the agent if, in general, victims exaggerated when providing information to a government agent during interviews. She stated that she had not found this to be true. When questioned by subject, she also stated she had seen the investment applications and deposit slips to PIC.

*Rogers' rebuttal statements to the IRS agent's testimony.* He stated that PIC was in the start up phase and was doing well until the government go in the middle of his business. He was not involved in hiring staff. Singleton hired the staff and then did their training. Singleton trained himself, but did ask subject questions. He did not send money back and forth to Europe since it was better cash management not to do so. The investors did have separate accounts, but not at the bank. The separate accounts were kept in his business records on the company computer. PIC was set up as a brokerage firm, although they were not licensed as a brokerage firm. Although the investor accounts were not segregated at the European banks, the accounts were segregated in his computer. Rogers never sent the mailers, those were sent out

by the financial planners. He did not see nor did he control what information was contained in the mailers.

Letha Sparks, Investigator/Financial Analyst for the Texas State Securities Board testified that she had been employed by the Board since 1998. She is a certified public accountant and taught accounting prior to her present position. The Board learned about PIC in early 2005 when they received an inquiry from a bank when one of its customers was getting a $50,000 cashier's check to send to PIC. The bank wanted to know if PIC was registered with the state. In the State of Texas, a business had to be registered to sell securities or be sales agents under the federal regulations to sell securities/offerings. The business has to file with the state or fall under one of the limited exemptions or be registered with the SEC. They determined that PIC and Tri-Forex were not registered and their sales agents were not registered in Texas, which is also a requirement. The Board received copies of PIC's offering documents and the state issued an emergency Cease and Desist Order on 1/24/05. There was a numbering error on the first order which resulted in the order being reissued the next day. One of the parties listed on the order requested a hearing, which was held on 2/9/05. Rogers did not appear for the hearing and no other official for PIC or Tri-Forex appeared, although they had been notified of the date and time. The hearing was conducted before an administrative law judge from the State Attorney General's Office. The Board submitted evidence to support the emergency order and all parties submitted briefs to the judge for a ruling.

During this time, the Board got a call from Chase Bank concerning a $569,000 check that was written on the PIC account. The Board subpoenaed the bank records. When they received the records, they obtained information concerning Rogers such as his driver's license number. They ran a criminal records check and found out about his criminal background. His previous criminal record had not been disclosed to the investors nor was it contained in the other documents they received from the company. The Board then sent Rogers a fax that he could not take money out any of the accounts while the Cease and Desist Order was in place or it would be a violation of state law. He was also told that he could not take anymore money from investors and he would have to return the money the $569,000 to the investor. At the same time, they received an email that one of the sales agents who was cooperating with the federal investigation had told the federal investigators that the sales agents were being told to continue to sell the investments.

The CTFC (U.S. Commodity Futures Trading Commission) began getting bank records and worked in conjunction with the SEC. In March 2005, a receiver was appointed by the federal court. Ms. Sparks initially analyzed 3 accounts from Chase Bank. The accounts were for PIC (2 accounts) and Inforex (opened in 12/02 and closed in 4/04). Investor money went through these accounts. There were 2 accounts in Asia Europe Bank, PIC and Inforex, one account at Bank One in Arizona for Inforex and one account at Synthesis Bank in Switzerland. He had also opened a bank account at Saxo Bank in Denmark. She received the Saxo Bank documents from the SEC. After analyzing all the account documents they received, almost $12 million had been deposited. Of the $12 million, there was $324,000 in an older Chase account that they did not know the source of; $3,845,000 in the Swiss account and $3,145,000 in Denmark. Rogers paid approximately $1 million to investors, $1 million in sales commissions and $100,000 in business expenses. The receiver has possession of $3.6 million and Rogers lost almost $6 million in trading currency in the European market. The receiver put the money in an account to marshal the assets of the companies. The plan is then to convert the assets to cash and distribute the money to the investors. She determined that there were 155 to 160 investors, most elderly. They put their life savings and retirement money into subject's business.



Rogers kept taking money out of Texas after the Order and as late as 2/24/05. They have petitioned to reopen the records to include Rogers' criminal history. The administrative law judge found that the investment/offering that subject/PIC was selling was a "security" under Texas law since it was an "investment contract". The administrative law judge also found that the sales agents were committing fraud since the agents were holding out that the investments were safe and secure. They did not provide investors with company financial statements. Securities can only be sold in Texas when all company information both good and bad is disclosed to the investor so that the investor can make an informed decision. The administrative law judge also found that the agents affirmed that it was safe and the agents were not registered anywhere to sell securities. The examiner did not have a copy of the Order and requested that Ms. Sparks send a copy to the Commission. This was received on 5/31/06 and submitted to the examiner for consideration the next day. Rogers did not object to the witness sending this material to the Commission nor did he request that a copy be given to him after its receipt. The recommendations outlined by the administrative law judge were accepted by the Securities Commissioner for Texas.

Rogers was a signatory on two Chase accounts and the European accounts. She has copies of the transfer sheets and subject transferred money into the European accounts.

*The following is Rogers' cross examination of Ms. Sparks and her responses to his questioning.* Ms. Sparks stated that she did not bring all the documents in the state's possession with her to the hearing. Rogers opened an account in December 2002 and was a signatory on the opening documents. Rogers showed her the PIC application and she agreed that the application did not analyze how the transaction would flow. The administrative law judge makes recommendations that are then forwarded to the Securities Commissioner. There was "overwhelming" evidence to show that PIC was in violation of the state securities laws. Without this level of evidence, they do not file for a Cease and Desist Order. They usually use a range of lesser sanctions and penalties. To obtain a Cease and Desist Order, they have to show sufficient documentation that the investment was a contract. The evidence shows that PIC earned money rather than using the money properly. Issuing a security in Texas is sufficient to issue an Order. The administrative law judge works for the Texas Attorney General's Office and is not an elected or appointed official. She did not know how the administrative law judge worked nor did she know the role for that position as outlined in the state statues. They did not bring the Cease and Desist Order until they were contacted by the bank. They had not been previously investigating PIC. She thought J. Rogers was listed on the order. On the bank records from Switzerland, she ran a spread sheet on the trading records, which is where she is getting her information. She did not recall if she saw a check written on the Houston Chase account. She has not seen the receiver accounts. The state subpoenaed the original records directly from the banks. The state has all the bank statements and the supporting documents for those statements. They have some of the applications from investors and she has a copy of the CD of documents the FBI seized from PIC. She determined the number of investors from the bank records.

Rogers showed her the list of investors completed by the receiver. She did not recognize some of the names. She had done an independent investor list from the documents she received. Her analysis was based on cash in/cash out. She took the transactions listed on the bank statements, eliminated the inter-bank transfers, then verified the information using the supporting documents. She did not know how the receiver figured the losses. She then eliminated the refund and payments to the investors. If a document was missing, she then went back to the bank to obtain the documents. Some of the investors came in at

the end and PIC was not paying 10 percent and the 12 percent subject indicated was overstated. The SEC has also determined that the PIC offering was a security, which is why the receiver was appointed. Anyone who receives notice of a Cease and Desist Order is required to follow it, whether they are specifically named or not and regardless of where they are physically located. She did not know if he was personally served, but the PIC office received a copy since it was sent registered mail and the return signed receipt was received. Someone in the PIC office communicated with her office and requested the hearing. In her opinion, the PIC offering was a "security" and she explained to him her reasoning. There was no income discovered in Europe and no deposits overseas.    She has seen the investor records on the PIC computers and there was no segregation of accounts. All the money was pooled into one account and it is also considered a vertical commodity.

*Rogers' rebuttal comments to Ms. Sparks' testimony.* At the beginning of her testimony, after she stated that she did not bring all the documents that the state has recovered, subject stated that it did not matter because it was a "rigged hearing" anyway. He also told her he did not think that the state had copies of the documents she had been discussing. Ms. Sparks' figures and the receiver's figures do not match. The receiver figures are in excess of $11 million. He disagrees that the PIC offering was a security and that no decision had been made on that since the administrative law judge had no jurisdiction in this matter. The losses are $2 to $3 million.

*Roger's summary statements concerning this charge.*   When he took over the company, he verified every deposit. He checked them with the deposit slips and they are in conflict with the bank records. Accounts exists that do not have documentation. He states that there are only 50 investors. His business was going well until his arrest on the PV warrant on 2/25/05. On that date, the company had outstanding business that was high risk. The trades needed to be closed out for non-risk trades. He tried to get the marshals to let him close the accounts, but they refused. He wrote a letter to a friend to get his laptop, which was set up as a trade station, out of the trunk of his car. He wanted his friend to attach the letter to a fax and send it to the banks. The FBI intercepted the letter. FBI Agent Quinn was involved and intercepted his instructions to close the accounts. This resulted in a loss of $5 million. This had left the company "naked". Agent Quinn concealed the letter on the advice of the SEC. The SEC has refused to respond to his inquiries. Every allegation in the SEC complaint is incorrect. The SEC has a history of theft from Rogers and he outlined some instances of the SEC thefts. He stated that the charge is nebulous and all hearsay.

He did not gain anything financially and only explained the mechanics of the investment when he talked to investors. He was not involved in sales. The word "guarantee" is not in his vocabulary and he did not guarantee a rate of return on the investments. He explained how he figured the percentages for the return and provided the examiner with examples which are included with the hearing documents. The percentages were done weekly, approximately a 2 percent return. Things/information that would be beneficial to his case have been concealed by the FBI. He also discussed the "covered calls". He stated that the underlying collateral would only have the value of the currency at the time the call was over which might be less than the initial investment. There is no way to determine what happened without the bank records. He does not believe the state investigation started when the bank called about a "mysterious client". The client is non-existent. One of the elements of fraud is intent. He put up $40,000 of his own money to start the company. Some of it was his social security. He did not take money out. Thirty thousand dollars was from a previous lawsuit he won. He did not take a salary and did not pay the other company officer a salary.  He did not spend more of the company's money than his social security. He had no intent to defraud the investors. The tax business/shelter scheme is in the

past. He has never been convicted of stealing clients' money. He knows how to set up a fraud and if he had wanted to steal the investors' money, he would have done that.

*Examiner's analysis:* After reviewing the documents and listening to the testimony, it is this examiner's opinion that there is sufficient evidence available to make a preponderance finding that subject committed fraud as outlined in Charge No. 4. Throughout the hearing, subject indicated that the FBI agent and others involved in the investigation, including a federal judge, were corrupt and possibly stealing his company's money. This examiner has no reason to doubt the credibility of the government agents and attorneys involved in this investigation. In addition, the examiner has no reason to question the credibility of the two witnesses who appeared at the hearing. Both witnesses provided detailed information on which this finding is made. The IRS agent testified that she had interviewed victims who stated that they talked directly to Rogers who, in turn, gave them the same information that they had been given by the sales agents. The agent testified that the victims were more inclined to invest after talking to Rogers. The statements which subject and his company used to entice the victims into investing are outlined in the testimony of the IRS agent. Subject is correct that these victim statements are hearsay, but the Commission procedures authorize the use of hearsay. There were multiple victims interviewed. Their individual statements are similar concerning the information and assurances that the sales agents gave them. Rogers was contacted by investors who were investigating the company more closely and needed more information. The victim statements show that he made the same assurances as his sales agents. Some of the sales agents were financial planners and were also investors. This examiner has no reason to doubt the credibility of the investors' statements. Rogers stated that he personally approved the information contained in the company website which implies a rate of return on the investments and that the investments were secure. After the investors were assured that their money would remain in the bank, subject used the investor money to trade in currency in Europe. The investors were not told their money would be used for other speculative ventures.

As outlined in the witnesses' testimony, Rogers has violated both state and federal laws in this scheme. The IRS has been brought into the federal investigation by the AUSA since they are now looking into the possibility the scheme involved money laundering. The state has provided a copy of the Cease and Desist Order in addition to the recommendations of the administrative law judge. These findings, after a hearing, were adopted by the Texas State Securities Commissioner. In the order, the Securities Commissioner finds that subject/PIC committed a fraud in its offering to the investors by failing to disclose material facts concerning the identities of the company principals, the relevant risks of the investment program, the financial experience or background of the principals of PIC and Tri-Forex, the past record of repaying investors and the financial situation of the company. Statements made to investors that their deposits into the investment program did not place their deposits at risk and was totally non-speculative were materially misleading and likely to deceive the public in light of the subject/PIC's failure to disclose the previous information. A copy of this document has been received by the Commission and is included with the other hearing documents.

Rogers' argument that he did not personally guarantee a rate of return nor did he make sales to investors does not have merit. He admitted personally approving the information and wording of the website which provided misleading information. He admitted he owned/took over the company. He did hire the person who would train the sales agents and provided that person with the outline of the investment. He was a signatory on the bank accounts, wire-transferred money between the accounts and directly spoke to investors/victims about the offering when they called the PIC offices. The examiner is finding that he

was directly involved in the scheme to defraud the investors. It should also be noted that subject's statements throughout this hearing contradict other statements that he would make.

**Findings of Fact:** This examiner finds that the subject violated the conditions of release as indicated in the above charge.
Basis: Information contained in the Texas Securities Board and the SEC complaint filed in the U.S. District Court for the Northern District of Texas, Letter dated 1/11/06 with attachments from Special Agent Neyhart, Enforcement Order No. ENF-05-CDO-1581 dated 1/25/05, ALJ Newchurch Proposal for a Decision in Docket No. 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 dated 5/28/05, Order Confirming Emergency Cease and Desist Order dated 8/15/05, testimony of IRS Special Agent Neyhart, testimony of Financial Analyst Letha Sparks and your statements during the hearing.

**Discipline:** None

Release Plans: Release plans were not discussed during the hearing. Rogers resides with his spouse in Washington and will likely return there.

**Guideline Parameters**

**Severity Justification:**   Category Seven because it involved investment fraud in excess of $5 million.
**Salient Factor Score:**   7

**Re-parole Guideline Range:**. 64-92 months

**Evaluation:** Rogers has been in custody since 2/24/05, 15 months at the time of this hearing. This examiner conducted his previous revocation hearing and made findings on two administrative charges. A decision outside the range was based on his continuing failure to provide financial information. A finding could not be made on the administrative violation that was the result of some of the instant violation behavior due to lack of evidence at that time. The criminal investigation was known to the Commission at that time, but it had been decided to defer consideration on the criminal matter until the government had completed its investigation. Since their investigation is still ongoing and subject was ready to release, it was determined that the Commission should consider the criminal conduct to make a release decision and the case was reopened. Rogers was accorded the same rights as in a revocation hearing.

Rogers has a lengthy history of this type of behavior. The examiner is recommending a decision outside the guideline range after service of 120 months. Although it was not specifically stated in the website, retired, older victims were targeted. Rogers admitted that although older clients were not target, they were the ones that had the funds to invest. Some of the victims lost their entire savings and in at least one case, a grown child invested their parent's entire savings in behalf of their elderly parent. None of the monies have been returned. The loss figures have not been determined but are in excess of $8.5 million. The total investments were approximately $12 million. Since Rogers has been involved with Tri-Forex and PIC during all periods of supervision, it is hard to determine how long this scheme has been active. The IRS is now involved due to the possibility of money laundering. It was agent's opinion that this offense did involve money laundering but it would be up to the AUSA if he is charged.

Rogers has shown little respect for the USPO and the Commission and it is unlikely that if he is released to parole that he would remain crime free. He continues to participate in the same behaviors and tries to mitigate his behavior by blaming the government for his problems. At this hearing, he outlined how the investigating agents are corrupt and indicated that a federal judge was also involved. Rogers is a serious monetary threat to the community and should not be released in the near future.

Parole was revoked at the previous hearing and there is not an issue of street time forfeiture. The same special conditions should apply when he is released.

**Recommendation:** Continue to a presumptive parole on 2/24/2015 after the service of 120 months.

**Conditions:**

1.  You shall provide complete disclosure of financial records involving all money and property owned or controlled by you, or held for your benefit. This disclosure includes the signing of a consent form for disclosure of foreign bank accounts maintained in Switzerland and Panama while in fugitive status.

2.  You shall comply with all IRS reporting and financial obligations and provide proof of meeting all IRS obligations to your USPO.

3.  Neither you nor any person acting on your behalf shall open any checking accounts or lines of personal or commercial credit without prior approval of the U.S. Parole Commission.

4.  You shall, under no circumstances, provide financial advice to any person or solicit financial investments of any kind from any person for any purpose.

5.  You shall secure full-time, salaried employment with an established business with which you have not prior connection and which does not require you to undertake any fiduciary responsibility or to work with securities or financial matters. Your employment must be subject to ongoing, on-site verification by your USPO. Verification of your compliance with this special employment condition may not depend on information submitted by you nor shall your employment involve any previous business partner, relative, previous associate or friend.

6.  You shall not threaten any person with legal action or file any liens or lawsuits against any person for the purpose of harassment or vexation or to gain some benefit to which you are not clearly entitled as exemplified by the conduct described in the 5/9/95 report in recommendation in *Rogers v. Takasugi*, Case No. CD94-7957-JSL. You shall provide your probation officer with documentation to show that you are clearly entitled to any benefit prior to filing any litigation, liens, or lawsuits against any person or business.

7.  Travel outside of your district of supervision is prohibited until such time as the Parole Commission concurs with your USPO that you can be depended upon not to abscond from parole, and that you are complying in good faith with all conditions of your parole. You shall not apply or possess a U.S. passport without the Parole Commission's written permission.

Statutory Interim Hearing:  May 2008

**Guideline Use:**  A decision above the guidelines is warranted because you are a more serious risk than indicated by the guidelines in that you have developed a pattern of employment that is outside the perimeters of the special conditions of parole.  Your original offense involved a fraudulent movie tax shelter scheme and the preparation of false income tax returns.  Your supervision has been revoked on two occasions for participating in questionable business activities that involved investors and financial transactions.  During this period of supervision, you created companies that provided financial advice on an investment program that guaranteed a rate of return, assured investors/victims that the investment was not speculative and assured investors/victims that there was no risk to the invested principal.  You and your company made statements to investors that were misleading and failed to disclose material facts in securing these investments.  As a result, your company received approximately $12 million in investments.  At this time, the losses are approximately $8.5 million.  A significant number of the victims were vulnerable in that they were retired and invested their life savings based on your misleading statements.  In addition, some of the victims were parents of adult children who invested their parents' money.  You are currently under investigation by the federal and state authorities for this scheme.  By your behavior, you have shown that you are a serious monetary threat to the community and have also shown the Commission that you cannot abide by the special financial conditions of your parole.  As a result, a release within the guideline range would depreciate the seriousness of your behavior and create a disrespect for the law.

Additional Text:  None

**I certify that I have reviewed this hearing summary.**

*Patricia L. Denton*

Patricia L. Denton, Hearing Examiner

PLD
June 2, 2006

Executive Reviewer's Comments:

U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

**Notice of Action on Appeal**

| | | |
|---|---|---|
| Name: Rogers, Gerald | Institution: | La Tuna FCI |
| Register Number: 12327-086 | Date: | October 2, 2006 |

The National Appeals Board examined the appeal of the above named and ordered the following:

Affirmation of the previous decision.

**REASONS**:

You contend that the Parole Commission has no jurisdiction over your case because you allege your original conviction was invalid. There is no evidence to support your claim that your federal conviction is unlawful. You were sentenced to a 35-year aggregate term pursuant to 18 U.S.C. 4205(a). Any issues you wish to raise challenging the validity of your original conviction would have to be raised before your sentencing court.

You contend that you were denied due process in connection with the parole revocation hearing conducted on May 25, 2006. You complain that you were denied notice of the hearing and that witnesses you requested were not subpoenaed for the hearing. The Board finds no merit to your contention. By a Notice of Action dated November 15, 2005, the Commission provided you with notice that a special reconsideration hearing was ordered in your case. The hearing was conducted on May 25, 2006. The record shows that the examiner provided you with an opportunity at the beginning of the hearing to request a continuance and you elected to go forward with the hearing.

In regard to your requested witnesses, the record shows that the Commission determined that there was "good cause" for their non-appearance. The information that the Commission relied upon in revoking your parole was provided by the two witnesses who appeared at your hearing. You were given a full and fair opportunity to cross-examine these witnesses during the hearing.

All decisions by the National Appeals Board on appeal are final.

GOVERNMENT
EXHIBIT
7

Exhibit 8 to Defendants' Motion to Dismiss

CLOSED, HABEAS, PROSE-PR, TRANSFERRED, TYPE-G

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:06-cv-01390-EGS

ROGERS v. UNITED STATES PAROLE COMMISSION
Assigned to: Judge Emmet G. Sullivan
Cause: 28:2241 Petition for Writ of Habeas Corpus (federa

Date Filed: 08/02/2006
Date Terminated: 01/19/2007
Jury Demand: None
Nature of Suit: 530 Habeas Corpus (General)
Jurisdiction: U.S. Government Defendant

**Petitioner**

**GERALD L. ROGERS**

represented by **GERALD L. ROGERS**
R12327-086
SHERIDAN FEDERAL CORRECTIONAL
INSTITUTION
P.O. Box 6000
Sheridan, OR 97378
PRO SE

V.

**Respondent**

**UNITED STATES PAROLE
COMMISSION**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 08/02/2006 | 1 | PETITION for Writ of Habeas Corpus (Filing fee $ 5.) filed by GERALD L. ROGERS. (Attachments: # 1 Exhibit)(jf, ) (Entered: 08/08/2006) |
| 08/02/2006 | 2 | NOTICE OF RELATED CASE by GERALD L. ROGERS. Case related to: Case No. 06-1010. (jf, ) (Entered: 08/08/2006) |
| 09/14/2006 | 3 | MOTION for respondent to show cause why it does not lack statutorial authority to enforce parole conditions by GERALD L. ROGERS. (jf, ) (Entered: 09/19/2006) |
| 12/13/2006 | 4 | ORDER TO SHOW CAUSE why this case should not be transferred. Show Cause Response due by 1/5/2007. Signed by Judge Emmet G. Sullivan on December 13, 2006. (lcegs2) (Entered: 12/13/2006) |
| 12/18/2006 | | Set/Reset Deadlines: Response to Show Cause due by 1/5/2007. (clv, ) (Entered: 12/18/2006) |
| 01/03/2007 | 5 | RESPONSE TO 4 Order to Show Cause filed by GERALD L. ROGERS. (jf, ) (Entered: 01/05/2007) |
| 01/19/2007 | 6 | ORDER TRANSFERRING CASE to the United States District Court for the Western |

Exhibit 8 to Defendants' Motion to Dismiss

|            |  | District of Texas. Signed by Judge Emmet G. Sullivan on January 19, 2007. (lcegs2) (Entered: 01/19/2007) |
|------------|--|---------------------------------------------------------------------------------------------------------|
| 02/22/2007 |  | Case transferred out to the United States District Court for the Western District of Texas. Sent by certified mail. (jf, ) (Entered: 02/22/2007) |
| 03/05/2007 |  | Receipt on February 22, 2007 of Transfer Papers. Other Court Number: WD of Texas sent by S A 07CA0170. (jf, ) (Entered: 03/05/2007) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/08/2007 10:15:11 | | | |
| **PACER Login:** | du6092 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:06-cv-01390-EGS |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

Exhibit 9 to Defendants' Motion to Dismiss

**FILED**

FEB 2 6 2007

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| GERALD L. ROGERS, | ) |
|  | ) |
| Petitioner, | ) |
|  | ) |
| v. | ) Civil Action No. 06-1390 (EGS) |
|  | ) |
| UNITED STATES PAROLE | ) |
| COMMISSION | ) |
|  | ) |
| Respondent. | ) |

**SA07CA0170**

**OG**

## ORDER

Petitioner Gerald L. Rogers is an inmate at Latuna Federal Prison in Anthony, Texas. He has filed a habeas corpus petition challenging the revocation of his parole by the United States Parole Commission.

On December 13, 2006, this Court issued an Order to Show Cause directing petitioner to show why this case should not be transferred to the United States District Court for the Western District of Texas. Petitioner responded that because the District Court for the Western District of Texas derives its jurisdictional authority from the Judiciary Act of 1789, it does not have jurisdiction to adjudicate federal statutes. Petitioner also argued that the United States District Court for the District of Columbia is the only district court that has jurisdiction to rule on violations of federal statutes. These arguments are incorrect as a matter of law.

United States District Court
For the District of Columbia
A TRUE COPY
NANCY MAYER WHITTINGTON, Clerk
By Jackie Flanes
Deputy Clerk

Exhibit 9 to Defendants' Motion to Dismiss

The United States District Court for the Western District of Texas is a properly constituted district court under Article III and federal statutes. *See* U.S. Const. art. III, § 1 ("The judicial power of the United States, shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish."); 28 U.S.C. § 124 (dividing Texas into four judicial districts, including the Western District); 28 U.S.C. § 132(a) ("There shall be in each judicial district a district court which shall be a court of record known as the United States District Court for the district.").

All federal district courts, including the United States District Court for the Western District of Texas, have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under the federal habeas statute, however, district courts may only grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a).

A district court may issue a writ only if it has jurisdiction over the custodian of the prisoner. *See Stokes v. United States Parole Comm'n*, 374 F.3d 1235, 1238 (D.C. Cir. 2004). The custodian is the warden of the prison where the prisoner is incarcerated, not the United States Parole Commission. *Blair-Bey v. Quick*, 151 F.3d 1036, 1039 (D.C. Cir.

Exhibit 9 to Defendants' Motion to Dismiss

1998). Because this Court does not have jurisdiction over the warden of the Latuna Federal Prison in Anthony, Texas, it cannot grant any habeas relief.

In *Chatman-Bey v. Thorburgh*, 864 F.2d 804, 814 (D.C. Cir. 1988), the D.C. Circuit held that the district court may *sua sponte* transfer such cases to the appropriate jurisdiction after the habeas petitioner has been afforded notice and an opportunity to respond. Petitioner has been given the opportunity to respond and has presented no legally cognizable argument for why this case should not be transferred. Accordingly, it is hereby

**ORDERED** that this case is **TRANSFERRED** to the United States District Court for the Western District of Texas.


Signed: **Emmet G. Sullivan**
**United States District Judge**
**January 19, 2007**

Notice to:

Gerald L. Rogers
No. 12327-086
Latuna Federal Prison
P.O. Box 3000
Anthony, TX 88021

Exhibit 10 to Defendants' Motion to Dismiss

PRO_SE_LAW_CLERK

# U.S. District Court [LIVE]
## Western District of Texas (San Antonio)
### CIVIL DOCKET FOR CASE #: 5:07-cv-00170-OLG-NSN

Rogers v. United States Parole Commission
Assigned to: Honorable Orlando L. Garcia
Referred to: Honorable Nancy Stein Nowak
Case in other court: U.S. District Court for the District of Columbia, 06-01390 (EGS)
Cause: 28:2241 Petition for Writ of Habeas Corpus (federa

Date Filed: 02/26/2007
Jury Demand: None
Nature of Suit: 530 Habeas Corpus (General)
Jurisdiction: Federal Question

**Petitioner**

**Gerald L. Rogers**                          represented by    **Gerald L. Rogers**
                                                                #123727-086
                                                                FCI Sheridan
                                                                P O Box 6000
                                                                Sheridan, OR 97378
                                                                PRO SE

V.

**Respondent**

**United States Parole Commission**          represented by    **Joseph C. Rodriguez**
                                                                Assistant United States Attorney
                                                                601 N.W. Loop 410 - Suite 600
                                                                San Antonio, TX 78216-5597
                                                                (210) 384-7305
                                                                Fax: 210/384-7312
                                                                Email: joe.rodriguez@usdoj.gov
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/26/2007 | 7 | Case transferred in from U.S. District Court/District of Columbia/Washington D.C.; Case Number 06-1390 (EGS). Original file with documents numbered 1-6 can be obtained on PACER trhough www.dcd.uscourts.gov. A certified copy of the transfer order and docket sheet received., filed by Gerald L. Rogers. (Attachments: # 1 Civil Cover Sheet)(pjr, ) (Entered: 02/28/2007) |
| 03/07/2007 | 8 | ORDER that the Clerk shall serve a copy of the 2241 Petition and a copy of this order on the U.S. Attorney for the Westerh District of Texas. Signed by Judge Nancy Stein Nowak. (pjr, ) (Entered: 03/09/2007) |
| 03/09/2007 | | Remark: Copy of the Order (doc. #8) and a copy of the 2241 Petition were placed in the U.S. Attorney distribution box. (pjr, ) (Entered: 03/09/2007) |

| 03/12/2007 | | Remark - copy of habeas petition and Order along with an acknowledgement card sent to US Attorney via regular mail. (ga) (Entered: 03/12/2007) |
|---|---|---|
| 03/16/2007 | 9 | Mail acknowledgment receipt of Petitioner's Section 2254 complaint as to Gerald L. Rogers by Johnny K. Sutton (US Attorney). (ep, ) (Entered: 03/19/2007) |
| 03/28/2007 | 10 | NOTICE of Change of Address by Gerald L. Rogers to FCI Sheridan P O Box 6000 Sheridan Oregon 97378. (rg1, ) (Entered: 03/29/2007) |
| 04/16/2007 | 11 | Letter/Correspondence from Gerald L. Rogers. (rg1, ) (Entered: 04/17/2007) |
| 05/04/2007 | 12 | MOTION for Extension of Time to File *Extension of Time to Move or Plead in Response to Petitioner's Petition* by United States Parole Commission. (Rodriguez, Joseph) (Entered: 05/04/2007) |
| 05/07/2007 | 13 | ORDER granting 12 MOTION for Extension of Time to File *Extension of Time to Move or Plead in Response to Petitioner's Petition* filed by United States Parole Commission. The Respondent has until 5/18/07, in which to move or plead in response to Petitioner's Petition. Signed by Judge Nancy Stein Nowak. (rf) (Entered: 05/08/2007) |
| 05/14/2007 | 14 | Opposition to 13 Order Resetting Answer Deadline by Gerald L. Rogers. (rf) (Entered: 05/14/2007) |
| 05/18/2007 | 15 | MOTION for Leave to Exceed Page Limitation *(for Response to Petition for Writ of Habeas Corpus - being submitted traditionally)* by United States Parole Commission. (Attachments: # 1 Exhibit Copy of Respondent's Response (Original being filed with exhibits by traditional method))(Rodriguez, Joseph) (Entered: 05/18/2007) |
| 05/18/2007 | 16 | ORDER granting 15 Motion for Leave to File Response in Excess Pages Signed by Judge Nancy Stein Nowak. (rg1, ) (Entered: 05/21/2007) |
| 05/18/2007 | 17 | ANSWER to Complaint by United States Parole Commission. (Attachments: # 1 # 2 # 3 # 4 # 5 # 6 # 7)(rg1, ) (Entered: 05/21/2007) |
| 06/04/2007 | 18 | Reply to Respondent's Response and MOTION for Judgment on the Pleadings by Gerald L. Rogers.. Motions referred to Nancy Stein Nowak. (rg1, ) (Entered: 06/05/2007) |
| 06/07/2007 | 19 | RESPONSE to Motion, filed by United States Parole Commission, re 18 MOTION for Judgment on the Pleadings filed by Petitioner Gerald L. Rogers *(Respondent's Response to P's Motion for Judgment... R's Mtn for Judgment on the Pleadings)* (Rodriguez, Joseph) (Entered: 06/07/2007) |
| 06/22/2007 | 20 | MOTION to take judicial notice by Gerald L. Rogers.. Motions referred to Nancy Stein Nowak. (rg1, ) (Entered: 06/25/2007) |
| 07/09/2007 | 21 | MOTION to Expedite Ruling by Gerald L. Rogers.. Motions referred to Nancy Stein Nowak. (rg1, ) (Entered: 07/09/2007) |
| 07/12/2007 | 22 | ORDER denying 21 Motion to Expedite. Signed by Judge Nancy Stein Nowak. (rf) (Entered: 07/12/2007) |

Exhibit 10 to Defendants' Motion to Dismiss

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/08/2007 15:25:51 | | |
| **PACER Login:** | du6092 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 5:07-cv-00170-OLG-NSN |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

ORIGINAL

FILED

Exhibit 11 to Defendants' Motion to Dismiss

AUG - 2 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

GERALD L. ROGERS, #13327-086              :
F.C.I. NATUNA
    Petitioner, POB 3000              :              CASE NUMBER  1:06CV01390
    ANTHONY, N.H 88021              :              JUDGE: Emmet G. Sullivan
v.              :
                                DECK TYPE: Habeas Corpus/2255
UNITED STATES PAROLE COMMISSION   :
    Respondent.              :              DATE STAMP: 08/__/2006

PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO
28 USC §2241 (c)(1)(3)

This Petition for Writ of Habeas Corpus relief pursuant

to 28 USC §2241(c)(1) arises from the petitioner being kept

in custody of the United States Parole Commission ("Commission")

under color of the authority of the United States federal statutes

not applicable to or enforceable against the petitioner and

§2241(c)(3) for "violations of the Constitution or laws or treaties

of the United States".as is briefed in the attached "APPEAL".

I.   STANDARD OF REVIEW

Pursuant to the Supreme Court in **McNutt v. G.M. Acceptance**

298 US 178:

> "When subject matter jurisdiction is lacking, the court
> (the Commission which has usurped the judicial power of
> court), must dismiss an action on its own."  And, if there
> is a dispute, the (Commission) "bears the burden" to establish
> that Jurisdiction.

In **Schlangerhauf v. Holder** 379 US 811 citing **Bankers Life**

**v. Holland** 346 @ 383, the Supreme Court mandated that when Jurisdiction

is even "questionable", the Commission, in this case, must prove

that there was not "an usurpation of judicial power or a clear

"abuse of discretion".

1

# APPEAL

Exhibit 11 to Defendants' Motion to Dismiss

**U.S. Department of Justice**
**United States Parole Commission**

Name    **Gerald L. Rogers**

Register No.   **12327-086**      Institution **FCI La Tuna Prison**

I received a Notice of Action dated **June 12, 2006** and appeal that decision under 28 C.F.R. §2.26 and/or §2.220.

_(Signature)_     RECEIVED JUN 27 2006     **June 21, 2006**    _(Date)_

**INSTRUCTIONS:**

**Eligibility to file the appeal.** This appeal is available only to: (1) a U.S. Code offender who is eligible for parole (including a military offender); (2) a D.C. Code offender whose term of supervised release has been revoked; (3) a transfer treaty offender who committed the foreign offense before November 1, 1987; and (4) a state offender who is under the Commission's jurisdiction pursuant to 18 U.S.C. §3522.

**Procedures.** The appeal must be mailed to the Commission within 30 days from the date on the Notice of Action. The permissible grounds for appeal are described below. On page two of this form you must provide a brief summary of all the grounds for your appeal. On page three of this form you must provide a statement of the facts and reasons in support of each ground identified in your summary. Continuation pages are permitted for longer appeals. You may provide any additional information in an addendum to your appeal. The Commission may refuse to consider any appeal which does not follow this format. The appeal will be decided on the record, and you will be notified of the Commission's decision through a Notice of Action. Do not submit multiple copies of your appeal, and do not submit documents which are in the Commission's file.

**Mailing address.** You should mail the appeal to U.S. Parole Commission, Appeals Unit, 5550 Friendship Boulevard, Chevy Chase, MD 20815-7201.

**Permissible grounds for appeal.**

(a) The Commission relied on erroneous information, and the actual facts justify a different decision.

(b) There was significant information in existence but not known to me at the time of the hearing, and a different decision would have resulted if the information had been presented.

(c) The Commission made a procedural error in my case, and a different decision would have resulted if the correct procedure had been followed.

(d) The Commission applied a statute or regulation incorrectly (e.g., in determining my period of imprisonment as a supervised release violator, and/or my further term of supervised release).

(e) The Commission made an error in applying the guidelines (error in offense severity rating, salient factor score, and/or calculating time in custody).

(f) A decision outside the guidelines was not supported by the reasons or facts stated in the Notice of Action.

(g) There are especially mitigating circumstances in my case which justify a different decision.

# SUMMARY OF GROUNDS FOR APPEAL

Exhibit 11 to Defendants' Motion to Dismiss

**Instructions:** Briefly describe the error which you believe to have occurred, or the specific reason for the Commission to give you a different decision. You do not need to repeat the "ground for appeal" (from Page 1) which applies. Try to list your most important grounds for appeal first.

**Ground One:** The Commission under its statutorial authority, Title 18 USC §4201 et seq:, lacks either authority and/or jurisdiction to maintain or order additional incarceration of Rogers.

**Ground Two:** The Commission's May 25 2006 Hearing violated the due process standards established by the Supreme Court in Morrissey v. Brewer 33 L Ed 2d 484, 499.

**Ground Three:**

**Ground Four:**

**Note:** You may present as many grounds for appeal as you believe necessary. If you have more grounds for appeal than you can summarize in the space provided, you may complete your summary on a continuation page.

Exhibit 11 to Defendants' Motion to Dismiss

## STATEMENT OF FACTS AND REASONS IN SUPPORT OF EACH GROUND FOR APPEAL

**Instructions:** Please present your grounds for appeal in the order in which they appear in your summary. For each ground of appeal, use the following format, first stating the facts that are relevant to deciding the ground you have identified, and then the reasons why you believe the Commission erred and/or should make a different decision. Use continuation pages in the same format.

**Ground One:** (Circle the applicable ground for appeal from Page 1:  a   b   c   d   e   f  (g)).

**Facts:** See Attached "STATEMENT OF FACTS AND LEGAL REASONS....."

starting on Page 1.

**Reasons:**

**Ground Two:** (Circle the applicable ground for appeal from Page 1:  a   b   c   d   e   f  (g)).

**Facts:** See Attached "STATEMENT OF FACTS AND LEGAL REASONS..."

starting on Page 18.

**Reasons:**

Exhibit 11 to Defendants' Motion to Dismiss

## TABLE OF AUTHORITIES

| | Page |
|---|---|
| Adams v. United States 87 L Ed 1421 | 5, 16 |
| Bankers Life v. Holland 346 US 383 | 9 |
| Buckly v. Valeo 424 US 1 (1967) | 13 |
| Christianson v. Colt Inds. 100 L Ed 2d 811 (1988) | 9, 10 |
| Fourco Glass v. Transmirra 353 US 222, 227 | 10 |
| FW/DBS v. Dallas 493 US 215, 231 | 15 |
| In Valley v. Northern Fire 254 US 348 (1920) | 8 |
| Kokkonen v. Guardian Life 511 US 375, 377 | 7 |
| Morrissey v. Brewer 33 L Ed 2d 484, 499 | 6, 9 |
| Morrison v. United States 146 L Ed 2d 658, 676 | 14 |
| SEC v. Rogers 790 F 2d 1450 (9th C.) | 7 |
| Sheldon v. Sill 8 How 441, 449 | 9 |
| Tafova v. U.S. Department of JUstice 748 F 2d 1389 | 5 |
| United States v. Burch 169 F 3d 668, 671 (10 C.) | 7 |
| United States v. Freeman 761 F 2d 549 (9th C.) | 1 |
| United States v. Hall 98 US 343, (1878) | 11 |
| United States v. McBratney 26 L Ed 869 (1851) | 7 |
| Walz v. Tax Commission of NY 493 US 343 | 17 |
| Willy v Coastal Corp 117 L Ed 2d 280, 288 | 8 |

## INDEX - SUMMARY

Page

**GROUND ONE** - Lack of Statutorial Authority/Jurisdiction     1

The Commission obtains its authority to administer parole conditions to sentences of parties in the custody of the Attorney General pursuant to Title 18 USC §4210 - "Jurisdiction". However, the controlling statute for the geographical area from where the sentences are derived is 18 USC §5, defining the United States "as used in this title (18) in a territorial sense". This definition of the United States "in a territorial sense" is further corroborated by the definition state in FCrRP Rule 1(b)(9) "State" "includes the District of Columbia, and any commonwealth, territory or possession of the United States - which specifically does not mention or intends to include any "state of the United States".

Title 18 USC §7 then qualifies "Territorial Jurisdiction" in the referenced federal "states" in Rule 1(b)(9) for violations of United States law which pursuant to FCrRP Rule 54(c) "Act of Congress" "includes any act of Congress locally applicable to and in force in the District Columbia, Puerto Rico, in a territory or insular possession", or the same geographical areas as defined by Rule 1(b)(9) - clarifying any question as to the definition of the "United States" is as defined by 18 USC §5.

Here, because the "Act(s) of Congress" for which Rogers is alleged to have violated occurred in the states of California and Colorado, none having been alleged to have occurred in a federal state, the same Title 18 USC §5 and §7 controlling statutes together with Rule 1(b)(9) that limits adjudication jurisdiction of 18 USC §3231 for the subject United States District Courts, they also **limits** the Commission's authority over Rogers' sentence.

Therefore, due to Title 18 USC §§5 and 7 limiting the jurisdiction for the United States District Courts of the Central District of California and District of Colorado to the federal "states", they "lacked subject matter jurisdiction" to both convict and sentence Rogers to a Federal Prison. Accordingly, because the Courts orders were "void" ab initio, the statutorial authority for the Commission to administer Rogers' parole conditions were also void from their inception.

## GROUND TWO - Due Process Violation     18

Here, the Commission violated one of the most fundamental principles of the Constitution's Fifth Amendment Right to Due Process of Law. In an act of Corruption to cover-up for its colleagues in government who were responsible for the losses incurred by Rogers business, for which he is now sentenced to a new term of incarceration of 10 years, in the face of Rogers naming those government colleagues as exculpatory witnesses, the Commission dismissed them, sua sponte, without explanation.

This act of corruption rises to the level of opprobrium, that it constitutes a civil rights criminal act.

STATEMENT OF FACTS AND LEGAL REASONS IN SUPPORT OF EACH GROUND
CONTINUED

This appeal is being filed by Gerald L. Rogers 12327-086 ("Rogers") under the standards setforth by Title 28 USC §2241 for a petition for habeas relief as a result of the United States Parole Commission ("Commission") violating the Constitution, laws and treaties of the United States.

**GROUND ONE**

**The Commission under its statutorial authority, Title 18 USC §4201 et seq., lacks either authority and/or jurisdiction to maintain or order additional incarceration of Rogers.**

**I.  Background Facts**

1.  Rogers was tried and convicted under color of law in a non-judicial proceeding by the United States District Courts of the Central District of California and District of Colorado.

2.  The resulting sentences for his alleged tax and attendant securities violations of United States law, even though he was never "found guilty" pursuant to 18 USC §3673, were for a total of 35 years.

3.  In Los Angeles, a 10 year sentence was imposed for advising his clients how to defer their federal income tax to a later year - a non-existant federal tax crime as was decided by the Ninth Circuit Court of Appeals in **United States v. Freeman** 761 F 2d 549 (9th C. 1985), but the Court denied Rogers that equal protection of law.

4.  In Denver, in U.S. v. Rogers 84-CR-337, for which the sentence of 25 years that Rogers is still serving, the government brought a double jeopardy prosecution to **SEC v. Rogers** 790 F 2d 1450 (9th C. 1985), coupled with counts for a Canadian mining

1.

Exhibit 11 to Defendants' Motion to Dismiss

business in which Rogers was not a participant.

5. Utilizing the under color of law judgments and commitment order for an aggregate sentence of 35 years, after 10 years and 11 months, on December 1, 2000, Rogers was granted parole.

6. In May of 2003, pursuant to a complaint by Rogers' ex-business associate, Wayne Holm, the Denver AUSA Thomas O'Rourke prevailed on the Commission to revoke Rogers parole due to his suit against Holm for his theft of $550,000 from Rogers some years before.

7. On February 25, 2005, just prior to the Commission issuing a warrant for Rogers arrest for his being a signature on his own business bank account, a memo written by the Commission's Michael Banks to the Commission evidences that he and Jeffrey Norris of the Securities and Exchange Commission were engaged in a conspiracy with Rogers' AEA Bank to thwart the orderly operation of Rogers two companies, Premium Income Corp and InForex Ltd.

8. The Commission/SEC's conspiracy is evidenced to have expanded to the Federal Bureau of Investigation, when the conspirators prevailed on FBI Special Agent Joseph Quinn to unlawfully intercept Rogers' mail - which the evidence shows that Quinn intercepted a letter of instructions written by Rogers to William Hofius as to how to close-out the subject companies' open currency positions. Upon the conspirators learning of the instructions, the Commission's Mr. Banks and SEC's Mr. Norris prevailed on FBI's Quinn to conceal those instructions, which thereafter resulted in a $5,000,000 loss to Rogers' Premium Income Corp Clients.

9. Without a complaint from Rogers' clients, the Commission then based its reason for a "re-hearing" pursuant to a SEC law suit, CV 03-05-415-B as filed in the Dallas Northern District

2.

Exhibit 11 to Defendants' Motion to Dismiss

Court of the United States, which has, to date, has made no findings
of fraud and/or other misconduct of Rogers. (The irony of the
Commission adopting the false SEC allegations is that the suit
was drafted by the SEC's Norris, who was directly involved in
causing the $5,000,000 financial loss to Rogers' clients - not
to mention that the evidence now shows that the same SEC NOrris
is also involved in looting approximately $1,000,000 of the
remaining clients' funds together with the Court's appointed
receiver, Kelly Crawford.)

## II. JURISDICTION FACTS

1.  The jurisdiction for all violations of United States
law is granted pursuant to 18 USC §3231 for "district courts
of the United States" - constitutional Article III §2 courts
which provides jurisdiction for all "controversies to which the
United States shall be a party".

2.  The United States District Court for the Central District
of California, is not an Article III Constitutional Court, but
is a Congressional Court created by public law when California
territory became a state - which therein, obtained its statutorial
authority for jurisdiction from the Judiciary Act of 1789, Statute
I, §9, see Exhibit 1.

3.  Neither is the District of Colorado court an Article
III Constitutional court, but got its authority and jurisdiction
from the Judiciary Act of 1789 as in fact, as did the federal courts
that  are  still located in the original 13 colony states.

4.  In addition to Title 18, criminal violations ,  Title
15 and 26 are also justiciable pursuant to the "District Courts"
18 USC §3231 jurisdiction statute.

5.  However, the jurisdcition for the District Courts under

§3231 jurisdiction, is further qualified by Title 18 USC §5 with the definition of "United States" as used in this title (18) (being) in a territorial sense... subject to the jurisdiction of the United States".

6.   Pursuant to 18 USC §7 "....Territorial Jurisdiction of the United States as used in this title (18) .**includes** (1) high seas....." and other properties of the United States described therein, but none of the states of the Union.

7.   Pursuant to 18 USC §3001, Federal Criminal Rules of Procedures (FCrRP) as promulgated, by definition of "State" in Rule 1(b)(9), it corroborates that the "United States in a territorial sense" pursuant to §5, "includes District of Columbia, and any commonwealth, territory or possession of the United States", not any state of the United States, namely either California or Colorado.

8.   The Acts of Congress that are justiciable in the federal "states" defined in Rule 1(b)(9) for jurisdiction in the territories and properties described in 18 USC §7 are also in accord with the violations of laws as applicable pursuant to Rule 54(c). (Rule 54(c) "Application of Terms" for "Act of Congress is designated to mean -

> "Act of Congress" includes any act of Congress (Titles 15, 18 or 26) locally applicable to and in force in District of Columbia, Puerto Rico, in a territory or in an insular possession" - again, with no mention of being applicable to any law in a state of the Union.

(See 18 USC §513 proscribing the constitutional crime of counterfeiting "(5) the term "state" includes a State of the United States, District of Columbia......" Thus, when Congress promulgated statutes proscribing crimes as authorized by the Constitution, the statute so states that it pertains also to a state in the Union.)

9.   The United States (in a territorial sense) Parole Commission

4.

obtains its statutorial authority pursuant to 18 USC §4201 et seq., but just as the jurisdiction for the district court of the United States are limited and qualified by 18 USC §§5 and 7 , so are the Commission's authority and jurisdiction limited to parolees who were sentenced in a federal state as defined in FCrRP Rule 1(b)(9), not a parolee in any state of the United States, except for a constitutionally authorized crime.

10.    Pursuant to Title 18 USC §3673, for Rogers to have been "found guilty" and thereafter for his sentence to have been authorized pursuant to §3551, there must have been an "acceptance by a court of a plea of guilty or nolo-contendere - but none exists in the record.

11.    Under the standards established by the Supreme Court in **Adams v. United States** 87 LED 1421, jurisdiction for the Commission to adjudicate its self-generated complaint of fraud that they allege to have occurred, among other states and Texas, the Commission had to:

> 1) Show that the United States had ownership of the geographical area in which the alleged fraud occurred;
>
> 2) document that the legislature of the involved states had surrendered back to the United States their jurisdiction granted to them at statehood over the subject areas; and,
>
> 3) document that pursuant to Title 40 USC §255, wherein the United States accepted jurisdiction to the same referenced geographical areas.

## III.  JURISDICTION LAW APPLIED

In the year that Rogers was indicted, 1984, the Tenth Circuit Court of Appeals, the controlling Court over the District of Colorado Court and "the-law-of-case" mandated in **Tafova v. United States Department of Justice** 748 F 2d 1389 (10 C 1984):

> "Insofar as subject matter jurisdiction is concerned....
> federal  courts must....satisfy itself of its power to

5.

Exhibit 11 to Defendants' Motion to Dismiss

adjudicate in every case at every stage of the proceeding of the parties."

However, here instead of verifying its statutory authority over Rogers' sentence and impose a new 10 year term for his imprisonment, the Commission usurped the authority of Congress and prescribed a non-descript self styled crime of fraud. Then without a complaining party, contemporaneously prosecuted and adjudged Rogers to be guilty - all without an iota of evidence proving intent - the requisite of every Congress promulgated statute involving fraud.

As will be proven here, from the inception of Rogers' sentences, the Commission lacked statutorial authority for jurisdiction over his sentences under the Commission's Jurisdiction Statute, §4210. Furthermore, in the pejorative, it will be evidenced that the Commission has engaged in acts of corruption as are defined by the **Inter-American Convention Against Corruption Article VI** to unlawfully maintain administrative control over Rogers' sentence.

**1.  When the Commission adopted the tri-position as complainant, prosecutor and trier of fact and imposed a new term of incarceration of Rogers as if he were legally tried by a court of law, under the due process of law mandate in Morrissey v. Brewer 33 L Ed 2d 484, 499, the Commission had the same legal responsibility to verify its subject matter jurisdiction and/or statutorial authority as did the prior adjudicating District Courts in Rogers' Cases.**

Before the Commission paroled Rogers on December 1, 2000, it knew or should have known that his sentence was flawed by the law of his case that the adjudicating Court lacked subject matter jurisdiction. The Tenth Circuit, from where Rogers sentence

Exhibit 11 to Defendants' Motion to Dismiss

originates, in a 1999 case reversing a federal conviction for the same "on point" legal issue, the federal courts "lack subject matter jurisdiction" over crimes committed in the state of Colorado, in **United States v. Burch** 169 F 3d 668, 671 (10th C. 1999) citing the Supreme Court in **United States v. McBratney** 26 L Ed 869 (1881), it was found:

> "Here, Colorado's admission into the Union invested its criminal jurisdiction over its citizens 'throughout the whole of the territory within limits, including the Ute Reservation."

And, unquestionably, the same transfer of criminal jurisdiction occurred in California and Texas as occurred in Colorado when they became states - and unless otherwise specified, all the states have gotten their jurisdiction from the Judiciary Act of 1789, Statute I, §9.

Therefore, because the Commission's parent, Department of Justice opposed the **Burch** supra jurisdiction issue through its U.S. Attorneys Office in Denver, and lost in 1999, just months before the Commission granted Rogers' parole in December of 2000, the Commission knew or should have known that it was a matter of **stare decisis** its jurisdiction over Rogers' sentence was without statutory authority.

Furthermore, subsequent to **Burch id.**, the Commission must have known that without the District Court having jurisdiction, Rogers' conviction and sentence, thus resulted merely from an unenforceable "judicial decree" as was found in **Kokkonen v. Guardian Life Ins.** 511 US 375, 377 -

> "Federal courts, as courts of limited jurisdiction, possess only such authority as is conferred to them by the Constitution and acts of Congress and this authority cannot be expanded by judicial decree."

However, in the face of Rogers' sentence being by judicial

decree and most recently in the face of Rogers repeated notices

challenging the Commission's jurisdiction both to his "Case Analyst"

Mary Jo Williams and the May 25, 2006 Hearing Officer, Pat Denton,

on the hearing record, with deliberate indifference, the Commission

has not only proceeded to supercede jurisdiction authority intended

by Congress pursuant to 18 USC §4210, but superceded its limitations

that result from 18 USC §5's definition of "United States" and

the "Territorial Jurisdiction" stated in §7.

It has also been long standing Supreme Court law that when

a Court, in this case, the Commission, supercedes its jurisdiction,

its judgments are void, **ab initio.**  The Supreme Court in **In Valley**

**v. Northern Fire and Marine** 254 US 348 (1920) ruled:

> "When a court reaches beyond its statutory grant of subject
> matter jurisdiction, its judgment is void....they are not
> voidable, but simply void and that is even prior to reversal."
> Also see **Stoll v. Gotlief** 305 US 165, 171-172.

Therefore, because the District of Colorado Court was a

Congressional Court created under the Judiciary Act of 1789,

as found by the Supreme Court in **Willy v. Coastal Corp** 117 LEd

2d 280, 288, when the defendant was tried without either constitutional

or statutory jurisdiction, it was nothing more than an "administrative

(hearing) of a nonjudicial nature" - which in this case, was

to accommodate the government's abuse of power.

Here, with the Commission lacking authority over Rogers'

sentence from its inception and now charging and convicting him

for a new crime together with the intent to keep him unlawfully

incarcerated for 10 years in absolute absence of statutorial

authority pursuant to 18 USC §5 as to how it limits the Commission

to sentences that are only derived from judgments from the courts

in the federal states defined by FCrRP Rule 1(b)(9) is clearly erroneous.

8.

Exhibit 11 to Defendants' Motion to Dismiss

**Furthermore, when jurisdiction is even questionable, the government (Commission) must prove that there is not "an usurpation of judicial power. (See Bankers Life v. Holland 346 US @ 383.)**

Here, with the Commission usurping the power of Congress with the promulgation of a  nondescript fraud then acting in three capacities, complainant, prosecutor and trier of fact, after Rogers challenged the Commission's statutory authority, thus jurisdiction to conduct a "rehearing", by law, pursuant to the due process mandate in **Morrissey v. Brewer** supra, the Commission was obligated to prove that its authority over Rogers was valid - but they did not.

Also in **Christianson** supra @ 831, citing controlling Supreme Court case law on jurisdiction, still in good standing 150 years after the Courts decision, in **Sheldon v. Sill** 8 How 441, 449, 12 L Ed 147 (1850)

> "Courts (as this Commission was), created by statute can have no jurisdiction but such as the statute confers".

Thus, conclusively, with the Commission acting in the capacity of a court to convict Rogers of new criminal conduct and then sentence him with an order for a term of incarceration of 10 years, its statutorial authority for that jurisdiction under §4201 et seq., by law must also be subject to be proven as required by the Supreme Court in **Bankers Life** supra.   The Commission's jurisdiction statute §4210, simply does not stand alone - when Rogers brought to the Commission's attention that its jurisdiction was limited pursuant to §5 "United States" defined as used in the title (18) in a territorial sense..." to the federal state conviction sentences, it should have taken steps to prove its authority, instead of proceeding to convict Rogers of a new

9.

crime by "decree" - no matter whether what kind of a tribunal it is.

Therefore, clearly pursuant to §5 as it applies to all of Title 18 statutes, the Commission lacked statutory authority to adjudicate a "clearly erroneous" conviction that "works a manifest injustice" (**Christianson** 100 LEd 2d 811 as occurred here.

Accordingly, because the Commission has been working "a manifest injustice" on Rogers since December 1, 2000, the only remedy is for the Commission to terminate Rogers' Parole together with his incarceration, without further delay.

**2.  The Commission knew or should have known that the judgment and sentence orders by the subject United States District Courts lacked subject matter jurisdiction by the Statute that created them - the Judiciary Act of 1789, Statute I, §9.**

Here, the Commission must have known that both the California and Colorado United States District Courts were created, just as the courts were for the original 13 colony states, by Public Law at statehood that was granted its authority for the courts' jurisdiction from the "Judiciary Act of 1789, Statute I Section 9.  In relevant part Section 9 states:

> "That the district courts shall have...cognizance of all crimes....under the authority of the United States.... where no other punishment than whipping.....fine not exceeding One Hundred Dollars, or a term of imprisonment not exceeding six months."

And, pursuant to the Supreme Court in **Fourco Glass v. Transmirra** 353 US 222, 227, when Congress promulgated the Judiciary Code Act of 1940, the jurisdiction of the United States District Courts were not changed.

10.

Furthermore, with the Commission's knowledge that the courts' jurisdiction was limited to the Judiciary Act of 1789, it was obvious that Rogers' 35 year sentence to a federal prison, with its attendant fine of $40,000 far exceeded the jurisdiction of the courts.

In **United States v. Hall** 98 US 343 (1878), a landmark case concerning ·'Statutory Authorization, which has never been overturned, the Supreme Court mandated:

> "The federal courts possess no jurisdiction over crimes and offenses committed against authority of the United States except what as given to them by the power that created them nor can they be invested with such jurisdiction beyond that power ceded to the United States by the Constitution authorizing Congress to confer - from which it flows that the Congress must first define or recognize it as such and affix a punishment to it and confer jurisdiction upon some court to try the offender."

Here, pursuant to the Constitution's Articles I and IV which confers on Congress the authority to prescribe only three crimes, counterfeiting, piracy, and treason together with Title 18 USC §§5 and 7, limiting the jurisdiction under §3231 for the federal courts to the federal "states" defined by FCrRP Rule 1(b)(9), the Commission knew or should have known that the United States laws which Rogers was alleged to have violated, were not either cognizable nor justiciable in any congressional created United States District Court that now exist in the states of the Union.

Furthermore, the punishment of Rogers with the imposition of an "Authorized Sentence" under 18 USC §3551, the courts would have had to accepted from Rogers a "plea of guilt or nolo contendere" to have been "found guilty" as required by 18 USC §3673. But, the record is clear, Rogers has never plead guilty, in fact maintains his innocence to this day. And, just as clear, the "Act(s) of Congress" to which FCrRP Rule 54(c) refers, do not include the

11.

Title 15, 18 or 26 violations of United States law to which Rogers
is alleged to have violated in California and/or Colorado.

Therefore, because the alleged violations of United States
law for which Rogers was accused of violating were justiciable
only in the "states" defined by FCrRP Rule 1(b)(9), this not
only voided the United States District Courts' "judgment and
commitments", but the Commission's authority over Rogers sentence
too.    Accordingly, the only remedy for the "manifest injustice"
that has occurred, is the immediate termination of the Commission's
pretention of jurisdiction and immediate release from prison.

**3.  Even if the Commission was ignorant as to the trial
and sentencing courts lack of subject matter jurisdiction under
the Judiciary Act of 1789, it knew or should have known that
the Title 15, 18 and 26 statutes for which Rogers was convicted
for the violations having occurred in either California or Colorado,
the Federal Criminal Rules have no provisions for "proceedings"
to adjudicate the alleged crimes.**

The Federal Criminal Rules were codified by Congress as
18 USC §3001 and at which time it authorized the Supreme Court
to promulgate the Rules pursuant to the "Act of June 28, 1940,
codified as 18 USC §3771.  However, the Rules pursuant to Congress'
authorization to the Supreme Court, was to promulgate **them to**
apply only to the federal states therein stated, not to any state
of the Union as can be clearly verified by the FCrRP Rule 54
**"ADVISORY COMMITTEE NOTES"** 1944 Adoption:

> **"Note to subdivision (a)(1)1.**  The Act of June 28 1940
> (§3771) authorizes the Supreme Court to prescribe the Rules
> of Criminal Procedures for the district courts of the United
> States in respect to proceeding prior to and including
> verdict or finding of guilty or not guilty, **expressly applicable
> to district courts for Alaska, Hawaii (when they were territories),
> Puerto Rico......"**

**12.**

Exhibit 11 to Defendants' Motion to Dismiss

Thus, with the FCrRP Rule 1(a)(1) providing that "These rules govern the procedure in all criminal proceedings" with Rule 1 (a)(4) is the only provision for "Removed Proceedings" from state courts with the definition of "state" in Rule 1(b)(9) which only "includes District of Columbia, any commonwealth, in a territory or insular possession", corroborating the Rule 54 **"ADVISORY COMMITTEE NOTES"**, with no reference to any state of the United States, the Commission had to have known that the Title 15, 18 and 26 violations for which Rogers was alleged to have violated in California and Colorado, were clearly not justiciable by the subject United States District Courts.

**FOR EXAMPLE - Rule 54(b) Proceedings in relevant part states:**

"These Rules apply to criminal prosecutions (for violations of any Act of Congress) removed to the United States district courts from state courts" - which are defined by Rule 1(b)(9) to exists in the federal states "District of Columbia, any commonwealth, in a territory or insular possession".

Therefore, if one would attempt to match the violations of law to which Rogers is alleged to have violated in California and Colorado, none of the provisions in Rule 54(b) and/or the new Rule 1(a)(4) "Removed Proceedings" apply to support the Commission's authority under its Jurisdiction statute §4210. Accordingly, because none of the Federal Criminal Rules apply to govern Rogers' "criminal proceedings in a United States district court", his conviction and sentence as was determined by the Supreme Court in **Kokkonen id.,** in accord with **Buckly v. Valeo** 424 US 1 (1976) was "of a nonjudicial nature".

13.

## IV.   CONSTITUTIONAL LAW APPLIED

**1.   With a cursory reading of the Constitution, the Commission would have known that the sentence imposed on Rogers violated his constitutional rights to equal protection of law due to the fact that the Constitution makes no provisions to punish for violations of the "interstate commerce" clause of Article I, Section 8, Clause 3 on which the government claimed jurisdiction.**

Indeed, the Constitution did not grant Congress any authority to prescribe punishment for any violation of United States law by a citizen of a state of the United States, unless the Constitution specifically so stated it.  For example, when Congress prescribed laws against counterfeiting in Title 18 USC §513, with specificity, clause (5) so designated that the statute was enforceable in a "State" which "includes a State of the United States, the District of Columbia, Puerto Rico, etc."

On the other hand, when Congress invoked the vernacular of the interstate commerce clause, for example in 18 USC §921 for the interstate commerce for the transportation of "FIRE ARMS" "between any place in a State and any place outside of that State", the "term 'State' includes District of Columbia, the Commonwealth of Puerto Rico, and the possessions of the United States" - conclusively not including any "State of the United States" as the counterfeiting constitutionally prescribed statute does.

This fact of Constitutional Law is also supported by the Supreme Court.  In **Morrison** supra, citing **United States v. Lopez** 514 US @ 596-597 and n 6:

> "The Constitution withholds from Congress a plenary police
> power....We always have rejected readings of the Commerce
> clause and the scope of federal power that would permit
> Congress to exercise a police power." "Noting that the
> prior "Congresses did not exact nationwide punishment for

14.

criminal conduct under the Commerce Clause."

Therefore, because the Constitution does not authorize Congress to promulgate police powers to criminally enforce laws of the United States in the "States of the United States", even including for alleged violations of the interstate commerce clause (which the government has been predisposed to fraudulently claim that the clause gives them the authority and the courts the jurisdiction for prosecution of alleged securities and mail fraud violations, but clearly does not), when the Commission issued and caused the unconstitutional arrest of Rogers, it was a direct violation of his guaranteed rights to "liberty" pursuant to the Supreme Law of the Land, "International Covenant on Political and Civil Rights Article 9.1.

Accordingly, because the Constitution is specific that Congress only had the power to create police power over "10 miles square" pursuant to the Constitution's Article I, clause 17 and over "Territory and other property under Article IV Section 3 clause 2, as are also defined as the federal states by FCrRP Rule 1(b)(9), by Constitutional Law, the Commission lacked statutorial authority to neither have Rogers arrested and/or nor to maintain his continued incarceration.

**2. When the Commission, without a complaining party, usurped the power of Congress by prescribing its own non-descript fraud violation together with, acting in the capacity of the prosecutor and federal judge (finder of fact and adjudicator), for an alleged crime that occurred in Texas, it did so without establishing the requisites for either statutorial authority and/or jurisdiction.**

As decided by the Supreme Court in FW/PBS v. Dallas 493 US 215, 231:

15.

US 215, 231:

> "The federal courts are under an independent obligation
> to examine their own jurisdiction and standing is perhaps
> the most important of the jurisdictional doctrine."  Quoting
> **Allen v. Wright** 468 US 737, 750.

However, this "most important of jurisdictional doctrine"
has apparently gotten lost pursuant to the quasi-judicial functions
of the Commission.  In addition to the Commission's authority
over Rogers being rendered void pursuant to Title 18 USC §5 and
§7 limiting its authority only over parolees whose sentences
have originated in the federal states and violations applicable
as designated by FCrRP Rule 54(c), the Commission did not establish
the three criteria for establishing federal jurisdiction as was
mandated in  **Adams v. United States** supra.

To prove jurisdiction pursuant to **Adams**, the Commission
had to document that (1) the property on which the alleged fraud
in Texas occurred was owned by the United States, (2) that the
relevant state legislature surrendered jurisdiction over the
geographical area on which the alleged fraud occurred, and (3)
document that the United States accepted the jurisdiction pursuant
to Title 40 USC §255.

Therefore, because the record is void of the Commission
proving its jurisdiction after Rogers challenge and document
the violation occurred on federal property as required by Adams,
it not only lacked statutory authority to continue to administer
**Rogers** parole, because it even lacked the jurisdiction to try
Rogers for a new crime of fraud, it superceded every authority
granted to it by Congress.  Accordingly, the remedy to correct
the Commission's unconstitutional actions, is termination of
Rogers' parole status and immediate release from prison.

16.

Exhibit 11 to Defendants' Motion to Dismiss

## V.   CONCLUSION

**WHEREFORE,** there simply exists no legal excuse for the Commission not to know and/or ignore the limitations of its authroity pursuant to the controlling statutes of Title 18 USC §§5 and 7.  Unquestionably the Commission's statutorial authority for jurisdiction under its §4210 pursuant to §§5 and 7 is limited to administering parole conditions on sentences that have originated in the federal states as defined by FCrRP Rule 1(b)(9).

And, the pejorative is, to keep the Commission operating with its repealed statutes, extended for over 18 years, it has obviously defrauded Congress with representations of having a great number more parolees over which its legal authority commands.

The apparent attitude of the officers of the Commission is that they have gotten away with the fraud they have worked against Congress, to date, why should we let Rogers stop or interfere with our scam now?  For one reason, what the employees of the Commission are doing is clearly in violation of the law.  For another, if this matter is not settled according to law within the Commission, Rogers will have no alternative to proceed to set a judicial precedent that will ultimately expose the government's unlawful Multi-Billion Dollar forfeiture business.

In **Walz v. Tax Commission of New York** 493 US 343, the Supreme Court made it abundantly clear:

> "It is obviously correct that no one acquires a vested
> or protected right in violation of the Constitution by
> long use, even when that span of time covers our entire
> National existence and even predates it."

Therefore, because of the Commission's gross abuse of discretion resulting violations of the Constitution, laws and treaties of the United States, accordingly the sole remedy is to terminate

17.

Exhibit 11 to Defendants' Motion to Dismiss

Rogers' parole conditions and effect his immediate release from prison.

**GROUND TWO**

**The Commission's May 25, 2006 Hearing violated the due process standards established by the Supreme Court in Morrissey v. Brewer 33 L Ed 2d 484, 499.**

**I.  Facts**

1.  With no more than an 18 hour notice, the Commission after a 6 month delay, ambushed Rogers with a hearing.

2.  Without prior notice, the Commission hearing officer, Pat Denton, advised Rogers that the Commission sua sponte, dismissed the exculpatory witness for his defense.

3.  Instead of producing the exculpatory witnesses, 3 of them being officers of the government, FBI Agent Joseph Quinn, Securities and Exchange Commission counsel Jeffrey Norris and Daniel Nathan of the Commodities Future Trading Commission, the Commission engaged in a cover-up with the dismissal of those witnesses – those 3 witnesses were all involved with causing the $5,000,000 loss incurred by Rogers Premium Income Corp for which Rogers has now been sentenced to 10 years in prison.

4.  The two witnesses chosen by the Commission for their prosecution of Rogers, provided no physical evidence and worse, their entire testimony was all based on second hand and sometime third hand hearsay statements.

5.  As evidenced by the Commission's Parole Officer, Michael Banks of Seattle, his memo to this Commission prodding it to hurry up with the issuance of an arrest warrant shows that he was also involved in being instrumental in causing the $5,000,000 loss for which Rogers is now sentenced.

Exhibit 11 to Defendants' Motion to Dismiss

## II. DUE PROCESS LAW

### 1. The Commission's dismissal of the exculpatory witnesses rises to the level of opprobrium that it amounts to being criminal.

Pursuant to **Morrissey**, id., @ 499, Rogers had "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation). Here, the parole hearing officer Pat Denton, did nothing more than announce that the Commission decided that Rogers did not need those exculpatory witnesses to testify.  With specificity, the hearing officer made no other excuses/show to any kind of "good cause" for the witnesses not appearing - let alone a true confrontation of the prosecution's hand picked witnesses - even with the Commission's witness from the state of Texas was lying through her teeth.

Furthermore, the Commission's capricious dismissal to cover-up for the exculpatory witnesses' actions to cause the huge loss, clearly a due process violation, the Commission's acts of corruption as defined by the Inter-American Convention Against Corruption Article IV, they also violated Rogers guaranteed rights under the Supreme Law of the Land "International Covenant on Political and Civil Rights Article 14 - which provides -

> "1 .....In determination of any criminal charge against him.... everyone shall be entitled to a fair and public hearing by a competent,  independent and impartial tribunal established by law.....
>
> 3,...entitled to the following minimum guarantees, in full equality;...
>
> (e)  To examine or have examined the witnesses against him and to obtain the attendance and examination of witnesses on his behalf under the **same conditins** as witnesses against him."

First, with the Commission being the complaining party - not a client - and the hearing officer being both the prosecutor

19.

judge (trier of facts - tribunal or however the Commission determines that party to be), Ms. Denton, by the farthest fetch of one's imagination, was neither "independent" nor "impartial".

Secondly, when the Commission, _sua sponte_, dismissed the exculpatory witnesses, a pathetic attempt to cover-up for its colleagues in government, its violation of the Covenant's Article 14.3(e) **same condition** clause was a direct violation of Rogers' guaranteed civil rights under the Covenant and the mandate in **Morrissey id.,** requirement that however informal that parole hearings **are** conducted, they must still adhere to "due process".

Therefore, if a honest hearing had been conducted with the presence of the exculpatory witnesses - even though they most likely would have lied - the physical evidence which they know exists would have caused a different conclusion than Rogers intentionally caused the fraud to which he is now sentenced to a term of 10 years.

Accordingly, due to the Commission's own misconduct, the parole conditions must be terminated and Rogers release from prison should be effected immediately.

### DECLARATION OF GERALD L. ROGERS

I swear under the penalty of perjury that the facts that are stated herein are true and correct. Done on this 21st day of May, 2006 in the City of Anthony NM/TX.

Declarant Gerald L. Rogers

## III.  CONCLUSION

**WHEREFORE,** whether the Commission's Title 18 USC §4201 et. seq., applicable and enforceable against the petitioner, the repealed federal statute, National Prohibition (Alcohol) Act puts the nail in the Commission's coffin.  For the government to have enforced that federal Prohibition statute in any of the 48 States, it was required that the States of the Union ratify the **18th Amendment of the United States Constitution.**

Here, the Commission's legal position is no different. The States of the United States have not only not ratified a requisite amendment to the Constitution, but no State is of record surrendering authority nor jurisdiction to the Commission over the petitioner.  Pure and simple, the Commission's abuse of process, whether intentional or not, constitutes a devolution of the Constitution and its controlling laws which borders on a "Seditious Conspiracy" as defined by title 18 USC §2384 - and must be terminated.

## III.  VERIFICATION

I swear under the penalty of perjury that the facts stated and law presented are true and correct.  Done in the city of Anthony New Mexico on this 13th day of July , 2006.

Respectfully submitted by

Declarant, Gerald L. Rogers
FCI LaTuna 12327-086
P.O. Box 3000
Anthony NM/TX 88021

Exhibit 12 to Defendants' Motion to Dismiss

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

GERALD LEO ROGERS,          )
                         Petitioner,    )
v.                                )        Case No. CIV-05-724-R
                                )
JOE KEFFER, WARDEN,       )
                        Respondent.  )

## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner appearing *pro se*, brings this action pursuant to 28 U.S.C. § 2241 seeking a writ of habeas corpus. Petitioner challenges as violative of his federal due process rights, actions of the United States Parole Commission (Commission). The matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Petition be denied.

### I.    Factual Background

Petitioner is currently in federal custody serving an aggregate sentence of 35 years imprisonment for causing the filing of false tax returns (26 U.S.C. § 7206(2)), mail fraud (18 U.S.C. § 1341) and securities fraud (15 U.S.C. §§ 77q(a) and 77x, 18 U.S.C. § 2) for which he was convicted in the United States District Court for the Central District of California (Case No. 82-CR-292) and the United States District Court for the District of Colorado (Case No. 84-CR-337-1). *See* Respondent's Motion to Dismiss Amended Petition [Doc. #40] (Respondent's Motion), Exhibits 3 and 4.

On December 1, 2000, Petitioner was paroled and was to remain under parole supervision until December 29, 2024. *See* Respondent's Motion, Exhibit 5. As a result of

Exhibit 12 to Defendants' Motion to Dismiss

violating certain conditions of his release, Petitioner's parole was revoked. *See* Respondent's Motion, Exhibits 6 and 7. On December 24, 2003, Petitioner was reparoled, again to remain under parole supervision until December 29, 2024. *See* Respondent's Motion, Exhibit 8.

On February 25, 2005, the Commission issued a warrant charging Petitioner with parole violations. *See* Respondent's Motion, Exhibits 9-1, 9-2 and 9-3. Petitioner was served with a copy of the warrant on February 25, 2005. *See* Respondent's Motion, Exhibit 10. Upon arrest, Petitioner was committed to the Federal Detention Center in Seattle, Washington. *See* Respondent's Motion, Exhibits 10 and 12.

A preliminary interview was conducted on March 24, 2005. *See* Respondent's Motion, Exhibit 13. Petitioner admitted two of the three charges brought against him. *Id*. Petitioner requested a local revocation hearing on that same date. *See* Respondent's Motion, Exhibit 14. This request was denied and Petitioner was transferred to FTC, Oklahoma City for the hearing.

Petitioner's parole revocation hearing was held at FTC, Oklahoma City on July 12, 2005. *See* Respondent's Motion, Exhibit 16. The hearing examiner found Petitioner had violated conditions of his parole. The hearing examiner calculated Petitioner's sentencing guidelines as 0-8 months. However, the hearing examiner recommended a reparole date after the service of 12 months based on Petitioner's history of violating the conditions of his parole and his repeated failure to disclose his financial holdings. *Id*. The Commission concurred with the findings of the hearing examiner and issued a Notice of Action dated August 1, 2005. *See* Respondent's Motion, Exhibit 17.

Exhibit 12 to Defendants' Motion to Dismiss

## II.    **Procedural History**

Petitioner filed this action on June 24, 2005.  At the time he filed the action, no parole revocation hearing had been conducted.  However, as detailed above, during the pendency of this action, on July 12, 2005, the hearing was conducted, Petitioner's parole was revoked and the Commission granted him a reparole date after the service of twelve months. Respondent filed a Motion to Dismiss following the decision of the Commission contending that in light of the parole revocation hearing, the ground for relief raised in the Petition had become moot. Petitioner then filed an Amended Petition, without leave of court, and raised additional grounds for relief.  In the amended Petition, he asserts the same basis for relief as raised in his original ground for relief together with the following four additional grounds: (1) the Commission violated his due process rights by sentencing Petitioner outside the guidelines without prior notice; (2) his conviction and sentence from the United States District Court for the District in Colorado, Case No. 84-CR-337-1, has never been "reviewed by a higher tribunal" and therefore violates Article 15 of the International Covenant on Political and Civil Rights; (3) witnesses testifying at trial in Case No. 84-CR-337 were suborned or bribed; and (4) the trial judge altered the trial transcripts in Case No. 84-CR-337 to obstruct Petitioner's direct appeal, and trial audiotapes were stolen to obstruct his motion for relief pursuant to 28 U.S.C. § 2255.

Respondent has moved to strike the Amended Petition.  Alternatively, Respondent seeks dismissal of the grounds raised in the Amended Petition.  *See* Respondent's Motion to

Exhibit 12 to Defendants' Motion to Dismiss

Strike Petitioner's Amended Petition for Writ of Habeas Corpus, or in the Alternative Motion to Dismiss Amended Petition for Writ of Habeas Corpus [Doc. #40].

## III.    Analysis

### A.    Leave to Amend the Petition

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, once a responsive pleading has been filed, a party may amend his pleading only by leave of Court.  As noted, Respondent filed a responsive pleading prior to Petitioner's filing of the Amended Petition. *See* Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus [Doc. #19]. Petitioner did not obtain leave of Court prior to filing the Amended Petition.  Nonetheless, Rule 15(a) provides that leave "shall be freely given when justice so requires."

Here, to the extent Petitioner seeks to supplement his original petition with an additional claim arising out of the revocation of his parole, the Court finds it is in the interest of justice to allow Plaintiff to amend the Petition.  Therefore, leave should be granted to raise ground two of the Amended Petition, challenging the Commission's lack of prior notice that Petitioner would be sentenced outside the guidelines.  The Amended Petition should be deemed filed  as to grounds one and two raised therein.

The interests of justice would not be served, however, by allowing Petitioner to raise the remaining grounds for relief as set forth in the Amended Petition.  Grounds three, four and five relate to challenges to Petitioner's conviction and sentence in Case No. 84-CR- 337- 1.  Such claims must be brought pursuant to 28 U.S.C. § 2255.    Petitioner has not

Exhibit 12 to Defendants' Motion to Dismiss

demonstrated that the section 2255 remedy is inadequate or ineffective.[1]  *See, e.g., Caravalho* 177 F.3d at 1178 (discussing section 2255 as the exclusive remedy to test the validity of a judgment and sentence unless such remedy is inadequate or ineffective).  Therefore, leave to amend should be denied as to the claims raised in grounds three, four and five of the Amended Petition.[2]  Accordingly, Respondent's Motion to Strike Amended Petition [Doc. #40] should be granted in part and denied in part.

### B.    <u>Amended Petition</u>

Before addressing the grounds raised in the Amended Petition, the Court must attend to some housekeeping matters to ensure an accurate docket is maintained in this action.  Respondent moved to dismiss the original Petition.  *See* Motion to Dismiss Petition for Writ of Habeas Corpus [Doc. ##19 and 23].[3]  The Amended Petition now supercedes the original

---

[1]The judgment of conviction and sentence was entered in 1990.  *See* Respondent's Motion, Exhibit 3. Thus, it appears any challenge to the conviction and sentence is now time-barred.  *See* 28 U.S.C. § 2255.  That a section 2255 petition may now be time-barred, however, is not grounds for finding that section 2255 relief is inadequate or ineffective.  *See Caravalho v. Pugh*, 177 F.3d 1177, 1178-1179 (10th Cir. 1999); *see also Barron v. Fleming*, 37 Fed. Appx. 358, 360 (10th Cir. Feb. 21, 2002) (unpublished op.) ("Merely because a 2255 motion may be time barred does not render it inadequate or ineffective.").

[2]With respect to the claims raised in grounds four and five of the Amended Petition, Petitioner does not request as relief dismissal of the conviction or  release from confinement. Instead, he requests this Court to order hearings.  Nonetheless, the purpose of such hearings would necessarily be to call into question the validity of his conviction and sentence.  Therefore, such claims are not proper in this action brought pursuant to 28 U.S.C. § 2241.

[3]Respondent filed two versions of the Motion to Dismiss which are identical except that the first Motion [Doc. #19] includes three exhibits which contain personal data identifiers.  As a result of the inadvertent inclusion of this information, Respondent requested permission to file the Motion to Dismiss under seal so as to comply with the E-Government Act of 2002,  Pub.L. No. 107-347, 116 Stat. 2899 (Dec. 17, 2002).  *See* Respondent's Motion to File Under Seal [Doc. #20].  The Court

(continued...)

Petition. Respondent has also moved to dismiss the grounds raised in the Amended Petition, reasserting the arguments and authority relied upon in the Motion to Dismiss and addressing the additional grounds for relief raised by the Amended Petition.[4] Therefore, Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus [Doc. ##19 and 23] should be stricken as moot.

### 1.    Ground One – Delayed Parole Revocation Hearing

In ground one of the Amended Petition, Petitioner contends that his due process rights have been violated because the Commission failed to conduct his parole revocation hearing within the statutorily prescribed time period. Petitioner further contends that as a result of this delay, the hearing was time-barred and he is entitled to immediate release.

Due process requires that a parole violation hearing be conducted "within a reasonable time after the parolee is taken into custody." *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972). Federal law provides that institutional revocational hearings are to be held within 90 days of the execution of the parole violator warrant by the arrest of the parolee under the warrant. 18 U.S.C. § 4214(c); 28 C.F.R. § 2.49(f).[5] In the instant case, there is no dispute that the

---

[3](...continued)
granted Respondent's request, *see* Order [Doc. #21], but required Respondent to file a redacted copy of the Motion to Dismiss for the public record. Respondent complied with the Court's order and filed the redacted copy. *See* Motion to Dismiss [Doc. #23].

[4]Although Respondent moves to dismiss the Amended Petition, Respondent has attached evidentiary materials relied upon by the Court in addressing Petitioner's grounds for relief. Therefore, Respondent's motion to dismiss is treated as a response to the Amended Petition.

[5]The statutes and regulations referred to in this Report apply to prisoners convicted for offenses committed prior to November 1, 1987, such as Petitioner. *See* Parole Commission and
(continued...)

Exhibit 12 to Defendants' Motion to Dismiss

Commission did not conduct a timely parole revocation hearing as required by federal law and its own regulation.[6]  However, on July 12, 2005, subsequent to the filing of the Petition, a hearing was conducted.  *See* Respondent's Motion, Exhibit 16, Hearing Summary.  As a result, Respondent seeks dismissal of the Petition contending that this ground for relief is now moot.

"[A] habeas petitioner who has been deprived of timely parole consideration is entitled to a hearing, not release."  *Jefferson v. Hart*, 84 F.3d 1314, 1317 (10th Cir. 1996).  *See also Bryant v. Grinner*, 563 F.2d 871, 872 (7th Cir. 1977) (remedy for a late hearing is a hearing).  Because Petitioner has now received his parole revocation hearing, he has received the only relief to which he is entitled, unless he can demonstrate prejudice as a result of the delay.  *See Jefferson*, 84 F.3d at 1317 (because the petitioner had received a hearing, he had "received all the relief to which he was entitled"); *Harris v. Hurley*, No. 99-1382,

---

[5](...continued)
Reorganization Act of 1976 (PCRA), Pub. L. No. 94-233, §2, 90 Stat. 219 (codified as amended at 18 U.S.C. §§ 4201-4218).  The Parole Commission operates under authority of the PCRA.  The PCRA was repealed and replaced by the Sentencing Reform Act of 1984 (SRA), effective November 1, 1987.  Under the SRA, the Parole Commission was to be phased out and parole was to be abolished.  However, the PCRA continues to govern the sentences of those prisoners sentenced prior to the effective date of the SRA and Congress has repeatedly extended the life of the Parole Commission to administer those prisoners, like Petitioner, with pre-SRA sentences.  *See Bledsoe v. United States*, 384 F.3d 1232, 1233-1234 (10th Cir. 2004).  The life of the Commission has most recently been extended to October 31, 2008.  *See* Pub. L. No. 109-76, § 2, 119 Stat. 2035.  Any contention raised by Petitioner related to the extinction of the Parole Commission, therefore, is without merit.

[6]As set forth, the parole violator warrant was executed and Petitioner was taken into federal custody on February 25, 2005.  Thus, the 90-day statutory time limit for holding Petitioner's revocation hearing expired on May 26, 2005.  The revocation hearing was conducted 7 weeks later on July 12, 2005.  Respondent's Motion, Exhibits 9, 10, 16.

Exhibit 12 to Defendants' Motion to Dismiss

2000 WL 358388 at *4 (10th Cir. April 6, 2000) (unpublished op.)[7] ("[T]he failure to hold a timely parole hearing does not violate due process unless the petitioner can show prejudice by the delay."). *See also King v. Hasty*, 154 F. Supp.2d 396, 401 (E.D.N.Y. 2001) (petitioner must show that a delay in receiving a parole revocation hearing was unreasonable and prejudicial in order to establish a due process violation).

Petitioner does not allege in his Petition that the delay in holding his revocation hearing resulted in any prejudice. In addition, there is no indication in the record that evidence or witnesses were lost or that the delay otherwise adversely affected the Petitioner's ability to present a defense at the revocation hearing.[8] Therefore, Petitioner was not denied due process as a result of the delay in conducting his parole revocation hearing and he is not entitled to habeas corpus relief. *See Cortinas v. United States Parole Comm'n*, 938 F.2d 43, 45 (5th Cir. 1991) (rejecting the petitioner's request for habeas relief in light of his failure to allege that the delay in holding a parole revocation hearing affected his ability to present facts or contest the violation); *Berg v. United States Parole Comm'n*, 735 F.2d 378, 379 n. 3 (9th Cir. 1984) (rejecting petitioner's request for release from incarceration in light of his failure to allege that a delay in holding a parole revocation hearing was unreasonable or

---

[7]This and all other unpublished opinions referenced in this Report are cited for their persuasive value in accordance with 10th Cir. R. 36.3(B).

[8]Petitioner raised the issue of the untimeliness of his revocation hearing before the hearing examiner. The hearing examiner questioned Petitioner as to how the delay had "adversely affected his ability to defend himself against any of the charges." *See* Respondent's Motion, Exhibit 16, Hearing Summary at 2 "Procedural Considerations." Petitioner was unable to provide any information as to how the delay had adversely affected his defense of the charges. *See id*.

Exhibit 12 to Defendants' Motion to Dismiss

prejudicial and noting that the only remedy for the delay had been rendered moot once the hearing was held). Accordingly, ground one of the Amended Petition should be denied.

### 2. Ground Two – Prior Notice of Departure from Guidelines

In his second ground for relief, Petitioner contends his due process rights were violated because he was not provided prior notice of the hearing examiner's intention to depart from the sentencing guidelines. He contends such notice is required by the Commission's own regulations, but fails to cite any specific regulatory provision. According to Petitioner, prior notice is necessary so that he may "defend against being sentenced outside of the guidelines." *See* Amended Petition at 4, Ground Two, Supporting Facts.

The statutory provision governing Petitioner's claim is 18 U.S.C. § 4206(c) which provides:

> The Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing: *Provided*, That the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon.

This statute permits the Commission to go outside of the guidelines articulated at 28 C.F.R. § 2.20.[9]

---

[9]The regulations establish a grid which contains a "salient factor score," measuring an inmate's potential for violating parole, and a "severity rating," reflecting the severity of the inmate's underlying offense. 28 C.F.R. § 2.20. Once the salient factor score and the severity rating are established, the guidelines provide a suggested range of time that the inmate should serve before being paroled. *Id.* "Where the circumstances warrant," the Commission may select a presumptive parole date outside the guidelines, either above or below the suggested time range. *Id.*, § 2.20(c).

Exhibit 12 to Defendants' Motion to Dismiss

The only notice contemplated by the statute is notice of the reasons for the Commission's determination.   In its Notice of Action, the Commission provided the following reasons for a decision above the guidelines:

> Your parole violation behavior has been rated as administrative violation(s) of Category One severity.  Your salient factor score is 7. . . . . As of 07-12-2005, you have been in confinement as a result of your violation behavior for a total of 5 month(s).  Guidelines established by the Commission indicate a customary range of 0-8 months to be served before release.  After review of all relevant factors and information, a decision above the guidelines is warranted because you are a poorer risk than indicated by your Salient Factor Score in that you have developed a pattern of participating in employment that is in violation of the special conditions of your parole.  You have developed a pattern of failure to comply with disclosure of your financial dealings to your USPO as required.  Your original offense involved Fraudulent Moving Tax Shelter Schemes and Preparation of False Income Tax Returns.  You were involved in fraudulent tax shelter schemes for gamma and development expenses.  Following your supervision, you have continued to become involved in questionable business activities that involved investors and financial transactions.  Based on your activities in the community and your failure to adhere to disclosure requirement made by the special conditions, you present a more serious monetary threat to the community and based on your previous activities, it is unlikely that you will comply with the conditions of release.

*See* Respondent's Motion, Exhibit 17, Notice of Action.

Petitioner does not challenge the reasons advanced by the Commission in support of its decision to sentence him above the guidelines. The record demonstrates the Commission's reasons are properly supported and justify the decision to go above the guidelines.  *Compare Kele v. United States Parole Comm'n*, No. 97-1092, 1997 WL 606872 at *3 (10th Cir. Oct. 2, 1997) (unpublished op.) (Commission provided rational basis for its upward departure from the guidelines  when it stated in its notice of action that the petitioner represented a more serious risk than indicated by his salient factor score); *see also Evenstad v. United*

Exhibit 12 to Defendants' Motion to Dismiss

*States Parole Comm'n*, 783 F. Supp. 1297, 1303 (D. Kan. 1992) (Commission's decision to exceed the guidelines was "amply supported in light of petitioner's repeated offenses and his status as a parole violator"). Petitioner received all the notice to which he was entitled under the regulations. The fact that he did not receive prior notice that there would be a departure from the guidelines fails to give rise to a violation of his federal constitutional rights. Therefore, Ground Two of the Amended Petition should be denied.

### C.    <u>Emergency Writ for Immediate Release</u>

On December 5, 2005, Petitioner filed an Emergency Writ for Immediate Release [Doc. #47]. Pursuant to the twelve-month sentencing Petitioner received at his parole revocation hearing, Petitioner alleges his current release date is February 25, 2006. Petitioner claims because he was not given prior notice of the hearing examiner's intention to upwardly depart from the guidelines, he should have been sentenced to a maximum of eight months. According to Petitioner, that eight-month period expired on October 25, 2005 and, therefore, he should be immediately released from incarceration. Petitioner raises other contentions previously addressed.

As analyzed above, Petitioner's Ground Two should be denied because he was not entitled to prior notice of the hearing examiner's decision to upwardly depart from the sentencing guidelines. Petitioner has not raised any other grounds for challenging the hearing examiner's decision. Petitioner, therefore, has failed to establish his right to immediate release. Accordingly, Petitioner's Emergency Writ for Immediate Release should be denied.

Exhibit 12 to Defendants' Motion to Dismiss

## IV.    **Pending Motions**

Petitioner has been deemed a "vexatious litigator" by other courts of the United States. *See* Respondent's Motion at 3, n.2 and Exhibit 18. Petitioner has engaged in similar conduct in this litigation. He has filed eleven motions that currently remain pending before the Court. Those motions are: Motion to Writ Petitioner Back Into the Jurisdiction of this Court [Doc. #15]; Motion to Supplement the Record [Doc. # 26]; Motion to Dismiss Respondent's Motion to Dismiss or in the Alternative An Evidentiary Hearing [Doc. #27]; Motion to Supplement [Doc. #28]; Motion to Replace Magistrate Judge [Doc. # 29]; Motion to Supplement [Doc. # 30]; Motion to Dismiss E-Government Act of 2002 Violation [Doc. #31]; Motion to Bring In Third-Party [Doc. #33]; Motion to Disqualify Court [Doc. #37]; Motion to Withdraw Disqualification Motions [Doc. #45]; and Motion to Withdraw All Motions [Doc. # 46].

The impetus behind Petitioner's filing of the majority of these motions was a motion filed by Respondent requesting permission to file the Motion to Dismiss Petition for Writ of Habeas Corpus [Doc. #19] under seal pursuant to the E-Government Act of 2002 (the E-Government Act). *See supra*, footnote 3.[10] This rather insignificant filing event has been

---

[10]The stated purpose of the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899 (Dec. 17, 2002), is to enhance the management and promotion of electronic Government services "by establishing a broad framework of measures that require using Internet-based information technology to enhance citizen access to Government information and services." Section 205 of the Act, governing the Federal Courts, includes a provision for redaction of certain categories of information from electronic filings in order to protect privacy and security concerns. The provision allows for an unredacted document to be filed under seal and for a redacted copy to be filed electronically for public record. *See id.*, § 205(a)(7)(c)(3)(iv).

Exhibit 12 to Defendants' Motion to Dismiss

misapprehended by Petitioner and has resulted in a flood of motions filed by Petitioner claiming that he has been charged with a violation of the E-Government Act.

The two most recently filed motions [Doc ##45-46] request that all prior motions be withdrawn. It is recommended that these motions be granted and that all remaining motions [Doc. ## 15, 26, 27, 28, 29, 30, 31, 33, and 37] be stricken as moot. Alternatively, Petitioner's motions should be denied. Even absent Petitioner's voluntary request to withdraw these motions, none of them have merit.

Petitioner's pending motions are addressed generally in the order in which they were filed:

### Motion to Writ Petitioner Back Into the Jurisdiction of this Court [Doc. #15]

On July 25, 2005, Petitioner filed Motion to Writ Petitioner Back Into the Jurisdiction of this Court [Doc. #15]. Petitioner requested this relief because he had been transferred from FTC Oklahoma City -- the place of his incarceration at the time this action was originated -- to a federal correctional institution in Texas. In a habeas corpus action, jurisdiction attaches at the time the petition is filed and subsequent transfers of the petitioner outside the jurisdiction of the Court do not defeat the Court's jurisdiction. *Santillanes v. United States Parole Com'n*, 754 F.2d 887, 888 (10th Cir. 1985) ("It is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change."). Petitioner's Motion, therefore, lacks merit and should be denied.

Exhibit 12 to Defendants' Motion to Dismiss

## Motion to Supplement the Record [Doc. #26]

Petitioner has filed a Motion to Supplement the Record with his own declaration. In that declaration, he alleges that prison officials, government attorneys and his probation officer have engaged in various acts to conspire against him and to conceal evidence from him. According to Petitioner, some of these actions relate to a pending securities lawsuit brought against him in Texas. Petitioner fails to allege any facts in the declaration that would support the grounds for habeas relief asserted in this action. Because the declaration lacks any relevance to the grounds for habeas relief, it is recommended that Petitioner's Motion to Supplement the Record be denied.

## Motion to Dismiss Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus [Doc. #27]

In this Motion, Petitioner contends that Respondent has tried to thwart an adjudication of the merits of his habeas petition by attempting to impose upon him charges of violating the E-Government Act. As relief in this motion, he requests "an immediate evidentiary hearing" or "an immediate Order for his release on Parole." Due to the filing of the Amended Petition, it has previously been recommended that Respondent's original Motion to Dismiss be stricken. This recommendation necessarily renders moot Petitioner's Motion to Dismiss Respondent's Motion to Dismiss. Moreover, Petitioner's motion is groundless in both law and fact as he has not been charged with any violation of the E-Government Act. Therefore, Petitioner's Motion should be denied.

Exhibit 12 to Defendants' Motion to Dismiss

### Motions to Supplement Record Concerning Evidence Contradictory to E-Government Act [Doc. #28 and #30]

In these Motions, Petitioner again seeks to supplement the record with allegations of conspiratorial actions by government officials based upon his misapprehension that he has been charged with violations of the E-Government Act. As previously set forth, no such charges have been made against Petitioner. His allegations of conspiracy are not relevant to his grounds for habeas corpus relief. These Motions are frivolous and should be denied.

### Motion to Replace Magistrate Judge [Doc. #29]

On September 18, 2005, Petitioner filed a motion requesting that the undersigned be removed as the Magistrate Judge to which this matter has been referred. As his primary grounds for removal, Petitioner alleged the undersigned has unreasonably delayed in ruling on the merits of his habeas petition. Petitioner erroneously contends the undersigned was required to issue a decision within "72 hours." Petitioner further contends the undersigned unconstitutionally allowed new charges to be brought against him – *i.e.*, a violation of the E-Government Act. According to Petitioner, such charges are barred by the prohibitions against double jeopardy and *ex post facto* application of the laws. Finally, Petitioner reiterates that because his parole revocation hearing was not conducted within the requisite ninety-day period, he is entitled to immediate release and the undersigned has disregarded his right to immediate release.

The statutory standard for disqualification of a judge is self-enforcing, and may also be asserted by a party by means of a motion to the trial court. *United States v. Davidson*, 482 F.Supp. 827, 829 (W.D. Okla. 1979). While a judge should disqualify himself when "his

Exhibit 12 to Defendants' Motion to Dismiss

impartiality might reasonably be questioned," 28 U.S.C. § 455(a), a party seeking recusal must provide a reasonable factual basis to question the judge's impartiality. *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir.1995). "The statute is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice." *Tonkovich v. Kansas Bd. of Regents*, 924 F.Supp. 1084, 1087 (D. Kan. 1996), *quoting United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993). Moreover, "[t]here is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987); *Willner v. University of Kansas*, 848 F.2d 1023, 1027 (10th Cir. 1988) (trial judge has duty not to recuse himself on unsupported speculation).

Title 28 U.S.C. § 455(b)(1) also requires disqualification when the judge has a "personal bias or prejudice concerning the party." However, the "bias or prejudice" adequate to cause disqualification under § 455(b) generally requires that such "be established by matters outside and apart from litigation." *Davidson*, 482 F.Supp. at 829.

As previously set forth, Petitioner mistakenly and erroneously apprehends the Court's Order of August 19, 2005 [Doc. #21], which allowed Respondent to file his Motion to Dismiss under seal, as some sort of charge brought against Petitioner for alleged violations of the E-Government Act. Petitioner has not been charged with any such violations. Moreover, there is no set time period within which this Court must adjudicate his § 2241 petition. Indeed, most of the delay in rendering a decision in this action is the result of the numerous and largely frivolous filings made by Petitioner. And, as discussed in relation to

16

Exhibit 12 to Defendants' Motion to Dismiss

the merits of Petitioner's grounds for relief, the delay in his parole revocation hearing does not give rise to his entitlement to release from prison; rather, the remedy is to order the hearing to be conducted.  Petitioner has failed to establish that any purported delay in addressing the merits of his habeas petition has resulted from impartiality, bias or prejudice on the part of the undersigned.  Therefore, it is recommended that Petitioner's Motion to Replace Magistrate Judge [Doc. #29] be denied.

### Motion to Dismiss E-Government Act of 2002 Violation [Doc. #31]

Petitioner requests the Court to "dismiss the respondent's motion to maintain the petitioner's false imprisonment pursuant to 'E-Government Act of 2002' based on the Double Jeopardy Clause of the United States Constitution Fifth Amendment." This Motion is frivolous and should be denied.

### Motion to Bring in Third-Party [Doc. #33]

In this Motion, Petitioner seeks to bring in the United States of America as a party "as a result of the Respondent's 'E-Government Act of 2202' counter claim . . . ."  Petitioner's request is based entirely upon his erroneous assumption that he has been "charged" with a violation of the E-Government Act.  Again, because no such charges exist and further, because the United States of America is not a proper party to this habeas petition brought pursuant to 28 U.S.C. § 2241, this Motion should be denied.

### Motion to Disqualify this Court [Doc. #37]

On October 17, 2005, Petitioner filed a motion to disqualify the entire Court. Petitioner repeats in this Motion nonsensical, fanciful and frivolous allegations that the Court

Exhibit 12 to Defendants' Motion to Dismiss

has enforced a "'Bill of Attainder'" under color of the 'E-Government Act of 2002.'"
Because Petitioner has not been charged with any violation of the E-Government Act, this
Motion should be denied.  Petitioner has failed to show any basis for disqualification of the
Court.

## **RECOMMENDATION**

It is recommended that Respondent's Motion to Strike Petitioner's Amended Petition
for Writ of Habeas Corpus [Doc. #40] be granted in part and denied in part.  It is
recommended that Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus
[Doc. ## 19 and 23] be stricken as moot.  It is further recommended that Respondent's
Motion to Dismiss Amended Petition for Writ of Habeas Corpus [Doc. #40] construed as a
response to the Amended Petition, be granted and that the Amended Petition for Writ of
Habeas Corpus [Doc. #34] be denied.   It is also recommended that Petitioner's Emergency
Writ for Immediate Release [Doc. #47] be denied.

In addition, it is recommended that Petitioner's Motion to Withdraw Disqualification
Motions [Doc. #45] and Motion to Withdraw All Motions [Doc. # 46] be granted and the
following motions filed by Petitioner be stricken as moot: Motion to Writ Petitioner Back
Into the Jurisdiction of this Court [Doc. #15]; Motion to Supplement the Record [Doc. # 26];
Motion to Dismiss Respondent's Motion to Dismiss or in the Alternative An Evidentiary
Hearing [Doc. #27]; Motion to Supplement [Doc. #28]; Motion to Replace Magistrate Judge
[Doc. # 29]; Motion to Supplement [Doc. # 30]; Motion to Dismiss E-Government Act of
2002 Violation [Doc. #31]; Motion to Bring In Third-Party [Doc. #33];  and Motion to

Exhibit 12 to Defendants' Motion to Dismiss

Disqualify Court [Doc. #37]. In the alternative, it is recommended that Petitioner's pending motions [Doc. ## 15, 26, 27, 28, 29, 30, 31, 33, 37, 45 and 46] be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by January __3rd__, 2006. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral [Doc. #3] by the District Judge in this matter.

ENTERED this __12th__ day of December, 2005.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE

Exhibit 13 to Defendants' Motion to Dismiss

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **GERALD LEO ROGERS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CIV-05-724-R** |
| | ) | |
| **JOE KEFFER, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>O R D E R</u>

Before the Court are the Report and Recommendation of United States Magistrate Judge Valerie K. Couch entered December 12, 2005 and "Petitioner's Opposition to Magistrate Report," which the Court treats as an objection to the Report and Recommendation, filed January 3, 2005. The Court reviews the Report and Recommendation *de novo* in light of Petitioner's objection.

Petitioner's objection is, for the most part, an irrelevant diatribe. Petitioner does assert that Ninth Circuit case law should control in determining whether Petitioner's due process rights were violated, *citing Vargus v. United States Parole Commission*, 865 F.2d 191, 194 (9th Cir. 1988), and that prejudice is not an issue. However, in *Vargus*, where the appellant did not receive a preliminary hearing or interview until 40 days had passed after execution of the parole violator warrant, the court held that the delay without any evidence of prejudice was not unreasonable. It observed that "[e]ven given a violation of the Commission's own regulations, a due process violation occurs only when appellant 'establishes that the Commission's delay was both unreasonable and prejudicial.'" *Id., quoting Sutherland v.*

Exhibit 13 to Defendants' Motion to Dismiss

*McCall*, 709 F.2d 730, 732 (D.C. Cir. 1983). In a more recent case, the Ninth Circuit held that a petitioner was "entitled to relief for violation of section 4214 only if he was prejudiced by the violation." *Thompson v. Crabtree*, 82 F.3d 312, 316 (9th Cir.), *cert. denied*, 519 U.S. 975, 117 S.Ct. 410, 136 L.Ed.2d 323 (1996). Thus, Ninth Circuit law is consistent with that of this Circuit, so even if Ninth Circuit case law were controlling herein, Petitioner has not shown a due process violation and is not entitled to relief.

In accordance with the foregoing, the Report and Recommendation of the Magistrate Judge is ADOPTED in its entirety; Respondent's Motion to Strike Petitioner's Amended Petition for Writ of Habeas Corpus [Doc. No. 40] is GRANTED in part and DENIED in part; Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus [Doc. Nos. 19 and 23] is STRICKEN as moot; Respondent's Motion to Dismiss Amended Petition for Writ of Habeas Corpus [Doc. No. 40], construed as a response to the Amended Petition, is GRANTED; the Amended Petition for a Writ of Habeas Corpus [Doc. No. 34] is DENIED; Petitioner's Emergency Writ for Immediate Release [Doc. No. 47] is DENIED; Petitioner's Motion to Withdraw Disqualification Motions [Doc. No. 45] and Motion to Withdraw All Motions [Doc. No. 46] are GRANTED and Petitioner's motions filed as Doc. Nos. 15, 26, 27, 28, 29, 30, 31, 33 and 37 are STRICKEN. Alternatively, Petitioner's motions filed as Doc. Nos. 15, 26, 27, 28, 29, 30, 31, 37, 45 and 46 are DENIED.

Exhibit 13 to Defendants' Motion to Dismiss

**It is so ordered this 26ᵗʰ day of January, 2006.**

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

**ORIGINAL**

Exhibit 14 to Defendants' Motion to Dismiss

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAR - 2 2005

CLERK, U.S. DISTRICT COURT
By
        Deputy

|  |  |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | : |
| Plaintiff, | : |
| v. | : |
| PREMIUM INCOME CORP.,<br>INFOREX, LTD.,<br>TRI-FOREX INTERNATIONAL LTD.<br>also known as<br>TRI-FOREX, LTD. and<br>INTERNATIONAL FOREX COMPANY,<br>GERALD LEO ROGERS<br>also known as<br>JAY ROGERS AND JAY RODGERS, and<br>ALEXANDER IGOR SHEVCHENKO,<br><br>Defendants. | : |

CASE NO.

**3-05 CV 0416 M**

**FILED UNDER SEAL**

COMPLAINT FOR INJUNCTIVE
RELIEF, ANCILLARY EQUITABLE
RELIEF, AND CIVIL MONETARY
PENALTIES FOR VIOLATIONS OF
THE COMMODITY EXCHANGE
ACT, 7 U.S.C. § 1 *ET SEQ.*

I

## SUMMARY

1.     From at least January 2004 to the present, defendants have engaged in a fraudulent scheme to solicit members of the public throughout the United States to send them millions of dollars for the purpose of engaging in illegal foreign currency option transactions.  Defendants represent that they have over $80 million under management.

2.     Defendant Gerald Leo Rogers ("Rogers") directly or indirectly controls the illegal activities of the other defendants and is an ongoing economic threat to society. Rogers has a three-decade history of committing cunning white collar offenses, and has

Exhibit 14 to Defendants' Motion to Dismiss

defrauded the public in various multi-million dollar scams involving false investment programs, fictitious companies and products, and offshore bank accounts designed to keep funds away from both hapless customers and the United States government.

3.    In 1977 and 1990, Rogers was permanently enjoined from further violations of the registration and antifraud provisions of the federal securities laws by the United States District Courts for the Central District of California.  In 1987, Rogers was convicted of mail and tax fraud in the Central District of California in connection with another fraudulent scheme.  Rogers, who had been free on bond, failed to appear for sentencing, and was given a 10 year prison term and an additional five years' probation *in absentia*.  Rogers remained a fugitive until January 1990, when he was apprehended in Zurich, Switzerland in the possession of a false passport.

4.    In yet another criminal action, in 1990 Rogers was convicted of mail fraud, wire fraud, and tax fraud by the United States District Court for the District of Colorado, and sentenced to 25 years' imprisonment.  According to the indictment, Rogers defrauded thousands of investors into parting with approximately $79 million.  He was paroled on December 24, 2003, after serving 13 years.

5.    Within 30 days of his December 2003 release from prison, Rogers orchestrated his latest financial scam, as alleged herein.

6.    Rogers has previously been enjoined from the illegal commodity option activities alleged herein.  In 1990, the CFTC and the State of California jointly filed an injunctive action against Rogers for conducting unlawful, off-exchange commodity option transactions.  In 1993, the United States District Court for the Central District of

Exhibit 14 to Defendants' Motion to Dismiss
California permanently enjoined Rogers and the companies he controlled from engaging in that conduct.

7.      In the current scheme, Rogers and the other defendants solicit customers to send them funds by representing that customer funds will be used to engage in foreign currency covered call transactions, and that customers will be guaranteed a profitable annual return on their funds of between 10% and 14.2% with no risk of loss to their principal. Defendants represent that they make their "fixed income strategy of the decade" available exclusively in the United States under a special license agreement between defendants and a bank located in Switzerland.

8.      Contrary to defendants' representations to customers, even if customer funds are invested as promised, defendants cannot guarantee fixed profits. Further, the risk of loss may be substantial in connection with foreign currency covered call transactions.

9.      By falsely representing to customers that foreign currency covered call transactions produce guaranteed profits with no risk of loss to principal, defendants have fraudulently solicited individuals to send funds to accounts under their control at various domestic and offshore banks, and misappropriated customer funds.

10.      Defendants represent that customer funds will be deposited into individual Premium Income Corporation ("PIC") accounts and used exclusively for foreign currency option transactions. Although customer funds are initially deposited in bank accounts in the name of PIC, defendants do not disclose to customers that their funds are immediately transferred from the PIC bank accounts to a domestic bank account in the name of Inforex, Ltd. ("Inforex") under the sole control of Rogers, and then transferred to

3

Exhibit 14 to Defendants' Motion to Dismiss

offshore bank accounts in the name of Inforex. Defendants make monthly payments to some customers from the domestic Inforex bank account, and represent that those funds are derived from foreign currency option transactions taking place offshore. However, the Inforex domestic account that defendants use to make monthly payments to customers contains no funds that have been deposited either from offshore bank accounts or from trading accounts representing putative trading profits for customers. It appears that defendants are paying customers using the funds deposited by other customers in a classic "Ponzi" scheme.

11.    Defendants represent that they engage in foreign currency option transactions through an agreement they have with a Swiss bank called Union Bank Inter.net. In fact, Union Bank Inter.net is not physically located in Switzerland and is not registered with the Swiss Federal Banking Commission, as required by Swiss law. Its website is registered to a business located in Scottsdale, Arizona, and is paid for by credit cards in the name of Rogers and Inforex.

12.    Defendants represent that customer funds will be entirely used to conduct covered call option transactions and will not be used for any other purpose. Contrary to that claim, customer funds are routinely transferred to domestic accounts under the control of Rogers and Shevchenko and offshore accounts under Rogers's control. At least a portion of those funds are used for purposes unrelated to foreign currency options trading, including, but not limited to, the payment of personal expenses and the undisclosed payment of commissions to individuals who solicit customers on behalf of the defendants.

Exhibit 14 to Defendants' Motion to Dismiss

13.     Defendants have engaged, are engaging, or are about to engage in acts and

practices that violate the antifraud and designated contract market provisions of the

Commodity Exchange Act, as amended ("Act"), 7 U.S.C. § 1 *et seq.* (2002), and the

Regulations of the United States Commodity Futures Trading Commission ("CFTC"), 17

C.F.R. § 1.1 *et seq.* (2004).

14.     By making material misrepresentations and omissions about profits, risk

of loss, and defendants' own expertise in connection with trading foreign currency option

transactions and by misappropriating customer funds, defendants have violated the

antifraud provisions of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2002), and CFTC

Regulations 1.1(b) and 32.9, 17 C.F.R. § 1.1(b) and 32.9 (2004).

15.     By offering, selling, entering into, confirming the execution of, and/or

conducting a business for the purpose of soliciting, accepting any order for or otherwise

dealing in off-exchange foreign currency option contracts that are not conducted on or

subject to the rules of a board of trade designated or registered by the CFTC as a

designated contract market or derivatives transaction execution facility for such

commodity, and executed or consummated by or through a designated contract market,

defendants have violated the designated contract market provisions of Section 4c(b) of

the Act, 7 U.S.C. § 6c(b) (2002), and CFTC Regulation 32.11 (2004).

16.     Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2002),

plaintiff CFTC brings this action to enjoin defendants' commodity-related unlawful acts

and practices, to bar them from engaging in any commodity-related activities, and to

compel their compliance with the Act and the CFTC Regulations.  In addition, the CFTC

seeks civil monetary penalties, an accounting, restitution to investors, disgorgement of

Exhibit 14 to Defendants' Motion to Dismiss

defendants' ill-gotten gains, identification and repatriation of assets located outside the United States, the surrender of passports, the appointment of a temporary and permanent receiver if necessary, and such other relief as this Court may deem necessary or appropriate.

17.    Unless restrained and enjoined by this Court, defendants are likely, and will continue, to engage in the acts and practices alleged in this Complaint or in similar acts and practices, as more fully described below.

## II.

## JURISDICTION AND VENUE

18.    This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which provides that whenever it shall appear to the CFTC that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the CFTC may bring an action against such person to enjoin such practice or to enforce compliance with the Act.

19.    Pursuant to Section 2(a)(1)(A) of the Act, 7 U.S.C. § 2(a)(1)(A) (2002), the CFTC has exclusive jurisdiction over transactions involving commodity options such as the transactions alleged herein.  Section 4c(b) of the Act, 7 U.S.C. § 6c(b) and Regulation 32.11, 17 C.F.R. §32.11 require that those transactions be conducted on, by, or through a designated contract market or a derivatives transaction execution facility.

20.    Section 2(c)(2)(B) of the Act, 7 U.S.C. § 2(c)(2)(B) (2002), expressly clarifies that the CFTC has jurisdiction over contracts involving foreign currency options, as alleged herein, where the contract is offered to, or entered into with, a person that is

Exhibit 14 to Defendants' Motion to Dismiss

not an eligible contract participant, unless the counterparty is one of the six regulated

entities listed in Section 2(c)(2)(B)(ii) of the Act, 7 U.S.C. § 2(c)(2)(B)(ii).

21.    Section 1a(12)(A)(xi) of the Act, 7 U.S.C. § 1a(12)(A)(xi) (2002) defines

an eligible contract participant as an individual who has total assets in excess of "(I) $10

million; or (II) $5 million, and who enters into the agreement, contract, or transaction in

order to manage the risk associated with an asset owned or liability incurred, or

reasonably likely to be owned or incurred, by the individual." The Commission has

jurisdiction over the contracts at issue because, on information and belief, a substantial

number, if not most, of the customers defendants have solicited to enter into foreign

currency option transactions are members of the retail investing public and are not

eligible contract participants.

22.    Further, none of the defendants is one of the six proper counterparties as

enumerated in Section 2(c)(2)(B)(ii) of the Act, 7 U.S.C. § 2(c)(2)(B)(ii), who may offer

and/or enter into foreign currency option transactions with persons who are not eligible

contract participants.

23.    Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7

U.S.C. § 13a-1(e), because defendants are found in, inhabit, or transact business in the

Northern District of Texas, and the acts and practices in violation of the Act have

occurred within this District, among other places.

Exhibit 14 to Defendants' Motion to Dismiss

## III.

## THE PARTIES

**A.    Plaintiff**

24.    Plaintiff **United States Commodity Futures Trading Commission** ("CFTC") is the independent federal regulatory agency charged with the administration and enforcement of the Act, 7 U.S.C. § 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. § 1.1 *et seq.*

**B.    Defendants**

25.    Defendant **Premium Income Corporation** ("PIC") is a corporation that was registered in the State of Wyoming on January 20, 2004.  PIC lists its addresses as 2470 Westlake Avenue North, Suite 104, Seattle, WA 98109 and 2400 NW 80th Street, Suite 139, Seattle, WA 98117.  PIC lists Inforex, Ltd. as its principal.  PIC also represents that it is a wholly owned subsidiary and the USA division of Tri-Forex International, Ltd. PIC maintains an Internet website at www.premiumincomecorp.com.  PIC represents that it specializes in writing call options on foreign currency through its international network of currency exchange brokers.  PIC further represents that it makes this investment available exclusively in the United States under a license agreement with Union Bank Inter.net ("UBI").  According to PIC, UBI is located in Switzerland and is a wholly owned subsidiary of the "Churchill Bank Group serving in the United Kingdom with facilities in England, Denmark, Australia, Japan and elsewhere."  PIC has never been registered with the CFTC in any capacity.

26.    Defendant **Inforex, Ltd.** ("Inforex") is a corporation that was formed under the laws of the State of Nevada on December 2, 2002.  Inforex lists its business as

8

Exhibit 14 to Defendants' Motion to Dismiss

currency trading, and gives a corporate address of 4300 North Miller Road, Scottsdale,

AZ 85251. In May 2004, Inforex registered to do business in the State of Washington at

2470 Westlake Avenue North, Suite 104, Seattle, Washington 98109, which is the same

business address as PIC's.

27.     Defendant **Tri-Forex International, Ltd.** also known as Tri-Forex Ltd.

and International Forex Company ("Tri-Forex") represents that it is a company located in

London, England, with offices in Sydney, Tokyo, and Seattle. Tri-Forex lists its business

address in Seattle, Washington as 2470 Westlake Avenue North, Suite 104, Seattle,

Washington 98109, which is the same business address as PIC's. Tri-Forex claims to be

"the world's leading company for the funding of Currency Tax Strategies in the United

States." Contrary to these representations, the governments of the United Kingdom,

Australia, and the State of Washington have no records showing that Tri-Forex has

registered to do business in their jurisdictions. Tri-Forex has never been registered with

the CFTC in any capacity.

28.     Defendant **Gerald Leo Rogers,** also known as Jay Rogers and Jay

Rodgers ("Rogers"), maintains an address at 8517 West Rockwood Drive, Peoria,

Arizona. Rogers directly or indirectly controls PIC, Inforex and Tri-Forex, and is the

mastermind of the fraudulent scheme alleged herein. Rogers is the chief operating officer

for Inforex's business operations in the United States and is authorized to be the sole

signatory on Inforex's bank accounts in the United States. Rogers is also a signatory on

PIC bank accounts. Rogers has a commodity fraud, securities fraud, and criminal fraud

history that spans almost three decades. Rogers has never been registered with the CFTC

in any capacity.

Exhibit 14 to Defendants' Motion to Dismiss

29.     Defendant **Alexander Igor Shevchenko** ("Shevchenko") maintains a residence address at 414 NW 180th Street, Shoreline WA98177.  Shevchenko is the manager of PIC's Seattle business operation and is an authorized signatory on PIC bank accounts.  Shevchenko has never been registered with the CFTC in any capacity.

## IV.

## STATUTORY AND REGULATORY REQUIREMENTS

30.     Pursuant to Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and CFTC Regulations 1.1(b) and 32.9, 17 C.F.R. §§ 1.1(b) and 32.9, it is unlawful for any person to cheat or defraud or to attempt to cheat or defraud any person, willfully to make or cause to be made any false report or statement, or willfully to deceive or attempt to deceive any person in or in connection with commodity option transactions.

31.     Pursuant to Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and CFTC Regulation 32.11,  17 C.F.R. §§ 32.11, it is unlawful for any person to offer to enter into, to enter into, to execute, to confirm the execution of, or to conduct any office or business for the purpose of soliciting, or accepting any order for, or otherwise dealing in any transaction in or in connection with commodity options, unless such transaction is conducted on or subject to the rules of a contract market designated to trade commodity options, or a foreign board of trade, or specifically exempted under the Act.

32.     Section 2(c)(2)(B)of the Act, 7 U.S.C. § 2(c)(2)(B) (2002), grants the Commission jurisdiction over transactions involving a person that is not an eligible contract participant unless the counterparty, or person offering to be the counterparty of the person is:

(I)             a financial institution . . .,

Exhibit 14 to Defendants' Motion to Dismiss

(II)        a broker or securities dealer or futures commission merchant…,

(III)        an associated person of a broker or dealer or an affiliated person of

a futures commission merchant…,

(IV)        an insurance company…,

(V)        a financial holding company,

(VI)        an investment bank holding company.

33.        Section 1a(12)(A)(xi) of the Act, 7 U.S.C. § 1a(12)(A)(xi) (2002) defines

an eligible contract participant as an individual who has total assets in excess of "(I) $10

million; or (II) $5 million, and who enters into the agreement, contract, or transaction in

order to manage the risk associated with an asset owned or liability incurred, or

reasonably likely to be owned or incurred, by the individual."

## V.

## FACTS

**A.    Defendants Have Committed Widespread Fraud In
Connection With Foreign Currency Option Transactions**

34.        From at least 2004 and continuing through the present, Rogers and the

other defendants, either directly or through other persons or entities under their employ,

supervision and control, or acting in combination or concert with them, or by

participating or materially aiding in the offers and sales of commodity options, have

participated in a fraudulent scheme to solicit retail customers throughout the United

States and elsewhere to send funds to them for the purpose of engaging in foreign

currency covered call option transactions traded in the foreign exchange markets

("forex"). Defendants fraudulently obtain funds from customers by making

Exhibit 14 to Defendants' Motion to Dismiss

misrepresentations and omissions of material fact about profit, risk of loss, and their experience in connection with trading options on foreign currency.

### i. Covered Call Writing

35.      A "call" is one of two types of commodity options, and conveys to the buyer the right (but not the obligation) to purchase a specific commodity or other asset at a particular price during a specified period of time.  The price for which the commodity can be bought (in the case of a call) under the terms of the option contract is referred to as the option's strike price or exercise price.  The date on which an option expires--the date after which it can no longer be exercised--is the option's "expiration date."  "European style" options – the type involved in the covered call transactions offered by PIC – can only be exercised on the expiration date.  The price of an option itself, *i.e.*, the sum of money or other consideration paid by the buyer of an option and received by the seller of an option, is the option's "premium."

36.      The option seller's or writer's potential for profits is limited to the amount of the premium received for sale of the option.  The potential for losses, however, is virtually unlimited.  For example, the seller or writer of a call option on a given commodity will realize a profit in the amount of the premium received if the commodity price never rises above the strike price of the option, since the option will expire unexercised.  To the extent that the commodity price rises above the strike price by an amount that more than offsets the original premium income, and continues to rise as expiration of the option approaches, however, the call option seller stands to lose ever-increasing amounts.

37.      Covered calls are call options sold, or written, against an asset that one owns (called "cover").  If the covered call is ever exercised by the holder of the option,

Exhibit 14 to Defendants' Motion to Dismiss

the writer of the option can satisfy the exercise by delivering the cover. In essence, the covered call writer exchanges the opportunity to participate in potential increases in the value of the asset that he uses for cover for the option premium that is received from the sale of the call option. In the scheme alleged in this complaint, the defendants purported to write call options valued against a foreign currency rate and covered by an asset consisting of U.S. dollars.

38.    The risk retained by the covered call writer is that the value of the asset that provides cover may decrease in value by more than the amount of the premium received from writing the option. In the extreme, the covered call writer could lose the entire value of the cover and be left with only the premium.

### ii. Scope Of Defendants' Fraudulent Scheme

39.    Within the last six months, defendants have solicited customers to open accounts with PIC for the purpose of engaging in foreign currency covered call transactions. Calling their scheme the "Fixed Income Strategy of the Decade," defendants have aggressively marketed their fraudulent scheme to the public through public seminars, direct mailings, public advertisements, and the Internet websites www.premiumincomecorp.com ("PIC Website"), www.premiumincomebrokers.com ("PIB Website"), and www.unionbankinter.net (UBI Website").

40.    Defendants especially target retired persons to send funds to PIC. Defendants represent that speculation in stocks could be a recipe for disaster for persons who are retired or approaching retirement age, and that PIC's "guaranteed locked-in profits" represents the solution to their fixed-income dilemma. Defendants further

Exhibit 14 to Defendants' Motion to Dismiss

represent that PIC's purported locked-in profits "will almost always out-perform Government bonds, bank CDs and money market accounts."

41.    The scheme the defendants have promoted is as follows:  PIC offers an investment at its seminars, and through its brochure and web-site, entitled "Writing Covered Calls on Currency Deposits," through which PIC represents that it sells covered currency calls on the investor's behalf to a speculator.  Under the covered call, an investor deposits currency (U.S. dollars) with PIC, and is paid upfront premiums by a speculator who receives a call option granting him the right, but not the obligation, to buy the investor's currency deposit in exchange for Euros at the prevailing exchange rate at either a 5 year or 10 year expiration date.  The currency calls purportedly are written with European option terms, which differ from American terms, in that the European call cannot be exercised until the expiration date.  The solicitation material claims that in writing covered calls on behalf of its customer, PIC will "never place your deposit(s) at risk." To give the customer the appearance of safety, PIC's brochure emphasizes that the customer is not the "speculator" in this transaction.

42.    Defendants have perpetuated their fraudulent scheme by actively recruiting financial planners, insurance agents, and other persons throughout the United States to become PIC brokers.  Defendants enter into written broker agreements with such persons, designating them as new "Area Brokers" for PIC.  The agreements provide that PIC will pay an Area Broker 10% of the gross funds deposited by a customer with PIC to purchase 5 or 10 year foreign currency covered call options.  In the manner of a pyramid scheme, the agreements also provide that PIC will pay an Area Broker a 10%

14

Exhibit 14 to Defendants' Motion to Dismiss

override commission based on the gross commission of each person they personally recruited for PIC to act as an Area Broker.

43.     Defendants represent that they recruited 100 Area Brokers in 2004, the majority recruited during the last quarter of 2004. In February 2005, defendants represented that they had recruited over 140 Area Brokers.

44.     Defendants, acting in concert with Area Brokers, represent that they have solicited customers to send them at least $80 million for the purpose of engaging in foreign currency covered call transactions. In an effort to entice Area Brokers to solicit customers, defendants have represented that Rogers personally handles a $30 million account to sell covered call transactions on foreign currency for Microsoft.

45.     Defendants direct Area Brokers to instruct customers to send their funds to domestic bank accounts in the name of PIC, including, but not limited to, Chase Bank in Texas and New York, Bank One in Arizona, and Asia-Europe-Americas Bank in Washington. Customer funds deposited into the domestic PIC bank accounts are immediately transferred to a domestic bank account controlled by Rogers in the name of Inforex. The vast majority of funds in the domestic Inforex account are then transferred to offshore bank accounts in the name of Inforex.

### iii. Material Misrepresentations And Omissions Concerning Profit

46.     In soliciting customers, defendants represent that they have an exclusive licensing agreement with a foreign bank whereby they are able to guarantee customers a monthly fixed income amounting to between 10% and 14.2 % in annual profits. Defendants guarantee customers a 1.1 % monthly return which annualizes to 13.2% on customer funds used to write a 10 year foreign currency covered call option. Defendants

Exhibit 14 to Defendants' Motion to Dismiss

represent that, on the expiration date of a 10 year option, customers will receive their

deposit back  and a sum representing "10% Value Added," equaling a total maturity of

14.2 %.  Defendants also guarantee customers a 10 % annual return, representing a 0.83

% monthly return, on customer funds used to write a 5 year foreign currency covered call

option.

47.     Defendants claim that PIC will use customer funds to sell foreign currency

covered calls and never place those funds at risk.  Defendants represent to customers that

selling foreign currency covered calls is a "totally non-speculative and passive way to

diversify your liquid assets for the dual purposes of creating a spendable, tax-free

monthly cash flow and deferring taxes on capital gains until the year following the

Expiration Date [of the option], whether it be a 5-Year or 10-Year Currency Call."

48.     Contrary to their representations to customers, profits on covered call

options strategies cannot be guaranteed.  Profits cannot be guaranteed because the writing

of covered calls on a foreign currency position exposes customer funds to the risk of

partial or complete loss on the underlying currency as a result of changes in the currency

exchange rates prior to the expiration date of the option.

### iv. Material Misrepresentations And Omissions Concerning Risk Of Loss

49.     In addition to profit misrepresentations, defendants have misrepresented

the risk of loss associated with selling foreign currency covered call options by making

material statements minimizing the risk of loss inherent in foreign currency options.

50.     Through the PIC and PIB websites, and oral and written representations to

Area Brokers, defendants have claimed that little or no risk is involved in selling covered

Exhibit 14 to Defendants' Motion to Dismiss

currency calls. Defendants represent that "Premium Income Corp will write and Sell Currency Calls for you, yet never place your deposit(s) at risk."

51.    Defendants' representations of no risk of loss to customers are materially false and they omit to inform customers of material facts impacting risk of loss. Defendants fail to inform customers that writing covered calls on foreign currency has substantial downside risks. Specifically, Defendants fail to disclose to customers that the risk facing the foreign currency covered call writer is that the price of the currency will rise by an amount greater than the option premium received from the sale of the call option.

52.    Defendants misrepresent the significant risk of loss in writing covered calls on foreign currency by falsely stating that there is no risk of loss to customer funds because the risk is the same as the buying power of the dollar. Defendants fail to inform customers that writing covered calls has substantial downside risk that goes far beyond that of the buying power of the dollar.

### v.    Material Misrepresentations and Omissions Concerning Expertise And Experience

53.    Defendants make numerous misrepresentations and omissions of material fact in connection with their experience and expertise in foreign currency option transactions. Specifically, defendants fraudulently misrepresent and fail to disclose -- particularly in light of affirmative and misleading representations they make on the same subjects -- significant facts about their background, trading ability, the nature of their professional trading experience, and the nature of their trading operations.

54.    Defendant Rogers represents that he recently formed PIC to conduct foreign currency option transactions for persons in the United States on behalf of Tri-

Exhibit 14 to Defendants' Motion to Dismiss

Forex. Rogers further represents that he previously lived for 15 years in Europe and worked on foreign currency option transactions at Tri-Forex. In fact, Rogers has been in prison for 13 of the last 14 years, and prior to that was a fugitive in Europe. Rogers has not disclosed that he is currently on parole in connection with a 25 year criminal sentence for investment fraud. Rogers also has not disclosed that he has numerous civil and criminal convictions for investment fraud over the last 30 years.

55.     Defendants represent that PIC has an exclusive license agreement with UBI. Defendants state that UBI is domiciled in Switzerland and is a wholly owned subsidiary of the "Churchill Bank Group serving in the United Kingdom with facilities in England, Denmark, Australia, Japan and elsewhere." Contrary to these representations, neither UBI nor the Churchill Bank Group is listed as a bank or authorized to do business in the United Kingdom, England or Australia. Further, defendants represent that UBI has a business address in Scotland that is, in fact, a residential apartment address unrelated to any business operations of UBI. Defendants fail to disclose that UBI's website is registered to a business located in Scottsdale, Arizona, and is paid for by credit cards in the name of Rogers and Inforex.

56.     Defendants represent that PIC is a wholly owned subsidiary of Tri-Forex and that Tri-Forex is located in London, England with other locations in Sydney, Tokyo, and Seattle. Defendants further represent that Tri-Forex specializes in writing international currency call options through its international network of currency exchange brokers, and has over 40 years experience. Contrary to these representations, Tri-Forex has no registered business address and is not authorized to do business in London, England, Sydney or Seattle.

Exhibit 14 to Defendants' Motion to Dismiss

57.     Defendants represent that "100% of your deposit is dedicated to 'Selling' $1,000 Covered Calls." Contrary to defendants' representation, 10% of customer deposits are paid to Area Brokers in commissions that are not disclosed to the customers, thus immediately impairing the profit potential of their investments. Customer funds are also transferred to onshore and offshore bank accounts in the name of Inforex that are solely under Rogers' control.

### vi. Misappropriation Of Customer Funds

58.     Defendants represent that all customer funds will be deposited into "PIC Account" and used only for the purpose of selling covered calls on foreign currency. In fact, defendants have misappropriated customer funds by using them to pay commissions to Area Brokers and pay expenses unrelated to foreign currency option transactions.

59.     Defendants have directed at least some customers to make deposits in accounts in the name of PIC at Asia Europe Americas Bank ("AEA Bank"), J.P. Morgan Chase Bank ("Chase Bank"), and Bank One for the purpose of conducting foreign currency covered call transactions.   The PIC account at Bank One was opened in January 2004, the PIC account at AEA Bank was opened in July 2004, and the two PIC accounts at Chase Bank were opened in November and December 2004.  Since January 2004, approximately $8.5 million has been deposited into these PIC bank accounts.

60.     Defendants represent that customer funds will be deposited into individual PIC accounts and used exclusively for foreign currency covered call transactions. Defendants further represent that customer funds will be transferred to a Swiss bank called UBI for the purpose of engaging in foreign currency covered call transactions.  As previously alleged, UBI is not registered as a Swiss bank and no funds are transferred

Exhibit 14 to Defendants' Motion to Dismiss

from PIC bank accounts to UBI. In fact, although customer funds are initially deposited in bank accounts in the name of PIC at Bank One, AEA Bank, and Chase Bank, defendants do not disclose to customers that their funds are immediately transferred from these PIC bank accounts to a domestic bank account in the name of Inforex at AEA Bank under the sole control of Rogers and then transferred to offshore bank accounts in the name of Inforex at Saxo Bank in Denmark and Synthesis Bank in Switzerland.

61.     Defendants make monthly payments to some customers from the domestic Inforex bank account at AEA Bank and represent that those funds are derived from foreign currency option transactions taking place off-shore. However, no funds from either offshore bank accounts or trading accounts representing putative trading profits, including the Inforex accounts at Saxo Bank and Synthesis Bank, have been deposited in the Inforex domestic account at AEA Bank that defendants use to pay customers monthly payments.

62.     Defendants have transferred most of the funds deposited into the PIC accounts at Bank One, AEA Bank and Chase Bank to an account in the name of Inforex at AEA Bank, an account under the sole control of Rogers. Defendants have transferred approximately $370,000 of customer funds deposited in the Inforex account at AEA Bank to an account in the name of PIC at Global Cash Card ("Global"). Global is a company that provides prepaid ATM cash debit cards to its customers. Defendants issue Global debit cards to Area Brokers who use the cards to obtain commissions from the funds deposited by defendants with Global.

63.     Defendants transfer a portion of customer funds deposited in the Inforex account at AEA Bank to an account in the name of Inforex at Compass Bank under the

Exhibit 14 to Defendants' Motion to Dismiss

sole control of Rogers. Customer funds from this account have been used to pay Roger's personal and business expenses.

64.     Defendants use a portion of customer funds deposited in the PIC account at Bank One to pay personal and business expenses. Defendants also use funds from this account to pay broker commissions.

## B.     Defendants Have Engaged In Illegal Off-Exchange Option Transactions

65.     Defendants solicit persons to send them funds for the purpose of engaging in foreign currency covered call transactions. Defendants represent to customers that PIC will write and sell foreign currency call options on behalf of customers.

66.     Defendants enter into account agreements between PIC and customers providing that customer accounts established with PIC "shall be for the writing (selling) of covered calls." The customer account agreements further provide that PIC will verify the foreign currency covered call transaction with the customer by a same-day confirmation, upon receipt of the customer's funds and executed account agreement.

67.     Defendants do not offer, sell, enter into, confirm the execution of, and/or their conduct business of soliciting, accepting any order for or otherwise dealing in off-exchange foreign currency option transactions on or subject to the rules of a contract market or foreign board of trade, nor any of these transactions executed or consummated by or through a member of such a contract market or foreign board of trade.

68.     Section 2(c)(2)(B)(i) and (ii) of the Act, 7 U.S.C. § 2, provides that the CFTC shall have jurisdiction over an agreement, contract or transaction in foreign currency that is an option, so long as the contract is "offered to, or entered into with, a

Exhibit 14 to Defendants' Motion to Dismiss

person that is not an eligible contract participant" unless the counterparty, or the person

offering to be the counterparty, is a specified regulated entity.

69.    Defendants have been offering and/or entering into foreign currency

option transactions with individual customers, some or all of whom, on information and

belief,  are non-eligible contract participants, i.e., retail customers.

70.    Defendants deposit customer funds in domestic PIC accounts and transfer

most of those funds to domestic and off-shore accounts in the name of Inforex under the

sole control of Rogers.  Defendants issue monthly "profits" to customers from the Inforex

accounts that are purportedly derived from covered call options transactions.  By such

conduct, defendants are acting as counterparties to the customers' options transactions.

Neither Rogers nor any of the other defendants is a proper counterparty for retail foreign

currency option transactions as enumerated in Section 2(c)(2)(B)(ii) of the Act, 7 U.S.C.

§ 2.

Exhibit 14 to Defendants' Motion to Dismiss
**VI.**

## VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND THE CFTC REGULATIONS

### COUNT I

### FRAUD IN CONNECTION WITH OPTION TRANSACTIONS

## VIOLATIONS OF SECTION 4c(b) OF THE ACT, 7 U.S.C. § 6c(b), AND SECTIONS 1.1(b) AND 32.9 OF THE REGULATIONS, 17 C.F.R. §§ 1.1(b) AND 32.9

71.     Paragraphs 1 through 70 above are realleged and incorporated herein by reference.

72.     From at least January 2004 and continuing through the present, defendants, either directly or through other persons or entities either under their employ, supervision and control or acting in combination or concert with them, violated Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Sections 1.1(b) and 32.9 of the Regulations, 17 C.F.R. §§ 1.1(b) and 32.9, in that they have cheated, defrauded or deceived, or attempted to cheat, defraud, or deceive other persons by making false, deceptive, or misleading representations of material facts and by failing to disclose material facts, in soliciting customers or potential customers, in or in connection with an offer to enter into, the entry into, or the confirmation of the execution of commodity option transactions including, but not limited to:

(a)     false representations that customers who purchase options on foreign currency will be guaranteed profits of between 10% and 14.2%;

(b)     false representations that writing foreign currency covered call options involves little or no risk;

Exhibit 14 to Defendants' Motion to Dismiss

(c)     false representations that customer funds are being used to purchase and sell foreign currency options;

(d)     false representations that purported option transactions are generating significant profits;

(e)     failure to disclose the substantial risk associated with foreign currency options;

(f)     failure to disclose material facts regarding trading practices, commissions, and background of defendants, particularly in light of misleading affirmative statements made on those issues; and

(g)     misappropriation of customer funds.

73.     From at least January 2004 and continuing through the present, Rogers and Shevshenko directly or indirectly controlled PIC and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting the violations described in this Count. Pursuant to Section 13(b) of the Act, Rogers and Shevshenko are therefore liable for PIC's violations of the Act and Regulations as described in this Count.

74.     From at least January 2004 and continuing through the present, Rogers directly or indirectly controlled Inforex and did not act in good faith, or knowingly induced, directly or indirectly, the acts constituting the violations described in this Count. Pursuant to Section 13(b) of the Act, Rogers is therefore liable for Inforex's violations of the Act and Regulations as described in this Count.

75.     Defendants Rogers and Shevshenko willfully aided, abetted, counseled, commanded, induced, or procured the commission of violations of the Act and Regulations alleged in this Count, or acted in combination or in concert with each other, or willfully caused acts to be done or omitted which when directly performed or omitted constituted violations of the Act and Regulations described in this Count. Pursuant to

Exhibit 14 to Defendants' Motion to Dismiss

Section 13(a) of the Act, 7 U.S.C. § 13c(a), defendants Rogers and Shevshenko therefore

violated Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulations 1.1(b) and 32.9, 17

C.F.R. §§ 1.1(b) and 32.9, as described in this Count.

76.    Defendants Rogers and Shevshenko engaged in the illegal conduct alleged

in this Count within the scope of their offices or employment as agents of defendant PIC.

Pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), defendant PIC is

therefore liable as a principal for the violations of Section 4c(b) of the Act, 7 U.S.C. §

6c(b), and Regulations 1.1(b) and 32.9, 17 C.F.R. §§ 1.1(b) and 32.9, by its agents

Rogers and Shevshenko.

77.    Each misrepresentation of material facts and each failure to disclose

material facts including, but not limited to those specifically alleged herein, is alleged as

a separate and distinct violation of Section 4c(b)of the Act, 7 U.S.C. § 6c(b), and

Regulations 1.1(b) and 32.9, 17 C.F.R. §§ 1.1(b) and 32.9.

## COUNT II

### OFFER AND SALE OF ILLEGAL OFF EXCHANGE OPTION CONTRACTS

#### VIOLATIONS OF SECTION 4c(b) OF THE ACT, 7 U.S.C. § 6c(b)
#### AND REGULATIONS 32.11, 17 C.F.R. § 32.11

78.    Paragraphs 1 through 77 are re-alleged and incorporated herein.

79.    Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Section 32.11 of the

Regulations, 17 C.F.R. §§ 32.11, together provide that it shall be unlawful for any person

to solicit or accept orders for, or accept funds in connection with, the purchase or sale of

any commodity option, or supervise any person or persons so engaged, unless the

commodity option is conducted (1) on or subject to the rules of a contract market which

Exhibit 14 to Defendants' Motion to Dismiss

has been designated by the Commission to trade options and (2) by or through a member

thereof in accordance with the Act and Regulations.

80.     From at least January 2004 to the present, defendants, and other persons or

entities under their supervision or control, or acting in combination or concert with them,

have solicited and/or accepted orders for, and/or accepted money, securities or property

in connection with, the purchase and sale of commodity options when such transactions

have not been conducted or executed on or subject to the rules of a contract market, or a

foreign board of trade in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and

Section 32.11 of the Regulations, 17 C.F.R. § 32.11.

81.     Defendants Rogers and Shevshenko willfully aided, abetted, counseled,

commanded, induced, or procured the commission of violations of the Act and

Regulations described in this Count, or acted in combination or in concert with each

other, or willfully caused acts to be done or omitted which when directly performed or

omitted constituted the violations described in this Count.  Pursuant to Section 13(a) of

the Act, 7 U.S.C. § 13c(a), defendants Rogers and Shevshenko violated of Section 4c(b)

of the Act, 7 U.S.C. § 6c(b), and Section 32.11 of the Regulations, 17 C.F.R. §§ 32.11, as

described in this Count.

82.     Defendants Rogers and Shevchenko directly or indirectly controlled PIC,

and did not act in good faith or knowingly induced, directly or indirectly, the acts

constituting the violations described this Count.  Pursuant to Section 13(b) of the Act, 7

U.S.C. § 13c(b), defendants Rogers and Shevchenko are liable for the violations of

Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 32.11 17 C.F.R. § 32.11, as

described in this Count, to the same extent as PIC.

Exhibit 14 to Defendants' Motion to Dismiss

83.     Defendant Rogers directly or indirectly controlled Inforex, and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations described this Count.  Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), defendant Rogers is liable for the violations of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 32.11, 17 C.F.R. § 32.11, as described in this Count, to the same extent as Inforex.

84.     Defendants Rogers and Shevchenko engaged in the illegal conduct alleged in this Count within the scope of their offices or employment as agents of defendant PIC. Pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), defendant PIC is liable as a principal for the illegal conduct of its agents defendants Rogers and Shevchenko.

85.     Defendant Rogers engaged in the illegal conduct alleged in this Count within the scope of his office or employment as an agent of defendant Inforex.  Pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), defendant Inforex is liable as a principal for the illegal conduct of its agent Rogers.

86.     Each commodity option transaction not conducted on a designated contract market made during the relevant time period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Section 32.11 and of the Regulations, 17 C.F.R. §§ 32.11.

Exhibit 14 to Defendants' Motion to Dismiss
**VII.**

## RELIEF REQUESTED

WHEREFORE, plaintiff CFTC respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to the Court's own equitable powers:

**A.**    Enter orders of preliminary and permanent injunction enjoining defendants and all persons insofar as they are acting in the capacity of agents, servants, employees, successors, assigns, or attorneys of defendants, and all persons insofar as they are acting in active concert or participation with defendants, from directly or indirectly engaging in conduct that violates the provisions of the Act and the CFTC Regulations alleged herein;

**B.**    Enter an order prohibiting defendants, all persons insofar as they are acting in the capacity of agents, servants, employees, successors, assigns, or attorneys of defendants, and all persons insofar as they are acting in active concert or participation with defendants, who receive actual notice of the order, by personal service or otherwise, from directly or indirectly:

   1.    Destroying, mutilating, concealing, altering or disposing of any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records, or other property of defendant, wherever situated, including, but not limited to, all such records concerning defendant's business and banking operations; and

   2.    Refusing to permit authorized representatives of the CFTC to inspect, when and as requested, any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape

Exhibit 14 to Defendants' Motion to Dismiss

records or other property of defendants, whenever located, including all such records concerning defendants' business operations.

**C.**    Enter an order prohibiting defendants, all persons insofar as they are acting in the capacity of agents, servants, employees, successors, assigns, or attorneys of defendants, and all persons insofar as they are acting in active concert or participation with defendants who receive actual notice of the Order by personal service or otherwise, from directly or indirectly:

1.    Soliciting or accepting any funds from any person in connection with the purchase or sale of any commodity interest contract;

2.    Placing orders or giving advice or price quotations, or other information in connection with the purchase or sale of commodity interest contracts for themselves and others;

3.    Introducing customers to any other person engaged in the business of commodity interest trading;

4.    Issuing statements or reports to others concerning commodity interest trading; and

5.    Engaging in any business activities related to commodity interest trading.

**D.**    Enter an order directing defendants to make an accounting to the Court of all assets and liabilities, together with all funds received from and paid to investors and other persons in connection with the acts and practices alleged in this Complaint, and all disbursements for any purpose whatsoever of funds received from customers of defendants and other commodity or security interest investors, including salaries, commissions, fees, loans and other disbursements of money and property of any kind;

Exhibit 14 to Defendants' Motion to Dismiss

**E.**      Enter an order directing defendants immediately to identify and provide an

accounting for all assets and financial accounts they currently maintain or control, either

directly or indirectly, outside the United States, and to repatriate all such assets and funds

by paying them to the Registry of the Court or as otherwise ordered by the Court;

**F.**      Enter an order requiring defendants to disgorge to any officer appointed and

directed by the Court all benefits received including, but not limited to, salaries,

commissions, loans, fees, revenues and trading profits derived, directly or indirectly,

from the unlawful acts and practices as described herein, including pre-judgment and

post-judgment interest.

**G.**      Enter an order requiring defendants to make restitution for harm caused by

violations of the provisions of the Act and the CFTC Regulations as described herein,

including pre-judgment and post-judgment interest.

**H.**      Enter an order requiring defendants to pay civil monetary penalties under Section

6c of the Act, 7 U.S.C. § 13a-1, in amounts not more than the higher of $120,000 for each

violation, or triple the monetary gain to defendants for each violation of the Act;

**I.**      Enter an order directing defendants to cooperate fully with the CFTC to locate all

assets, books, and records of defendants and to make an accounting of all assets and

liabilities of defendants from January 2002 to the date of such accounting; and

Exhibit 14 to Defendants' Motion to Dismiss

**J.**    Such other equitable relief as the Court may deem necessary or appropriate under

the circumstances.

Respectfully submitted by,



_____

Richard P. Foelber
Daniel Nathan
Attorneys for Plaintiff
United States Commodity
Futures Trading Commission
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C.  20581
Telephone:    (202) 418-5320
Facsimile:    (202) 418-5538


Dated: _March 2, 2005_____

ORIGINAL

Exhibit 15 to Defendants' Motion to Dismiss

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

```
U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
        FILED

     MAR - 2 2005

CLERK, U.S. DISTRICT COURT
     By _____
              Deputy
```

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : |
| vs. | : Civil Action No. |
| PREMIUM INCOME CORP., INFOREX, LTD., TRI-FOREX INTERNATIONAL, LTD. also known as TRI-FOREX, LTD. and INTERNATIONAL FOREX COMPANY, GERALD LEO ROGERS and JAY RODGERS, and ALEXANDER IGOR SHEVCHENKO, | : : : : : 3 - 05 CV  0415M : |
| Defendants. | : |

**_EX PARTE_ TEMPORARY RESTRAINING ORDER, AND ORDER
FREEZING ASSETS AND GRANTING OTHER EMERGENCY RELIEF**

This matter came on before me, the undersigned United States District Judge, this
2nd day of _MARCH_ 2005, on _ex parte_ motion of the Securities and Exchange
Commission ("Commission"), for the issuance of a Temporary Restraining Order, an
asset freeze and other substantive and procedural orders against Premium Income Corp,
Inforex Ltd., Tri-Forex International Ltd., Gerald Leo Rogers and Alexander Igor
Shevchenko (collectively "Defendants"). Having considered the Commission's
Complaint, supporting memorandum, declarations and exhibits thereto, and argument of
counsel, this Court finds as follows:

1.      This Court has jurisdiction over the subject matter of this action and over
all parties hereto, and the Commission is a proper party to bring this action seeking the
relief sought in its Complaint.

Exhibit 15 to Defendants' Motion to Dismiss

2.    There is good cause to believe that the Defendants have engaged, are engaged, and will continue to engage, in acts and practices that constitute and will constitute violations of Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 ("Securities Act"); and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder.

3.    There is good cause to believe that investor funds and assets obtained by the Defendants from the unlawful activities described in the Commission's Complaint have been and will be misappropriated, wasted or otherwise used to the detriment of investors.  Furthermore, there is good cause to believe that the Defendants do not have sufficient funds or assets to satisfy the relief that might be ordered in this action.

4.    There is good cause to believe that investor funds and assets obtained by the Defendants from the unlawful activities described in the Commission's Complaint may be outside the jurisdiction of this Court, and that the Defendants may have assets outside the jurisdiction of this Court.

5.    There is good cause to believe that the Defendants will continue to engage in the acts and practices constituting the violations set forth above unless restrained and enjoined by order of this Court.

6.    There is good cause to believe that giving notice to the Defendants of the Commission's motion for this Order would result in immediate and irreparable injury, loss or damage to investors.

Exhibit 15 to Defendants' Motion to Dismiss

**IT IS THEREFORE ORDERED**:

## I.

Defendants and their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are restrained and enjoined from making use of any means or instrumentalities of interstate commerce, or of the mails or of any facility of a national security exchange, directly or indirectly, in connection with the purchase or sale of any security:

    (a)     to employ any device, scheme or artifice to defraud;

    (b)     to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

    (c)     to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person; or

    (d)     to use or employ any manipulative or deceptive device or contrivance in contravention of a rule or regulation prescribed by the Securities and Exchange Commission.

[Exchange Act § 10(b) and Rule 10b-5 thereunder (15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5)].

## II.

Defendants and their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are restrained and enjoined in the offer or sale of any securities by use

Exhibit 15 to Defendants' Motion to Dismiss

of any means or instruments of transportation or communication in interstate commerce, or of the mails, from, directly or indirectly:

(a)      employing any device, scheme or artifice to defraud;

(b)      obtaining money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)      engaging in any transactions, practices or courses of business which operate or would operate as a fraud or deceit upon any purchaser or prospective purchaser.

[Securities Act § 17(a) (15 U.S.C. § 77q(a))].

### III.

Defendants and their agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are restrained and enjoined from, directly or indirectly:

(a)      making use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell any securities through the use or medium of any offering document or otherwise, unless and until a registration statement is in effect with the Commission as to such securities;

(b)      carrying any securities or causing them to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale, unless and until a registration statement is in effect with the Commission as to such securities; or

Exhibit 15 to Defendants' Motion to Dismiss

(c)    making use of any means or instruments of transportation or communication in interstate commerce, or of the mails, to offer to sell, or to offer to buy, through the use or medium of any offering documents or otherwise, any securities, unless a registration statement has been filed with the Commission as to such securities, or while a registration statement filed with the Commission as to such securities is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding of examination under Section 8 of the Securities Act [15 U.S.C. § 77h]; provided, however, that nothing in this Part III of this Order shall apply to any security or transaction which is exempt from the provisions of Section 5 of the Securities Act [15 U.S.C. § 77e].

[Securities Act §§ 5(a) and 5(c) (15 U.S.C. §§ 77e(a) and 77e(c))].

## IV.

Defendants, and their officers, agents, employees, servants, attorneys and all persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, are restrained and enjoined from, directly or indirectly, making any payment or expenditure of funds (including charges on any credit card or draws on any other credit arrangement), and from assigning, conveying, transferring, encumbering, disbursing, dissipating, selling, hypothecating or concealing any assets, monies, or other property owned by or in the actual or constructive possession of these Defendants, pending a showing to this Court that they have sufficient funds or assets to satisfy all claims arising from the violations alleged in the Complaint, pending the posting of a bond or surety sufficient to assure payment of any such claim, or until further order of this Court.  Further, any bank, trust company, broker-dealer or other

Exhibit 15 to Defendants' Motion to Dismiss

depository institution holding accounts for or on behalf of the Defendants shall make no transactions in securities (excepting liquidating transactions necessary as to wasting assets) and no disbursements of funds or securities (including extensions of credit, or advances on existing lines of credit), including the honor of any negotiable instrument (including specifically, any check, draft, or cashier's check) purchased by or for the Defendants, pending further order of this Court.

## V.

To effectuate the provisions of Paragraph IV above, the Commission may cause a copy of this Order to be served on any bank, savings and loan, broker-dealer or other financial or depository institution either by United States mail or by facsimile as if such service were personal service, to restrain and enjoin any such institution from disbursing funds, directly or indirectly, to or on behalf of the Defendants, or any companies or persons or entities under their control, including, but not limited to, the follow institutions and accounts:

### J. P. Morgan Chase Bank

Premium Income Corp. Accounts:
#099-8181556-65
#099-8181556-66
#995-0105977-65
#995-0105977-66
000000649-546116

International Forex
Acct. #323-02001170

(formerly Bank One)
Premium Income Corp
Acct. # 649546116

### Asia Europe Americas Bank

Premium Income Corp
Acct. # 1007022765

Ex Parte Temporary Restraining Order                                    6
*SEC v. Premium Income Corp., et al.*

Exhibit 15 to Defendants' Motion to Dismiss

Inforex, Ltd.
Acct. #1007022641

Inforex, Ltd.
Acct. #1007023011

## Compass Bank

Inforex Ltd.
Acct. #2502459662

## First Regional Bank

Global Cash Card
Credit to:  PREMIUM INCOME CORP.,
ACCT #771081541

## UBS Stamford

Acct. No. A-C 230-13027.70M
Credit to Inforex Ltd.
 Acct. 10.600186

## Deutsche Bank Trust Americas, NY

Acct. No.  04419298
Credit to Inforex Ltd., Acct. 5881 INet

VI.

Defendants shall immediately repatriate all funds and assets obtained, directly or indirectly, from the activities described in the Commission's Complaint that are now located outside the jurisdiction of this Court.  Such funds shall be immediately transferred or paid to the Court-Appointed Receiver or into the Registry of this Court.  Furthermore, with respect to any other asset owned by the Defendants that is now located outside the jurisdiction of this Court, including, specifically, any monies, securities, real property, or other assets, the Defendants shall immediately identify to the Court or the Court-Appointed Receiver the location of such asset, the price paid or consideration given, and the date upon which it was purchased and/or received.  Securities, or other personalty that can be readily moved or transferred, and title or other documents reflecting ownership as

Ex Parte Temporary Restraining Order                                                    7
*SEC v. Premium Income Corp., et al.*

Exhibit 15 to Defendants' Motion to Dismiss

to real property, shall be delivered to the Court-Appointed Receiver or into to the Registry of this Court without delay.

## VII.

Defendants Rogers and Shevchenko shall immediately surrender their passport to the Clerk of this Court and are prohibited from traveling outside the continental United States without the prior approval of this Court.

## VIII.

Defendants shall make an interim accounting, under oath, within ten days of the issuance of this Order or three days prior to any hearing on the Commission's application for preliminary injunction and other relief, whichever is sooner, detailing by amount, date, method and location of transfer, payee and payor, purpose of payment or transfer of: (a) all investor monies and other benefits received, directly and indirectly, from or as a result of the activities alleged in the Complaint or thereafter transferred; (b) all monies and other assets received, directly or indirectly, from any defendant in this case; (c) all of their current assets wherever they may be located and by whomever they are being held, and their current liabilities; and (d) all accounts with any financial or brokerage institution maintained for the Defendants at any point during the period from January, 2004 to the present. The accounting shall be sufficient to permit a full understanding of the flow of investor funds from the investor to their present location to the extent known by the Defendants or within their power to determine. The accounting and all documents reviewed in the course of the preparation thereof or otherwise pertaining thereto shall be delivered by facsimile or overnight courier to Jeffrey B. Norris, Securities and Exchange

Ex Parte Temporary Restraining Order                                                                8
*SEC v. Premium Income Corp., et al.*

Exhibit 15 to Defendants' Motion to Dismiss

Commission, 801 Cherry Street, 19th Floor, Fort Worth, Texas 76102 by the deadline set forth above.

## IX.

Defendants, and their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are restrained and enjoined from destroying, removing, mutilating, altering, concealing or disposing of, in any manner, any of their books and records or any documents relating in any manner to the matters set forth in the Commission's Complaint, or the books and records and documents of any entities under their control, until further order of this Court.

## X.

The United States marshal in any district in which any Defendant resides, transacts business or may be found is authorized and directed to make service of process at the request of the Commission.

## XI.

A.    All parties may take depositions upon oral examination, and demand production of documents or other things, of parties and persons who are not parties prior to the expiration of 30 days after service of the Commission's Complaint on the Defendants and Relief Defendants.

B.    All parties shall comply with the provisions of Rule 45 of the Federal Rules of Civil Procedure, regarding issuance and service of subpoenas, unless the provision of testimony or production of documents is agreed to by the person(s) subpoenaed.

Ex Parte Temporary Restraining Order                                                    9
*SEC v. Premium Income Corp., et al.*

Exhibit 15 to Defendants' Motion to Dismiss

C.     Pursuant to Rule 30(a) of the Federal Rules of Civil Procedure, all parties may take depositions upon oral examination, subject to 72 hours' notice.

D.     Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, the parties shall produce all documents requested within 72 hours of service of such request.

E.     All parties shall serve written responses to any other party's request for discovery and the interim accountings to be provided by Defendants and Relief Defendants by delivery to the Plaintiff Commission address as follows:

UNITED STATES SECURITIES AND EXCHANGE COMMISSION

Fort Worth District Office
Attention: Jeffrey B. Norris
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX  76102-6882
Facsimile:  (817) 978-4927

and by delivery to other parties at such address(es) as may be designated by them in writing.  Such delivery shall be made by the most expeditious means available, including facsimile machine.

## XII.

Defendants shall serve, by the most expeditious means possible, including facsimile, and in accordance with paragraph XII., above, any papers in opposition to the Commission's Motion for Preliminary Injunction and for other relief no later than 96 hours before any scheduled hearing on the Motion for Preliminary Injunction.  The Commission shall serve any reply at least 24 hours before any hearing on the Motion for Preliminary Injunction by the most expeditious means available, including facsimile.

Ex Parte Temporary Restraining Order
*SEC v. Premium Income Corp., et al.*

Exhibit 15 to Defendants' Motion to Dismiss

## XIII.

All provisions of this order shall remain in full force and effect until specifically modified by further order of this Court. Under Fed. R. Civ. P. 43(e), the Court—in determining whether the Defendants should be preliminarily enjoined—may consider solely the affidavits, exhibits, and pleadings filed by the parties. *See, e.g., FSLIC v. Dixon*, 835 F.2d 554, 558-59 (5th Cir. 1987); *E.E. Maxwell Co. v. Arti Décor, Ltd.*, 635 F. Supp. 749, 751 n.3 (N.D. Tex. 1986). Unless the Court rules upon the Commission's Motion for Preliminary Injunction pursuant to Fed. R. Civ. P. 43(e), adjudication of the Commission's Motion for Preliminary Injunction shall take place at the United States Courthouse, 1100 COMMERCE, Dallas, Texas, on the 17 day of MARCH 2005, at 2:30 o'clock P.m.

EXECUTED AND ENTERED at 2:30 o'clock p.m. CST this 2 day of March 2005.

_____
UNITED STATES DISTRICT JUDGE

Case 1:07-cv-00687-RMC      Document 12-17      Filed 08/09/2007      Page 1 of 22

Exhibit 16 to Defendants' Motion to Dismiss

APPEAL, ECF, SANDERSON

# U.S. District Court
## Northern District of Texas (Dallas)
## CIVIL DOCKET FOR CASE #: 3:05-cv-00415

| | |
|---|---|
| United States Securities and Exchange Commission v. Premium Income Corp et al | Date Filed: 03/02/2005 |
| Assigned to: Judge Jane J Boyle | Jury Demand: None |
| Cause: 15:77 Securities Fraud | Nature of Suit: 850 Securities/Commodities |
| | Jurisdiction: U.S. Government Plaintiff |

**Plaintiff**

| | | |
|---|---|---|
| **United States Securities and Exchange Commission** | represented by | **Jeffrey B Norris** |

US Securities & Exchange Commission
Fort Worth Regional Office
801 Cherry St
Suite 1900
Fort Worth, TX 76102
817/978-6452
Fax: 817/978-4927 FAX
Email: norrisj@sec.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric Werner**
US Securities & Exchange Commission
801 Cherry St
Suite 1900
Fort Worth, TX 76102

**Spencer C Barasch**
Andrews Kurth LLP
1717 Main St
Suite 3700
Dallas, TX 75201
214/659-4400
Fax: 214/659-4401
Email: sbarasch@akllp.com

**Stephen Webster**
US Securities & Exchange Commission
Fort Worth Regional Office
801 Cherry St
Suite 1900
Fort Worth, TX 76109
817/978-6459
Fax: 817/978-2700 FAX
Email: websters@sec.gov
*ATTORNEY TO BE NOTICED*

Exhibit 16 to Defendants' Motion to Dismiss

**Consol Plaintiff**

**US Commodity Futures Trading Commission**
*TERMINATED: 05/24/2005*

represented by **Richard P Foelber**
US Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st St NW
Washington, DC 20581
202/418-5320
Fax: 202/418-5538
Email: rfoelber@cftc.gov
*TERMINATED: 05/24/2005*
*LEAD ATTORNEY*

**Daniel Nathan**
US Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st St NW
Washington, DC 20581
202/418-5320
*TERMINATED: 05/24/2005*

V.

**Defendant**

**Premium Income Corp**
*TERMINATED: 01/18/2007*

**Defendant**

**Inforex Ltd**
*TERMINATED: 01/18/2007*

**Defendant**

**Tri-Forex International Ltd**
*TERMINATED: 01/18/2007*
*also known as*
Tri-Forex Ltd
*TERMINATED: 01/18/2007*
*also known as*
International Forex Company
*TERMINATED: 01/18/2007*

**Defendant**

**Gerald Leo Rogers**
*also known as*
Jay Rogers
*also known as*
Jay Rodgers

represented by **Gerald Leo Rogers**
BOP No 12327-086
FCI Sheridan
PO Box 6000
Sheridan, OR 97378
PRO SE

**Defendant**

Exhibit 16 to Defendants' Motion to Dismiss

**Alexander Igor Shevchenko**


V.

**Movant**

**James G Mongello**
*TERMINATED: 08/29/2006*

**Claimant**

| | | |
|---|---|---|
| **Ann C Agnew** | represented by | **Robert C Sheline** |
| | | Law Office of Robert C Sheline |
| | | PO Box 2546 |
| | | Harlingen, TX 78551 |
| | | 956/423-3635 |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Receiver**

| | | |
|---|---|---|
| **Kelly M Crawford** | represented by | **Charlene Cantrell Koonce** |
| | | Scheef & Stone |
| | | 1400 Sherry Lane Place |
| | | 5956 Sherry Ln |
| | | Dallas, TX 75225 |
| | | 214/706-4200 |
| | | Fax: 214/706-4242 FAX |
| | | Email: charlene.koonce@solidcounsel.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |


**Counter Claimant**

**Gerald Leo Rogers**


V.

**Counter Defendant**

**United States Securities and Exchange
Commission**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/02/2005 | 1 | COMPLAINT filed by United States Securities and Exchange Commission against Inforex Ltd, Tri-Forex International Ltd, Gerald Leo Rogers, Alexander Igor Shevchenko, Premium Income Corp (nap, ) Modified on 3/9/2005 (nap, ). (Entered: 03/04/2005) |
| 03/02/2005 | | ***Magistrate Judge Wm. F. Sanderson, Jr. chosen by random selection to handle matters that may be referred in this case. (nap, ) (Entered: 03/04/2005) |
| 03/02/2005 | 2 | Summons Issued as to Inforex Ltd, Tri-Forex International Ltd, Gerald Leo Rogers, |

|  |  | Alexander Igor Shevchenko, Premium Income Corp. (nap, ) Modified on 3/9/2005 (nap, ). (Entered: 03/04/2005) |
|---|---|---|
| 03/02/2005 | 3 | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by United States Securities and Exchange Commission. (nap, ) (Entered: 03/04/2005) |
| 03/02/2005 | 4 | APPLICATION/MOTION for Ex Parte Temporary Restraining Order, Preliminary Injunction and Other Emergency Relief by United States Securities and Exchange Commission (nap, ) (Entered: 03/04/2005) |
| 03/02/2005 | 5 | Memorandum in Support re 4 APPLICATION/MOTION for Ex Parte Temporary Restraining Order, Preliminary Injunction and Other Emergency Relief filed by United States Securities and Exchange Commission. (nap, ) (Entered: 03/04/2005) |
| 03/02/2005 | 6 | Appendix Vol. I in Support re 5 Memorandum in Support of Motion filed by United States Securities and Exchange Commission. (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Exhibit # 6 Exhibit # 7 Exhibit)(nap, ) (Entered: 03/04/2005) |
| 03/02/2005 | 7 | Appendix Vol. II in Support re 5 Memorandum in Support of Motion filed by United States Securities and Exchange Commission. (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Exhibit # 6 Exhibit)(nap, ) (Entered: 03/04/2005) |
| 03/02/2005 | 8 | MOTION for Leave to File Over Length Brief by United States Securities and Exchange Commission (nap, ) (Entered: 03/04/2005) |
| 03/02/2005 | 9 | MOTION to Appoint Temporary Receiver by United States Securities and Exchange Commission (nap, ) (Entered: 03/04/2005) |
| 03/02/2005 | 10 | Certification Under F.R.C.P. 65(b) filed by United States Securities and Exchange Commission. (nap, ) (Entered: 03/04/2005) |
| 03/02/2005 | 11 | ORDER granting 8 Motion for Leave to File Over Length Brief....The Commissions Memorandum in Support of Plt's Application for Ex Parte Temporary Restraining Order, Preliminary Injunction and Other Emergency Relief, which exceeds the permissible limit, is accepted and will be considered. (Signed by Judge Jane J Boyle on 3/2/05) (nap, ) (Entered: 03/04/2005) |
| 03/02/2005 | 12 | EX PARTE Temporary Restraining Order re 4 and Order Freezing Assets and granting Other Emergency Relief. Unless the Court rules upon the Commission's Motion for Preliminary Injunction pursuant to F.R.C.P. 43(e), adjudication of the Motion...shall take place on 3/11/05 at 2:30 p.m. See order for specifics. (Signed by Judge Jane J Boyle on 3/2/05) (nap, ) (Entered: 03/04/2005) |
| 03/02/2005 | 13 | ORDER granting 9 Motion to Appoint Temporary Receiver. Kelly Crawford is appointed Temporary Receiver for the Receivership Assets. See order for specifics. (Signed by Judge Jane J Boyle on 3/2/05) (nap, ) (Entered: 03/04/2005) |
| 03/02/2005 |  | Set/Reset Deadlines as to 4 Motion for Preliminary Injunction : Motion Hearing set for 3/11/2005 02:30 PM before Judge Jane J Boyle. (nap, ) (Entered: 03/04/2005) |
| 03/03/2005 | 15 | EMERGENCY MOTION for Leave of Court to Allow Deposition of Incarcerated Defendant Gerald Rogers Pursuant to Rule 30(a)(2) of the F. R. C. P. and Authorizing Warden to Produce Gerald Rogers for Deposition by United States Securities and Exchange Commission (nap, ) (Entered: 03/08/2005) |
|  |  |  |

Exhibit 16 to Defendants' Motion to Dismiss

| | | |
|---|---|---|
| 03/03/2005 | 25 | SUMMONS Returned Executed as to Alexander Igor Shevchenko served personally on 3/3/2005, answer due 3/23/2005. (nap, ) (Entered: 03/11/2005) |
| 03/07/2005 | 14 | ORDER GRANTING LEAVE TO ALLOW DEPOSITION OF INCARCERATED DEFENDANT GERALD ROGERS AND AUTHORIZING WARDEN TO PRODUCE GERALD ROGERS FOR DEPOSITION...See order for specifics. (Signed by Judge Jane J Boyle on 3/3/05) (svc, ) (Entered: 03/07/2005) |
| 03/07/2005 | 16 | Surety Bond in the amount of $10,000.00 posted by Kelly M Crawford. (nap, ) (Entered: 03/08/2005) |
| 03/07/2005 | 17 | MOTION for Entry of Agreed Preliminary Injunction as to All Defendants by United States Securities and Exchange Commission with Memorandum in Support Thereof. (nap, ) (Entered: 03/10/2005) |
| 03/09/2005 | 18 | ORDER REASSIGNING CASE. Case reassigned to Judge Jane J Boyle for all further proceedings. Judge Barbara M. G. Lynn no longer assigned to case. All future filings shall be filed under case number 3:05-CV-415-B. (Signed by Judge Barbara M. G. Lynn on 3/9/05) (nap, ) (Entered: 03/10/2005) |
| 03/09/2005 | 19 | NOTICE of Attorney Appearance by Stephen J Womack, Charlene Cantrell Koonce on behalf of Kelly M Crawford (nap, ) (Entered: 03/11/2005) |
| 03/09/2005 | 20 | DECLARATION OF SERVICE upon Gerald Rogers. (nap, ) (Entered: 03/11/2005) |
| 03/09/2005 | 21 | SUMMONS Returned Executed as to Gerald Leo Rogers served personally on 3/4/2005, answer due 3/24/2005. (nap, ) (Entered: 03/11/2005) |
| 03/09/2005 | 22 | SUMMONS Returned Executed as to Inforex Ltd served personally by service to Gerald L. Rogers on 3/4/2005, answer due 3/24/2005. (nap, ) Additional attachment(s) added on 3/11/2005 (nap, ). (Entered: 03/11/2005) |
| 03/09/2005 | 23 | SUMMONS Returned Executed as to Tri-Forex International Ltd served via personal service upon Gerald L. Rogers on 3/4/2005, answer due 3/24/2005. (nap, ) (Entered: 03/11/2005) |
| 03/09/2005 | 24 | SUMMONS Returned Executed as to Premium Income Corp served via personal service on 3/3/2005, answer due 3/23/2005. (nap, ) (Entered: 03/11/2005) |
| 03/09/2005 | | NOTICE of Docket Text/Document Modification by Deputy Clerk regarding Summons Returned Executed 24. Document text modified to reflect personal service upon Premium Income Corp. (nap, ) (Entered: 03/11/2005) |
| 03/11/2005 | 26 | MOTION to Extend Temporary Restraining Order and to Continue Preliminary Injunction Hearing Pursuant to Rule 65 by United States Securities and Exchange Commission with Memorandum in Support Thereof. (nap, ) (Entered: 03/14/2005) |
| 03/11/2005 | 27 | AGREED PRELIMINARY INJUNCTION as to Inforex Ltd. See order for specifics. (Signed by Judge Jane J Boyle on 3/11/05) (nap, ) (Entered: 03/14/2005) |
| 03/11/2005 | 28 | AGREED PRELIMINARY INJUNCTION as to Gerald Leo Rogers. See order for specifics. (Signed by Judge Jane J Boyle on 3/11/05) (nap, ) (Entered: 03/14/2005) |
| 03/11/2005 | 29 | AGREED PRELIMINARY INJUNCTION as to Premium Income Corp. See order for specifics. (Signed by Judge Jane J Boyle on 3/11/05) (nap, ) (Entered: 03/14/2005) |

Exhibit 16 to Defendants' Motion to Dismiss

| 03/11/2005 | 30 | AGREED PRELIMINARY INJUNCTION as to Tri-Forex International, Ltd. See order for specifics. (Signed by Judge Barbara M. G. Lynn on 3/11/05) (nap, ) (Entered: 03/14/2005) |
| 03/11/2005 | 31 | AGREED PRELIMINARY INJUNCTION as to Alexander Igor Shevchenko. See order for specifics. (Signed by Judge Jane J Boyle on 3/11/05) (nap, ) (Entered: 03/14/2005) |
| 03/14/2005 | 32 | SUPPLEMENTAL ORDER PERTAINING TO AGREED PRELIMINARY INJUNCTIONS: Every six months the Court will review the Injunctive Relief granted by the Court. The first such review will take place on 9/16/05. (see order for specifics) (Signed by Judge Jane J Boyle on 3/14/05) (klm, ) (Entered: 03/15/2005) |
| 03/24/2005 | 33 | Petition For Order Governing the Administration of the Receivership and Brief in Support by Kelly M Crawford (svc, ) (Entered: 03/28/2005) |
| 03/24/2005 | 34 | ANSWER to Complaint by Gerald Leo Rogers.(nmj, ) (Entered: 03/28/2005) |
| 04/01/2005 | 35 | PRELIMINARY REPORT and Recommendation of the Receiver by Kelly M Crawford. (nap, ) (Entered: 04/05/2005) |
| 04/12/2005 | 36 | MOTION For Judgment on the Pleadings or, in the alternative, motion to Produce records. by Gerald Leo Rogers (nmj, ) (Entered: 04/14/2005) |
| 04/12/2005 | 37 | CERTIFICATE OF SERVICE by Gerald Leo Rogers re 36 MOTION to Produce (nmj, ) (Entered: 04/14/2005) |
| 04/14/2005 | 38 | NOTICE of Intent to Terminate Lease of Premises Occupied by Defendants and Abandon Receivership Assets Located Therein by Kelly M Crawford (svc, ) (Entered: 04/15/2005) |
| 04/18/2005 | 39 | RESPONSE in Opposition to Motion for Reconsideration filed by Gerald Leo Rogers. (nmj, ) (Entered: 04/20/2005) |
| 04/18/2005 | | Document Number Reset To 39 (lrl, ) (Entered: 04/26/2005) |
| 04/18/2005 | 40 | CERTIFICATE OF SERVICE by Gerald Leo Rogers re 39 Response in Opposition (lrl, ) (Entered: 04/26/2005) |
| 04/21/2005 | 41 | RESPONSE in Opposition to 36 MOTION For Judgment on the Pleadings or, in the alternative, motion to Produce records filed by United States Securities and Exchange Commission. (svc, ) (Entered: 04/22/2005) |
| 04/21/2005 | 42 | MOTION to Strike Matters Outside the Pleadings Presented in Support of Gerald Rogers' Motion for Judgment on the Pleadings and Memorandum in Support Thereof. by United States Securities and Exchange Commission (svc, ) (Entered: 04/22/2005) |
| 04/26/2005 | | Document Number Reset To 42 (lrl, ) (Entered: 04/26/2005) |
| 04/26/2005 | | NOTICE of Docket Text/Document Modification by Deputy Clerk regarding Certificate of Service 40; Incorrect pdf removed, correct pdf attached (lrl, ) (Entered: 04/26/2005) |
| 04/29/2005 | 43 | PETITION #2...Petition for order authorizing payment of fees and costs incurred by the receiver, Scheef & Stone LLP, Warfield & Co., CPA's and A&A Investigations LLC by Kelly M Crawford (Attachments: # 1 # 2 # 3 # 4 # 5 # 6 # 7)(svc, ) (Entered: 05/03/2005) |

Exhibit 16 to Defendants' Motion to Dismiss

| 04/29/2005 | 44 | Memorandum in Support of 43 PETITION #2...Petition for order authorizing payment of fees and costs incurred by the receiver, Scheef & Stone LLP, Warfield & Co., CPA's and A&A Investigations LLC filed by Kelly M Crawford. (svc, ) (Entered: 05/03/2005) |
| --- | --- | --- |
| 05/16/2005 | 45 | ***UNFILED PER ORDER OF 5/23/05***AMENDED ANSWER to 1 Complaint and COUNTERCLAIM against United States Securities and Exchange Commission by Gerald Leo Rogers. (kdc, ) Modified on 5/24/2005 (klm, ). (Entered: 05/17/2005) |
| 05/16/2005 | 46 | RESPONSE in Opposition re 42 MOTION to Strike filed by Gerald Leo Rogers. (kdc, ) (Entered: 05/17/2005) |
| 05/23/2005 | 47 | Order Striking and Unfiling 45 Amended Answer to Complaint, Counterclaim filed by Gerald Leo Rogers, due to the following deficiency: No amended pleading is permitted without leave of Court. (Signed by Judge Jane J Boyle on 5/23/05) (klm, ) (Entered: 05/24/2005) |
| 05/24/2005 | 48 | ORDER denying 36 defendant Roger's Motion for Judgment on the Pleadings, or in the alternative, Motion to Produce Records, and denying 42 Plaintiff's Motion to Strike Matters Outside the Pleadings Presented in Support of Gerald Rogers' Motion for Judgment on the Pleadings. (Signed by Judge Jane J Boyle on 5/24/05) (klm, ) (Entered: 05/24/2005) |
| 05/27/2005 | 49 | MOTION to Release Personal Property of Defendant, Counter Claimant Rogers with Offsetting Concessions by Gerald Leo Rogers. (kdc, ) (Entered: 05/31/2005) |
| 05/27/2005 | 50 | CERTIFICATE OF SERVICE by Gerald Leo Rogers re 49 MOTION to Release Personal Property of Defendant, Counter Claimant Rogers with Offsetting Concessions. (kdc, ) (Entered: 05/31/2005) |
| 06/08/2005 | 51 | Vacation Letter as to Stephen Womak for dates July 25 - July 29, 2005. (svc, ) (Entered: 06/09/2005) |
| 06/14/2005 | 52 | Objections and response re 36 first request for production of documents filed by Gerald Leo Rogers. (bss, ) (Entered: 06/15/2005) |
| 06/14/2005 | 53 | MOTION to Compel production by Gerald Leo Rogers (see doc #52 for image). (bss, ) (Entered: 06/15/2005) |
| 06/15/2005 | 54 | RESPONSE to Motion re 49 MOTION to Release Personal Property of Defendant, Counter Claimant Rogers with Offsetting Concessions. filed by Kelly M Crawford. (jyg, ) (Entered: 06/17/2005) |
| 06/20/2005 | 55 | Application for Order to Show Cause Why Gerald Leo Rogers Should Not be Held in Civil Contempt for Failure to Comply with Court's Orders by United States Securities and Exchange Commission, Kelly M Crawford (svc, ) (Entered: 06/22/2005) |
| 06/20/2005 | 56 | Memorandum in Support re 55 Application for Order to Show Cause Why Gerald Leo Rogers Should Not be Held in Civil Contempt for Failure to Comply with Court's Orders by United States Securities and Exchange Commission, Kelly M Crawford (svc, ) (svc, ) (Entered: 06/22/2005) |
| 06/24/2005 | 57 | RESPONSE to Motion re [53] MOTION to Compel production filed by United States Securities and Exchange Commission. (svc, ) (Entered: 06/27/2005) |
| 06/27/2005 | 58 | MOTION for Warden of FTC Oklahoma to grant access to legal documents and law |

Exhibit 16 to Defendants' Motion to Dismiss

| | | library by Gerald Leo Rogers (mfw, ) (Entered: 06/29/2005) |
|---|---|---|
| 06/28/2005 | 59 | NOTICE of No Objection by Kelly M Crawford re 43 PETITION #2. (mfw, ) (Entered: 06/30/2005) |
| 06/28/2005 | 60 | ORDER granting 43 PETITION #2. It is ordered that Receiver is authorized to pay from Receivership Assets: The amount of $17,113.59 to Kelly M. Crawford for services rendered and costs incurred or paid during the period ending March 25, 2005; The amount of $29,038.56 to Scheff & Stone for services rendered and costs incurred or paid during the period ending March 25, 2005; The amount of $11,318.46 to Warfield & Company for services rendered and costs incurred or paid during the period ending March 31, 2005; and The amount of $8,285.64 to A & A Investigations for services rendered and costs incurred or paid during the period ending March 31, 2005. (Signed by Judge Jane J Boyle on 6/28/2005) (mfw, ) (Entered: 06/30/2005) |
| 06/29/2005 | 61 | MOTION for Entry of Default Judgment as to Inforex Ltd, Tri-Forex International Ltd, Premium Income Corp by United States Securities and Exchange Commission (mfw, ) (Entered: 06/30/2005) |
| 06/29/2005 | 62 | Application for Entry of Default Judgment as to Inforex Ltd, Tri-Forex International Ltd, Premium Income Corp by United States Securities and Exchange Commission (mfw, ) (Entered: 06/30/2005) |
| 06/29/2005 | 63 | Declaration of Jeffrey B. Norris in Support filed by United States Securities and Exchange Commission. (mfw, ) (Entered: 06/30/2005) |
| 06/30/2005 | 64 | Clerk's ENTRY OF DEFAULT as to Inforex Ltd, Tri-Forex International Ltd, Premium Income Corp (mfw, ) (Entered: 06/30/2005) |
| 07/11/2005 | 65 | RESPONSE to 56 MEMORANDUM IN SUPPORT OF MOTION for Order to Show Cause filed by Gerald Leo Rogers. (bss, ) (Entered: 07/11/2005) |
| 07/13/2005 | 66 | REPLY MEMORANDUM IN SUPPORT OF 55 Application for Order to Show Cause Why Gerald Leo Rogers Should Not be Held in Civil Contempt for Failure to Comply with Court's Orders filed by United States Securities and Exchange Commission, Kelly M Crawford. (svc, ) (Entered: 07/14/2005) |
| 07/18/2005 | 67 | REPLY re 57 Response to Motion filed by Gerald Leo Rogers. (mfw, ) (Entered: 07/18/2005) |
| 07/22/2005 | 68 | Petition #3...Motion for Order Authorizing Payment of Fees and Costs by Kelly M Crawford (svc, ) (Entered: 07/25/2005) |
| 07/25/2005 | 69 | Report on Joint Scheduling Conference and Proposed Scheduling Order by United States Securities and Exchange Commission. (lmr, ) (Entered: 07/26/2005) |
| 08/05/2005 | 70 | NOTICE of No Objection to Petition No. 3 by Kelly M Crawford re 68 Petition #3...Motion for Order Authorizing Payment of Fees and Costs. (kdc, ) (Entered: 08/08/2005) |
| 08/12/2005 | 71 | MOTION to Supress Evidence and Terminate Receiver in lieu of Securities Exchange Commission's refusal to produce Discovery or in the alternative grant judgments in favor of all parties as proposed to terminate suit by Gerald Leo Rogers (mfw, ) (Entered: 08/12/2005) |
| | | |

| 08/16/2005 | 72 | RESPONSE to Motion re 71 MOTION to Suppress Evidence and Terminate Receiver in lieu of Securities Exchange Commission's refusal to produce Discovery or in the alternative grant judgments in favor of all parties as proposed to terminate suit filed by United States Securities and Exchange Commission. (jyg, ) (Entered: 08/16/2005) |
| 08/18/2005 | 73 | MOTION For Entry of Scheduling Order by Gerald Leo Rogers, Alexander Igor Shevchenko, United States Securities and Exchange Commission (svc, ) (Entered: 08/19/2005) |
| 08/18/2005 | 74 | JOINT SCHEDULING CONFERENCE REPORT by United States Securities and Exchange Commission. (svc, ) (Entered: 08/19/2005) |
| 08/31/2005 | 75 | ***VACATED PER 5/25/06 ORDER***Standing Order of Reference : This case is hereby referred to Magistrate Judge Wm F Sanderson, Jr for pretrial management. (Signed by Judge Jane J Boyle on 8/31/05) (svc, ) Modified on 5/25/2006 (svc, ). (Entered: 08/31/2005) |
| 09/01/2005 | 76 | Opposition to Granting Default Judgments on the corporate defendants and reply to defendants plaintiffs response in opposition to suppress evidence or terminate reveivership filed by Gerald Leo Rogers. (mfw, ) (Entered: 09/02/2005) |
| 09/08/2005 | 77 | ORDER granting 68 Petition #3...Motion for Order Authorizing Payment of Fees and Costs. See order for specifics (Signed by Judge Jane J Boyle on 9/8/05) (svc, ) (Entered: 09/09/2005) |
| 09/08/2005 | 78 | ORDER granting 73 MOTION For Entry of Scheduling Order. See order for specifics. (Signed by Judge Jane J Boyle on 9/8/05) (svc, ) (Entered: 09/09/2005) |
| 09/09/2005 | 79 | ORDER granting 61 MOTION for Entry of Default Judgment as to Inforex Ltd, Tri-Forex International Ltd, Premium Income Corp. See order for specifics. (Signed by Judge Jane J Boyle on 9/9/05) (svc, ) (Entered: 09/12/2005) |
| 09/09/2005 | 80 | ORDER entered in wrong case (Signed by Judge Jane J Boyle on 9/9/05) (svc, ) Modified on 11/30/2005 (jyg, ). (Entered: 09/12/2005) |
| 09/09/2005 | 81 | Report in Advance of Review of Injunctive Relief filed by United States Securities and Exchange Commission. (svc, ) (Entered: 09/12/2005) |
| 09/16/2005 | 82 | RESPONSE to 81 Report in Advance of Review of Injunctive Relief filed by Gerald Leo Rogers. (bss, ) (Entered: 09/16/2005) |
| 09/23/2005 | 83 | ORDER: IT IS ORDERED that Gerald L. Rogers will appear before the undersigned magistrate judge on October 31, 2005, at 9:30 a.m. to show cause why he should not be held in civil contempt of court for the reasons set out in the Securities and Exchange Commission and the Receiver's application and memorandum for an order to show cause why Rogers should not be held in civil contempt filed on June 20, 2005, in Cause No. 3-05-CV-415-B and for the reasons set out in theCommodity Futures Trading Commission and the Receiver's application and memorandum for an order to show cause why Rogers should not be held in civil contempt filed on June 20, 2005, in Cause No. 3-05-CV-416-B. (Signed by Judge Wm F Sanderson Jr on 9/23/2005) (mfw, ) (Entered: 09/23/2005) |
| 09/23/2005 | 84 | Writ of Habeas Corpus ad Testificandum Issued as to Gerald Leo Rogers for 10/31/2005 at 9:30 a.m.. (mfw, ) (Entered: 09/23/2005) |

| | | |
|---|---|---|
| 10/14/2005 | 85 | MOTION to Compel Discovery by Gerald Leo Rogers (mfw, ) (Entered: 10/14/2005) |
| 10/14/2005 | 88 | NOTICE of Change of Address by Gerald Leo Rogers #12327-086. New address is: FCI, P.O. Box 9000, Seagoville, TX 75159-9000. (mfw, ) (Entered: 10/19/2005) |
| 10/17/2005 | 86 | RESPONSE to Motion re 85 MOTION to Compel Discovery Pursuant to Federal Rule of Civil Procedure 37(a)and(b) for Failure to Comply to Rules #33 and 34[sic] filed by United States Securities and Exchange Commission. (jyg, ) (Entered: 10/17/2005) |
| 10/19/2005 | 87 | MOTION for Issuance of Subpoenas by Gerald Leo Rogers (mfw, ) (Entered: 10/19/2005) |
| 10/21/2005 | 89 | MOTION to Extend Time for October 31, 2005 show cause hearing for contempt by Gerald Leo Rogers. (bss, ) (Entered: 10/21/2005) |
| 10/21/2005 | 90 | MOTION to issue subpoenas by Gerald Leo Rogers. (bss, ) (Entered: 10/21/2005) |
| 10/24/2005 | 91 | RESPONSE in Opposition re 89 MOTION to Extend Time for October 31, 2005 show cause hearing for contempt filed by United States Securities and Exchange Commission. (svc, ) (Entered: 10/25/2005) |
| 10/26/2005 | 92 | ORDER denying 89 MOTION to Extend Time for October 31, 2005 show cause hearing for contempt. (Signed by Judge Wm F Sanderson Jr on 10/26/05) (svc, ) (Entered: 10/26/2005) |
| 10/31/2005 | 93 | ORDER: IT IS ORDERED that Gerald Leo Rogers shall remain at Seagoville F.C.I.until such time as the District Judge orders him to be returned to F.C.I. LaTuna or other appropriate facility. (See ORDER for specifics) (Signed by Judge Wm F Sanderson Jr on 10/31/2005) (mfw, ) (Entered: 11/01/2005) |
| 10/31/2005 | 94 | ORDER: Based upon the foregoing certified facts it is recommended that the District Court order Gerald Leo Rogers? appearance forthwith to show cause why he should not be adjudged in civil contempt of court by reason of the facts certified herein. (See ORDER for specifics) (Signed by Judge Wm F Sanderson Jr on 10/31/2005) (mfw, ) (Entered: 11/01/2005) |
| 10/31/2005 | 95 | Minute Entry for proceedings held before Judge Wm F Sanderson Jr: Motion Hearing held on 10/31/05 re 55 Motion for Order to Show Cause filed by Kelly M Crawford,, United States Securities and Exchange Commission,. (Tape #2116,2115.) (svc, ) (Entered: 11/01/2005) |
| 11/03/2005 | 96 | Report Concerning Conduct of Gerald Rogers Following Hearing on Contempt filed by United States Securities and Exchange Commission, Kelly M Crawford. (svc, ) (Entered: 11/03/2005) |
| 11/03/2005 | 97 | MOTION to approve form for repatriation of funds from banks in Europe by Gerald Leo Rogers (mfw, ) (Entered: 11/03/2005) |
| 11/03/2005 | 98 | ORDER Setting Hearing. Contempt Hearing set for 12/5/2005 02:00 PM before Judge Jane J Boyle. (Signed by Judge Jane J Boyle on 11/3/2005) (kdc, ) (Entered: 11/04/2005) |
| 11/07/2005 | 99 | NOTICE of Intent to Settle with Jerry Adams, Robert Adams, Byron Boyd, Saundra Brooks, Dale Connally, Joanna Devine, William Hackley, Kenneth Jeffries, Harrel Hansen, Rod Hinkle, Chris Larsen, Gary St. Laurent, Martin Tyson, James Vann, Steve |

Exhibit 16 to Defendants' Motion to Dismiss

| | | Yencho by Kelly M Crawford (svc, ) (Entered: 11/08/2005) |
|---|---|---|
| 11/15/2005 | 100 | MOTION to Strike Relief Claims for Failure of Plaintiffs to Comply to Discovery Rules 33 and 34 Pursuant to Rule 37 by Gerald Leo Rogers. (bss, ) (Entered: 11/15/2005) |
| 11/15/2005 | 101 | MOTION Petition #4...Motion for Order Authorizing Payment of Fees and Expenses by Kelly M Crawford (svc, ) (Entered: 11/16/2005) |
| 11/17/2005 | 102 | MOTION for Evidentiary Hearing on plaintiff's refusal to participate in discovery by Gerald Leo Rogers (mfw, ) (Entered: 11/17/2005) |
| 11/22/2005 | 103 | NOTICE of Intent to Settle with Kent Talley and John Tanner by Kelly M Crawford (svc, ) (Entered: 11/22/2005) |
| 11/23/2005 | 104 | NOTICE of No Objection to Petition No. 4 by Kelly M Crawford (svc, ) (Entered: 11/28/2005) |
| 11/30/2005 | | NOTICE of Docket Text/Document Modification by Deputy Clerk regarding Order on Motion for Default Judgment80 Moved to case no 3:05cv416-B. (jyg, ) (Entered: 11/30/2005) |
| 12/01/2005 | 105 | Opposition re 100 MOTION to Strike Relief Claims for Failure of Plaintiffs to Comply to Discovery Rules 33 and 24 Pursuant to Rule 37 filed by United States Securities and Exchange Commission. (kdc, ) (Entered: 12/01/2005) |
| 12/01/2005 | 106 | ORDER: Contempt Hearing reset for 1/17/2006 09:00 AM before Judge Jane J Boyle. (Signed by Judge Jane J Boyle on December 1, 2005) (jyg, ) (Entered: 12/02/2005) |
| 12/06/2005 | 107 | MOTION to Dismiss Action for Lack of Court's Subject Matter Jurisdiction by Gerald Leo Rogers. (bss, ) (Entered: 12/06/2005) |
| 12/12/2005 | 108 | RESPONSE in Opposition re 107 MOTION to Dismiss Action for Lack of Court's Subject Matter Jurisdiction filed by United States Securities and Exchange Commission. (svc, ) (Entered: 12/13/2005) |
| 12/13/2005 | 109 | ORDER granting 101 Petition #4 Order Authorizing Payment of Fees and Expenses (Signed by Judge Jane J Boyle on 12/13/05) (svc, ) (Entered: 12/14/2005) |
| 12/21/2005 | 110 | RESPONSE to Plaintiff Sec's Opposition to Motion to Dismiss for Lack of Court's Subject Matter Jurisdiction filed by Gerald Leo Rogers. (bss, ) (Entered: 12/21/2005) |
| 01/04/2006 | 111 | MOTION to take judicial notice by Gerald Leo Rogers. (bss, ) (Entered: 01/05/2006) |
| 01/05/2006 | 112 | SUPPLEMENTAL RESPONSE in Opposition to 107 MOTION to Dismiss Action for Lack of Court's Subject Matter Jurisdiction filed by United States Securities and Exchange Commission. (svc, ) (Entered: 01/06/2006) |
| 01/05/2006 | 113 | NOTICE of Intent to Settle with Allen Praul by Kelly M Crawford (svc, ) (Entered: 01/06/2006) |
| 01/05/2006 | 114 | MOTION For Order Regarding Disposition of Social Security Benefits Paid to Gerald L Rogers by Kelly M Crawford (svc, ) (Entered: 01/06/2006) |
| 01/09/2006 | 115 | ORDER REFERRING MOTION to Judge Sanderson: 114 MOTION For Order Regarding Disposition of Social Security Benefits Paid to Gerald L Rogers filed by Kelly M Crawford, (Signed by Judge Jane J Boyle on 1/9/06) (svc, ) (Entered: |

Exhibit 16 to Defendants' Motion to Dismiss

| | | 01/09/2006) |
|---|---|---|
| 01/11/2006 | 116 | ORDER REQUESTING PRISONER FROM FDC SEAGOVILLE...The Court hereby requests the U.S. Marshals bring Defendant Gerald Leo Rogers from FDCSeagoville for a contempt hearing on: 1/17/2006 09:00 AM before Judge Jane J Boyle. (Signed by Judge Jane J Boyle on 1/11/06) (svc, ) (Entered: 01/11/2006) |
| 01/12/2006 | 117 | MOTION to Continue Contemp Hearing by United States Securities and Exchange Commission (svc, ) (Entered: 01/13/2006) |
| 01/13/2006 | 118 | Opposition to Receiver's "Petition #5" filed by Gerald Leo Rogers. (bss, ) (Entered: 01/13/2006) |
| 01/13/2006 | 119 | ORDER granting 117 MOTION to Continue Contemp Hearing. Contempt Hearing set for 2/21/2006 10:00 AM before Judge Jane J Boyle. (Signed by Judge Jane J Boyle on 1/13/06) (svc, ) (Entered: 01/13/2006) |
| 01/17/2006 | 120 | NOTICE of Intent to Settle with Robert Martin by Kelly M Crawford (svc, ) (Entered: 01/17/2006) |
| 01/17/2006 | 121 | Vacation Letter as to Kelly M Crawford for dates May 29, 2006 - June 12, 2006. (jyg, ) (Entered: 01/18/2006) |
| 01/18/2006 | 122 | MOTION to Appoint Counsel by Gerald Leo Rogers (mfw, ) (Entered: 01/31/2006) |
| 02/02/2006 | 123 | REPLY re 108 RESPONSE in Opposition re 107 MOTION to Dismiss Action for Lack of Court's Subject Matter Jurisdiction filed by Gerald Leo Rogers. (mfw, ) (Entered: 02/03/2006) |
| 02/03/2006 | 124 | MOTION to order receiver to return fees and to disqualify district judge to facilitate transfer to authorized article III court; or in the alternative, proceed to dismiss action for lack of subject matter jurisdiction by Gerald Leo Rogers. (bss, ) (Entered: 02/03/2006) |
| 02/08/2006 | 125 | RESPONSE in Opposition re 122 Application/MOTION to Appoint Counsel Under the Criminal Justice Act in Pending Civil Injunctive Action Against Gerald Rogers filed by United States Securities and Exchange Commission. (jyg, ) (Entered: 02/08/2006) |
| 02/09/2006 | 126 | REPLY re 108 RESPONSE in Opposition re 107 MOTION to Dismiss Action for Lack of Court's Subject Matter Jurisdiction filed by Gerald Leo Rogers. (mfw, ) (Entered: 02/09/2006) |
| 02/13/2006 | 127 | MOTION to Modify Scheduling Order by United States Securities and Exchange Commission (svc, ) (Entered: 02/14/2006) |
| 02/13/2006 | 128 | Brief/Memorandum in Support re 127 MOTION to Modify Scheduling Order filed by United States Securities and Exchange Commission. (svc, ) (Entered: 02/14/2006) |
| 02/16/2006 | 129 | JOINT MOTION to Dismiss without prejudice the proceeding to show cause why dft Gerald Leo Rogers should not be held in contempt of this court's orders by United States Securities and Exchange Commission, Kelly M Crawford (svc, ) (Entered: 02/17/2006) |
| 02/21/2006 | 130 | Opposition to Extension of time filed by Gerald Leo Rogers. (bss, ) (Entered: 02/21/2006) |
| 02/22/2006 | 131 | ORDER granting 129 JOINT MOTION to Dismiss without prejudice the proceeding to |

Exhibit 16 to Defendants' Motion to Dismiss

| | | |
|---|---|---|
| | | show cause why dft Gerald Leo Rogers should not be held in contempt of this court's orders. (Signed by Judge Jane J Boyle on 2/22/06) (svc, ) (Entered: 02/22/2006) |
| 02/23/2006 | 132 | ORDER Directing Prisoner be Returned to the Federal Detention Institution. The Court hereby directs the U.S. Marshals return Defendant Gerald Leo Rogers to La Tuna, FCI or another institutiondesignated by the BOP. (Signed by Judge Jane J Boyle on February 23, 2006) (jyg, ) (Entered: 02/23/2006) |
| 02/24/2006 | 133 | AFFIDAVIT of Service for Order granting Interlocutory Judgment served on Gerald Rogers on 2/10/06. Inmate Rogers refused to sign. (svc, ) (Entered: 02/27/2006) |
| 02/24/2006 | 134 | AFFIDAVIT of Service for Order granting Interlocutory Judgment served on Alexander Shevchenko on 2/4/06. (svc, ) (Entered: 02/27/2006) |
| 02/27/2006 | 135 | Second Report of the Receiver and First Accounting of the Receivership filed by Kelly M Crawford. (svc, ) (Entered: 02/28/2006) |
| 03/02/2006 | 136 | MOTION to disqualify district judge by Gerald Leo Rogers. (bss, ) (Entered: 03/02/2006) |
| 03/03/2006 | 137 | MOTION Petition #6...Motion for Order Authorizing Payment of Fees and Expenses by Kelly M Crawford (Attachments: # 1 # 2)(svc, ) (Entered: 03/06/2006) |
| 03/13/2006 | 138 | NOTICE of Change of Address by Gerald Leo Rogers. New address is: La Tuna Prison Camp, P.O. Box 8000, Anthony, TX 88021. (mfw, ) (Entered: 03/13/2006) |
| 03/13/2006 | 139 | ORDER granting 127 MOTION to Modify Scheduling Order (Signed by Judge Wm F Sanderson Jr on 3/13/06) (svc, ) (Entered: 03/14/2006) |
| 03/13/2006 | 140 | AMENDED SCHEDULING ORDER: Amended Pleadings due by 4/28/2006. Discovery due by 9/15/2006. Joinder of Parties due by 4/28/2006. Motions due by 10/15/2006. See order for specifics. (Signed by Judge Wm F Sanderson Jr on 3/13/06) (svc, ) (Entered: 03/14/2006) |
| 03/14/2006 | 141 | NOTICE of No Objection to Petition No. 6 by Kelly M Crawford (svc, ) (Entered: 03/16/2006) |
| 03/14/2006 | 142 | PETITION NO. 7...Petitions for Order Establishing Claims Adjudcation Process by Kelly M Crawford (svc, ) (Entered: 03/16/2006) |
| 03/15/2006 | 143 | NOTICE of Intent to Settle with Steve Propest, Individually and d/b/a Steve Propest Agency, and Jane Doe Propest by Kelly M Crawford (svc, ) (Entered: 03/16/2006) |
| 03/17/2006 | 144 | ORDER: Order setting status conference with the Receiver and his counsel. (Signed by Judge Jane J Boyle on 3/17/06) (Boyle, Jane) (Entered: 03/17/2006) |
| 03/17/2006 | 145 | ORDER RESETTING STATUS CONFERENCE WITH RECEIVER... Status Conference set for 3/28/2006 10:00 AM before Judge Jane J Boyle. (Signed by Judge Jane J Boyle on 3/17/06) (svc, ) (Entered: 03/20/2006) |
| 03/24/2006 | 146 | ORDER Denying 49 MOTION to Release Personal Property of Defendant, Counter Claimant Rogers with Offsetting Concessions, Denying [53] MOTION to Compel production, Denying 58 MOTION for Warden of FTC Oklahoma to grant access to legal documents and law library,and Denying 71 MOTION to Supress Evidence and Terminate Receiver in lieu of Securities Exchange Commission's refusal to produce |

|  |  | Discovery or in the alternative grant judgments in favor of all parties as proposed to terminate suit. See order for specifics. (Signed by Judge Jane J Boyle on 3/24/06) (svc, ) (Entered: 03/24/2006) |
| 03/28/2006 | 147 | Minute Entry for proceedings held before Judge Jane J. Boyle and William F. Sanderson, Jr.: Status Conference held on 03/28/06. (Court Reporter Shawnie Archuleta.) (psm, ) (Entered: 03/28/2006) |
| 04/05/2006 | 148 | STATUS CONFERENCE WITH RECEIVER... Status Conference set for 5/25/2006 09:00 AM before Judge Jane J Boyle. (Signed by Judge Jane J Boyle on 4/5/06) (svc, ) (Entered: 04/05/2006) |
| 04/06/2006 | 149 | Vacation Letter as to Charlene C. Koonce for dates May 19, 2006; July 31 - August 4, 2006. (klm, ) (Entered: 04/06/2006) |
| 04/10/2006 | 150 | MOTION to audit receiver by Gerald Leo Rogers. (bss, ) (Entered: 04/10/2006) |
| 04/13/2006 | 151 | MOTION For Order Pursuant to Customer Challenge Provisions of the Right to Financial Privacy Act of 1978 by James G Mongello (svc, ) (Entered: 04/13/2006) |
| 04/13/2006 | 152 | NOTICE of Intent to Settle with Robert A Lothringer and Joan Lothringer, a/k/a "Jane Doe Lothringer" by Kelly M Crawford (svc, ). (Entered: 04/13/2006) |
| 04/19/2006 | 153 | NOTICE Of Settlement with Jeff Brown, Individually and D/B/A Eagle Financial Services by Kelly M Crawford (svc, ) (Entered: 04/19/2006) |
| 04/25/2006 | 154 | NOTICE of Intent of Abandon Certain Receivership Assets by Kelly M Crawford (svc, ) (Entered: 04/25/2006) |
| 04/26/2006 | 155 | RESPONSE in Opposition to 151 James G Mongello's MOTION For Order Pursuant to Customer Challenge Provisions of the RFPA filed by United States Securities and Exchange Commission. (Attachments: # 1 Exhibit page 1-32 #(2) Exhibit pages 33-96 (viewing restricted as to #(2)(svc, ) (Entered: 04/26/2006) |
| 04/27/2006 | 156 | NOTICE of Abandonment of Benefits Paid to Gerald L Rogers to the Social Security Administration by Kelly M Crawford (svc, ) (Entered: 04/28/2006) |
| 04/27/2006 | 157 | RESPONSE filed by Kelly M Crawford re 150 MOTION to audit receiver (svc, ) (Entered: 04/28/2006) |
| 04/27/2006 | 158 | Appendix in Support filed by Kelly M Crawford re 157 RESPONSE filed by Kelly M Crawford re 150 MOTION to audit receiver (svc, ) (Entered: 04/28/2006) |
| 04/28/2006 | 159 | ORDER granting 137 MOTION Petition #6...Motion for Order Authorizing Payment of Fees and Expenses. See order for specifics (Signed by Judge Jane J Boyle on 4/28/06) (svc, ) (Entered: 04/28/2006) |
| 04/28/2006 | 160 | Application in Support of Entry of Final Judgment Setting Disgorgement Amounts and Civil Penalties by United States Securities and Exchange Commission (svc, ) (Entered: 05/01/2006) |
| 04/28/2006 | 161 | AFFIDAVIT by Kelly M Crawford. (svc, ) (Entered: 05/01/2006) |
| 05/03/2006 | 162 | MOTION to take judicial notice by Gerald Leo Rogers. (bss, ) (Entered: 05/03/2006) |
| 05/09/2006 | 163 | NOTICE of Intent to Settle with Bruce Strahan, Jr individually and d/b/a Strahan and |

| | | |
|---|---|---|
| | | Associated Inc and "Jane Doe" Strahan by Kelly M Crawford (svc, ) (Entered: 05/10/2006) |
| 05/23/2006 | 164 | Receiver's Cost-Benefit Analysis filed by Kelly M Crawford. (svc, ) (Entered: 05/24/2006) |
| 05/23/2006 | 165 | Petition No. 9 For Interim Distribution to Investors by Kelly M Crawford (svc, ) (Entered: 05/24/2006) |
| 05/23/2006 | 166 | PETITION No. 8...Petition for Order Authorizing Payment of Fees and Expenses by Kelly M Crawford (Attachments: # 1 # 2)(svc, ) (Entered: 05/25/2006) |
| 05/25/2006 | | Minute Entry for proceedings held before Judge Jane J Boyle : Status Conference held on 05/25/06. (Court Reporter Shawnie Archuleta.)NO PDF ATTACHED - THIS IS A VIRTUAL MINUTE ENTRY. (psm, ) (Entered: 05/25/2006) |
| 05/25/2006 | 167 | ORDER FOR STATUS CONFERENCE WITH RECEIVER.. Status Conference set for 8/17/2006 09:00 AM before Judge Jane J Boyle. (Signed by Judge Jane J Boyle on 5/25/06) (svc, ) (Entered: 05/25/2006) |
| 05/25/2006 | 168 | ORDER VACATING STANDING ORDER OF REFERENCE...The Court hereby VACATES the Standing Orders of Reference signed August 31, 2005 thatreferred pretrial management of these cases to United States Magistrate Judge William F. Sanderson,Jr. All matters that had been referred to him will now be heard by this Court. (Signed by Judge Jane J Boyle on 5/25/06) (svc, ) (Entered: 05/25/2006) |
| 05/25/2006 | 169 | Amended Receiver's Cost-Benefit Analysis filed by Kelly M Crawford. (svc, ) (Entered: 05/26/2006) |
| 05/26/2006 | 170 | RESPONSE in Opposition filed by Gerald Leo Rogers re 160 Application in Support of Entry of Final Judgment (mfw, ) (Entered: 05/26/2006) |
| 05/26/2006 | | MOTION to Dismiss (See Docket entry 170) by Gerald Leo Rogers (mfw, ) (Entered: 05/31/2006) |
| 06/01/2006 | 171 | Mail Returned as Undeliverable. 167 Order, Set Hearings received back from Gerald Leo Rogers as unable to forward. (bss, ) (Entered: 06/01/2006) |
| 06/01/2006 | 172 | Mail Returned as Undeliverable. 167 Order, Set Hearings received back from Gerald Leo Rogers as Unable to forward. Renoticed to FCI LaTuna. (mfw, ) (Entered: 06/01/2006) |
| 06/01/2006 | 173 | Mail Returned as Undeliverable. 168 Order, received back from Gerald Leo Rogers as Unable to forward. Renoticed to FCI LaTuna. (mfw, ) (Entered: 06/01/2006) |
| 06/05/2006 | | CASE Returned to District Judge; Judge Wm F Sanderson, Jr no longer assigned to case. (Judge Boyle withdrew order of reference) (nbs, ) (Entered: 06/05/2006) |
| 06/06/2006 | 174 | REPLY IN SUPPORT filed by United States Securities and Exchange Commission re 160 Application in Support of Entry of Final Judgment Setting Disgorgement Amounts and Civil Penalties (svc, ) (Entered: 06/06/2006) |
| 06/12/2006 | 175 | NOTICE for petition for writ of prohibition to United States Court of Appeals for the Fifth Circuit by Gerald Leo Rogers. (bss, ) (Entered: 06/15/2006) |
| | | |

Exhibit 16 to Defendants' Motion to Dismiss

| 06/14/2006 | 176 | Request for Removal from Electronic Notification List by Kelly M Crawford (svc, ) (Entered: 06/15/2006) |
| 06/19/2006 | 177 | Request for Subpoena Duces Tecum by Gerald Leo Rogers. (bss, ) (Entered: 06/19/2006) |
| 06/19/2006 | 178 | Response filed by Gerald Leo Rogers to 174 Reply to Response to 160 Application in Support of Entry of Final Judgment Setting Disgorgement Amounts and Civil Penalties. (bss, ) (Entered: 06/19/2006) |
| 06/23/2006 | 179 | ORDER denying 87 Motion Request for Issuance of Subpoenas, denying 90 Motion Request for Subpoenas, denying 97 Motion to Magistrate to Approve Form forRepatriation of Funds from Banks in Europe, denying 100 to Strike Relief Claims for Failure of Plaintiffs toComply with Discovery Rules 33 and 34 Pursuant to Rule 37, denying 102 Motion to Strike Relief Claims for Failure of Plaintiffs toComply with Discovery Rules 33 and 34 Pursuant to Rule 37., denying 107 Motion to Dismiss Action for Lack of Court's Subject MatterJurisdiction, denying 111 Motion to Take Judicial Notice Prior to Filing Title 28 USCSection 351 Complaint, denying 122 Motion to Appoint Counsel, denying 124 Motion to Order Receiver to Return Fees and Motion toDisqualify District Judge to Facilitate Transfer to Authorized Article III Court; or in theAlternative, Proceed to Dismiss Action for Lack of Subject Matter Jurisdiction, denying 136 Motion to Disqualify District Judge Pursuant to 28 USC 144and 455(a), denying 150 Motion to Audit Receiver, denying 162 Motion to Take Judicial Notice, and denying 177 Motion Request for Subpoena Duces Tecum (Signed by Judge Jane J Boyle on 6/23/06) (svc, ) (Entered: 06/23/2006) |
| 07/06/2006 | 180 | NOTICE of Intent to Settle with Saleem Khan by Kelly M Crawford. (kdc, ) (Entered: 07/07/2006) |
| 07/14/2006 | 181 | NOTICE of Intent to Settle with Terry Carter, Individually and d/b/a Insurance Service Center and "Jane Doe" Diane Carter by Kelly M Crawford (svc, ) (Entered: 07/17/2006) |
| 07/14/2006 | 182 | NOTICE of Intent to Settle with Thomas Fitzhugh by Kelly M Crawford (svc, ) (Entered: 07/17/2006) |
| 07/19/2006 | 183 | NOTICE of Ruling of USDC by United States Securities and Exchange Commission (svc, ) (Entered: 07/19/2006) |
| 07/20/2006 | 184 | NOTICE of No Objection to Petition No. 8 by Kelly M Crawford (svc, ) (Entered: 07/21/2006) |
| 08/01/2006 | 185 | NOTICE-District of Columbia appeal and statutorial affirmation of Congress' Intent of Jurisdiction by Gerald Leo Rogers (mfw, ) (Entered: 08/01/2006) |
| 08/09/2006 | 186 | ORDER granting 166 Petition No. 8 Order Authorizing Payment of Fees and Expenses. (see order for specifics) (Signed by Judge Jane J Boyle on 8/9/06) (klm, ) (Entered: 08/09/2006) |
| 08/11/2006 | 187 | Receiver's Second Cost-Benefit Analysis filed by Kelly M Crawford. (klm, ) (Entered: 08/11/2006) |
| 08/11/2006 | 188 | Third Report of the Receiver and Second Accounting of the Receivership filed by Kelly M Crawford. (klm, ) (Entered: 08/11/2006) |

| | | |
|---|---|---|
| 08/14/2006 | 189 | NOTICE of Intent to Settle with John W. Bowden, "Jane Doe" Bowden, Kent Talley, "Jane Doe" Talley, and Bill Fix by Kelly M Crawford (klm, ) (Entered: 08/15/2006) |
| 08/14/2006 | 190 | NOTICE of Intent to Settle with Gary St. Laurent and "Jane Doe" St. Laurent by Kelly M Crawford (klm, ) (Entered: 08/15/2006) |
| 08/16/2006 | 191 | STATUS REPORT Regarding Broker Lawsuit by Kelly M Crawford. (klm, ) (Entered: 08/16/2006) |
| 08/17/2006 | | Minute Entry for proceedings held before Judge Jane J Boyle : Status Conference held on 08/17/06. (Court Reporter Shawnie Archuleta.)NO PDF ATTACHED - THIS IS A VIRTUAL MINUTE ENTRY. (psm, ) (Entered: 08/17/2006) |
| 08/18/2006 | 192 | ORDER: Status Conference set for 11/16/2006 09:00 AM in Courtroom 1306 before Judge Jane J Boyle. (Signed by Judge Jane J Boyle on 08/18/06) (psm, ) (Entered: 08/18/2006) |
| 08/22/2006 | 193 | ORDER REFERRING MOTION to Judge William F. Sanderson, Jr.: 151 Motion for Order Pursuant to Customer Challenge Provisions of the Right to Financial Privacy Act of 1978. (Signed by Judge Jane J Boyle on 08/22/06) (psm, ) (Entered: 08/22/2006) |
| 08/22/2006 | 194 | ORDER denying as moot 114 Petition No. 5 - Petition for Order Regarding Disposition of Social Security Benefits Paid to Gerald L. Rogers. (Signed by Judge Jane J Boyle on 8/22/06) (klm, ) (Entered: 08/22/2006) |
| 08/22/2006 | 195 | ORDER denying without prejudice 165 Petition No. 9 - Receiver's Petition for Interim Distribution to Investors. (Signed by Judge Jane J Boyle on 8/22/06) (klm, ) (Entered: 08/22/2006) |
| 08/22/2006 | 196 | ORDER re 142 Petition No. 7 Order Establishing Claims Adjudication Process. (see order for specifics) (Signed by Judge Jane J Boyle on 8/22/06) (klm, ) (Entered: 08/22/2006) |
| 08/29/2006 | 197 | ORDER denying 151 Motion for Order Pursuant to Customer Challeng Provisions of the Right to Financial Privacy Act of 1978. James E. Mongello's motion to quash is denied. (Signed by Judge Wm F Sanderson Jr on 8/29/06) (klm, ) (Entered: 08/29/2006) |
| 09/05/2006 | 198 | Petition No. 10: Petition for Order Authorizing Payment of Fees and Expenses by Kelly M Crawford. (Attachments: # 1 # 2 # 3 # 4 # 5 # 6 # 7)(klm, ) (Entered: 09/06/2006) |
| 09/08/2006 | 199 | Order Designating Case for ECF - see order for specifics. (jyg, ) (Entered: 09/08/2006) |
| 09/15/2006 | 200 | NOTICE by United States Securities and Exchange Commission *Notice of Standing Order* (Attachments: # 1 Standing Order Designating Case for Enrollment in the ECF System)(Norris, Jeffrey) (Entered: 09/15/2006) |
| 09/15/2006 | 201 | NOTICE by Kelly M Crawford re 198 MOTION for Order Authorizing Payment of Fees and Expenses *Notice of No Objection to Petition No. 10* (Koonce, Charlene) (Entered: 09/15/2006) |
| 09/18/2006 | 202 | RESPONSE filed by Gerald Leo Rogers to 198 MOTION for Order Authorizing Payment of Fees and Expenses. (bss, ) (Entered: 09/18/2006) |
| 10/03/2006 | 203 | MOTION to Amend/Correct 140 Scheduling Order *Motion to Modify Scheduling Order* by United States Securities and Exchange Commission with Memorandum in Support of |

| | | Plaintiff's Motion to Modify Scheduling Order. (Norris, Jeffrey) (Entered: 10/03/2006) |
|---|---|---|
| 10/03/2006 | 204 | Brief/Memorandum in Support filed by United States Securities and Exchange Commission re 203 MOTION to Amend/Correct 140 Scheduling Order *Motion to Modify Scheduling Order* (Norris, Jeffrey) (Entered: 10/03/2006) |
| 10/11/2006 | 205 | STATUS REPORT *Receiver's Claims Report* by Kelly M Crawford. (Koonce, Charlene) (Entered: 10/11/2006) |
| 10/11/2006 | 206 | ORDER granting 203 Motion to Amend/Correct 140 Scheduling Order Motion to Modify Scheduling Order. Motions for summary judgment and other dispositive motions shall be filed by November 15, 2006. The Pretrial Conference shall be set at a later date. The Trial of this matter shall be set at a later date. (Signed by Judge Jane J Boyle on 10/11/06) (lmr, ) (Entered: 10/11/2006) |
| 10/11/2006 | | Reset Scheduling Order Deadlines: Motions due by 11/15/2006. (per order dated 10/11/06) (lmr, ) (Entered: 10/11/2006) |
| 10/17/2006 | 207 | MOTION for Leave to File Late Claim by Kelly M Crawford (Crawford, Kelly) (Entered: 10/17/2006) |
| 11/02/2006 | 208 | ORDER: Defendant Gerald L. Rogers 202 Motion to Deny Authorizing Payment of Fees and Expenses is DENIED. (Signed by Judge Jane J Boyle on 11/02/06) (bss, ) (Entered: 11/02/2006) |
| 11/02/2006 | 209 | ORDER granting 207 Motion for Leave to File. It is ORDERED that the Motion for Leave to Allow Late Filed Claim is GRANTED and that the receiver, Kelly Crawford is authorized to accept the filing of said claim. It is FURTHER ORDERED that Ms. Agnew shall file her objection, if any, to the receiver's recommendation regarding her claim on or before 11/15/06. The receiver shall respond to any objection filed by Ms. Agnew on or before 11/22/06. (Signed by Judge Jane J Boyle on 11/02/06) (bss, ) (Entered: 11/02/2006) |
| 11/02/2006 | 210 | ORDER granting 198 PETITION NO. 10: Petition for Order Authorizing Payment of Fees and Expenses. (see order for specifics) (Signed by Judge Jane J Boyle on 11/2/06) (klm, ) (Entered: 11/03/2006) |
| 11/07/2006 | 211 | MOTION to take Judicial Notice by Gerald Leo Rogers (mfw, ) (Entered: 11/07/2006) |
| 11/08/2006 | 212 | ORDER denying 211 Motion to Take Judicial Notice. (Signed by Judge Jane J Boyle on 11/08/06) (psm, ) (Entered: 11/08/2006) |
| 11/13/2006 | 213 | STATUS REPORT *Receiver's Report Regarding Objections to Receiver's Claims Report* by Kelly M Crawford. (Koonce, Charlene) (Entered: 11/13/2006) |
| 11/13/2006 | 214 | Appendix in Support filed by Kelly M Crawford re 213 Status Report *Appendix in Support of Receiver's Report Regarding Objections to Receiver's Claims Report* (Attachments: # 1 Appendix Tab 5 to Appendix) (Koonce, Charlene) (Entered: 11/13/2006) |
| 11/14/2006 | 215 | STATUS REPORT *Fourth Report of the Receiver* by Kelly M Crawford. (Koonce, Charlene) (Entered: 11/14/2006) |
| 11/15/2006 | 216 | Notice of Manual Filing of Joint Appendix, Volumes 1-5 In Support of Motions for Summary Judgment Against Gerald Leo Rogers by United States Securities and |

| | | Exchange Commission (Norris, Jeffrey) (Entered: 11/15/2006) |
|---|---|---|
| 11/15/2006 | 217 | MOTION for Summary Judgment *and for Order of Preclusion As To Gerald Leo Rogers* by United States Securities and Exchange Commission (Norris, Jeffrey) (Entered: 11/15/2006) |
| 11/15/2006 | 218 | Brief/Memorandum in Support filed by United States Securities and Exchange Commission re 217 MOTION for Summary Judgment *and for Order of Preclusion As To Gerald Leo Rogers* (Norris, Jeffrey) (Entered: 11/15/2006) |
| 11/15/2006 | 219 | Statement of Undisputed Material Facts in Support filed by United States Securities and Exchange Commission re 217 MOTION for Summary Judgment Against Gerald Leo Rogers. (Norris, Jeffrey) Modified on 11/15/2006 (klm, ). (Entered: 11/15/2006) |
| 11/15/2006 | 220 | Supplemental Document by United States Securities and Exchange Commission *Supplemental Application In Support of Entry of Final Judgment Setting Disgorgement Amounts and Civil Penalties*. (Norris, Jeffrey) (Entered: 11/15/2006) |
| 11/15/2006 | 221 | STATUS CONFERENCE WITH RECEIVER: Status Conference reset for 12/18/2006 10:00 AM before Judge Jane J Boyle. The Receiver and his counsel are required to attend. (see order for specifics) (Signed by Judge Jane J Boyle on 11/15/06) (klm, ) (Entered: 11/15/2006) |
| 11/27/2006 | 222 | Mail Returned as Undeliverable. 212 Order on Motion for Miscellaneous Relief received back from Gerald Leo Rogers as refused. (mfw, ) (Entered: 11/27/2006) |
| 11/28/2006 | 223 | RESPONSE in Opposition filed by Gerald Leo Rogers re 217 MOTION for Summary Judgment *and for Order of Preclusion As To Gerald Leo Rogers* (mfw, ) (Entered: 11/28/2006) |
| 12/06/2006 | 224 | Memorandum in Reply filed by United States Securities and Exchange Commission re 223 Defendant Gerald Leo Rogers' Opposition To Plaintiff's Motion for Summary Judgment For Order of Preclusion. (Norris, Jeffrey) Modified on 12/6/2006 (klm, ). (Entered: 12/06/2006) |
| 12/06/2006 | 225 | PETITION NO. 11: Petition for Order Authorizing Payment of Fees and Expenses by Kelly M Crawford. (Attachments: # 1 Exhibit A# 2 Exhibit B 1 of 3# 3 Exhibit B 2 of 3# 4 Exhibit B 3 of 3# 5 Exhibit C# 6 Exhibit D) (Koonce, Charlene) Modified on 12/6/2006 (nap, ). Modified on 12/7/2006 (klm, ). (Entered: 12/06/2006) |
| 12/18/2006 | | Minute Entry for proceedings held before Judge Jane J Boyle : Status Conference held on 12/18/06. (Court Reporter Shawn McRoberts.) Time in Court: 10 minutes. NO PDF ATTACHED - THIS IS A VIRTUAL MINUTE ENTRY. (psm, ) (Entered: 12/18/2006) |
| 12/21/2006 | 226 | NOTICE by Kelly M Crawford re 225 No Objection to Petition 11. (Koonce, Charlene) Modified on 12/22/2006 (klm, ). (Entered: 12/21/2006) |
| 12/28/2006 | 227 | ORDER granting 181 PETITION NO. 11 Petition for Order Authorizing Payment of Fees. NOW, THEREFORE, IT IS HEREBY ORDERED the Receiver is authorized to pay from Receivership Assets: a. The amount of $7,560.00 to the Kelly M. Crawford for services rendered and costs incurred or paid during the period from July, 2006 to September, 2006; b. The amount of $24,106.31 to Scheef & Stone, LLP for services rendered and costs incurred or paid during the period from July, 2006 to September, 2006; c. The amount of $260.00 to Wood and Jones, PS for services rendered and costs |

| | | |
|---|---|---|
| | | incurred or paid during the period from June, 2006 to September, 2006; d. The amount of $7,299.33 to Warfield & Company, CPAs for services rendered and costs incurred or paid during the period from July, 2006 to September, 2006. (Signed by Judge Jane J Boyle on 12/28/06) (lmr, ) (Signed by Judge Jane J Boyle on 12/28/06) (lmr, ) (Entered: 12/28/2006) |
| 01/03/2007 | 228 | ***Stricken per order of 7/17/07***RESPONSE filed by Gerald Leo Rogers re 224 SEC's Reply to Response to Motion (mfw, ) Modified on 7/18/2007 (jb). (Entered: 01/04/2007) |
| 01/16/2007 | 229 | SEC's Amended Supplemental Application re 160 In Support of Entry of Final Judgment Setting Disgorgement Amounts and Civil Penalties by United States Securities and Exchange Commission. (Attachments: # 1 Exhibit Attachment A - Interest Calculation) (Norris, Jeffrey) Modified on 1/16/2007 (klm). (Entered: 01/16/2007) |
| 01/18/2007 | 230 | FINAL JUDGMENT granting 160 Motion for Permanent Injunction and Other Relief as to Defendants Premium Income Corp., Inforex, Ltd. and Tri-Forex International, Ltd. a/k/a Tri-Forex, Ltd. (see order for specifics) (Signed by Judge Jane J Boyle on 1/17/07) (klm) (Entered: 01/18/2007) |
| 02/14/2007 | 231 | ORDER denying without merit [] Motion to Dismiss. Furthermore, the Court has already addressed Rogers' arguments in the Court's Orders signed 6/23/06 and 1/18/07. (Signed by Judge Jane J Boyle on 02/13/07) (bss) (Entered: 02/14/2007) |
| 03/06/2007 | 232 | Third Accounting of the Receivership by Kelly M Crawford. (Crawford, Kelly) Modified on 3/6/2007 (lmp). (Entered: 03/06/2007) |
| 03/08/2007 | 233 | NOTICE by Kelly M Crawford *Regarding Defendant's Disclaimer of Interest.* (Koonce, Charlene) Modified on 3/8/2007 (klm). (Entered: 03/08/2007) |
| 03/15/2007 | 234 | NOTICE of Change of Address by Gerald Leo Rogers. New address is: Sheridan FCI, P.O. Box 6000, Sheridan, OR 97378-6000. (mfw) (Entered: 03/15/2007) |
| 03/23/2007 | 235 | PETITION NO. 12: Petition for Order Authorzing Payment of Fees and Expenses by Kelly M Crawford. (Attachments: # 1 Exhibit A# 2 Exhibit B 1 of 5# 3 Exhibit B 2 of 5# 4 Exhibit B 3 of 5# 5 Exhibit B 4 of 5# 6 Exhibit B 5 of 5# 7 Exhibit C) (Koonce, Charlene) Modified on 3/26/2007 (klm). (Entered: 03/23/2007) |
| 03/26/2007 | 236 | Supplemental Document by Kelly M Crawford as to 235 Petition No. 12: Petition for Order Authorzing Payment of Fees and Expenses. (Koonce, Charlene) Modified on 3/26/2007 (klm). (Entered: 03/26/2007) |
| 03/30/2007 | 237 | Proof of Service for Subpoena served on John Tanner on 3/26/07. (klm) (Entered: 03/30/2007) |
| 04/09/2007 | 238 | NOTICE by Kelly M Crawford re 235 & 236 No Objection to Petition No. 12. (Koonce, Charlene) Modified on 4/10/2007 (klm). (Entered: 04/09/2007) |
| 05/09/2007 | 239 | MOTION to Take Judicial Notice by Gerald Leo Rogers. (bss) (Entered: 05/09/2007) |
| 06/04/2007 | 240 | MOTION to renew MOTION to Dismiss for lack of subject matter jurisdiction by Gerald Leo Rogers (mfw) (Entered: 06/04/2007) |
| 06/11/2007 | 241 | MOTION to take judicial notice in support of Motion to Dismiss for Lack of |

| | | |
|---|---|---|
| | | Jurisdiction by Gerald Leo Rogers. (bss) (Entered: 06/11/2007) |
| 06/11/2007 | 242 | RESPONSE filed by United States Securities and Exchange Commission re 241 MOTION to take judicial notice in support of Motion to Dismiss for Lack of Jurisdiction (Norris, Jeffrey) (Entered: 06/11/2007) |
| 06/20/2007 | 243 | REPLY to Plaintiff Securities and Exchange Commission 242 Response to 241 MOTION to take judicial notice filed by Gerald Leo Rogers. (bss) Modified on 6/20/2007 (mfw). (Entered: 06/20/2007) |
| 06/28/2007 | 244 | STATUS REPORT *Fifth Report of the Receiver* by Kelly M Crawford. (Crawford, Kelly) (Entered: 06/28/2007) |
| 06/28/2007 | 245 | ORDER: Defendant Gerald L. Rogers Motion to Take Judicial Notice (doc. 239), Motion to Renew Motion to Dismiss for Lack of Subject Matter Jurisdiction (doc. 240), and Motion to Take Judicial in Support of Motion to Dismiss for Lack of Jurisdiction (doc. 241) are DENIED. (Signed by Judge Jane J Boyle on 06/28/07) (psm) (Entered: 06/28/2007) |
| 06/28/2007 | 246 | ORDER granting 235 Petition No 12: Petition for Order Authorizing Payment of Fees and Expenses. (See Order for specifics) (Signed by Judge Jane J Boyle on 6/28/2007) (skt) (Entered: 06/29/2007) |
| 06/29/2007 | 247 | Writ of Habeas Corpus ad Testificandum Issued as to Gerald L Rogers for 07/25/2007 at 4:00 pm. (axm) (Entered: 07/02/2007) |
| 06/29/2007 | 248 | ORDER: Set Deadlines as to 217 Motion for Summary Judgment. Motion Hearing via video teleconference set for 7/25/2007 04:00 PM before Judge Jane J Boyle. (see order for specifics) (Signed by Judge Jane J Boyle on 06/29/2007) (axm) (Entered: 07/02/2007) |
| 07/03/2007 | 249 | MOTION to Submit New Evidence to Support Dismissal of Plaintiffs' Enforcement Actions for Court's Lack of Subject Matter Jurisdiction by Gerald Leo Rogers. (bss) (Entered: 07/03/2007) |
| 07/05/2007 | 250 | MOTION to Amend/Correct 216 Notice of Manual Filing *Request to Correct Error in Summary Judgment Appendix Nunc Pro Tunc* by United States Securities and Exchange Commission (Attachments: # 1 Errata Missing page bate numbered 1428A) (Norris, Jeffrey) (Entered: 07/05/2007) |
| 07/05/2007 | 251 | ORDER granting 250 Motion to Amend/Correct (Signed by Judge Jane J Boyle on 07/05/07) (psm) (Entered: 07/05/2007) |
| 07/09/2007 | 252 | MOTION to Dismiss Pursuant to the Double Jeapardy Clause Protection of the United States Constitution's Fifth Amendment by Gerald Leo Rogers. (bss) (Entered: 07/09/2007) |
| 07/09/2007 | 253 | Mail Returned as Undeliverable. 245 Order received back from Robert C. Sheline as attempted-not known, unable to forward. (npk) (Entered: 07/09/2007) |
| 07/16/2007 | 254 | ORDER denying 249 Motion and denying 252 Motion to Dismiss. (Signed by Judge Jane J Boyle on 07/16/07) (psm) (Entered: 07/16/2007) |
| 07/17/2007 | 255 | Order. On January 3, 2007, Defendant Gerald L. Rogers filed Defendant's Response to SEC's Reply to Defendant's Opposition to Summary Judgment and Defendant's Reply in |

Exhibit 16 to Defendants' Motion to Dismiss

| | | |
|---|---|---|
| | | Opposition to CFTC's Motion for Summary Judgment (doc. 228). Local Rule 7.1 allows for the filing of a motion, response, and reply, but does not provide for additional briefing on a motion. Additionally, Local Rule 56.7 prohibits a party from filing supplemental materials without leave of court. Because Defendant Rogers filed his second response in violation of the Local Rules, the filing shall be stricken. (Signed by Judge Jane J Boyle on 07/17/07) (lmp) (Entered: 07/18/2007) |
| 07/25/2007 | | Minute Entry for proceedings held before Judge Jane J Boyle : Hearing held on 07/25/07. Attorney Appearances: Plaintiff - Jeffery B. Norris; Defense - Gerald Rogers. (Court Reporter Shawnie Archuleta.) Time in Court: 30 minutes. NO PDF ATTACHED - THIS IS A VIRTUAL MINUTE ENTRY. (psm) (Entered: 07/25/2007) |
| 08/01/2007 | 256 | MEMORANDUM ORDER granting 217 Motion for Summary Judgment. (Signed by Judge Jane J Boyle on 08/01/07) (Boyle, Jane) (Entered: 08/01/2007) |
| 08/07/2007 | 257 | MOTION Entry of Final Judgment Pursuant to Summary Judgment Granted August 1, 2007 and For Distribution of Receivership Funds by United States Securities and Exchange Commission with Memorandum in Support. (Attachments: # 1 Exhibit prejudgment interest calculation sheet) (Norris, Jeffrey) (Entered: 08/07/2007) |
| 08/07/2007 | 258 | NOTICE OF INTERLOCUTORY APPEAL by Gerald Leo Rogers. (FEE NOT PAID) (mfw) (Entered: 08/07/2007) |
| 08/07/2007 | 259 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 258 Notice of Interlocutory Appeal (mfw) (Entered: 08/07/2007) |

| PACER Service Center | | |
|---|---|---|
| | Transaction Receipt | |
| | 08/09/2007 11:58:12 | |
| PACER Login: | du6092 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 3:05-cv-00415 |
| Billable Pages: | 15 | Cost: | 1.20 |

Exhibit 17 to Defendants' Motion to Dismiss

☐ **ORIGINAL**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

MAR 1 1 2005

CLERK, U.S. DISTRICT COURT
By _____
              Deputy

SECURITIES AND EXCHANGE COMMISSION,            :

Plaintiff,                          :

vs.                                              :     Civil Action No.
                                                  :     3: 05-CV-0415 B
PREMIUM INCOME CORP., INFOREX, LTD.,             :
TRI-FOREX INTERNATIONAL, LTD.                    :
also known as TRI-FOREX, LTD. and                :
INTERNATIONAL FOREX COMPANY,                     :
GERALD LEO ROGERS also known as                  :
JAY ROGERS and JAY RODGERS, and                  :
ALEXANDER IGOR SHEVCHENKO,                       :

Defendants.                         :

_____

**AGREED PRELIMINARY INJUNCTION AS TO GERALD LEO ROGERS**

This matter came on before me, the undersigned United States District Judge, this *10th*

day of *March*, 2005, on application of Plaintiff Securities and Exchange Commission

("Commission") for issuance of a preliminary injunction, and after the Court having previously

issued a temporary restraining order and other equitable relief including an order freezing assets,

requiring an accounting of revenues, expenses and assets, prohibiting the destruction and/or

alteration of documents, authorizing expedited discovery and requiring the repatriation of funds

and assets against Defendant Gerald Leo Rogers also known as Jay Rogers and Jay Rodgers

("Defendant"). Defendant agreed to the entry of this Order, without admitting or denying the

allegations contained in the Commission's Complaint; has agreed that this Court has jurisdiction

Exhibit 17 to Defendants' Motion to Dismiss

over him and subject matter of this action; and has agreed to waive a hearing and the entry of findings of fact and conclusions of law.

**ACCORDINGLY, IT IS THEREFORE ORDERED:**

1.    Defendant, his agents, servants, employees, attorneys, and all other persons in active concert or participation with him, who receive actual notice of this order, by personal service or otherwise, and each of them, be and hereby are restrained and enjoined from violating Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§77e(a) and 77e(c)]:

a.    by making use of any means or instruments of transportation or communication in interstate commerce or of the mails, to sell a security through the use or medium of a prospectus or otherwise; or

b.    by carrying or causing to be carried through the mails or in interstate commerce, by any means or instruments of transportation, a security for the purpose of sale or for delivery after sale unless a registration statement is in effect as to the security; or to make use of any means or instruments of transportation or communication in interstate commerce of the mails to offer to sell or offer to buy through the use or medium of a prospectus or otherwise a security;

Unless a registration statement has been filed as to the security; or while the registration statement is the subject of a refusal order, stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8 of the Securities Act.

2.    Defendant, his agents, servants, employees, attorneys, and all other persons in active concert or participation with him, who receive actual notice of this order, by personal service or otherwise, and each of them, be and hereby are restrained and enjoined from violating

Re: *SEC v. Premium Income Corp., et al.*
Preliminary Injunction (Rogers)
Page 2

Exhibit 17 to Defendants' Motion to Dismiss

Section 17(a) of the Securities Act [15 U.S.C. §77q(a)], directly or indirectly, in the offer or sale

of a security, by making use of any means or instruments of transportation or communication in

interstate commerce or by use of the mails:

      a.      to employ any device, scheme or artifice to defraud;

      b.      to obtain money or property by means of any untrue statement of a

material fact or any omission to state a material fact necessary in order to make the

statements made, in the light of the circumstances under which they were made, not

misleading; and/or

      c.      to engage in any transaction, practice or course of business which operates or

would operate as a fraud or deceit upon any purchaser.

      3.      Defendant, his agents, servants, employees, attorneys, and all other persons in

active concert or participation with him, who receive actual notice of this order, by personal

service or otherwise, and each of them, be and hereby are restrained and enjoined from violating

Section 10(b) of the Exchange Act and Rule 10b-5 [15 U.S.C. §78j(b) and 17 C.F. R. §240.10b-5],

directly or indirectly, in connection with the purchase or sale of a security, by making use of any

means or instrumentality of interstate commerce, of the mails or of any facility of any national

securities exchange:

      a.      to use or employ any manipulative or deceptive device or contrivance;

      b.      to employ any device, scheme or artifice to defraud;

      c.      to make any untrue statement of a material fact or omit to state a material

fact necessary in order to make the statements made, in the light of the circumstances under

which they were made, not misleading; and/or

Exhibit 17 to Defendants' Motion to Dismiss

      d.     to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

      4.     Defendant, his agents, servants employees, attorneys and other persons in active concert or participation with him, who receive actual notice of this order, by personal service or otherwise, is hereby restrained and enjoined from, directly or indirectly, making any payment or expenditure of funds belonging to or in the possession, custody or control of Defendant, effecting any sale, gift, hypothecation or other disposition of any asset belonging to or in the possession, custody or control of Defendant, pending a showing to this Court that Defendant has sufficient funds or assets to satisfy all claims arising out of the violations alleged in the Commission's Complaint or the posting of a bond or surety sufficient to assure payment of any such claim.

      5.     All banks, savings and loan associations, savings banks, trust companies, broker-dealers, other financial or depository institutions and investment companies that hold one or more accounts in the name, on behalf or for the benefit of Defendant, are hereby restrained and enjoined from engaging in any transaction in securities (except liquidating transactions necessary to comply with a court order) or any disbursement of funds or securities pending further order of this Court.

      6.     All other individuals, corporations, partnerships, limited liability companies and other artificial entities are hereby restrained and enjoined from disbursing any funds, securities or other property obtained from Defendant without adequate consideration.

      7.     Defendant is hereby required to make an interim accounting, under oath, within ten days of the issuance of this order (1) detailing all monies and other benefits which he received, directly and indirectly, as a result of the activities alleged in the Complaint (including the date on which the monies or other benefit was received and the name, address and telephone

Exhibit 17 to Defendants' Motion to Dismiss

number of the person paying the money or providing the benefit), (2) listing all current assets wherever they may be located and by whomever they are being held (including the name and address of the holder and the amount or value of the holdings) and (3) listing all accounts with any financial or brokerage institution maintained in the name of, on behalf of or for the benefit of the Defendant (including the name and address of the account holder and the account number) and the amount held in each account at any point during the period from January 1, 2004, through the date of the accounting.

8.    Defendant, his agents, servants, employees, attorneys and other persons in active concert or participation with him, who receive actual notice of this order, by personal service or otherwise, are hereby restrained and enjoined from destroying, removing, mutilating, altering, concealing and/or disposing of, in any manner, any books and records owned by or pertaining to the financial transactions and assets of any defendant named in the above-styled cause.

9.    Defendant shall immediately repatriate all funds and assets obtained, directly or indirectly, from the activities described in the Commission's Complaint that are now located outside the jurisdiction of this Court. Such funds shall be, immediately, transferred or paid into the Court appointed Receiver. Furthermore, with respect to any other asset owned by the Defendant that is now located outside the jurisdiction of this Court, including specifically, any securities or real property, the Defendant shall immediately identify to the Receiver the location of such asset, the price paid or consideration given, and the date upon which it was purchased. Securities or other personal property that are to be repatriated and that can be readily moved or transferred and titles or other documents reflecting ownership as to real property subject to repatriation, shall be delivered to the Receiver as soon as practicable.

Re: *SEC v. Premium Income Corp., et al.*
Preliminary Injunction (Rogers)
Page 5

Exhibit 17 to Defendants' Motion to Dismiss

10.    The United States Marshal in any district in which Defendant does business and/or may be found is authorized and directed to make service of process at the request of the Commission.

11.    The Commission is authorized to give any notice required under the Federal Rules of Civil Procedure to the Defendant by U.S. Mail, by electronic mail, or by any other means authorized by the Federal Rules of Civil Procedure.

12.    All parties shall serve written responses to any other party's request for discovery and the interim accountings to be provided by Defendant by delivery to the Commission address as follows:

> UNITED STATES SECURITIES AND EXCHANGE COMMISSION
> Fort Worth District Office
> Attention: Jeffrey B. Norris
> 801 Cherry Street, Unit 18
> Fort Worth, TX 76102-6477
> Facsimile: (817) 978-6452

and by delivery to other parties at such address(es) as may be designated by them in writing. Such delivery shall be made by the most expeditious means available, including facsimile machine.

EXECUTED AND ENTERED at 3:15 pm o'clock _.m. CST this 10th day of March, 2005.

_____
United States District Judge

Agreed and Approved as to Form and Content:

_____
Jeffrey B. Norris
Washington, D.C. Bar No. 424248
Attorney for Plaintiff

Re: *SEC v. Premium Income Corp., et al.*
Preliminary Injunction (Rogers)
Page 6

Exhibit 17 to Defendants' Motion to Dismiss

U.S. SECURITIES and EXCHANGE COMMISSION
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, Texas 76102-6822
Telephone: (817) 978-6452
Facsimile: (8 17) 978-4927

_Gerald Rogers_ — _signed with total inability_
For Gerald Leo Rogers       _to make an accounting of_
                            _any kind —_

_____            _The Receiver has been advised_
Date                     _as to the location of all_
                         _assets in Banks with which_
Witness:                 _the Companies have done_
_Thomas L Atwood_        _business with._
8/4/2005
                         _— Mar 4, 2005_

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND | § | |
| EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3: 05-CV-0415-B |
| | § | |
| PREMIUM INCOME | § | |
| CORPORATION, et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are multiple motions filed by Defendant Gerald Rogers in this case. After review of the arguments of the parties, the Court **ORDERS** as follows:

- The Court **DENIES** Rogers's Request for Issuance of Subpoenas (doc. 87), filed October 19, 2005. The Court has discretion to deny the issuance of subpoenas when necessary to prevent abuse of process. *Cupit v. Jones*, 835 F.2d 82, 86-87 (5th Cir. 1987); *Schildkraut v. Bally's Casino NewOrleans, L.L.C.*, Civ. No. 04-0366, 2004 WL 1558796 at *1 (E.D. La. July 9, 2004). Rogers's motion to subpoena opposing counsel and the Court's receiver shows a desire to abuse process in this case. Further, Rogers has not demonstrated that he is able to pay the $40 witness fee, *see* 28 U.S.C. § 1821, and his Motion to Appoint Counsel indicates that he will be unable to pay. Therefore, the Court exercises its discretion and **DENIES** Rogers's request.

- The Court **DENIES** Rogers's Request for Subpoenas (doc. 90), filed October 21, 2005, in

which he requests seven subpoenas for unidentified individuals.  For the reasons discussed above, the Court exercises its discretion and **DENIES** Rogers's request.

- The Court **DENIES** as moot Defendant's Motion to Magistrate to Approve Form for Repatriation of Funds from Banks in Europe (doc. 97), filed November 3, 2005.  Rogers has since signed the required releases.

- The Court **DENIES** Rogers's Motion to Strike Relief Claims for Failure of Plaintiffs to Comply with Discovery Rules 33 and 34 Pursuant to Rule 37 (doc. 100), filed November 15, 2005.  A court may dismiss a plaintiff's claims as a sanction only in instances of bad faith or willful abuse of the judicial process.  *Gonzalez v. Trinity Marine Group, Inc.*, 117 F.3d 894, 898 (5th Cir. 1997).  The Court has reviewed Rogers's discovery requests and Plaintiff's objections and response and does not find bad faith or willful abuse sufficient to warrant the sanction of dismissal.

- The Court **DENIES** Rogers's Motion for Evidentiary Hearing on Plaintiffs' Refusal to Participate in Discovery Pursuant to FRCP Rule 37 (doc. 102), filed November 17, 2005.  The Court deems a hearing unnecessary.

- The Court **DENIES** Rogers's Motion to Dismiss Action for Lack of Court's Subject Matter Jurisdiction (doc. 107), filed December 6, 2005.  In his Motion, Rogers contends that this is not an Article III court.  Congress has established this Court as an Article III court and has provided that the President is to nominate judges to fill it.  28 U.S.C. §§ 124, 133; *See also* 150 CONG. REC. S6944-01 (daily ed. June 17, 2004).

- The Court **DENIES** Rogers's Motion to Take Judicial Notice Prior to Filing Title 28 USC Section 351 Complaint (doc. 111), filed January 4, 2006.  Rogers's Motion is based on his

misconception that this is not an Article III court and that various judges are involved with Plaintiff in some sort of RICO enterprise to deprive Rogers of his freedom. That is patently false.

- The Court **DENIES** Rogers's Motion for Appointment of Counsel (doc. 122), filed January 18, 2006. In deciding a motion for appointment of counsel, as court is to consider (1) the type and complexity of the case; (2) whether the indigent is capable of adequately presenting his case; (3) whether the indigent is a position to adequately investigate the case; and (4) whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross-examination. *Gonzalez v. Carlin*, 907 F.2d 573, 579 (5th Cir. 1990)(citing *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982)). Although Rogers asserts he is without funds, he has been very active in the case so far, filing multiple motions and responses. As such, the Court declines to appoint counsel at this time. Should the case proceed to trial, Rogers may raise this issue again.

- The Court **DENIES** Defendant's Motion to Order Receiver to Return Fees and Motion to Disqualify District Judge to Facilitate Transfer to Authorized Article III Court; or in the Alternative, Proceed to Dismiss Action for Lack of Subject Matter Jurisdiction (doc. 124 ), filed February 3, 2006. This motion is based, again, on Rogers's belief that the undersigned is not an Article III judge, but is in fact involved in a conspiracy to harm Rogers. Such belief is groundless, as is Rogers's Motion.

- The Court **DENIES** Rogers's Motion to Disqualify District Judge Pursuant to 28 USC §144 and §455(a) (doc. 136), filed March 2, 2006. Rogers has not demonstrated any bias or prejudice held by the Court.

Exhibit 18 to Defendants' Motion to Dismiss

- The Court **DENIES** Rogers's Motion to Audit Receiver (doc. 150), filed April 10, 2006. The Court's periodic status conferences with the Receiver are sufficient to apprise the Court of the Receiver's activities.

- The Court **DENIES** Rogers's Motion to Take Judicial Notice (doc. 162), filed May 3, 2006. Again, this Motion is premised on Rogers's incorrect belief that this is not an Article III court and, as such, the motion lacks merit.

- The Court **DENIES** Rogers's Request for Subpoena Duces Tecum (doc. 177), filed June 19, 2006 for the same reasons discussed above regarding Rogers's other requests for subpoenas. Rogers's conduct in this case indicates that the subpoenas will be used to harass individuals and request irrelevant information.

**SO ORDERED.**

SIGNED June ___23rd___, 2006

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND | § | |
| EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3: 05-CV-0415-B |
| | § | |
| PREMIUM INCOME | § | |
| CORPORATION, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM ORDER

Before the Court is Plaintiff United States Securities and Exchange Commission's ("SEC")

Motion for Summary Judgment and for Order of Preclusion As to Defendant Gerald Leo Rogers

("Rogers") (doc. 217), filed November 15, 2006. Because Rogers presents no summary judgment

evidence beyond that provided by the SEC, the Court DENIES the motion for an order of preclusion

as moot. Because no genuine issue of material fact exists and Plaintiff has sufficiently shown that

Rogers violated the anti-fraud and registration provisions of the federal securities laws, the Court

GRANTS summary judgment for the SEC.

I.  BACKGROUND

The instant case is an enforcement action by the SEC against several defendants for

violations of §§ 5(a), 5(c), and 17(a) of the Securities Act and §10(b) of the Securities Exchange Act

as well as Rule 10b-5 promulgated thereunder. A thorough account of the facts of this case can be

found in the "Statement of Undisputed Material Facts in Support of Plaintiff Securities and

Exchange Commission's Motion for Summary Judgment Against Defendant Gerald Leo Rogers."

(doc. 219)  Plaintiff filed its case against Defendants Premium Income Corp., Inforex, Ltd., Tri-Forex International, Ltd.[1], Gerald Leo Rogers, and Alexander Igor Shevchenko on March 2, 2005.  (doc. 1)  Soon, the Court signed an ex parte temporary restraining order and ordered that Defendants' assets be frozen.  (doc. 12)  On March 11, the SEC and the Defendants agreed to a preliminary injunction, which enjoined Defendants from violating §§ 5(a), 5(c), and 17(a) of the Securities Act, §10(b) of the Securities and Exchange Act, and Rule 10b-5.  (docs. 27-31)  On January 18, 2007, the Court also granted judgments against the Corporate Defendants for their failure to appear or otherwise defend the instant case.  (doc. 230)  Specifically, the Court permanently enjoined the Corporate Defendants from violating the aforementioned sections of the securities statutes and granted disgorgement and third-tier civil monetary penalties.  (Id.)  The SEC now moves for summary judgment against Rogers in the instant case.

## II.  LEGAL STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant summary judgment when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment.  *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).  The burden lies with the movant to prove that no genuine issue of material fact exists.  *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001).  To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and all inferences must be drawn in its favor.  *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371-72 (5th Cir. 2002).  If the evidence submitted would allow

---

[1]Premium Income Corp., Inforex, Ltd., and Tri-Forex International, Ltd. will be referred to collectively as the Corporate Defendants.

a reasonable jury to return a verdict for the non-movant, a genuine issue remains and the court cannot grant summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Alternatively, a movant may meet its burden by showing that its opponent failed to present sufficient evidence to establish an essential element of the case where the opponent bears the burden of proof for that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In the instant case, Defendant Rogers has not provided any evidence to create a material issue of fact or counter the evidence that Plaintiff has provided in support of its arguments for summary judgment.

## III.  ANALYSIS[2]

### A.     The PIC investment program qualifies as a security.

In both the Securities Act and the Securities Exchange Act, Congress defined the term "security" to include an investment contract. 15 U.S.C. §§ 77b(a)(1), 78c(a)(10). An investment contract is (1) an investment of money, (2) in a common enterprise, (3) with profits to come solely from the efforts of others. *SEC v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946). The *Howey* court further explains that their definition of "investment contract" "embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *Id.* at 299. In the instant case, the undisputed evidence shows that the PIC program satisfies all prongs of the *Howey* test for investment contracts and is, therefore, a security. First, the PIC program's website demonstrates that participation in the program required an investment of money. (APP 1262-67)

---

[2]While citations to the substantial amount of evidence supporting Plaintiff's claims can be found in the Statement of Undisputed Facts, in the interest of time, the Court will cite a more limited subset of that evidence during this ruling.

The PIC program also satisfies the common enterprise prong of the *Howey* test. The Fifth Circuit employs the broad vertical commonality test for common enterprise, requiring that "the fortuity of the investments collectively is essentially dependent upon promoter expertise." *Long v. Shultz Cattle Co., Inc.*, 881 F.2d 129, 140 (5th Cir. 1989) (quoting *SEC v. Continental Commodities Corp.*, 497 F.2d 516, 522 (5th Cir. 1974)). The court has elucidated "the necessary interdependence may be demonstrated by the investors' collective reliance on the promoter's expertise even where the promoter receives only a flat fee or commission rather than a share in the profits of the venture." *Id.* at 141. In the instant case, the SEC has shown that PIC investors relied on Rogers's expertise as he structured and performed all covered call transactions. (APP 1268-70) The declaration that Rogers wrote for PIC broker Singleton also demonstrates that he was the managing director of PIC and controlled the invested funds. (APP 0583-89) Thus, the PIC investors' fortunes are interwoven with and dependent upon the efforts and success of Rogers because he was responsible for actually performing the covered call transactions.

As to the third prong of the *Howey* test, requiring an expectation of profits solely from the efforts of others, the Fifth Circuit has instructed district courts to examine "whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." *Williamson v. Tucker*, 645 F.2d 404, 418 (5th Cir. 1981); *SEC v. Koscot Interplanetary, Inc.*, 497 F.2d 473, 483 (5th Cir. 1974) (quoting *SEC v. Glenn W. Turner Enters., Inc.*, 474 F.2d 476, 482 (9th Cir. 1973)). In this case, the investor funds involved were all managed by Rogers and PIC. (APP 0583-89) Further, PIC investor materials and their power point presentation refer to this investment as a "passive way to diversify your liquid assets" and describe the investor's role as starting an account. (APP 1174, 1193-95) As explained

Exhibit 19 to Defendants' Motion to Dismiss

in an earlier section of this order, Rogers performed all of the foreign currency transactions. Therefore, Rogers's efforts were the undeniably significant ones. Because the SEC has shown that the PIC investment program qualifies as an investment contract and is therefore security, the Commission has jurisdiction to regulate the program.

On a related note, Rogers argues that the SEC lacks statutory authority to enforce the securities laws against him unless he grants them personal jurisdiction through a regulatory agreement. Nevertheless, Rogers has provided no legal basis for this argument. Although Rogers cites *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561 (1995) for the proposition that the securities statutes do not apply to transactions unless a party applies to the SEC for registration, the Court actually held that the application of §12(2) of the Securities Act was limited to public offerings. Further, the *Gustafson* court reaffirms the broad coverage of §17(a) of the Securities Act. *Id.* at 577. Thus, the SEC's jurisdiction over the PIC investment program is not hampered by Rogers's failure to register with the SEC.

**B.    Rogers violated the anti-fraud provisions of the federal securities laws.**

Section 17(a) of the Securities Act prohibits a person in the offer or sale of any securities from using the instruments of interstate commerce, directly or indirectly,

> (1) to employ any device, scheme, or artifice to defraud, or
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q. Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder also make it unlawful for a person

Exhibit 19 to Defendants' Motion to Dismiss

(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. §240.10b-5. Therefore, to establish a violation of § 10(b) and Rule 10b-5 plaintiff must show that defendant "(1) made a material misrepresentation or omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2nd Cir. 1999). While a plaintiff must show essentially the same elements to establish a violation of § 17(a), no showing of scienter is required for violations of subsections (a)(2) and (a)(3). *Id.* In evaluating representations made by defendants, the Fifth Circuit has instructed that "[a] statement or omitted fact is 'material' if there is a substantial likelihood that a reasonable investor would consider the information important in making a decision to invest." *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 359 (5th Cir. 2002) (quoting R&W *Technical Servs. Ltd. v. CFTC*, 205 F.3d 165, 169 (5th Cir. 2000)).

The SEC has shown that Rogers made many misrepresentations and omissions during solicitation of brokers and investors for his investment program in foreign currency options. For example, it remains undisputed that Rogers represented that the PIC program would produce guaranteed profits and that the investors' principal was completely safe. (APP 1133-35, 1184, 1259, 1271) These statements about the potential for profits and the degree of risk are material because a reasonable investor would always consider those two factors in making a decision to invest. The declarations of experts Michel Robe and Ronald Hobson show that these representations are false because investors bear significant currency risk, as well as downside risk and credit risk so profits

cannot be guaranteed. (APP 2608-11) Most importantly, the undisputed facts show that Rogers also misrepresented that 100% of investor funds would be dedicated to engaging in the foreign currency covered call transactions advertised by PIC. (APP 609, 1035, 1079) These misrepresentations are material as well because if a reasonable investor knew what his funds would actually be used for once deposited with PIC and that he would not be seeing the returns promised by Rogers, the website, and the brokers, he would not invest in the PIC plan. These representations were false because the majority of investor funds were transferred through various accounts to Inforex accounts at Saxo Bank in Denmark and Synthesis Bank in Switzerland. Once deposited in the foreign banks, Rogers used a large portion of the funds to engage in short-term call and put options as well as uncovered foreign currency options and non-option foreign currency trades, rather than the longer-term covered call transactions advertised to investors. These transactions resulted in millions of dollars in trading losses. (APP 0030-39, 046, 0145-48, 0386, 0412, 1895-96, 1933, 2601, 2611-17) Having found no disputed issues of material fact with respect to Rogers's material misrepresentations and omissions in connection with the offer or sale of securities, the Court now turns to the SEC's showing of scienter.

_____ In order to establish liability on claims under § 10(b), Rule 10b-5, and § 17(a)(1), a plaintiff must also show that the defendant acted with scienter, "a mental state embracing an intent to deceive, manipulate, or defraud." *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 961 (5th Cir. 1981) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193-94 n.12 (1976)). Thus, the defendant must know that he is communicating materially false information or he must be severely reckless in such communications. *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1020 (5th Cir. 1996). In the instant case, the undisputed evidence shows that Rogers originated all of the information about the

PIC program that was given to brokers and passed along to investors.  Additionally, he created the content for the PIC website as well as a script for soliciting investors.  While a few of brokers created their own additional materials to help solicit clients, these materials were all based upon the information provided by Rogers, and Rogers approved the training materials created by broker coordinator Bill Singleton before sending them to other brokers.  (APP 0196, 0210, 0216-19, 0583, 0868-69, 1036, 1041, 1139, and 1141)  Thus, the Court finds that the evidence provided by the SEC shown is that Defendant Rogers acted with scienter at least as to his misrepresentations about the use of investor funds.  Rogers originated all information about the PIC program that appeared on PIC's website and created or approved all materials that PIC sent to its brokers.  Further, brokers based their communications with their investors on the information provided to them by Rogers and PIC.  Because Rogers also had control over the use of the investors' funds, he had to have known that 100% of the funds were not being used for the covered call transactions specified by the investors when they deposited their money with PIC.  Because the undisputed evidence provided by the SEC establishes that Rogers violated § 17(a) of the Securities Act, § 10(b) of the Securities Exchange Act, and Rule 10b-5 promulgated thereunder and because Rogers has failed to create a genuine issue of material fact as to these violations, the Court GRANTS summary judgment for the SEC on those claims.

**C.**     **Rogers also violated the securities registration provisions of the Securities Act.**

Section 5(a) of the Securities Act prohibits a person from selling or delivering after sale any security for which a registration statement is not in effect.  15 U.S.C. § 77e(a).  Additionally, § 5(c) prohibits the offering for sale of any security unless a registration statement has been filed as to that security.  15 U.S.C. § 77e(c).  To establish a prima facie case for a § 5 violation, the SEC must show:

(1) no registration statement was in effect as to the securities; (2) defendant sold or offered to sell the securities; and (3) interstate transportation or communication or the mails were used in connection with the offer or sale. *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901-02 (5th Cir. 1980) (citing *SEC v. Continental Tobacco Co.*, 463 F.2d 137, 155 (5th Cir. 1972)). The SEC has provided sufficient evidence to make such a showing. First, an attestation of the SEC's records officer demonstrates that no registration of securities was ever made by Premium Income Corp., Tri-Forex, or Inforex. (APP 1449, 1893) The testimony of several brokers also show that Rogers represented that the covered call options were exempt from registration. (APP 0259, 1043-44, 1141) Second, Rogers and PIC offered and sold these investment contracts to at least 162 investors. (APP 881-82, 1997-98, 2525-28, 2531) Finally, the PIC website and testimony about mailings to potential brokers and investors establishes that Rogers and PIC used instruments of interstate commerce and the mails in connection with the offer and sale of their investment contracts. (APP 0222, 0876, 1259-79) Again, Rogers fails to offer evidence and create a genuine issue of material fact as to the violation established by the SEC.

Once a plaintiff has made its prima facie case of a defendant's violation of the registration provision, the defendant bears the burden of establishing that the offering or transaction qualified for a registration exemption. *SEC v. Ralston Purina Co.*, 346 U.S. 119, 126 (1953). In the instant case, Plaintiff Rogers fails to carry his burden of proving that PIC's investment contract offering qualified for a registration exemption . Although he suggests in his summary judgment response that the investment contract qualifies for the private placement exemption under § 4(2) of the Securities Act, no evidence supports the application of the exemption. In determining whether to apply the private placement exemption the Court considers four factors: "(1) the number of offerees; (2) the

sophistication of the offerees; (3) the size and manner of the offering; and (4) the relationship of the offerees to the issuer." *SEC v. Murphy*, 626 F.2d 633, 644-45 (9th Cir. 1980) (citations omitted). The party claiming the exemption must make a showing as to all four elements for each purchaser and each offeree in order to avail himself of the exemption. *Id.* Defendant has presented no evidence in support of the application of the private placement exemption or any other exemption. Thus, the Court GRANTS summary judgment on this claim.

**D.    Permanent Injunction**

Because the undisputed evidence shows that Defendant Rogers violated both the anti-fraud and registration provisions of the federal securities laws, the Court now turns to the issue of whether the requirements for a permanent injunction have been satisfied. Section 20(b) of the Securities Act and § 21(d) of the Securities Exchange Act allow the SEC to seek and the district court to grant, if appropriate, a permanent injunction against a person who has violated federal securities laws. 15 U.S.C. § 77t(b); 15 U.S.C. § 78u(d). Under Fifth Circuit precedent,

> the Commission is entitled to prevail when the inferences flowing from the defendant's prior illegal conduct, viewed in light of present circumstances, betoken a "reasonable likelihood" of future transgressions.
>
> * * *
>
> Relevant considerations in the "reasonable likelihood" analysis resolve into essentially three areas of inquiry: the nature of the past violation, the defendant's present attitude, and objective constraints on (or opportunities for) future violations of securities laws.

*SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. 1981).

In the instant case, all factors weigh in favor of granting a permanent injunction. First, Mr. Rogers has an extensive criminal and regulatory history beyond the securities law violations the Court finds today. In 1977, the United States District Court for the Central District of California

permanently enjoined Rogers from violating the registration and anti-fraud provisions of the federal securities laws. (APP 1555-1591) In 1987, he was convicted of 7 counts of mail fraud and 10 counts of aiding and assisting the preparation of false income tax returns in connection with a fraudulent scheme in which Rogers and entities created by Rogers sold interests in nonexistent and unfinished films. (APP 1450-68) In 1990, Rogers was convicted on 12 felony counts of wire fraud, mail fraud, securities fraud, and obstruction of justice in connection with a scheme to sell fraudulent gold mining tax shelter investments. (APP 1469-1544) In 1991, the United States District Court for the Central District of California again permanently enjoined Rogers from violating the registration and anti-fraud provisions of federal securities laws. (APP 1545-1554) Second, Rogers does not acknowledge that his actions were wrong and instead blames his customers' losses on actions taken by the SEC and CFTC. (APP 583-589) Finally, although Defendant is currently serving a prison sentence and is likely to remain incarcerated until 2015, the Court believes Rogers may again violate the securities laws upon his release. The Court notes that Rogers began implementing the Premium Income scheme shortly after his release from serving ten years in prison in 2003. Because there is a reasonable likelihood of future securities law violations, the Court GRANTS Plaintiff's motion and permanently enjoins Defendant Rogers from violating §§ 5(a), 5(c), and 17(a) of the Securities Act and § 10(b) of the Securities Exchange Act as well as Rule 10b-5 promulgated thereunder.

## E.    Disgorgement

In securities cases, the court may also order disgorgement to deprive a defendant of his illicit gains. *See, e.g., SEC v. Huffman*, 996 F.2d 800 (5th Cir. 1993); *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71 (5th Cir. 1993). Further, the court enjoys broad discretion in determining the amount to be disgorged. *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1474-75 (2d Cir. 1996). The Second Circuit

provides guidance on ordering disgorgement, expounding that "The amount of disgorgement ordered need only be a reasonable approximation of profits causally connected to the violation; any risk of uncertainty [in calculating disgorgement] should fall on the wrongdoer whose illegal conduct created that uncertainty. *Id.* at 1475 (internal quotation marks and citations omitted). Here, the receiver has provided the Court with a forensic accountant's calculation of the amount of money Rogers received from investors—$11,891,608—as well as the amount forensic accountants found that Rogers and PIC returned to investors—$932,427. (APP 1997, 2525-28) Subtracting the money returned to investors from the money collected by Rogers, the Court GRANTS Plaintiff's motion and orders Defendant to disgorge his gain of $10,959,181 as well as pay prejudgment interest on that amount. Rogers shall be jointly and severally liable for this amount with the Corporate Defendants. (See Final Judgment, doc. 230)

## F.    Third-tier Civil Penalty

Finally, the SEC seeks a third-tier penalty against Rogers. Under § 20(d) of the Securities Act and § 21(d)(3) of the Securities Exchange Act, a court may impose a third-tier penalty when the violation in question "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and "such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. §§ 77t(d), 78u(d)(3). In the instant case, Rogers's violations of the anti-fraud provisions clearly involved fraud and deceit. Moreover, his actions caused substantial losses of $10,959,181 to approximately 162 investors. Accordingly, the Court GRANTS Plaintiff's motion and orders Rogers to pay a civil penalty of $120,000 for his violation.

Exhibit 19 to Defendants' Motion to Dismiss

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS summary judgment in favor of the SEC.  To that end, Defendant Rogers is permanently enjoined from violating the aforementioned sections of the federal securities laws and is ordered to disgorge his profits of $10,959,181 and pay prejudgment interest on that amount.  Additionally, Rogers is ordered to pay a third-tier civil penalty of $120,000.  Plaintiff SEC shall submit to the Court a revised proposed final judgment, including a current calculation of prejudgment interest, within twenty days of the date of this order.

**SO ORDERED.**

SIGNED August  _1st_ , 2007.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

ORIGINAL

Exhibit 20 to Def. Motion to Dismiss

ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

DEC - 6 2005

CLERK, U.S. DISTRICT COURT

By _____
              Deputy

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | CASE # 3-05-CV-415-B |
| COMMODITIES FUTURE TRADING COMMISSION: | | CASE # 3-05-CV-416-B |
| Plaintiffs, | : | |
| v. | : | |
| PREMIUM INCOME CORP et al. | : | |
| Defendants | : | |

---

## MOTION TO DISMISS ACTION FOR LACK OF COURT'S SUBJECT MATTER JURISDICTION

---

Comes Now the defendant Gerald L. Rogers, in pro se and moves this Honorable Court pursuant to FRCivP Rule 12(h)(3) to dismiss the above captioned case due to the court's "lack of subject matter jurisdiction" under the United States Constitution Article III, based on the following:

**1, The jurisdiction of this court is fundamental - without it, courts cannot proceed at all in any case. Ruhrgas v. Marathon Oil  526 US 574 (1999).**

With specificity, Article III of the Constitution States:

" Section 2. The Judicial Power shall extend to all cases in law and equity arising under the constitution, the laws of the United States....made...to controversies to which the United States shall be a party".

Here, there is no question as to whether the United States and its various divisions or agencies are parties.  Indeed, even by the Receiver's own pleadings that he is an agent of this court, the United States is the real party of interest in this case.

Exhibit 20 to Def. Motion to Dismiss

Based on the history of this court, United States District Court for the Northern District of Texas, it was established prior to the statehood of Texas and at which time it was promulgated by Congress to be a legislative Court pursuant to Article I/IV as is more fully explained in Black's Legal Dictionary under "Article I".

And, the court's status is made clear by the statutes and attendant annotations that precludes this court being an Article III Court and enjoying the jurisdiction of the Constitution as stated in Article III.  Further, the Article III courts are specified in 28 USC Chapter 5 with inclusions and exclusions in Sections 81 - 131.  The Article III courts constituted by Congress therein are "district court of the United States for the District of Columbia Section 88, note 1, Hawaii Section 91, note "Court of the United States"; and Puerto Rico Section 119, note 1; and, of course the Supreme Court of the United States.

Conclusively, the legislative status of this court has never been changed and this is even evidenced by its name, "United States District Court" versus district court of the United States as is further verified by 28 USC §451 Annotation Note 8.

> "District court of the United States standing alone, includes only constitutional courts."

If there still remains a question in this court's mind, the 28 USC Rules of Evidence 1101 makes the division of jurisdictional authority perfectly perspicuous.

> "ADVISORY COMMITTEE NOTES, Note to Subdivision (a) (Clause 2) These various provisions do not in terms describe the same courts.  In Congressional usage the phrase "district court of the United States" without further qualification,

2.

traditionally has included the district courts established by Congress in states (District of Columbia, Puerto Rico and Hawaii) under Article III of the Constitution, which are constitutional courts and has not included the district courts created under Article IV Section 3 Clause 2, which are legislative courts. **Hornbuckle v. Toombs** 85 US 648.

Furthermore, not only does the court lack subject matter jurisdiction, the real party of interest, the United States lacks standing to bring this suit even under Article III due to the fact that neither this court nor the SEC/CFTC plaintiffs were aggrieved parties - prior to suit, also there were no complaints from the PIC clients.

In **Gladstone Realtors v. Village of Bellwood** 441 US 91 (1979), the Court mandated:

> "At an irreducible minimum Article III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of putatively illegal conduct of the defendant."

This court and the other United States parties may have had other remedies to restrict the Premium Income Corp business, but the current action is completely without subject matter jurisdiction for this court.

**2. The SEC/CFTC suits, if they could by statute establish a legal standing, by their own legislative authority had to have been brought in a district court of the United States.**

In addition to this court not being an Article III court in which equity and laws of the United States must be adjudicated when by the Constitution, the United States is a party, the SEC and CFTC's own legislative authority restricts the filing of their enforcement proceedings in this court. The SEC's legislative requirement under 15 USC §77t(b) codified as 48 Stat. 86, Section 20(b), uncodified Sections 77v, 78 u(d)(1) and 78 aa together

with CFTC's 7 USC §13a-2(2) requires that their suits had to be brought in a "district court of the United States".

For Example 15 USC t(b) as do all the other statutes:states:

> "Whenever it shall appear to the Commission that any person is engaged in.....a violation .... of this title.....it may in its discretion bring an action in any district court of the the United States. United States court of any territory, or the Supreme Court of the District of Columbia....."

This Court is not the first court that has confused its jurisdiction with that of an Article III Court.  As mandated in **Palamore v. United States** 411 US 388 (1973) 36 Led 2d @35₮,

> "It is apparent that neither this (Supreme) Court nor Congress has read the constitution as requiring every federal question arising under federal law or even every criminal prosecution for violations of any act of Congress to be tried in an Article III Court before a judge enjoying lifetime tenure and protection against salary reduction."

This Supreme Court mandate would also apply to the federal question to which the Receiver now claims for jurisdiction to sue the PIC Brokers in 3-05-CV2299.  Therefore, due to the fact that this court lacks jurisdiction in this suit it must also terminate or reverse its Receivership Order to render the new Broker litigation moot.

> ### 3.  This court's jurisdiction as an Article III Court is not only precluded by Statute, but also by name.

As with this court, clearly the United States District Courts are the named legislative courts.  And, just as clear, by the Statutes grant original jurisdiction to the district courts of the United States have used language and terminology that enjoy a well established historic meaning - see **Mookini v. United States** 303 US 201, 205 (1938).  **American Insurance v.**

~~the certain decision against the existence a provision of the~~

Exhibit 20 to Def. Motion to Dismiss

**356 Bales of Cotton** 7Led 242 (1828) together with **Hornbuckle,** supra all hold that "United States District Courts" are legislative and not constitutional.  This was also affirmed in **Balzac v. Porto Rico** 258 U.S 298 (1922), holding that "United States District Courts" are not "true United States courts established under Article III of the Constitution.

Furthermore, legislative courts are not required to exercise same Article III guarantees as required of constitutional courts. (See **Keller v. Potomac Electric Power** 261 US 428 (1923); **Federal Trade Commission v. Klesner** 247 US 145 (1927) **Glidden Co. v. Zdanok** 370 US 530 (1962); **Northern Pipeline Co. v. Marathon Pipe Line Co.** 458 US 50 1982.  Black's Dictionary also explains that an "Article I" court does not have to provide the same constitutional protections.

And, therein lies the problem in this case.  The court has had no interest in the literal lies and fraud in which the plaintiffs engaged to entice the court to order a receivership and/or, the literal criminal conduct in the unlawful Fourth Amendment seizure that occurred prior to the Court's March 2, 2005 receivership order.

As Justice Douglas opined in **Palmore,** supra, "Without the independence granted and enjoyed by Article III judges, a federal judge could more easily become the tool of a ravenous Executive Branch".  If this is not the case, to save re-adjudication of this case in a district court of the United States, then this court should immediately give the clients a choice, get out now with a percentage of their money or stay for the duration

5

of ten years as they all intended.  As can be seen from the attached chart and article from the Wall Street Journal, Rogers representations in May that the clients could be made whole within 6 months has come true, not once, but twice - it is simply unfair to the clients to have this court support the lies and "principals" of the plaintiffs at the expense of the Clients.

Pursuant to **McNutt v. General Motors** 298 US 178 - "Courts must dis miss an action on its own motion when subject matter jurisdiction is lacking" - which without question is the situation in this case.

**WHEREFORE,** this defendant now understands how and why (1) the criminal trial Judge could massively and substantively alter his trial transcripts, (2) the trial audio tapes were stolen out of the Clerk's office to obstruct his justice, (3) his conviction was based on evidence from a double jeopardy prosecution, (4) another tax conviction was affirmed for an indictment that was never returned by a grand jury and (5) why his Constitutional right to file for habeas relief was terminated, all with impunity for the perpetrators.

As stated in Black's Dictionary, as here, legislative courts do not have to protect one's constitutional rights.  But the pejorative is that the legislative courts have clandestinely usurped the "Powers" of the constitutional "district courts of the United States", with what appears to be total disregard for the constitutional protections for the sole benefits of overzealous prosecutors and in this case, at the expense of the Clients - which smacks of corruption as is defined by the Inter-American Convention Against Corruption Article VI.

6

Exhibit 20 to Def. Motion to Dismiss

Furthermore, this corruption appears to be supported by the way that the plaintiffs have preempted other Courts to be in front of this Court - the instant case was moved from the Honorable Terry Means right in SEC counsel Norris' backyard to this court and now moving the Broker Collection suit over to this court with lame execuses -.Why?  Indeed, with the constitutional violations starting to crop up, including disregard for the defendant's discovery, this case is beginning to smell like a 9 month old catfish in a car.

Therefore, should this case proceed in the face of this court's lack of subject matter jurisdiction, this issue together with all decisions from this point forward will be reviewed by the appropriate district court of the United States. Accordingly, based on the above, this court must dismiss this action and its attendant receivership order, post haste.

Respectfully submitted,

Gerald L. Rogers, In pro se
FCI Seagoville
PO Box 9000
Seagoville TX 75159


CERTIFICATE OF SERVICE

I certify that I have placed into the United States mail the foregoing motion to dismiss for lack of subject matter jurisdiction to counsel for the plaintiffs, Jeffrey Norris 801 Cherry Street #1900, Fort Worth, TX 76101 and Richard Foelber 1155 21st Street NW, Washington DC 20581, on December 5, 2005.

Gerald L. Rogers, Declarant

SATURDAY/SUNDAY, NOVEMBER 26 - 27, 2005 **B5**

*ROGERS' CLIENT SAVING PREDICTIONS ARE BEING REALIZED.*

# Dollar Rises Versus Major Rivals, Hitting a 27-Month High on Yen

**By LAURENCE NORMAN**
*Dow Jones Newswires*

The dollar lifted again Friday, hitting a 27-month high versus the yen and making gains against the euro and the pound amid light holiday trading volumes.

The yen fell back overnight following slightly weaker-than-expected Japanese inflation data, and continued pressure from the government on the Bank of Japan not to tighten monetary policy also weakened the yen overnight.

### CURRENCY TRADING

The U.S. currency made broader gains during New York trading. Some analysts said dollar buying from U.S. companies repatriating overseas earnings under the Homeland Investment Act tax break kept the currency moving higher. Others said the advance owed more to investors continuing to jump on the bandwagon of the dollar's uptrend of recent weeks.

The dollar's climb was made easier by Friday's low trading volumes, which meant that medium-size orders can have a bigger impact on exchange rates. U.S. stock and bond markets closed early after Thursday's Thanksgiving holiday. That lifted the dollar as high as 119.69 yen, taking the U.S. currency through its previous two-year peak of 119.58 yen set on Nov. 16.

Late afternoon, the dollar was at 119.62 yen, up from 118.93 yen late Thursday in Toronto, according to EBS, and the euro was at 140.26 yen, from 140.06 yen. The euro was at $1.1726, from $1.1788. The dollar was at 1.3189 Swiss francs from 1.3150 Swiss francs, and the pound was at $1.7143 from $1.7231.

The yen was the main loser overnight, after Japan reported its nationwide core consumer-price index for October was flat on the year as expected. However, Tokyo CPI for November slipped 0.3%, compared with forecasts for a 0.2% fall.

While the Bank of Japan uses nation-

## Reborn Dollar

The euro and the yen against the dollar, and the dollar versus the currencies of the major trading partners of the U.S. (J.P. Morgan trade-weighted index) over the past 52 weeks



| | $ per - | 52-wk chng | Per $ |
|---|---|---|---|
| Euro | $1.1726 | Down 11.83 | €0.8528 |
| Yen | $0.008397 | Down 14.28 | ¥119.6172 |
| J.P. M. dollar | | | |

Source: Reuters via WSJ Market Data Group

wide core CPI as a benchmark for its ultraeasy monetary policy, Tokyo CPI is considered a leading indicator of price trends, so the results suggested the end of the bank's ultraeasy monetary policy remains some way off. The data come as the Japanese government ratchets up the pressure on the bank not to tighten policy in the near term. Officials from Prime Minister Junichiro Koizumi's cabinet and from his Liberal Democratic Party have warned the economy remains too fragile for the bank to be looking to tighten its stance.

Overnight, Japanese Finance Minister Sadakazu Tanigaki kept pressure on policy makers, saying the domestic economy remains in a state of mild deflation, and the government and central bank must continue to work to get prices rising.

# The Go-Go Greenback

Exhibit 20 to Def. Motion to Dismiss

Foreign-exchange traders, like star-struck lovers, are easily blindsided. So when most economists predicted the decline of the U.S. dollar this year, pointing to expanding trade deficits, Wall Street expected doom and gloom for the world's most handsome currency and hailed Asia's hot contenders. The problem is, foreign-exchange rates often have little to do with trade figures, and the dollar rose. All hail the go-go greenback, we say, for at least a while longer.

> **Why the dollar is strong despite the U.S. current-account deficit.**

It's been a big year for the buck. So far this year, the dollar has risen roughly 13% versus the euro and the Japanese yen. As for the biggest tease in 2005—that the dollar would tumble 5% to 10% versus China's domestic currency, the yuan—well, that hasn't materialized either. Preferring stability for its fledgling domestic industries, Beijing has let the yuan rise less than 1% versus the dollar since it tinkered with its exchange-rate regime in July. But that's another story.

The dollar remains attractive to investors for a few reasons, starting with interest rates. The Federal Reserve has raised the price of credit for 12 consecutive meetings, cranking up short rates to 4%. Meanwhile, the European Central Bank, supplying euros to a sluggish Continent, is only now thinking of budging from its historic low of 2%, set in June 2003. If the dollar yields twice as much as the euro, that's an easy suitor to pick from the crowd.

That explanation has currency in Asia, too, if you'll excuse our pun. Take the recent, dramatic greenback appreciation versus the Japanese yen. At first glance, that's a bit counterintuitive, given that Japan Inc. seems (finally) to be getting on its feet again. Corporate profits are healthy, household incomes are rising, and banks' bad loans are down to manageable levels. Equity investors are plowing in; the Nikkei has been hitting five-year highs.

This resembles what happened in the U.S. last year. The difference is that the Bank of Japan has made noises that it will keep short-term interest rates at "extremely low levels." Rates already lag the Fed by a wide margin, and that's set to continue for a while. What's more, unlike most of Asia, domestic Japanese investors can put their money wherever they like—and they're mostly buying foreign bonds. That's helping to depress the yen, too.

This will have knock-on effects around Asia and help to keep the dollar strong. Japan is a big exporting nation. If the yen doesn't rise, other export-dependent countries around the region won't want to disadvantage their local industries by letting their currencies rise. Consider what's happened in little Singapore, where the value of exports is an incredible 150% of its domestic output. The Singapore dollar, heavily managed by the Monetary Authority in the city-state, has risen only 3% this year. Guess why.

This brings us to a simple point that's usually lost on Wall Street: At the end of the day, a currency isn't a true commodity, like gold or wheat. It is a store of value. Its supply is determined by a central bank, which has a monopoly on its creation. Foreign-exchange markets are dominated by a cartel of central banks, and currency rates are a function of those central banks' monetary policies.

Nowhere is this truer than in Asia, where central banks happily attempt to manipulate foreign-exchange rates. China, Malaysia, and Indonesia have all intervened heavily in the foreign-exchange market this year. (A notable exception has been South Korea. The won has responded by holding steady against the greenback this year, helping to contain inflation.)

The relative economic health of nations of course also influences currency demand. The U.S. economy has continued to power along while most of Asia is gradually slowing and Europe bumps along. Most economists expect America to expand at around a 3.5% rate in the fourth quarter and into next year—nothing to sniff at. Employment is rising. So far consumer spending remains strong, despite the slowdown in housing. This isn't a picture of a country in distress.

Contrary to popular wisdom, all this has happened while the U.S. current account, a measure of commercial trade in the balance of payments, hit a record $66.10 billion in September. The U.S.-Sino trade deficit to October alone was $80.4 billion. Some economists are now predicting deflationary pressure on the yuan. That's right: Wall Street was predicting the Chinese currency would rise only a few months ago, and now an opposite trend may be emerging. That shows how fickle foreign-exchange markets can be.

It also shows how politicians venture into this area at their peril when they get excited about the effects of shifting exchange rates on national "competitiveness." The overall economic causes and effects that derive from a currency's relative value are by no means as easily discerned as protectionists like to pretend, as witness the number of countries that have benefited from muscular currencies. That seems to be happening right now as the U.S. prospers with a dollar that has surprised the markets with its relative strength.

PCI SEAGOVILLE
Gerald Rogers
12327-086
P.O. Box 9000
Seagoville, TX 75159

DEC 5

DEC - 6 2005

CLERK
UNITED STATES DISTRICT COURT
1100 COMMERCE ST
DALLAS, TX 75342

SPECIAL
MAIL

Exhibit 21 to Defendants' Motion to Dismiss

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES COMMODITY | § | |
| FUTURES TRADING COMMISSION, | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3: 05-CV-0416-B |
| | § | |
| PREMIUM INCOME CORPORATION, | § | |
| et al., | § | |
| | § | |
|     Defendants. | § | |

## ORDER

Before the Court are multiple motions filed by Defendant Gerald Rogers in this case.  After review of the arguments of the parties, the Court **ORDERS** as follows:

- The Court **DENIES** Rogers's Request for Subpoenas (doc. 72), filed October 21, 2005.  The Court has discretion to deny the issuance of subpoenas when necessary to prevent abuse of process or when the testimony sought would be irrelevant, cumulative, or unnecessary.  *Cupit v. Jones*, 835 F.2d 82, 86-87 (5th Cir. 1987); *Schildkraut v. Bally's Casino NewOrleans, L.L.C.*, Civ. No. 04-0366, 2004 WL 1558796 at *1 (E.D. La. July 9, 2004).  Rogers simply requests seven blank subpoenas, without identifying to whom they would be sent.  Given his conduct in this case, it is more than likely the subpoenas would be used to harass individuals regarding irrelevant issues.  Further, Rogers has not demonstrated that he is able to pay the $40 witness fee, *see* 28 U.S.C. § 1821, and his Motion to Appoint Counsel indicates that he will be unable to pay.  Therefore, the Court exercises its discretion and **DENIES** Rogers's request.

- The Court **DENIES** as moot Defendant's Motion to Magistrate to Approve Form for Repatriation of Funds from Banks in Europe (doc. 79), filed November 3, 2005. Rogers has since signed the required releases.

- The Court **DENIES** Rogers's Motion for Evidentiary Hearing on Plaintiffs' Refusal to Participate in Discovery Pursuant to FRCP Rule 37 (doc. 83), filed November 17, 2005. The Court deems a hearing unnecessary.

- The Court **DENIES** Rogers's Motion to Dismiss Action for Lack of Court's Subject Matter Jurisdiction (doc. 88), filed December 6, 2005. In his Motion, Rogers contends that this is not an Article III court. Congress has established this Court as an Article III court and has provided that the President is to nominate judges to fill it. 28 U.S.C. §§ 124, 133; *See also* 150 CONG. REC. S6944-01 (daily ed. June 17, 2004).

- The Court **DENIES** Rogers's Motion to Take Judicial Notice Prior to Filing Title 28 USC Section 351 Complaint (doc. 92), filed January 4, 2006. Rogers's Motion is based on his misconception that this is not an Article III court and that various judges are involved with Plaintiff in some sort of RICO enterprise to deprive Rogers of his freedom. That is patently false.

- The Court **DENIES** Rogers's Motion for Appointment of Counsel (doc. 103), filed January 18, 2006. In deciding a motion for appointment of counsel, as court is to consider (1) the type and complexity of the case; (2) whether the indigent is capable of adequately presenting his case; (3) whether the indigent is a position to adequately investigate the case; and (4) whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross-examination. *Gonzalez v. Carlin*, 907 F.2d 573,

Exhibit 21 to Defendants' Motion to Dismiss

579 (5th Cir. 1990)(citing *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982)). Although Rogers asserts he is without funds, he has been very active in the case so far, filing multiple motions and responses. As such, the Court declines to appoint counsel at this time. Should the case proceed to trial, Rogers may raise this issue again.

- The Court **DENIES** Rogers's Motion to Disqualify District Judge Pursuant to 28 USC §144 and §455(a) (doc. 113), filed March 2, 2006. Rogers has not demonstrated any bias or prejudice held by the Court.

- The Court **DENIES** Rogers's Motion to Take Judicial Notice (doc. 134), filed May 3, 2006. Again, this Motion is premised on Rogers's incorrect belief that this is not an Article III court and, as such, the motion lacks merit.

SO ORDERED.

SIGNED June __23rd__, 2006

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

Exhibit 22 to Defendants' Motion to Dismiss

87BF, CLOSED, _JC

# U.S. District Court
## Western District of Oklahoma[LIVE] (Oklahoma City)
## CIVIL DOCKET FOR CASE #: 5:05-cv-00724-R

Rogers v. Callahan et al
Assigned to: Honorable David L. Russell
Cause: 28:2241 Petition for Writ of Habeas Corpus (federal)

Date Filed: 06/24/2005
Date Terminated: 01/26/2006
Jury Demand: None
Nature of Suit: 530 Habeas Corpus (General)
Jurisdiction: Federal Question

**Petitioner**

**Gerald Leo Rogers**

represented by **Gerald Leo Rogers**
#12327-086
FCI-SEAGOVILLE
P O Box 9000
Seagoville, TX 75159
PRO SE

V.

**Defendant**

**Joe Keffer**

represented by **K Lynn Anderson**
US Attorney's Office-OKC
210 W Park Ave
Suite 400
Oklahoma City, OK 73102
405-553-8700
Fax: 405-553-8885
Email: Lynn.Anderson@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Respondent**

**Dennis Callahan**
*Warden*
*TERMINATED: 08/18/2005*

represented by **K Lynn Anderson**
(See above for address)
*TERMINATED: 08/18/2005*
*ATTORNEY TO BE NOTICED*

**Respondent**

**United States Parole Commission**

| Date Filed | # | Docket Text |
|---|---|---|
| 06/24/2005 | 1 | PETITION for Writ of Habeas Corpus , filed by Gerald Leo Rogers.(db, ) (Entered: 06/27/2005) |
| | | |

| 06/24/2005 | 2 | Previous cases (db, ) (Entered: 06/27/2005) |
|---|---|---|
| 06/27/2005 | 3 | ORDER REFERRING CASE to Magistrate Judge Valerie K. Couch. Signed by Judge David L. Russell on 6/27/05. (kw, ) (Entered: 06/27/2005) |
| 06/27/2005 | 4 | Receipt for Money Received from Petitioner Gerald Leo Rogers in the amount of $5.00, receipt number #111112 regarding 1 Petition for Writ of Habeas Corpus (kw, ) (Entered: 06/27/2005) |
| 06/28/2005 | 5 | ORDER FOR RESPONSE BY UNITES STATES ATTORNEY re 1 Petition for Writ of Habeas Corpus filed by Gerald Leo Rogers. Signed by Judge Valerie K. Couch on 6/28/05. (ch, ) (Entered: 06/28/2005) |
| 06/30/2005 | 6 | NOTICE - Return Receipt to Dennis Callahan dated 6/29/05 (kw, ) (Entered: 07/01/2005) |
| 07/01/2005 | 7 | RETURN OF SERVICE - NON SUMMONS Order of 6/28/05 U.S. Attorney (db, ) (Entered: 07/05/2005) |
| 07/12/2005 | 8 | MOTION to Supplement by Gerald Leo Rogers. (Attachments: # 1 Exhibit 1-Summary Report of Preliminary Interview# 2 Exhibit 2-Letter from Parole Commission)(db, ) (Entered: 07/13/2005) |
| 07/13/2005 | 9 | ENTRY of Appearance by K Lynn Anderson on behalf of Dennis Callahan (Anderson, K) (Entered: 07/13/2005) |
| 07/13/2005 | 10 | MOTION for Extension of Time to File Response/Reply as to 1 Petition for Writ of Habeas Corpus by Dennis Callahan. (Anderson, K) (Entered: 07/13/2005) |
| 07/13/2005 | 11 | ORDER granting 10 Motion for Extension of Time to File Response/Reply Responses due by 8/17/2005. Signed by Judge Valerie K. Couch on 7/13/05. (sr, ) (Entered: 07/13/2005) |
| 07/14/2005 | 12 | ORDER striking 8 Motion to Supplement it is the order of this Court that said pleading is hereby stricken from the record, and are of no legalconsequence. If the pleading is refiled, the above-recited deficiency must be corrected, and the corrected pleadingmust be refiled in compliance with the Federal Rules of Civil Procedure and Local Court Rules.IT IS SO ORDERED this 14th day of July, 2005.. Signed by Judge Valerie K. Couch on 7/14/05. (sr, ) (Entered: 07/14/2005) |
| 07/15/2005 | 13 | MOTION to Supplement by Gerald Leo Rogers. (db, ) (Entered: 07/18/2005) |
| 07/19/2005 | 14 | ORDER striking 13 Petitioner's Motion to Supplement Record because no certificate of mailing was submitted. Signed by Judge Valerie K. Couch on 7/19/05. (ch, ) (Entered: 07/19/2005) |
| 07/25/2005 | 15 | OPPOSITION re 10 MOTION for Extension of Time to File Response/Reply as to 1 Petition for Writ of Habeas Corpus filed by Gerald Leo Rogers. (db, ) (Entered: 07/25/2005) |
| 07/25/2005 | | MOTION for Writ (see doc 15 for image) by Gerald Leo Rogers. (db, ) (Entered: 07/25/2005) |
| 07/25/2005 | 16 | NOTICE of Change of Address by Gerald Leo Rogers (db, ) (Entered: 07/25/2005) |

Exhibit 22 to Defendants' Motion to Dismiss

| 07/25/2005 | 17 | MOTION for Writ by Gerald Leo Rogers. (db, ) (Entered: 07/25/2005) |
|---|---|---|
| 07/25/2005 | 18 | ORDER striking 17 Petitioner's Motion for Order for Writ to Return Petitioner Back to Jurisdiction because no certificate of mailing was submitted. Signed by Judge Valerie K. Couch on 7/25/05. (ch, ) (Entered: 07/25/2005) |
| 08/17/2005 | 19 | MOTION to Dismiss *Petition for Writ of Habeas Corpus* by Dennis Callahan. (Attachments: # (1) Exhibit 1 - Certificate of Pamela A. Posch, Attorney, U.S. Parole Commission# (2) Exhibit 2 - Judgment and Probation/Commitment Order, United States v. Gerald L. Rogers, CR 82-292 (C.D. Cal. Apr. 9, 1990).# (3) Exhibit 3 - Judgment in a Criminal Case, United States v. Gerald Leo Rogers, 84-CR-337-1 (D. Colo. Nov. 5, 1990).# (4) Exhibit 4 - Judgment and Probation/Commitment Order, United States v. Gerald L. Rogers, CR 82-292 (C.D. Cal. July 11, 1994).# (5) Exhibit 5 - Certificate of Parole, Gerald Rogers.# (6) Exhibit 6-1 - Warrant, Gerald Rogers.# (7) Exhibit 6-2 - Warrant Application & Warrant, Gerald Rogers.# (8) Exhibit 6-3 - Warrant Application, Gerald Rogers.# (9) Exhibit 7 - Local Revocation, Gerald Rogers.# (10) Exhibit 8 - Certificate of Parole, Gerald Rogers.# (11) Exhibit 9-1 - Warrant, Gerald Rogers.# (12) Exhibit 9-2 - Warrant Application, Gerald Rogers.# (13) Exhibit 9-3 - Warrant Application & Warrant, Gerald Rogers.# (14) Exhibit 10 - United States Marshal's Return to United States Parole Commission.# (15) Exhibit 11 - Supplement to Warrant, Gerald Rogers.# (16) Exhibit 12 - Preliminary Interview Request.# (17) Exhibit 13 - Summary Report of Preliminary Interview.# (18) Exhibit 14 - Preliminary Interview and Revocation Hearing Form.# (19) Exhibit 15 - U.S. Paarole Commission Memo, 5/27/05.# (20) Exhibit 16 - Parole Revocation Hearing Summary, Gerald Rogers.# (21) Exhibit 17 - Notice of Action, August 1, 2005, Gerald Rogers.# (22) Exhibit 18 - Order & Judgment, Gerald L. Rogers v. United States Parole Commission, CV-03-393-TUC-DCB 9D. Ariz. Oct. 24, 2003).)(Anderson, K) (Entered: 08/17/2005) |
| 08/18/2005 | 20 | MOTION to Seal */Respondent's Motion to File Motion to Dismiss Petition for Writ of Habeas Corpus Under Seal* by Dennis Callahan. (Anderson, K) (Entered: 08/18/2005) |
| 08/18/2005 | | Docket Annotation: Document [19] is sealed pursuant to Order 21 (ch, ) (Entered: 08/19/2005) |
| 08/18/2005 | 22 | ORDER re Petitioner may respond to [19] MOTION to Dismiss *Petition for Writ of Habeas Corpus* filed by Dennis Callahan, w/in 18 days of this Order. Order entered by direction of Judge Valerie K. Couch on 8/18/05. (ch, ) (Entered: 08/19/2005) |
| 08/19/2005 | 21 | ORDER granting 20 Respondent's Motion to Seal Motion to Dismiss. Signed by Judge Valerie K. Couch on 8/18/05. (ch, ) (Entered: 08/19/2005) |
| 08/19/2005 | 23 | MOTION to Dismiss *Petition for Writ of Habeas Corpus, With Redacted Exhibits* by Joe Keffer. (Attachments: # 1 Exhibit 1 - Certificate of Pamela A. Posch, Attorney, U.S. Parole Commission.# 2 Exhibit 2 - Judgment and Probation/Commitment Order, United States v. Gerald L. Rogers, CR 82-292 (C.D. Cal. Apr. 9, 1990).# 3 Exhibit 3 - Judgment in a Criminal Case, United States v. Gerald Leo Rogers, 84-CR-337-1 (D. Colo. Nov. 5, 1990).# 4 Exhibit 4 - Judgment and Probation/Commitment Order, United States v. Gerald L. Rogers, CR 82-292 (C.D. Cal. July 11, 1994).# 5 Exhibit 5 - Certificate of Parole, Gerald Rogers.# 6 Exhibit 6-1 - Warrant Application & Warrant, Gerald Rogers.# 7 Exhibit 6-2 - Warrant Application & Warrant, Gerald Rogers.# 8 Exhibit 6-3 - Warrant Application, Gerald Rogers.# 9 Exhibit 7 - Local Revocation, Gerald Rogers.# 10 Exhibit 8 - Certificate of Parole, Gerald Rogers.# 11 Exhibit 9-1 - |

| | | |
|---|---|---|
| | | Warrant, Gerald Rogers.# 12 Exhibit 9-2 - Warrant Application, Gerald Rogers.# 13 Exhibit 9-3 - Warrant Application & Warrant, Gerald Rogers.# 14 Exhibit 10 - United States Marshal's Return to United States Parole Commission.# 15 Exhibit 11 - Supplement to Warrant, Gerald Rogers.# 16 Exhibit 12 - Preliminary Interview Request.# 17 Exhibit 13 - Summary Report of Preliminary Interview.# 18 Exhibit 14 - Preliminary Interview and Revocation Hearing Form.# 19 Exhibit 15 - U.S. Parole Commission Memo, 5/27/05.# 20 Exhibit 16 - Parole Revocation Hearing Summary, Gerald Rogers.# 21 Exhibit 17 - Notice of Action, August 1, 2005, Gerald Rogers.# 22 Exhibit 18 - Order & Judgment, Gerald L. Rogers v. United States Parole Commission, CV-03-393-TUC-DCB (D. Ariz. Oct. 24, 2003).)(Anderson, K) (Entered: 08/19/2005) |
| 08/29/2005 | 24 | REPLY by Petitioner Gerald Leo Rogers re [19] MOTION to Dismiss *Petition for Writ of Habeas Corpus*, 23 MOTION to Dismiss *Petition for Writ of Habeas Corpus, With Redacted Exhibits* filed by Gerald Leo Rogers. (Attachments: # 1 Exhibit 1-Letter from Case Analyst)(db, ) (Entered: 08/29/2005) |
| 08/30/2005 | 25 | OPPOSITION to Dismissal of Petition re 24 Reply, by Gerald Leo Rogers. (db, ) (Entered: 08/31/2005) |
| 08/31/2005 | 26 | MOTION to Supplement the Record with Declaration by Gerald Leo Rogers. (db, ) (Entered: 08/31/2005) |
| 09/12/2005 | 27 | MOTION to Dismiss Motion to Dismiss or in the Alternative, An Evidentiary Hearing by Gerald Leo Rogers. (db, ) (Entered: 09/12/2005) |
| 09/14/2005 | 28 | MOTION to Supplement by Gerald Leo Rogers. (Attachments: # 1 Exhibit 1-Memo from Probation Officer)(db, ) (Entered: 09/14/2005) |
| 09/16/2005 | 29 | MOTION to Replace Magistrate Judge by Gerald Leo Rogers. (Attachments: # 1 Exhibit 1-Indictment# 2 Exhibit 2-Letter of Request# 3 Exhibit 3-Letter to Judge Takasugi)(db, ) (Entered: 09/19/2005) |
| 09/19/2005 | 30 | MOTION to Supplement Record by Gerald Leo Rogers. (Attachments: # 1 Exhibit 1-SEC Report)(db, ) (Entered: 09/19/2005) |
| 09/23/2005 | 31 | MOTION to Dismiss E-Government Act of 2002 Violation Based on Double Jeopardy Clause of the US Constitution Fifth Amendment by Gerald Leo Rogers. (bc, ) (Entered: 09/26/2005) |
| 10/04/2005 | 32 | RESPONSE in Opposition re 29 MOTION for Order *Respondent's Response in Opposition to Petitioner's Motion to Replace/Recuse Magistrate Judge* filed by Joe Keffer. (Anderson, K) (Entered: 10/04/2005) |
| 10/04/2005 | 33 | MOTION to Add Third Party United States of America by Gerald Leo Rogers. (Attachments: # 1 Attachment Motion to Amend Affirmative Defense (NDT)# 2 Exhibit 1-Indictment (CDC))(db, ) (Entered: 10/05/2005) |
| 10/04/2005 | 34 | PETITION for Writ of Habeas Corpus (Amended) , filed by Gerald Leo Rogers.(db, ) (Entered: 10/05/2005) |
| 10/07/2005 | 35 | NOTICE of Change of Address by Gerald Leo Rogers (db, ) (Entered: 10/11/2005) |
| 10/17/2005 | 36 | NOTICE of Change of Address by Gerald Leo Rogers (db, ) (Entered: 10/17/2005) |
| 10/17/2005 | 37 | MOTION to Disqualify Court by Gerald Leo Rogers. (db, ) (Entered: 10/17/2005) |

| 11/01/2005 | 38 | MOTION for Leave *Respondent's Application for Leave to File Responses Out of Time to Amended Petition for Writ of Habeas Corpus, and Motion to "Bring in Third Party" United States Under Fed. R. Civ. P. 14(b)* by Joe Keffer. (Anderson, K) (Entered: 11/01/2005) |
| 11/01/2005 | 39 | ORDER granting 33 Respondent's Motion to Add Party by 11/4/05. Signed by Judge Valerie K. Couch on 11/1/05. (ch, ) (Entered: 11/01/2005) |
| 11/01/2005 | | Docket Annotation: Striking docket entry 39 re Order of 11/1/05. Order should grant Respondent's Application to File out of time a response No. 38 instead of docket entry No. 33 Motion to Add Third Party. (ch, ) (Entered: 11/29/2005) |
| 11/02/2005 | 40 | MOTION to Dismiss *Respondent's Motion to Strike Petitioner's Amended Petition for Writ of Habeas Corpus, or In The Alternative Motion to Dismiss Amended Petition for Writ of Habeas Corpus* by Joe Keffer. (Attachments: # 1 Exhibit 1 - Certificate of Pamela A. Posch, Attorney, U.S. Parole Commission# 2 Exhibit 2 - Judgment and Probation/Commitment Order, United States v. Gerald L. Rogers, CR 82-292 (C.D. Cal. Apr. 9, 1990)# 3 Exhibit 3 - Judgment in a Criminal Case, United States v. Gerald Leo Rogers, 84-CR-337-1 (D. Colo. Nov. 5, 1990)# 4 Exhibit 4 - Judgment and Probation/Commitment Order, United States v. Gerald L. Rogers, CR 82-292 (C.D. Cal. July 11, 1994)# 5 Exhibit 5 - Certificate of Parole, Gerald Rogers# 6 Exhibit 6-1 - Warrant Application & Warrant, Gerald Rogers# 7 Exhibit 6-2 - Warrant Application & Warrant, Gerald Rogers# 8 Exhibit 6-3 - Warrant Application, Gerald Rogers# 9 Exhibit 7 - Local Revocation, Gerald Rogers# 10 Exhibit 8 - Certificate of Parole, Gerald Rogers# 11 Exhibit 9-1 - Warrant, Gerald Rogers# 12 Exhibit 9-2 - Warrant Application, Gerald Rogers# 13 Exhibit 9-3 - Warrant Application & Warrant, Gerald Rogers# 14 Exhibit 10 - United States Marshal's Return to United States Parole Commission# 15 Exhibit 11 - Supplement to Warrant, Gerald Rogers# 16 Exhibit 12 - Preliminary Interview Request# 17 Exhibit 13 - Summary Report of Preliminary Interview# 18 Exhibit 14 - Preliminary Interview and Revocation Hearing Form# 19 Exhibit 15 - U.S. Parole Commission Memo, 5/27/05# 20 Exhibit 16 - Parole Revocation Hearing Summary, Gerald Rogers# 21 Exhibit 17 - Notice of Action, August 1, 2005, Gerald Rogers# 22 Exhibit 18 - Order & Judgment, Gerald L. Rogers v. United States Parole Commission, CV-03-393-TUC-DCB (D. Ariz. Oct. 24, 2003)# 23 Exhibit 19 - Notice of Action on Appeal, October 6, 2005, Gerald Rogers# 24 Exhibit 20 - Parole Commission Procedure 2.20-05. Decisions Outside the Guidelines) (Anderson, K) (Entered: 11/02/2005) |
| 11/02/2005 | 41 | ORDER re 40 Petitioner may file a response to MOTION to Dismiss *Respondent's Motion to Strike Petitioner's Amended Petition for Writ of Habeas Corpus, or In The Alternative Motion to Dismiss Amended Petition for Writ of Habeas Corpus* filed by Joe Keffer w/in 18 days of the date of this Order. Signed by Judge Valerie K. Couch on 11/2/05. (ch, ) (Entered: 11/02/2005) |
| 11/04/2005 | 42 | RESPONSE in Opposition re 37 MOTION to Disqualify Judge filed by Joe Keffer. (Anderson, K) (Entered: 11/04/2005) |
| 11/04/2005 | 43 | RESPONSE in Opposition re 33 MOTION to Add Party *Respondent's Response in Opposition to Petitioner's Motion to "Bring in Third Party" United States of America* filed by Joe Keffer. (Attachments: # 1 Exhibit 1 - Certificatae of Pamela A. Posch, Attorney, U.S. Parole Commission# 2 Exhibit 2 - Judgment and Probation/Commitment Order, United States v. Gerald L. Rogers, CR 82-292 (C.D. Cal. Apr. 9, 1990)# 3 |

Exhibit 22 to Defendants' Motion to Dismiss

| | | |
|---|---|---|
| | | Exhibit 3 - Judgment in a Criminal Case, United States v. Gerald Leo Rogers, 84-CR-337-1 (D. Colo. Nov. 5, 1990)# <u>4</u> Exhibit 4 - Judgment and Probation/Commitment Order, United States v. Gerald L. Rogers, CR 29-292 (C.D. Cal. July 11, 1994)# <u>5</u> Exhibit 5 - Certificate of Parole, Gerald Rogers# <u>6</u> Exhibit 6 - Order & Judgment, Gerald L. Rogers v. United States Parole Commission, CV-03-393-TUC-DCB (D. Ariz. Oct. 24, 2003)# <u>7</u> Exhibit 7 - Rogers v. Takasugi, 100 F.3d 964, 1996 WL 654428 (9th Cir. (Cal) Nov. 8, 1996))(Anderson, K) (Entered: 11/04/2005) |
| 11/07/2005 | <u>44</u> | REPLY to Response to Motion re <u>37</u> MOTION to Disqualify Judge filed by Gerald Leo Rogers. (db, ) (Entered: 11/07/2005) |
| 11/07/2005 | | MOTION for Order to Withdraw Disqualification Motions and Motion for Immediate Habeas Decision, See <u>44</u> for image. by Gerald Leo Rogers. (db, ) (Entered: 11/07/2005) |
| 11/07/2005 | <u>45</u> | MOTION to Withdraw Disqualification Motions of Judges;Motion for Immediate Habeas Decision by Gerald Leo Rogers. (db, ) (Entered: 11/08/2005) |
| 11/08/2005 | | Docket Annotation: Motion for Order filed 11/7/05 stricken, to be refiled. (db, ) (Entered: 11/08/2005) |
| 11/10/2005 | <u>46</u> | MOTION to Withdraw All Motions Except the Unopposed Ground by Gerald Leo Rogers. (db, ) (Entered: 11/14/2005) |
| 12/06/2005 | <u>47</u> | MOTION for Order for Immediate Release by Gerald Leo Rogers. (Attachments: # <u>1</u> Exhibit 1-Order# <u>2</u> Exhibit 2-Proposed Order# <u>3</u> Exhibit 3-Proposed Order to Transfer) (db, ) (Entered: 12/06/2005) |
| 12/12/2005 | <u>48</u> | REPORT AND RECOMMENDATION re <u>26</u> MOTION to Supplement filed by Gerald Leo Rogers, <u>29</u> MOTION for Order filed by Gerald Leo Rogers, <u>33</u> MOTION to Add Party filed by Gerald Leo Rogers, <u>40</u> MOTION to Dismiss Respondent's Motion to Strike Petitioner's Amended Petition for Writ of Habeas Corpus, or In The Alternative Motion to Dismiss Amended Petition for Writ of Habeas Corpus filed by Joe Keffer, <u>45</u> MOTION for Order filed by Gerald Leo Rogers, <u>23</u> MOTION to Dismiss Petition for Writ of Habeas Corpus, With Redacted Exhibits filed by Joe Keffer, <u>31</u> MOTION to Dismiss filed by Gerald Leo Rogers, <u>30</u> MOTION to Supplement filed by Gerald Leo Rogers, <u>37</u> MOTION to Disqualify Judge filed by Gerald Leo Rogers, <u>47</u> MOTION for Order filed by Gerald Leo Rogers, <u>46</u> MOTION for Order filed by Gerald Leo Rogers, [19] MOTION to Dismiss Petition for Writ of Habeas Corpus filed by Dennis Callahan, <u>28</u> MOTION to Supplement filed by Gerald Leo Rogers, <u>34</u> Petition for Writ of Habeas Corpus (Amended) filed by Gerald Leo Rogers, <u>27</u> MOTION for Order filed by Gerald Leo Rogers. IT IS RECOMMENDED that Respondent's Mtn to Strike Petitioner's Amend Petition for Writ of HC (Doc. #40) be granted in part & den in part; Respondent's Mtn to Dism Pet for Writ of HC (Doc. ##19 & 23) be stricken as moot; Respondent's Mtn to Dism Amend Petition for Writ of HC (Doc. #40) construed as a response to the Amend Petition, be granted & that the Petitioner's Amend Petition for Writ of HC (Doc. #34) be denied; Petitioner's Emergency Writ for Immediated Rel (Doc. #47) be denied. IN ADDITION, IT IS RECOMMENDED that Petitioner's Mtn to W/draw Disqualification Mtns (Doc. #45) & Mtn to W/draw All Mtns (Doc. #46) be granted & the following mtns filed by Petitioner be stricken as moot: Mtn to Writ Petitioner Back Into the Jurisdiction of this Ct (Doc. #15); Mtn to Supplement the Record (Doc. #26); Mtn to Dismiss Respondent's Mtn to Dism or in the Alternative An evidentiary Hrg (Doc. #27); Mtn to Supplement (Doc. #28); Mtn to Replace Magistrate |

Exhibit 22 to Defendants' Motion to Dismiss

| | | |
|---|---|---|
| | | Judge (Doc. #29); Mtn to Supplement (Doc. #30); Mtn to Dism E-Government Act of 2002 Violation (Doc. #31); Mtn to Bring In Third-Party (Doc. #33); & Mtn to Disqualify Ct (Doc. #37). IN THE ALTERNATIVE, IT IS RECOMMENDED that Petitioner's pending mtns (Doc. ##15,26,27,28,29,30,31,33,37,45 & 46) be denied. Objections to R&R due by 1/3/2006. This R&R terminates the referal (Doc. #3) by the District Judge in this matter. Signed by Judge Valerie K. Couch on 12/12/05. (dm) (Entered: 12/12/2005) |
| 12/12/2005 | | Judge Valerie K. Couch no longer assigned to case. (dm) (Entered: 12/12/2005) |
| 01/03/2006 | 49 | OBJECTION TO REPORT AND RECOMMENDATION 48 filed by Gerald Leo Rogers. (Attachments: # 1 Exhibit 1-Notice of Hearing# 2 Exhibit 2-Letter from SEC# 3 Exhibit 3-SEC Opposition to Motion)(db, ) (Entered: 01/04/2006) |
| 01/26/2006 | 50 | ORDER ADOPTING REPORT AND RECOMMENDATION (more fully set out). Signed by Judge David L. Russell on 1/26/06. (ns, ) (Entered: 01/26/2006) |
| 01/26/2006 | 51 | JUDGMENT in favor of Respondent and against the Petitoner. Signed by Judge David L. Russell on 1/26/06. (ns, ) (Entered: 01/26/2006) |
| 01/31/2006 | 52 | ORDER of USCA - The petition for writ of mandamus is DENIED. The motion to proceed IFP is DENIED. (dl, ) (Entered: 01/31/2006) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/03/2007 16:50:42 | | | |
| **PACER Login:** | du6092 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 5:05-cv-00724-R Start date: 1/1/1970 End date: 8/3/2007 |
| **Billable Pages:** | 5 | **Cost:** | 0.40 |