IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GERALD L. ROGERS,             :    CASE # 1:07cv00687(RMC)

        Plaintiff,            :

v.                            :    **RECEIVED**

HARVEY PITT, et, al.,         :
                                   AUG 2 2 2007
        Defendants            :
                                   NANCY MAYER WHITTINGTON, CLERK
                                   U.S. DISTRICT COURT

## PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
### AND
### MOTION FOR JUDGMENT ON THE PLEADINGS
### OR, ORDER TO SHOW CAUSE

Comes now the plaintiff, Gerald L. Rogers in pro se in opposition to the defendants named above Motion To Dismiss and moves this Honorable Court pursuant to Federal Civil Rules of Procedures (FCRP) Rule 55(e) for a judgment on the pleadings as follows.

## I. OPPOSITION TO MOTION TO DISMISS

In digging through the multitude of superfluous gibberish as to why the plaintiff is not entitled to have this court find that the defendants are exceeding their statutory authorities, all to evade answering the plaintiff's complaint, the plaintiff has been able to ascertain three basic reasons:

1) **Sympathy of the court** - Plaintiff has been a fraud for three decades - use to be "four" - however, the irrefutable "Background Facts" proffered by the plaintiff under the penalty of perjury tell and evidence a completely different story;

2) **Legitimacy of "federal district courts** - Plaintiff is claiming that the United States District Courts for the District

of Colorado and Northern District of Texas are not "Article III
Courts" or not legitimate "federal district courts - which is
simply a bad faith representation of the plaintiff's complaint,
a lie;

3) **Re-litigation of Actions** - which contrary to the plaintiff's
complaint, the only record in this case is another lie.

As stated by the former Judge Andrew P. Napolitano in the
first sentence of his book, "Constitutional Chaos":

> "Amazingly, infuriatingly, incredibly, the government will
> lie, cheat and steal in order to enforce its own laws.
> And the courts continually give law enforcement a free pass
> to engage in these practices."

Here, instead of the Commission defendants producing either
statutory or public law to support their respective statutory
authority over the plaintiff, their counsel has resorted to not
only lying about the plaintiff's background, but has attempted
to cheat the plaintif of due process by having the court invoke
the doctrine of **res judicata** based on the decisions of the subject
United States District Courts which are irrefutably evidenced to
have usurped the judicial power of this court, in the first place.

## A.  BACKGROUND FACTS

In asmuchas the Commission defendants spent 7 pages lying
about the plaintiff to gain the sympathy of the court, for the record,
it is now neccessary for the plaintiff to correct that record with
his Declaration under the penalty of perjury.

### DECLARATION OF GERALD L. ROGERS

I, Gerald L. Rogers swear under the penalty of perjury that
the following is true and correct.

In 1962, as a result of the SEC discovering that I was
liquidating the controlling stock of the Pacific States Life

Insurance Company for $450,000, the same price previously paid, the SEC lied to the Seattle District Court that I was skipping town with the money, thus my investment company, Investors Associated should be put into a federal receivership – which I now know was totally unlawful. Investors was then held in the receivership for over 20 years and during that time the SEC approved its receiver to drain the company of over $750,000 in cash. The final SEC theft ocurred when it approved the sale of the remaining asset, 650 acres of view property with 3000 feet of water front. In 1961, the plaintiff paid $1,000 per acre and there-after zoned the property with lots and commercial property, and when the SEC sold that property in 1982, with a new 4 lane highway serving the property on the North and a new freeway serving the property on the West, reducing the driving time from 1 hour in 1962 to 30 minutes in 1982 to downtown Seattle, the SEC robbed the plaintiff's clients of over $10,000,000 with a sale of only $1,000 per acre – the same price paid over 20 years before.

In 1975, the SEC stepped in to aid the state of California to seize funds ($905,000) designated to finish the movies sold to clients. To prevent the seizure by the state, I moved the funds to Merrill Lynch of Panama. State Department telex records evidence that the SEC accommodated the state to meet the President of the Supreme Court of Panama. The ensuing bribe resulted in SEC accommodating over $1.2 million in earned interest being removed from my Panama frozen account to pay evidenced bribe. (Plaintiff's clients 1975 investments were returned at his expense.)

In 1980, the SEC, again acting out of its statutory authority, sued the plaintiff and his International Monetary Exchange in Los Angeles, a case in which I prevailed – see **SEC v. Rogers**

790 F 2d 1450.

In 1982, prior to the SEC trial, the SEC prevailed on the Los Angeles AUSA Lordes Baird to indict me in a final attempt to get me to settle.   The indictment was for the aiding of false income tax returns of the 1975 Movie Investors, U.S. v. Rogers CR-82-0292, the very transaction in which State Department telex records evidence that the SEC was involved in the bribery of the President of the Panama Supreme Court, who based on the facts kept me from the Panama funds to finish the movies.

Pursuant to the 82-0292 indictment, which I discovered 17 years later in 1999, was never returned by a setting federal grand jury, AUSA Baird had me kidnapped from my Seattle home and flown to California to where I was hidden from my lawyers - the world - to waylay the SEC case.

In 1984, in an act of vengenance, the SEC prevailed on the Denver U.S. Attorney to appoint their Special Prosecutor Lawrence Kiser of Seattle to bring a double jeopardy prosecution of the SEC case and couple it with a mining operation in Canada, that resembled my French Guiana operation, but one in which I was not a participant.  (Kiser was directly involved in the 1982 theft of the 650 acres in the Investors Associated receivership - in fact he was the one that approved the sale).   1/

The pejorative to the 1984 U.S. v. Rogers 84-CR-337, Kiser had coerced my lawyers O'Donnell and Gordon to testify and lie in the Denver Grand Jury, secretly, to facilitate the indictment. And, if there can be a pejorative to a pejorative, the O'Donnell and Gordon firm as undercover agents for the government, proceeded to represent and defend the bogus/Baird indictment in the 1987 Bench Trial.   To facilitate an aiding conviction, the O'Donnell

4.

firm coerced me into forfeiting my right to a trial by jury,
all to avoid writing jury instructions which the Ninth Circuit
had ruled two years prior in **United States v. Freeman** 761 F 2d 549,
that the government must prove that I had caused my clients to
evade their 1975 federal income tax - which was impossible due
to the fact that the movie deductions recaptured, by law.

In the 1990 U.S. v. Rogers trial, the grand jury and trial
records evidence that Kiser of the SEC bribed 9 witnesses of
which 3 are irrefutably evidenced to have been suborned.  Setting
aside the record which evidences that the trial Judge Sherman
Finesilver ranted and raived to obstuct my cross-examination
defenses, it is evidenced by the jurors own admissions that they
convicted me based on the double jeopardy evidence from the
collateral estopped SEC v. Rogers case and to obstruct my appeal,
it is irrefutably evidenced that Finesilver altered the trial
transcripts in 12 identifiable places, including the editing
out of the government's star witness' confession that I was
not associated with his business - which again, if there is a
pejorative, the Tenth Circuit Judicial Council, after forcing
Finesilver to retire at half pay, they had the 84-CR-337 trial
audio tapes stolen out of the District Court's Clerk's files  to
prevent reversing the SEC's double jeopardy prosecution results.

In 2005, to bring this court current with the SEC and CFTC
misconduct that rises to the level of opprobrium, in Dallas, its
criminal, prior to obtaining a Dallas District Court order against
my Seattle "exempt" currency busines, "Premium Income Corp" (PIC),
in collaboration with the USPC's officer Michael Banks and the
FBI's officer Joseph Quinn, the SEC officer Jeffrey Norris and CFTC's
Daniel Nathan proceeded to interfere with my company bank accounts

5.

and after my arrest for a minor parole violation of being on my companies' bank accounts, without the USPC's permission, intercepted the U.S. mail and concealed a letter from me to a business associate to close out the pending $200,000,000 currency transaction that the U.S. Marshals refused to let me terminate. Thus, instead of preserving my clients' capital, the SEC, CFTC and USPC, intentionally caused my clients to lose over $5,000,000.00.

In July of 2005, to punish me for being on my own bank accounts without first gaining permission from the USPC, it went out-side its sentencing guidelines by 50% and sentenced me to 12 months instead of 8. However, pursuant to the SEC's Norris prevailing on the USPC to sentence me to more time to obstuct my defense in their 05cv-415B litigation, the USPC "retarded" the 12 month sentence pending a new hearing - a hearing in which I named the advisary/exculpatory witnesses, Joseph Quinn of the FBI, SEC officer Norris and his accomplice in the evidenced set-up of the PIC receiver Kelly Crawford to loot PIC, to appear.

However, in the surprise hearing conducted in May of 2006, the USPC's hearing officer, "Pat Denton" lied that the "Commission decided that you don't need those witnesses" - when the truth is that those federal officers, fearing the admission of their causing the $5,000,000 loss would establish a personal liability, refused to appear.

The facts behind the necessity of the SEC's court appointed receiver, instead of relying on the PIC bank records, utilized the esoteric "forensic accounting" method, completely absurd for an all cash business with all bank records accounted, then claimed that over $2.4 million in client funds were deposited into PIC, which irrefutably, by the CFTC's own Complaint Exhibit 17,

reveals were never deposited, therefore, it shows that Norris/Crawford's scheme to loot PIC will be accomplished when the $2.4 million will share in the remaining $3.8 million, equaling a 22% share, or over $800,000.00 is set up to be stolen.

The pejorative to the jacked-up "forensic accounting" scheme to loot PIC, the USPC has enhanced the sentencing of me by the $2.4 million in addition to the $5,000,000 the government employees named above lost to sentence me to 10 years in the federal prisons - all under color of law.

Done in the City of Sheridan Oregon on this 18th day of August, 2007 -

                                    Declarant, Gerald L. Rogers


**B.  LEGITIMACY OF THE FEDERAL DISTRICT COURTS**

**The Commissions' and their counsel's repeated lies that the plaintiff's complaint alleges that the subject United States District Courts are neither "Article III Courts, nor "legitimate federal district courts", should be an insult to the intelligence of this Court.**

No place in the plaintiff's complaint as filed with this court, does he allege that either the United States District Courts for the District of Colorado or the Northern District of Texas are not established Article III courts, nor is it represented that the courts are not legitimate federal district courts.

Plaintiff only alleged and correctly so, based on his "Opening Brief" and Motion for Suspension of the Rules....." in Rogers et al., v. United States District Courts et al., Case # 07-5132 as is being currently reviewed by the United States Court of Appeals for the

7.

District of Columbia, Exhibits 1 and 2, incorporated by reference
as if fully set forth herein, that not being "district courts of
the United States" as designated by the defendants' respective
statutes for jurisdiction, CFTC Title 7 USC §13a-1, SEC I5 USC
§77t(b) and USPC's Title 18 USC§3231, the United States District
Courts in which they filed their actions and/or from which they
are enforcing their orders, simply "lacked subject matter jurisdiction",
see Complaint page    .

It appears that the sole purpose of the smoke screens that
the defendants have proffered to dismiss this action, is to
apparently confuse this court - which based on this Court's dual
status of being both an Article I and Article III, is impossible.
And, with FCivRP Rule 81(e) corroborating the statutes for
jurisdiction to litigate "statues of the United States" in the
United States District Court for the District of Columbia, a
district court of the United States as promulgated by Congress
in the District of Columbia Code 1940 ed., Title 11 Section 305,
it is not credible that the defendants are not aware of their
limitations to enforce their statutes in the geographical areas
as defined by either Rule 81(e), "District of Columbia" and/or in
the "states" as defined by FCrRP Rules 1(b)(9) and 54(c) "Act of
Congress", "District of Columbia, any commonwealth, territory or
possession of the United States.

i.e. The only simple question of law is whether the judicial
power and jurisdiction of the Article 1 "district courts of the
United States" as designated by their respective jurisdictional
statutes stated herein, can be usurped by the subject, completely
legitimate, Article III United States District Courts?

Therefore, because the Commission defendants are trying

8.

to convolute the simple issue of law before this court, the
defendants' lack of statutory authority in the specific actions
against this plaintiff by having this court to dismiss this case
based on their prior abuse of processes or devolution of their own
statutory laws, accordingly, the instant motion must be denied.

## C.  DEFENDANTS' RE-LITIGATION ACCUSATION

**The defendants accusations that the plaintiff is relitigating
their past unauthorized enforcement actions is nothing more than
another way to attempt evading and proving that they have not
violated their limited authority for jurisdiction.**

The Standard of Review for this court to rule that the
defendants did indeed, violate Title 5 USC §706(2)(A)(B) and/or (C)
when they filed their enforcement actions in the United States
District Court or are attempting to enforce a judgment from
an Article III court that by law of their controlling jurisdictional
Codes, lacks subject matter jurisdiction, has been established by
the Supreme Court in **National Labor Relations v. Brown** 13 L Ed 2d
839, which held:

> "Judicial Review of Administrative decisions deemed inconsistent
> with a statutory mandate or....are not properly within their
> judicial province, but the courts would abdicate their
> responsibility if they did not review such administrative
> decisions."

Here, none of the defendants are "properly within their judicial
province".  The Commissions' "administrative decisions" to file
in an Article III court when their statutory authority for
jurisdiction is to be from the specified Article I "district
court of the United States, or enforce an Article III court's
judgment when its authority, in the USPC's case, is limited to the
geographical areas as Title 18 USC §5 defines the United States
to be "in a territorial sense" as corroborated by FCrRP Rule

1(b)(9) "State" (which counsel took exception to plaintiff's
diferrentiating those states as "federal states", not to be
confused with "states of the United States), was an intentional
error on the part of their lawyers - all of which they must be
held responsible.

Furthermore, pursuant to the Supreme Court **in Federal Power
Commission v. Pacific Power** 83 L Ed 2d 1180, this court has no
judicial power to grant habeas relief and/or any other benefits
to this plaintiff, other than the relief requested and that is
to set aside their current "administrative decisions" involving
this plaintiff.  In **Federal Power,** the Court held:

> While an order of a Commission can be set aside due to a
> violation of the Administrative Procedures Act, the Court
> is without power to order how a Commission corrects the
> violation thereafter.

Thus, first, it is not the problem of this court to worry
what the Parole Commiss must do and/or can do when the court
finds that the USPC has violated its statutory authority.

Secondly, there is no need for the court or for that matter
the SEC or CFTC to worry what  they  can do after they are
found to have violated their respective statutory authorities.
This is due to the fact, that after SEC officer Jeffrey Norris
prevailed on the USPC to punish the plaintiff for fraud based
on his SEC complaint as filed in 05-cv-415B together with the
CFTC complaint alleging the same fact for the same conduct,
both the SEC and CFTC judgments must be voided as a matter
of Constitutional Fifth Amendment double jeopardy law,  (See Exhibit 3)

Furthermore, the dismissal of the SEC/CFTC complaints
for double punishment has been long standing in the Fifth
Circuit Court of Appeals.  See **U.S. v. Sanchez-Escareno** 950

10.

193, 200; **U.S. v. Tilley** 18 F 3d 295, 297, (5th C. 1994; **U.S. v. Perez** 70 F 3rd 345, 346 (5th C. 1995); **U.S. v. Chuck** 87 F 3d 138 (5th C. 1996); **U.S. v. Reyes** 87 F 3d 696 (5th C. 1996, all in accord with the Supreme Court in **United States v. Halper** 490 US 435, 440 ruling that no "multiple punishments for the same offense" will be granted , "regardless of the order of the civil and criminal proceedings" (**Tilley, supra at 717).

And, as the SEC will undoubtedly remember, this plaintiff prevailed on this very same double jeopardy issue in **U.S. v. Rogers** 960 F 2d 1501 (10th C. 1992).

Therefore, pure and simple, pursuant to the Supreme Court's Standard of Review already established for the APA judgments, it is neither the duty, nor within this court's authority to rule on, much less concern itself with any ancillary effects of it finding that these defendants are operating outside of their respective statutory authorities, which accordingly, constitutes a violation of the Title 5 USC §706(2)(A)(B) and/or (C) as factually alleged.

---

1/  In the SEC's and CFTC's complaints, Exhibits 14 and 15, they also accused the plaintiff of defrauding his investors of $70,000,000. However, After losing the SECv. Rogers case, to accommodate their double jeopardy prosecution, the same SEC Special Prosecutor Kiser, went to France and prevailed on the French to seize the Plaintiff's mining operation that had $750 million in proven reserves and was producing a net profit of over $500,000 per month with more machinery being put into place to double that net. Therefore, the actual facts support that it has been the SEC and in one case the CFTC that has caused the loss of this plaintiff's clients of approximately $100 million - not the plaintiff as has been falsely represented to this court.

11.

## II.  LEGAL ARGUMENT

### 1.  The defendants have failed to support their Motion To Dismiss under 12(b)(1) that this court lacks subject matter jurisdiction with either law or facts.

The standards set forth by the District of Columbia Circuit in **Empagran SA v. F. Hoffman** 315 F 3d 338, 343 (2003), to dismiss a complaint under 12(b)(1), the plaintiff's complaint can be dismissed "only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which entitle him to relief" - quoting the Supreme Court in **Conley v. Gibson** 355 US 41, 45-46.

First, the plaintiff factually alleged that because the defendants lacked statutory authority to obtain jurisdiction from the subject United States District Courts for the District of Colorado and Northern District of Texas pursuant to their respective Code Sections 13a-1, 77t(b) and §3231 designating the "district courts of the United States, they violated the APA of Title 5 USC §706(2) et seq., as defined.

Secondly, to comport with the standard established by the D.C. Circuit in **Empagran, supra,** (1) they must answer the plaintiff's complaint and controvert it with facts and evidence that would render the plaintiff's factual allegations, false.

Therefore, because the plaintiff's factual allegations that the defendants have violated a "statute of the United States", accordingly, pursuant to Federal Rules of Civil Procedures (FRCivP), Rule 81(e) specifying this court to adjudicate this case, the defendants' Motion to Dismiss under 12(b)(1) must be denied.

### 2.  The defendants' claim pursuan to 12(b)(6) that the plaintiff failed to state a claim on which relief can be granted

belies the record they made with their own exhibits.

With specificity the CFTC's complaint, Exhibit 14, SEC's Complaint, Exhibit 15 and the USPC's reliance on the USDC for the District of Colorado, Exhibit 1, all conclusively evidence that they have filed their actions in, or are enforcing actions that were derived from a United States District Court, in conflict with their own respective statutes for jurisdictional authority as is only provided by the designated Article I "district courts of the United States.

Furthermore, neither the defendants' Memorandum, nor their Exhibits attached, controvert the plaintiff's factual allegations. The defendants have simply contended that because the Article 3 District Courts, which by U.S. Constitutional law, lacked subject matter jurisdiction, and are evidenced to have usurped this court's Article I judicial power, this court should adopt the USDC's unlawful orders.  In fact, the USDC's even refused to order the defendants to prove that it had jurisdiction as has been mandated by the Supreme Court on numerous occasions, including most recently in **Lujan v. Defenders of Wildlife** 504 US 555, 561.

In **Macharia v. United States** 334 F 3d 61, 64 (2003 D.C. Cir.) the D.C. Circuit held to dismiss an action under Rule 12(b)(6):

> "It must apply the heightened requirement of FRCivP Rule 12(b)(6) and treat all factual allegations, including those related to jurisdiction in the complaint as <u>true</u>".

Therefore, because the defendants have made no effort to answer the plaintiff's complaint - let alone their Memorandum was void of supporting published law that could have feasibly rendered the plaintiff's allegations false, accordingly, their Motion to Dismiss must as a matter of law, be denied.

13.

## III.  MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff further moves this Honorable Court to enter a judgment on the pleadings under FRCivP Rule 55(e) pursuant to the Record being complete as a result of the defendants' Exhibits 1 through evidencing their violations of the APA of Title 5 USC § 706(2) et seq., as defined.

**1.  Based on the irrefutable evidence now in the record that supports that the defendants' have been filing and enforcing their authority cognizable in District of Columbia, or in the geographical areas as defined by FCrRP Rule 1(b)(9) definition of "State" and only jusiticiable in the Article 1 "district courts of the United States"as designated by their jurisdictional statutes, instead, in the United States District Courts, which the plaintiff's Briefs prove  by Constitutional Law, Statutory Law and the Law of the Federal Civil and Criminal Rules that those United States District Courts lacked subject matter jurisdiction along with the defendants exceeding their statutory authority for jurisdiction, pursuant to Rule 55(e), a judgment is warranted.**

First, the plaintiff's Briefs citing the Supreme Court's Constitutional mandates of **Aetna Life v. Haworth, Muskrat v. U.S., Chisholm v. Geogia, Glidden v. Zdanok, and Norther Pipe Line v. Marthon Pipeline** , all in accord that Article III §2 of the Constitution limits the judicial power of the USDC to "only suits of a civil nature" and to eliminate any question as to an administrative action, pursuant to the Supreme Court in **O'Donoughue v. United States** 287 US at 546, it made it indisputably clear that Article 3 courts "could not be endowed with administrative and legislative powers... which Article 1 tribunals or agencies exercise", proves that the defendants'reliance on the United States

14.

District Court in Colorado and Texas, is misplaced.

Secondly, pursuant to the Supreme Court in **U.S. v Alcrea Band Tillamooks** 329 US 40, 45 holding that "jurisdictional provisions in federal statutes must be strictly construed", and both FRCivP 81(e) and FCrRP Rule 1(a)(1) both corroborate that the defendants' statutory authority for jurisdiction is only obtained from the "district courts of the United States", as a matter of law, the actions brought against this plaintiff are not only cognizable in the federal states defined by FCrRP Rule 1 (b)(9) "State" and justiciable only in the designated "district courts of the United States", this court has no alternative but to find that the defendants have been violating the APA of Title 5 USC §706(2) et seq., as alleged.

Thirdly, as a Judge of a Court that has been constituted by Congress to possess both the "judicial powers and exercise the jurisdiction of the district courts of the United States", an Article 1 court and an Article 3 United States District Court - which counsel has displayed her ignorance by not acknowledging the difference - this Judge and Court must have personal knowledge that the subject District Courts lacked the subject matter jurisdiction to have issued orders that the defendants are or will attempt to enforce.

Therefore, as the plaintiff's Brief in his "Motion for Suspension of the Rules...." shows that it is a matter of **"stare decisis"** in the Circuit as further supported by the Supreme Court mandates cited, accordingly, with the Record completed by the defendants' Exhibits, the judgment requested should be granted. on the pleadings as presented.

15.

## IV.  OR, IN THE ALTERNATIVE - ORDER DEFENDANTS TO SHOW CAUSE

If the court determines that the Record is not complete, and/or the defendants should be given an additional chance to support their statutory authority for jurisdiction and they can prove by established law that the USDC do not lack subject matter jurisdiction, then the court should order them to Show Cause why the plaintiff should not be granted the "Relief Sought" in his complaint.

## V.  CONCLUSION

**WHEREFORE,** pursuant to the defendants' Memorandum, instead of supporting their statutory authority with law, they have prevailed on this court to rule in their favor because the USDC ruling in their favor should make two wrongs a right.  That is, in the face of the subject USDC usurping the judicial power of this court and contemporaneously, violating their Article III §2 authority of the Constitution as is further corroborated by the 1789 Judicial Act, Statute I, §9, as a matter of **"res judicata"** apply the USDC's errors to dismiss the plaintiff's complaint.

However, considering that the defendants cannot be so ignorant concerning the limitations of their own laws, which restrict their enforcement over the plaintiff if he had registered with them in District of Columbia in the case of the SEC and CFTC and volunteered to be incarcerated in a federal prison as prescribed by 18 USC §§3673, 3551 and 3581 in the case of the USPC, the Commissions collectively, are simply prevailing on the court to under color of law, effectively join them in the devolution of the laws and Constitution of the United States, a criminal "seditious conspiracy" as defined by 18 USC §2384.

Therefore, with this court enjoying both being an Article 1

16.

and Article 3 court, by strictly construing the jurisdictional provisions of the defendants, which this court must have personal knowledge that the plaintiff's position is correct, accordingly, the defendants' Motion to Dismiss, as a matter of law must be denied and based on the pleadings and evidence in the record, judgment for the plaintiff should be entered.

Respectfully submitted,

Gerald L. Rogers 12327-086
P.O. Box 6000
Sheridan OR 97378-6000

## CERTIFICATE OF SERVICE

I certify that I have placed into the U.S. mail the foregoing pleadings to counsel of record for the defendants in this case, Robin M. Meriweather, AUSA, 555 Fourth Street N.W. Washington D.C. 20539 on this 21 day of August, 2007.

Declarant, Gerald L. Rogers

UNITED STATES COURT OF APPEALS
for the
DISTRICT OF COLUMBIA


GERALD L. ROGERS and
R.D. RYNO,                          :

                                    :
            Appellants,             :        CASE # 07-5132

v.                                  :

UNITED STATES DISTRICT COURTS       :
FOR THE DISTRICTS OF COLORADO
AND NORTHERN DISTRICT OF TEXAS:     :
         together with
UNITED STATES ATTORNEYS FOR THE     :
DISTRICTS OF COLORADO AND TEXAS
                                    :
            Appellees
                                    :

                                    ;

---

## APPELLANTS' OPENING BRIEF

---


Gerald L. Rogers, In pro se
12327-086
P.O. Box 6000
Sheridan OR 97378-6000

R.D. Ryno Jr., In Pro se
27953-077
P.O. Box 9000
Seagoville TX 75159-9000

ISSUES PRESENTED

A.  UNITED STATES ATTORNEYS' LACK OF STATUTORY AUTHORITY

1.  Whether Title 18 USC §5 Definition of the United States
("The term United States as used in this title (18) in a territorial
sense"), limits the federal statutes for which the appellants are
convicted to be cognizable only in the federal "states" as defined
and corroborated by Federal Criminal Rules of Procedures (FCrRP),
Rule 1(b)(9), thus deprived the appellee U.S. Attorneys of
statutory authority to have indicted and prosecuted the appellants
and constituted a violation of the Administrative Law Act of
Title 5 USC §706(2)(A, B and/or C)?

2.  Whether Title 18 USC §5 Definition of the United States
and §7 "territorial jurisdiction" read together with §3231
designating the "district courts of the United States" to have
original jurisdiction as corroborated by FCrRP Rule 54(c) "Act of
Congress", which "includes any act of Congress ("federal statute")
locally applicable to ("cognizable") and in force (justiciable) in
District of Columbia, Puerto Rico, in a territory or insular
possession" not only deprived the U.S. Attorney of statutory authority,
but their actions were filed in the wrong court, therefore, it
was a violation of the Administrative Law Act of Title 5 USC §706
(2) (A, B and/or C) to have both prosecuted and incarcerated the
appellants?

(i)

## B.  UNITED STATES DISTRICT COURTS' LACK OF JURISDICTION

(PLEASE NOTE:  The issues presented concerning the appellee courts is not whether they have been duly constituted under Article 3 of the Constitution, we agree that they have been and therein lies the problem.)

1.  Whether the appellee courts have been constituted pursuant to a Public Law to "possess the judicial power and exercise the jurisdiction of the district courts of the United States" as designated by 18 USC §3231 for "original jurisdiction" in all criminal proceedings, just as Congress constituted the United States District Court for the District of Columbia pursuant to the District of Columbia Code 1940 ed., Title 11 - §305?

2.  Whether as a result of §5 Definition of the United States "in a territorial sense" depriving the appellee U.S. Attorneys of statutory authority to have prosecuted the appellants for the federal statutes for which they are now convicted, contemporaneously, caused the appellee courts to lack subject matter jurisdiction, therefore, their adjudication was a violation of the Administrative Law Act of Title 5 USC §706 supra?

3.  Whether the appellee courts having their jurisdiction derived from the Judiciary Act of 1789 Statute I, when they substituted their limited jurisdiction to civil suits as was determined by the Supreme Court in Aetna Life Ins. v. Haworth 300 US 227 for all Article III courts, to accommodate the U.S. Attorneys' prosecutions outside of the "district courts of the United States" in conflict with 18 USC §3231, usurped the judicial power of the designated district courts of the United States, therefore, violated the Administrative Law Act of Title 5 USC §706 supra?

(ii)

# TABLE OF CONTENTS

                                                                    Page

I.     APPEAL                                                          1
II.    JURISDICTION                                                    1
III.   STATEMENT OF CASE                                              1
IV.    STANDARD OF REVIEW                                             2
V.     FACTS                                                          3
VI.    FACTS OF LACK OF AUTHORITY                                     5
       A.   Government's Lack of Authority                            5
       1.   Not one word or phrase in Titles 15, 18,...
       gives the government statutory authority to
       have indicted and/or prosecuted the federal....

       B.   District Courts' Lack of Statutory and Jurisdiction
            Authority                                                 6

       1.   No Public Law exists in which Congress constituted
       appelle courts to possess the judicial powers of
       the "district courts of the United States..."                 6

VII.   LEGAL ARGUMENT                                                10
       A.   Lack of Statutory Authority                              10

       1.   The appellee U.S. Attorneys exceeded their
       statutory authority.....                                      10

       2.   The District Court has failed to support its
       opinion with Public Law.....                                  14

       3.   The District Court's reliance on 28 USC §124
       and §132 to support ...judicial powers...was
       misplaced.                                                    16

       B.   Lack of Subject Matter Jurisdiction                      17

       1.   The same Title 18 USC Sections that deprive
       U.S. Attorney of statutory authority deprived the
       courts of subject matter jurisdiction.                        17

       2.   The Doctrine of enforcing federal statutes....
       has been established ...for over 60 years.                    19

       3.   The District Court's judgment conflicts with
       this Court's Doctrine of noscitur a sociiis.                  21

       C.   Usurpation of Judicial Powers                            22

VIII.  CONCLUSION - Issues of Controversy Still Exists               27

## TABLE OF AUTHORITIES

|  |  | Pages |
|---|---|---|
| Adams v. United States | 319 US 312 | 19 |
| Aetna Life Ins. v. Hawaorth | 300 US 227 | 24, 25 |
| Chisholm v. Georgia | 1 L Ed 440 | 26 |
| Federal Power Com v. Pacific Power | 83 L Ed 2d 1180 | 2, 26 |
| Foley Brothers v. Filardo | 336 US 281 | 12 |
| Fourco Glass v. Transmirra | 353 US 222, 227 | 16 |
| Goosby v. Osser | 409 US 512 | 18 |
| Gustoafason v. Alloyd | 513 US 561 | 3 |
| Hagans v. Levine | 415 US 528, 533 n5 | 18 |
| Hampton v. Mow Song Wong | 48 L Ed 2d 495 | 16 |
| In Valley v. Northern Fire | 254 US 348 | 19 |
| Kokkonen v. Guardian Life | 511 US 375 | 19 |
| Lopez v. United States | 514 566 | 13 |
| McNutt v. G.M. Acceptance | 298 US 178 | 17 |
| Montello Salt | 221 US 455, 456 | 8 |
| Murphy Exploration v U.S. Depart of Interior | 252 F 3d 481 | 2, 22 |
| Muskrat v. United States | 210 US 346, 356 | 26 |
| National Labor Relations v. Brown | 13 L Ed 2d 839 | 2, 20 |
| Prigg V Pennsylvania | 10 L Ed 1060 | 11 |
| Texas v. Interstate Commerce | 258 US 158 | 27 |
| Trevan v. Office Pers. | 69 F 3d 520, 526 | 23 |
| T.V.A. v Hill | 57 L Ed 2d 117, 142 n33 | 23 |
| United States v. Cotton | 152 L Ed 2d 860, 867 | 27 |
| United States v. Hall | 98 US 343 | 11 |
| United States v. McBratney | 104 US 621, 624 | 10 |
| United States v. Olano | 123 L Ed 2d 508, 519 | 13, 25 |
| United States v Palmore | 36 L Ed 2d 342, 353 | 15 |
| Will v. United States | 19 L Ed 2d 305, 310 | 9, 23 |
| Eighteenth Amendment of Constitution |  | 8, 12, 28 |

## I.  APPEAL

This appeal arises from the dismissal of the appellants' Second Amended Complaint alleging violations of the Administrative Law Act of Title 5 USC §706(2)(A)(B)(C) due to the court's error in ruling that the complaint failed to "state a claim upon which relief can be granted".  (Exhibit 1)

## II.  JURISDICTION

This Court of Appeals has jurisdiction to reverse, remand and order the District Court to correct its plain errors pursuant Title 28 USC §1291.

## III.  STATEMENT OF CASE

Appellants originally filed suit against the appellee court defendants for Declaratory and Habeas Relief due to the appellee courts lack of subject matter jurisdiction to adjudicate the federal statute violations for which the appellants had been convicted.  The appellants' factual allegations were supported by the Title 18 USC §5 definition of the "United States" describing it "in a territorial sense", thus limiting the violations of federal statutes alleged in the appellants' respective indictments, (U.S. v. Rogers 84-CR-337 and U.S. v. R.D. Ryno 3:95-R-357C cognizable only in the federal "states" as defined by Federal Criminal Rules of Procedures ("FCrRP"), Rule 1(b)(9) and described by FCrRP Rule 54(c) "Act of Congress" to be justiciable only in the district courts of the United States as designated by 18 USC §3231.

Appellants then filed their First Amended Complaint to eliminate the Habeas Relief sought due to the court's ruling in a related case, limiting the habeas relief being available only in the judicial district in which the appellants were imprisoned.

1.

The appellants then filed their Second Ammendment Complaint to include the appellee United States Attorneys as a result of their research proved not only did the appellee courts lacked subject matter jurisdiction, the appellee U.S. Attorneys, ("government"), considering the same Title 18 USC statutes, Sections 5, 7 and §3231 as corroborated by FCrRP Rules 1(b)(9) and 54(c) "Act of Congress", also deprived it of statutory authority to even have had the appellants indicted.

After filing the Second Amended Complaint, the court granted its leave to file, but then in its same order, acting as counsel for the appellees, it summarily dissmissed the Complaint "with prejudice for failure to state a claim upon which relief can be granted - see Exhibit 2, "Second Amended Complaint".

## IV.   STANDARD OF REVIEW

The Standard of Review for this appeal has been established by the Supreme Court in **National Labor Relations v. Brown** 13 L Ed 2d 839, holding that "Judicial Review of Administrative decisions deemed inconsistent with a statutory mandate or...are not only properly within the judicial province, but the courts would abdicate their responsibility if they did not review such administrative decisions."

The Supreme Court also held in **Federal Power Commission v. Pacific Power** 83 L Ed 2d 1180 that while an order of a Commission can be set aside due to a violation of the Administrative Law Act, the Court is without power to order how a Commission corrects the violation thereafter". And, because the court's dismissal conflicts with both statutes and rules as promulgated, this Court must consider its Doctrine of **noscitur a sociiis** as decided in **Murphy Exploration v. U.S. Depart of Interior** 252 F 3d

2.

481 (DC Circuit) in accord with the Supreme Court in **Gustafason
v. Alloyd** 513 US 561 holding that courts should be instructed
to "avoid a reading of statutory language which renders some
words altogether redundant". Here, the District Court abrogated
entire Sections of Title 18 and totally eliminated how the
Federal Criminal Rules apply to the jurisdiction of the Courts.

## V.  FACTS

### A.  Background  Facts

The issue as to whether the appellee United States District
Court for the Northern District of Texas was ever constituted
to be a "district court of the United States" has been before this
Court before - but the issue was not addressed, see CA#06-5214,
Exhibit 3.

In the prior review, with both the District Court and this
Court's panel acting as legal counsel for the Texas Court, dodging
the issue as to whether the Texas Court had been established by
Congress to "possess the judicial power and exercise the jurisdiction
of a district court of the United States" - as promulgated for
the USDC for the District of Columbia in the Disstrict of Columbia
Code 1940 ed., Section 11-305, to accommodate the affirmation of
the District Court's "frivolous" order of dismissal, this Court,
in conflict with the Judiciary Act of 1789 and in the absence of
a Public Law superceding the Texas Court's statutory authority
derived from the Judiciary Act, misrepresented that the appellant
Rogers was claiming that the Texas Court was not an inferior
court constituted under Article III of the Constitution.

To the contrary, the appellant Rogers never asserted and/or
insinuated that the Texas Court was not established under Article
III in either his Complaint for Declaratory Relief or his

Appeal Brief.  Indeed, the "RELIEF SOUGHT" was in relevant part:

"ii) Declare that the SEC statutorial authority §77v(a) and
CFTC's statutorial authority 13a-1, which requires their enforcement
actions be filed in district courts of the United States does not
include that the District of Texas can use that same statutorial
authority to grant jurisdiction against private parties who are
not registered with these United States agencies....iii) Declare
that based on the United States District Court for the Northern
District of Texas lack of both statutorial and constitutional
authority....the Honorable Jane Boyle lacks subject matter
jurisdiction to enter a final judgment...."

Again in the instant case, the court became legal counsel
for the appellees.  Rather than the appellees being required to
answer to admit or deny their evidenced violations of the
Administrative Law Act of Title 5 USC §706(2)(ABC) that they
all lacked statutory authority, (1) without a supporting Public
Law, the court judicially legislated that the Texas and Colorado
United States District Courts had been re-established to be
district courts of the United States and (2) ignored the Title 18
United States (in a territorial sense) Code §5 definition of the
United States limited the government's statutority authority over
all of Title 18 to the 18 USC §7 "territorial jurisdiction" as
defined as federal "states" by FCrRP Rules 1(b)(9) and 54(c) "Act
of Congress".

Pathethically, on page 5 of the court's order (Exhibit 1),
the court opines: "Plaintiffs do not allege any violation of these
(federal criminal) rules.  Rather, they allege that the rules are
not applicable in the defendant courts".  Of course, that is the

4.

point - when the rules are applied as required by 18USC§3041, Rule 1(a)(1) standing alone, deprived the appellee courts of both statutoryand jurisdiction authority.

The Rule is perspicuous: "These Rules govern procedures in all criminal proceedings in the United States district courts". Title 18 USC §3231 designates that the "district courts of the United States shall have original jurisdiction", however, the court had only to have verified the appellants' factual allegation #14 with the "1948 Amendment" of the Judicial Code that the "district courts of the United States" had their names changed to "United States district courts", with the "district courts" being spelled in lower case letters to distinguish them from the "United States District Courts with "District Courts" being spelled in upper case "D" and "C". Therefore, because Congress differentiates between the two courts with the slight difference in spelling, accordingly, because the Rules do not reference the appellee United States District Courts, the Rules not only not apply, but by law, they result in depriving the appellee courts of subject matter jurisdiction as alleged.

## IV.  FACTS OF LACK OF AUTHORITY

### A.  Government's Lack of Statutory Authority

**1.  Not one word or phrase in Title 15, 18, 21 nor 26 together with the attendant Title 18 Rules gives the government statutory authority to have indicted and/or prosecuted the federal statutes for which the petitioner is convicted.**

First, considering that the government relied on the Constitution's Article I Commerce Clause to justify indicting and prosecuting the petitioner, pursuant to the Supreme Court's mandate in **United States v. Morrison** 146 L Ed 2d 676 citing **United States v. Lopez** 514 US at 596-597, the Court has rejected the government's theory that the Commerce Clause entitled it to enforce federal statutes which are only "locally applicable to and in force in District of Columbia, Puerto Rico, in a territory or insular possessions" (FCrRP Rule 54 (c) "Act of Congress"), as follows:

> "The Constitution withholds from Congress a plenary police power...We always have rejected readings of the Commerce Clause and scope of federal power that would permit Congress to exercise police power."

And, in addition to the Commerce Clause depriving the government of statutory authority, so do the Title 18 Codes:

1.  The United States Attorney obtained its statutorial authority to reputedly have a federal grand jury return a legal indictment pursuant to Title 18 and its provisions under its attendant Rules, including Rule 6.  However, 18 USC §5, with the "United States defined in "a territorial sense" as corroborated by Rule 1(b)(9) definition of "State", the federal statutes for which petitioner is convicted were not cognizable in the alleged judicial district.

2.  As is corroborated by Federal Criminal Rules 1(b)(9) and

5.

54(c) "Act of Congress", both Title 18 USC §5 and §7 deprived the government of statutory authority to have either indicted or prosecuted the appellants.

3.   The statutory authority for jurisdiction from the courts of the United States is derived from 18 USC §3231 - which states with specificity, "district courts of the United States" and makes no reference to the  subject "United States District Courts".

4.   Pursuant to Federal Criminal Rule 1(a)(1) that "These Rules govern procedures for all criminal proceedings", but the Rules et seq., contained no provisions for the government to have prosecuted the petitioner.

5.   The Federal Criminal Rule 54(c) "Act of Congress" standing alone, with its description of a "federal statute" (Rule 1 Notes), being "locally applicable to and in force in", thus where a federal statute is cognizable, corroborates that both §5 and §7 deprived the government of statutory authority.

B.   DISTRICT COURT'S LACK OF STATUTORY AND JURISDICTION AUTHORITY

1.   No Public Law exists in which Congress constituted the subject United States District Court to "possess the judicial powers and exercise the jurisdiction of the district courts of the United States as exists for District of Columbia and Puerto Rico District Courts.

Contrary to the subject United States District Court claiming jurisdiction over the federal statutes for which this petitioner is convicted, first, both the Constitution's Article III and the Judiciary Act of 1789, Statute I §9 deprives the District Court of that jurisdiction and secondly, by the plain language of 18 USC §3231, instead of the District Court's claim, it is the "district courts of the United States" shall have "original jurisdiction over

6.

"all criminal proceedings in the <u>United States district courts</u>"
(the district courts of the United States name change pursuant to
the "1948 Amendment" of the Judicial Code differentiating it from
the subject District Court with Congress' spellings in different
upper and lowere case letters).   Therefore, by the clear language
of §3231, the government even filed its indictment in the wrong
court.

And, the subject District Court's limited jurisdiction for
only civil suits is a matter of **stare decisis.**  In **Aetna Life v.
Haworth** (1937) 300 US 227, the Supreme Court ruled:

> "The Constitution Article 3 §2 limits the exercise of judicial
> power to cases and controversies.  The term controversies, if
> distinguishable at all from 'cases', is so in that it is less
> comprehensive than the latter, and <u>includes only suits of a
> civil nature.</u>"  Citing **Chisholm v. Georgia** 1 L Ed 440, 452.

Furthermore, in accord with **Aetna** the District Court's
limitation to "common law" suits as specified by the Judiciary
Act of 1789, Statute I §9 was reaffirmed by the Supreme Court in
**Glidden v. Zdanok** (1962) 8 L Ed 2d 671, 715:

> "Article 3 Courts are law courts, equity courts ("common law"),
> .....They sit to determine cases and controversies (per **Aetna**).
> But Article I courts have no such restrictions.  They need
> not be confined to cases of controversies of Article III,
> <u>but can dispense legislative largesse.</u>"Also see **United States
> v. Alcrea Band Tillmook** 329 US 40.

And, in addition to the subject District Courts be deprived of
criminal jurisdiction under the Constitution, the following facts
of law as promulgated by Congress further support it.

1. Title 18 USC §3231, it only designates the "district courts
of the United States to have "Original jurisdiction", not the
District Court which adjudicated this case.  <u>1/</u>

2. The one and only Statutory Authority for jurisdiction for
the subject District Court was derived from the Judiciary Act of 1789.

7.

3. When the FCrRP Rule Notes "1944 Adoption" is combined
with 28 USC §81A for Alaska and §91 for Hawaii they verify that
when those former territories became states of the United States,
their "district courts of the United States" together with the
tenure of their judges, were terminated and thereafter replaced
with "United States District Courts" - as happened in the colonies.

4. Pursuant to Title 18 USC §5 defining "the term United
States as used in this title (18) in a territorial sense" limiting
the federal statutes for which is petitioner is convicted cognizable
as both described and defined by FCrRP Rule 54(c) federal states,
the District Court, obviously lacked subject matter jurisdiction.

5. Pursuant to 18 USC §5 definition of the United States "in
a territorial sense" and §7 "territorial jurisdiction" of the
United States being read together with the §3231 original jurisdiction
exclusively for "district courts of the United States", qualifying
the justiciability of the federal statutes for which the petitioner
is convicted as described in Rule 54(c) Act of Congress", cognizable
only in the federal states therein defined, when the District Court
substituted its jurisdiction as limited by the Judiciary Act of 1789
for that of the §3231 disitrict courts of the United States, it was
a clear case of "usurpation of judicial power - as contemplated by
this Court in **Will v. United States** 19 L Ed 2d 305, 310.

6. Pursuant to Title 18 USC §3001, this Court promulgated
the Federal Criminal Rules of Procedures and its Rule 1(a)(1),
which references only the United States district courts to
adjudicate "all criminal proceedings" - not the District Court.

7. Pursuant to 18 USC §3041, the Judges of United States courts
are require to proceed in all criminal proceedings under the Rules

8.

as promulgated by the Supreme Court, Rule 1(a)(1) provides that: "These rules govern procedures in all criminal proceedings", but thereafter, has no provisions with which the appellee courts could have adjudicated the violations alleged to have occurred.

8. When Title 18 prescribes a constitutional federal statute violation that is justiciable in a "district court of the United States", as can be viewed in §513(5) for the counterfeiting of State Securities, the definition of "State" will specifically "include state of the United States".  2/

9. When Title 18 prescribes a violation based on the "interstate or foreign commerce" clause, it will include in its definitions as can be viewed in §921 Definitions - "The term "State" includes the District of Columbia and other federal states defined by Rule 1(b)(9), but does not include a "state of the United States".

10. Pursuant to Title 40 USC §255, for the United States to claim jurisdiction, it must (1) prove ownership, (2) show that the State from which the property is obtained surrendered jurisdiction and (3) the United States accepts that jurisdiction.

11. The historical precedent set by the National Prohibition (Alcohol) Act, establishes that to enforce a federal statute, any one for which the appellants are convicted, in the states of the United States, other than one prescribed by the U.S. Constitution, requires an Amendment similar to that of the Eighteenth Amendment - which was thereafter repealed by the Twenty-first Amendment. At this time, no Amendment of the Constitution exists to authorize statutory authority to the appellee U.S. Attorneys to enforce federal statutes or the appellee courts to adjudicate the federal statutes for which the appellants are convicted.

## VII.  LEGAL ARGUMENT

Considering that not one word in Title 18 United States
Codes and its attendant Federal Criminal Rules of Procedures
(FCrRP), support that either the appellee United States Attorneys
and/or appellee courts had statutory authority to indict, prosecute,
adjudicate, convict and/or sentence the appellants to a federal
prison, it is simply not credible that the District Court did
not know that it was plain error to dismiss the appellants'
complaint with its factual and uncontested allegations of the
Administrative Procedures Act violations.  For lack of a more
politically correct euphemism, the District Court's dismissal was
nothing more than a plain old fashion attempt to cover-up.

The conundrum that this Court must confront is whether to
join the irrefutably evidenced devolution of the Constitution
and laws of the United States, a government seditious conspiracy,
to continue the cover-up, or enforce the Constitution and laws
as promulgated by Congress as it has been the oath of the Judges
herein, to do.

## A.  Lack of Statutory Authority

1.  **The appellee United States Attorneys (government),
conclusively by law, exceeded their statutory authority when
they indicted, prosecuted and under color of federal law caused
the appellants to be convicted and incarcerated in a federal
prison for violations of federal statutes that allegedly
occurred in Colorado and Texas.**

If the violations of federal statutes for which the appellants
are alleged to have violated in their respective states were
cognizable, they were only justiciable in states' courts as found
by the Supreme Court in **United States v. McBratney** 104 US 621, 624:

10.

> "Here, Colorado's admission into the Union invested it with
> criminal jurisdiction over its citizens throughour the whole
> of the territory within limits, including the Ute Reservation."

And, of course, **McBratney** applies to the responsibility of the

state in Texas too.

Furthermore, the government's lack of authority is supported

by the plain language of its own Title 18 statutes and rules.

Clearly, the irrefutable definition of the United States in

Title 18 USC §5 "the term United States as used in this title (18)

in a territorial sense"limits the government's statutory authority

over the qualified §7 "territorial jurisdiction" of the United

States' Statutes to be cognizable only in the federal "states"

as defined by FCrRP Rule 1(b)(9).  Indeed, just FCrRP Rule 54(c)

"Act of Congress" standing alone with its perspicuous explanation

what a federal statute is and where it is cognizable, deprived the

government of the statutory authority it assuemed under color of

law in these cases.

And, what is more, the Supreme Court has been consistent for

over 165 years that federal statutes, unless prescribed catagorically

in the Constitution, are not cognizable in states of the United

States.  In **Prigg v. Pennsylvania** (1842) 10 L Ed 1060, the Court

held:

> "The police power extends over all subjects within the
> territorial limits of the States, and has never been
> conceded to the United States."

As noted above, the **McBratney** came to the same conclusion.

And. in the citation of Tile 18 "Statutory Authorization" annotations,

the Supreme Court ruled in **United States v. Hall** (1878) 98 US 343:

> "The federal courts possess no jurisdiction over crimes and
> offenses committed against the authority of United States
> except what is given to them by the power that created them
> nor can they be invested with such jurisdiction beyond that
> the power ceded to the United States by the Constitution

11.

authorizing Congress to confer."

The exception to confer federal authority in the states of the United States are those violations of federal statutes that are proscribed by the Constitution, counterfeiting, treason and priracy. Furthermore, when Congress does promulgate those constitutionally proscribed violations, it makes it absolutely clear that those statutes apply in "states of the United States".

For example:  Title 18 USC §513 for counterfeiting securities of States the terms include:

> "(a) Whoever makes, utters or promises a counterfeited security of a state......"

> (5) The term "state" includes a State of the United States, District of Columbia, Puerto Rico ......"    *MONTELLO*

*Furthermore*  And, the National Prohibition (Alcohol) Act affirms the historical precedent that federal statutes, unlees precribed by the Constitution, are not cognizable in the states of the United States.  To enforce the federal statutes emanating from the National Prohibition Act, the States had to ratify the Eighteenth Amendment of the United States Constitution – which unless it is the best kept secret in America, no such Constitional Amendment currently exists to have granted the appellees statutory authority to enforce the federal statutes in Colorado or Texas for which the appellants are convicted.

Fast forwarding to 1949, the Supreme Court in **Foley Brothers v. Filardo** 336 US 281, one year after the "1948 Amendment" of the Judicial Code in which the apparent confusion exists  with the name change of the district courts of the United States to "United States district courts" versus the appellee courts being "United States District Courts" held:

> "It is well established principle of law that all federal

12.

legislation (statutes) applies only when its within the territorial jurisdiction of the United States, unless contrary intent appears."

Clearly, as appears with "contrary intent" in the counterfeiting §513 noted above, no such contrary intent stating that the violations of the federal statutes for which the appellants are convicted applied to any one of the "states of the United States. (Also see **Russello v. U.S. 464 US 16, 22 (1983)**).

More recently, the ultimate result of the Supreme Court's decision emanating from Texas in **Lopez v. United States** 514 US 566, the government lacked statutory to have indicted and prosecuted **Lopez** under Title 18 for alleged violation of a federal statute for a gun in a "School Zone", a State violation.

Therefore, before the District Court took upon itself to **sua sponte** dismiss the appellants' complaint, effectively affirming its own erroneous legal work, all in conflict with the government's own controlling statutory authorities, 165 years of Supreme Court case law affirming that lack of authority, thus, the appellee courts by law, lacked subject matter jurisdiction, minimal due process required that the appellees at least answer the complaint and thereafter defend their authority with some facimile of law. Accordingly, because it was plain error to dismiss the complaint as determined by the plain error doctrine established by the Supreme Court in **United States v. Olano** 123 L Ed 2d 508, 519, (1) there was an error (2) the error was obvious (3) the error affects the substantial rights of the appellants and (4) it goes directly to the integrity of the District Court, this Court must reverse and remand with instructions to Order the appellees to Show Cause why they do not lack statutory authority and/or jurisdiction to maintain the appellants' convictions.

13.

2.  <u>The District Court has failed to support its opinion</u> <u>with public law that documents that the appellee courts were</u> <u>established by Congress to "possess the judicial power and</u> <u>exercise the jurisdiction of the district courts of the United</u> <u>States" as promulgated by the District of Columbia Code 1940 ed.,</u> <u>Title 11- §305 for that District Court.</u>

In the absence of a public law establishing the United States District Courts as "district Courts of the United States" as designated by 18 USC §3231 to enforce federal statutes as described by FCrRP Rule 54(c) "Act of Congress", the only published statutory authority for the appellee courts is pursuant to the Judiciary Act of 1789, Statute I.  And, conclusively, this is the same statutorial authority from which the District Courts in the 13 colony states were established as is supported by Exhibit 6 for Connecticutt and Delaware.  Thus, it was ludicrous for the District Court to claim that the Colorado and Texas courts possess different statutory authority than all of the 13 colony States  do.

Furthermore, for lack of the appellants to access the accession records of Colorado and Texas, unless proven different by the appellees, the Court can look to the historical records documented by the combined notes from the FCrRP Rule 54 and Title 28 USC §81A for Alaska and §91 for Hawaii.  First, the Rule 54 "1944 Adoption" notes document that both Alaska and Hawaii had territorial courts that Congress constituted to <u>"possess the</u> <u>judicial power"</u> of the district courts of the United States – which further establishes that "district courts of the United States" are legislative and  are not necessarily created under Article III of the Constitution.

Second, as is clearly documented in the Notes of 28 USC §81A

14.

for Alaska and §91 for Hawaii, the district courts of the United States, which were specifically created by Congress to adjudicate federal statutes, together with their Judges, upon statehood, <u>were terminated</u>.

Third, then pursuant to the same public law terminating the "district courts of the United States", Public Law 85-508 for Alaska and Public Law 86-3 for Hawaii, <u>Congress replaced the "district courts of the United States" with the newly constituted United States District Courts,</u> commensurate with those established in the 13 colony States under the Judiciar Act of 1789.

Thus, without a supporting public law, it was an error for the District Court to judicially legislate that the appellee courts have been established by Congress to be district courts of the United States to accommodate the Title 18 USC §3231 "original jurisdiction" they irrefutably usurped.

As Mandated by the Supreme Court in **United States v. Palmore** 36 L Ed 2d 342, 353:

> Inferior courts under provision of Article 3 of the Constitution ....Congress is not constitutionally required to create inferior Article 3 courts to hear and decide cases with in the judicial power of the United States, including criminal cases arising under federal law, nor is it required to invest them with all jurisdiction it is authorized to bestow under Artilce 3."

Therefore, in the absence of a public law superceding the appellees' statutory authority derived from the Judiciary Act of 1789, constituting the appellee courts as having "district court of the United States" judicial powers - obviously reserved for the courts  to enforce federal statutes as described by Rule 54(c) "Act of Congress" and in the federal territory/states as corroborated by Rule 1(b)(9).  Accordingly, it was error by the District Court that arises to the level of opprobrium that has violated the

15.

appellants' rights of due process of law as guaranteed by the
Fifth Amendment of the U.S. Constitution as found in **Hampton v.**
**Mow Sung Wong** 48 L Ed 2d 495:

> "The due process clause of the Fifth Amendment authorizes
> traditional equal protection analysis of federal rules
> and therfore, the clause has substantive as well as procedural
> aspect."

### 3.  The District Court's reliance on 28 USC §124 and §132 to support that the judicial powers and jurisdiction of the appellee courts superceded the Judiciary Act of 1789, was misplaced.

First, §124 does nothing more than explain and/or define the
"judicial districts" to which the 1789 jurisdiction of the appellee
courts control.  Furthermore, appellants have no argument as to
the specified judicial districts for the Colorado or Texas.
However, the evidence of law supports that those judicial districts
are not federal states as defined by FCrRP Rule 1(b)(9).

Second, §132, actually comports to the appellants' documented
position on the "1948 Amendment", in which Congress promulgated
as to how the courts of the United States should be differentiated
by their upper and lower case spellings and how those names
should appear on the caption pages of pleadings filed in the
respective courts.  Pure and simply, §124 and §132, which emanated
from the Judicial Code Act of 1940, as made abundantly clear by
the Supreme Court in **Fourco Glass v. Transmirra** 353 US 222, 227,
it was nothing more than an effort by Congress to simplify or
clarify the statutes:

> "No changes of law or policy will be presumed from changes
> of language in revision unless intent to make such changes
> is clearly expressed....(it was) merely an effort to state
> in clear and simpler terms....."

Therefore, if (1) the appellee courts had statutory authority,

16.

but (2) the federal statutes for which the appellants were convicted were not "applicable" in Colorado and Texas as corrobortated by FCrRP Rule 54(c) "Act Of Congress", instead of dismissal accordingly, to honor the appellants' rights to due process, the District Court at least had the duty to order the appellees to answer the complaint allegations and thereafter prove both the lack of statutory authority and/or the courts lack of subject matter jurisdiction was not, by law, correct. (Pursuant to the Supreme Court in **McNutt v. G.M. Acceptance** 298 US 178, if there is a jurisdiction dispute, the plaintiff (government) "bears the burden" to prove the jurisdiction.)

Accordingly, if the appellee courts could have produced the requisite Public Law constituting them as having the same "judicial powers of the district courts of the United States designated by 18 USC §3231, the one issue of the appellees usurpation of judicial power would have been foreclosed.

## B.  Lack of Subject Matter Jurisdiction

**1.  The same Title 18 USC §§5 and 7 together with Rules 1(a)(1), 1(a)(4), 1(b)(9) and 54(c) "Act of Congress" that deprived the appellee United States Attorneys of statutory authority serve to deprive the appellee courts of subject matter jurisdiction .**

Irrespective as to whether the District Court could have produced a Public Law establishing the appellee courts as to having judicial powers of a district court of the United States to have "original jurisdiction" pursuant to §3231 "in all criminal proceedings" (Rule 1(a)(1), the combined language of 18 USC §§5 and 7 renders the federal statutes for which the appellants  are

17.

convicted, by the same token, are only cognizable in the federal states as Rule 54(c) "Act of Congress" describes what a federal statute is and where it is cognizable.

And, contrary to the District Court assuming the appellee courts had jurisdiction, without either producing a Public Law or the government proving it, in **Hagans v. Levine** 415 US 528, 533 n5, the Supreme Court held: "Jurisdiction cannot be assumed to "exist **sub silento,** but must be proven".

Thus, the question arises: What word or phrase in Title 18 and/or its Rules did the District Court rely to effectively rule (1) that the government had authority or (2) that the appellee courts had the legal right to substitute their 1789 jurisdiction for that of the §3231 specified "district courts of the United States"? And indeed, it was not that the District Court had not been previously fully briefed on the appellees lack of statutory authority and/or subject matter jurisdiction. Virtually the same issues were before the court pursuant to the appellant Rogers' Section 2241 for violations of the Administrative Procedures Act by the U.S. Parole Commission - 06-cv-1390(EGS).

In that legal skirmish with the District Court, Rogers had filed a 25 page brief proving that the Commission had gotten its authority to enforce Rogers' sentence, not only from the wrong court, but its statutory authority too was confined to the federal states as defined by FCrRP Rules 1(b)(9) and 54(c). However, to avoid adjudicating that Section 2241 for the Commissions violation of the Administrative Procedures Act, the District Court transferred the case to a related Texas judicial district to the appellee United States District Court for the Northern District of Texas.

18.

Therefore, because the District court has displayed a bias against the appellants with its disregard for their rights to due process, accordingly, this Court must remand this case for further proceedings and obviously, with an order for the Judge to be disqualified.

## 2. The Doctrine of enforcing federal statutes for violations on United States property located in the States of the United States has been established by the Supreme Court for over 60 years.

The Supreme Court in **Adams v. United States** 319 US 312, three years after the 28 USC §§124 and 132 emanated from the Judicial Code of 1940, established the standards on which the courts must adhere to grant jurisdiction for the enforcement of an United States action in the States of the United States:

> 1) the United States must show ownership of the geographical area in which the alleged crime occurred;
>
> 2) show documentation from the legislature of each state surrendering jurisdiction to that same geographical area claimed in (a); and,
>
> 3) show documentation pursuant to Title 40 USC §255 wherein the United States accepted jurisdiction.

Here, the government never even attempted to show ownership, however, even if they had, the Title 18 and 15 violations alleged were brought in the wrong courts, thus it is a foregone conclusion that when the appellee courts substituted their jurisdiction for that of the §3231 specified "district courts of the United States", they exceeded their statutory authority. In **In Valley v. Northern Fire and Marine** 254 US 348 (1920), the Court mandated:

> "When a court reaches beyond its statutory grant of subject matter jurisdiction, its judgment is void...They are not voidable, but simply void and that is even prior to reversal." **Stoll v. Gotlieb** 305 US 165, 171-172.

Furthermore, as ruled in **Kokkonen v. Guardian Life** 511 US 375

(1994), 128 L Ed 2d 391, 395:

> "Federal courts, as courts of limited jurisdiction possess only such authority as conferred to them by the Constitution and Act of Congress and this authority cannot be exceeded by judicial decree."

Here, the District Court for the District of Columbia must have known that with it being (1) specifically named by both 18 USC §3231 for original jurisdiction "in all criminal proceedings" and even Federal Civil Rule 81(e) "Law Applicable" to adjudicate a "statute of the United States", (2) it was promulgated by Congress to possess "judicial power" of the district courts of the United States as supported by the Public Law District of Columbia Code 1940 ed., Title 11- § 305 and (3) with the "1948 Amendment" distinguishing the appellee courts from that of the district courts of the United States with their name changed to United States district courts (lower case "d" and "c"), the appellee courts obviously "exceeded" their authority "by judicial decree".

Therefore, contrary to the "Standard of Review" established by the Supreme Court in **National Labor Relations v. Brown** 13 L Ed 2d 839 for "Judicial Review of Administrative decisions deemed inconsistent with statutory mandates....or are not properly within the judicial province", the District Court did "abdicate" its responsibility when it "did not review" (the appellee courts') "Administrative decisions" of both the appellees.

Accordingly, the District Court's order of dismissal must be reversed and remanded with instructions to (1) answer the complaint and (2) prove both the appellees' statutory authority and the appellee courts' jurisdiction.

20.

**3.  When the District Court determined that 28 USC §§124
and 132 established the appellee courts to "possess judicial
power of the district courts of the United States" as designated
by 18 USC §3231, it conflicted with this Court's Doctrine of
Noscitur a sociiis.**

A good example of Title 18 differentiating the jurisdictional
functions between a district court of the United States and an
United States District Court, occurs in Chapter 110 involving
child pornagraphy.  Indeed, in the 2006 Edition of the Federal
Criminal Code, page 873, §2253 Criminal Forfeiture (k) "the
district courts of the United States shall have jurisdiction".
Then in the same Chapter 110 §2255(a), it specifies that for
a "common law" suit under the Judiciary Act of 1789, the action
for victim damages be filed "in any appropriate United States
District Court".

However true, §2253(k) was repealed in 2006, the unrepealed
portion of §2253 then referenced the criminal forfeiture proceedings
be conducted under the terms of Title 18 Chapter 46.  And, in addition
to law for the government's criminal forfeitures, pursuant to
§983(a)(4)(A), it also made provisions for government "Civil
Forfeiture proceedings" which are to be filed "in any appropriate
district court of the United States".  Thus, as corroborated by
Federal Civil Rule 81(e), when a dispute arises over a "statute
of the United States" (federal statute as described by Rule 54(c)
"Act of Congress"), either a civil or criminal action must be
filed in a district court of the United States - now known as
the United States District Court of the District of Columbia.

Therefore, if this Court does not recognize the different
functions that Congress has designated for district courts of

the United States/United States district court in Chapter 110
and Chapter 46 for both Civil and Criminal Forfeitures versus
the common law suits for victim damages to be filed in "any
appropriate United States District Court, it goes directly to
a violation of this Court's own Doctrine of **noscitur a sociiis**
as it found in **Murphy Exploration**, supra, holding that "Courts
should be instructed to avoid reading of statutory language
which renders some words altogether redundant."

Accordingly, to justify the Court's dismissal of the
appellants' complaint, this Court would have to not only change
words in either §2255 or §983, but it would have to abrogate
entire Sections of Title 18 which would at least include §§5 and
7 together with §3231 - not to mention display a total disregard
for Congress' promulgation of the "1948 Amendment" of the Judicial
Code distinguishing the courts of the United States with the
difference of the upper and lower case spellings.

C. USURPATION OF JUDICIAL POWER

1. **Due to the legal fact that the United States District
Court for the District of Columbia is   constituted to "possess
the judicial power and exercise the jurisdiction of the district
courts of the United States (D.C. Code supra), it must have known
that the appellee courts had usurped its judicial power.**

Considering that the District Court did not have a Public
Law on which to rely and in lieu of the fact that the Court had
been thoroughly briefed in the **Rogers v. U.S. Parole Commission**
06-cv-1390(EGS) that the "1948 Amendment" in addition to Title 18
Sections had distinguished the appelle courts from that of the
"district courts of the United States", even if the District Court
did not have direct knowledge of the courts different functions

.22.

the plain language of 18 USC §3231 together with the appellant Rogers' brief, the Court should have atleast have suspected that there was enough merit to the appellant's action for it to be answered.

Section 3231 clearly evidences that the appelles "usurped the judicial power" of the district courts of the United States" as contemplated by the Supreme Court in **Will, supra,** just on its face:

> "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the states" (see Rule 1(b)(9) for definition of "State") of all offenses against the laws of the United States."

And, as was clearly alleged by the appellants, when the appellee courts accommodated the government with jurisdiction to prosecute the violations of federal statutes justiciable only in the district courts of the United States as designated by §3231, the appellees' substitution of their Judiciary Act of 1789 jurisdiction, irrefutably, they altered the §3231 statute.

In the Federal Circuit's mandate, **Trevan v. Office Pers. Management** 69 F 3d 520, 526 (1995), it held "that a court must enforce statutes as written and is not free to ignore legislation apparent conscious choice to omit suggested provisions."

The Supreme Court also made it clear that altering statutes is not lawful.  In **T.V.A. v. Hill** 57 L Ed 2d 117, 142 n33, citing its own Supreme Court decision in **Holy Trinty v. United States** 143 US 457, 459, the Court held that only in "rare and exceptional circumstances" would the Court consider a change of a word in a statute:

> "And there must be something to make plain the intent of Congress that the letter of the statute is not to prevail."

Thus, the question arises: What "rare and exceptional circumstances" have arisen that would warrant the District

23.

Court and/or the appellee courts for that matter, to alter the §3231 statute designating that the "district courts of the United States" to have original jurisdiction" to that of the United States District Court - to accommodate the seditious conspiracy evidenced?

The Supreme Court in **Aetna Life Ins. v. Haworth** 300 US 227 (1937), to state a claim "the controversy must be definite and concrete, touching the legal relations of parties having adverse legal interest." Here, the "adverse legal interest" cannot be controverted. The appellee courts, under color of law, have adjudicated the government's unlawful prosecution of federal statutes that were    pursuant to its own Criminal Rules 1(b)(9) and 54(c) "Act of Congress"    not cognizable in either Colorado or Texas - and thereafter after not having them "found guilty" as required by §§3673, 3551 and §3581, without an "authorized sentence" now continue to hold the appellants in a federal prison.

Therefore, by the plain language of 18 USC §5, §7 and §3231 all making it irrefutably clear, the appellee courts, even if they were constituted to be district courts of the United States - which no Public Law exists to support that concept - with the federal statute violations being alleged to have occurred in Colorado and Texas, versus, in the federal territorial "states" as defined in the Federal Criminal Rules, the District Court should have acknowledged at least that the appellees' jurisdiction was "questionable". Citing **Bankers Life & Cas. v. Holland** 346 US at 383, the Supreme Court found in **Schlangerhauf v. Holder** 379 US 811 that when the courts' jurisdiction is even "questionable", "the plaintiff (government) must prove there was not an usurpation of judicial power."

Therefore, because the District Court chose to ignore the

24.

irrefutably evidenced usurpation of judicial power that occurred
when the appellees adjudicated the appellants' respective cases
as is clearly supported by Title 18 United States (in a territorial
sense) Code and attendant Rules limiting the statutory authority
of both the appellees, all to accommodate denying the appellants
due process of law, pursuant to the Supreme Court in **United States
v. Olano** 123 L Ed 2d 508, 519, it was (1) an error (2) an obvious
error, (3) an error that affects the substantial rights of the
appellants and (4) its an error that goes directly to the integrity
of that court - the inescapable fact the dismissal of the appellants'
complaint is one of accommodation, an act of corruption as defined
by the Inter-American Convention Against Corruption, Article VI(1).
Accordingly, because "A court's deviation from a legal rule is
error" as mandated in **Olano**, and because FCivRP Rule 81(e) requires
an adjudication of a "statute of the United States" must be tried
in the United States District Court for the District of Columbia,
this Court must correct that error and reverse the District Court's
dismissal with instructions for the appellees to answer the
appellants' complaint and thereafter prove their statutory
authority with established law - not judicial legislation.

**2.  Usurpation of judicial power is further evidenced by the
appellee courts' constitutional authority as limited by Article III
Section 2.**

As mandated by the Supreme Court in **Aetna Life Ins. v.
Haworth** 300 US 227 (1937), Article III Section 2 confines the
appellee courts' jurisdiction to adjudicate civil suits in
"controversies to which the United States shall be a party":

> "The Constitution Article 3 §2 limits the exercise of
> judicial power to cases and controversies.  The term
> controversies, if distinguishable at all from cases, is

25.

so in that it is less comprehensive than the latter, <u>and includes only suits of a civil nature.</u>" Citing **Chisholm v. Georgia** 1 L Ed 440, 452, also see **Muskrat v. United States** 219 US 346, 356.

Irrefutably here, the appellants were indicted for federal statute violations of Title 15 and/or 18 Administrative Statutory Law that was cognizable only in the federal states defined by Rules 1(b)(9) and 54(c) "Act of Congress" and thereafter justiciable only in the designated §3231 district courts of the United States. However, as evidenced, the appellee courts expanded their respective jurisdiction as found by the Supreme Coourt in **Kokkonen, supra,** to be by "judicial decree". In Accord with **Aetna, supra's** Article III limitations, the **Kokkonen** Court ruled:

> "Moreover, courts must be mindful of their Article III proscription that they may not exercise executive or administrative duties of a nonjudicial nature."

Clearly, the trials conducted by the appellees were nothing more than a "nonjudicial" hearing in which the Judges of the courts conducted themselves as executives in behalf of the U.S. Attorneys.

And, just as clear, when Congress promulgated §3231 designating that the "district courts of the United States" "shall have original jurisdiction" in all criminal proceedings per Rule 1(a)(1) and did not include the "United States District Courts as Congress specified in 18 USC §2255(a) for victim damage civil suits, as the Supreme Court ruled in **Russello v. United States** 78 L Ed 17, 24, it was done "intentionally and purposely":

> Where Congress includes particular language in one Section of a statute but omits it in another Section of the Same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion" - citing the Fifth Circuit in **U.S. v. Wong Kim Bo** 472 F2d at 722.

Therefore, it is simply not credible that the District Court, congressionally established to have "district court of the United States" status, in the absence of a Public Law, superceding the

26.

Judiciary Act of 1789, could not have ascertained that the appellees had usurped its judicial power, which accordingly, violated the Administrative Procedures Act of Title 5 USC §706(2)(C) "in excess of statutory jurisdiction, authority, or limitations, or short of statutory rights."

## VIII.   CONCLUSION - Issues of Controversy Still Exist

Irrespective of the District Court's dismissal of the appellants' complaint, the issues of controversy still exist due to the irrefutable facts that (1) the appellants are still convicted under color of law and (2) they are still falsely imprisoned. As found in the **United States v. Cotton** 152 L Ed 2 860, 867: "Subject matter jurisdiction is never forfeited or waived...Consequently, defects in subject matter jurisdiction require correction regardless of whether the error was raised in the district court". Thus, considering that the Supreme Court mandated in **Hagans supra,** that jurisdiction cannot be proven **"sub silento"**, then as is required by FCrRP Rule 52(b), it is the duty of this Court to make the jurisdiction correction - see **Olano supra.**

On point, citing **Golden v. Zwicker** 394 US 103, 110 and **Aetna supra,** in **Goosby v. Osser** 409 US 512, the Court ruled:

> "Thus, there is satisfied the requisite of Article III that the Constitution question...be presented in context of a specific live grievance (**appellants' false imprisonment**)...Since the municipal officials (**appellees**) persist in their arrested right to enforce the challenged provisions of the Election Code (**appellee's Title 18 authority**), there is a real substantial controversy" "touching the legal relations of parties' legal adverse legal interests."

Therefore, as the Supreme Court ruled in a plethora of cases, **Texas v. Interstate Commerce** 258 US 158, **Liberty Warehouse v. Gramis** 273 US 70 and **Arizona v. California** 283 US 423, to name a few. the appellants' Complaint presented a "real and substantial

27.

controversy admitting specific relief through a decree of a
conclusive character, as distinguished from an opinion advising
what law would be upon a hypothetical state of facts".

Accordingly, the pejorative occurred here, instead of the
court opining on "hypothetical state of facts" and to justify
dismissal, it judicially legislated a "hypothetical state" of
jurisdiction and statutory law.

**WHEREFORE,** because the Title 18 United States (in a territorial
sense) Code Sections and Rules together with controlling Supreme
Court cases cited all support that Congress has made no laws in
either Titles 15 or 18 that abridged its authority granted by the
Constitution's Article III enabling the appellee courts to
substitute their 1789 jurisdiction for that of the designated §3231
"district courts of the United States", in addition to the appellee
U.S. Attorneys authority being limited to the federal states, a
classic of "usurpation of judicial power, occurred.

Therefore, pursuant to the Standard of Review set forth in
**Federal Power Comm. v. Pacific Power** 83 L Ed 2d 1180, this Court
has the authority to "set aside" the appellee's judgments, without
regard as to how the appellees correct their violations of their
administrative procedures proscribed by Title 5 USC §706(2)(A,B,C).

## IX.  RELIEF SOUGHT

To proceed to adjudicate the parties adverse legal interests
the District Court's order must be (1) reversed (2) remanded and
(3) with further instructions for the appellees to prove their
statutory authority and/or jurisdiction together with (4) an
order to disqualify the District Court Judge.

Respectfully submitted,

Gerald L. Rogers, <u>In pro se</u>
12327-086 U-5
P.O. Box 6000
Sheridan OR 97378-6000

_1/_  In **Glidden v. Zdanok** 8 L Ed 2d at 715 citing **O'Donoghue v.
**United States** 287 US at 546, the Supreme Court in distinguishing
between an Article 1 court, in this case, the "district courts
of the United States, and the subject Article III "United
States District Court, further held:

"...an Article 1 court could make its adjudications without
regard to the limitations of Artile 3.  On the other hand,
as the Court in **O'Donoghue v. United States, supra** observed,
Article 3 courts <u>could not be endowed with the administrative</u>
<u>and legislative powers</u> (or with the power to render advisory
opinions) which Article 1 tribunals or agencies exercise."

_2/_  The government's under color of law grand jury indictments
appear to be founded on its convenient disregard for the
word "include" as to what geographical area is "included"
for it to exercise its statutory authority.  The Title 18
§5 description of the United States as corroborated by
FCrRP Rule 54(c) "Act of Congress" (federal statute) "includes
any act of Congress locally applicable to and in force in
District of columbia....." but with specificity does not
<u>include either the state of Colorado or Texas.</u>

The Supreme Court in **Montello Salt v. Utah** 221 US 452, 455,
456 clarifies any misinterpretation of the word "include".

"Include or the participal form thereof is defined to comprise
within, to hold, to contain, shut up, and synonyms are enclose,
contain...."

CERTIFICATE OF SERVICE

I certify that I have placed into the United States mail
the foregoing "APPELLANTS' OPENING BRIEF to the United States
Solicitor General, Room 5614, 950 Pennsylvania Avenue N.W.
Washington D,C. 20530-0001 on the    day of June, 2007.

Declarant Gerald L. Rogers

UNITED STATES COURT OF APPEALS

FOR THE DISTRICT OF COLUMBIA


GERALD L. ROGERS, et al.,          :      Case # 07-5132

       Appellants,          :

v.          :

UNITED STATES DISTRICT COURTS      :
FOR THE DISTRICTS OF COLORADO
NOTHERN DISTRICT OF TEXAS et al.,:

       Appellees          :

                        :

---

**MOTION FOR SUSPENSION OF RULES TO GRANT JUDGMENT**

**PURSUANT TO CIRCUIT'S DOCTRINE OF <u>STARE DECISIS</u>**

---

Gerald L. Rogers, <u>In pro se</u>
12327-086
P.O. Box 6000
Sheridan OR 97378-6000

# TABLE OF CONTENTS

Page

MOTION FOR SUSPENSION OF RULES ........................ 1

    1. In Gurr at 154, this Court made a ruling on
Title 18 USC §5 in which it established that the
government has statutory authority over "offenses
against the laws of the United States" - in a
territorial sense........"            1

    2. In Gurr, supra, this Court further ruled that
pursuant to 18 USC §3231 "the district courts of
the United States have exclusive, original jurisdiction
of all offenses against the laws of the United
States", and made no exception ......."      2

    3. In your **In Re Sealed Case,** supra, in accord with
the Supreme Court in **Aetna Life Ins. v. Haworth** 300
US 227, both citing **Muskrat v. United States** 219 US
346, 356, 357, which all 3 precedents stem from
**Chisholm v. Georgia** 2 Dall 419, 431, 432, ........
Article III §2 limits the judicial power......."      4

LEGAL ARGUMENT ........................................ 6

    1. It took another Rogers, in this case Circuit
Judge Rogers, to acknowledge that both the
government's statutory authority pursuant to 18
USC §5 and the district courts of the United States
§3231 jurisdiction was (1) proper to indict.......      6

    2. The Doctrine of <u>Stare Decisis</u> for appellee U.S.
Attorneys' lack of statutory authority and the
appellee courts' lack of subject matter jurisdiction
is also supported by the Supreme Court.............      9

    3. In **Thomas v. Union Carbide** 87 L Ed 2d 409,
recapping the Supreme Court's prior findings in
**Northern Pipe Line,** supra, it defined the three
Article I exceptions to Article III adjudications.      10

CONCLUSION ............................................ 11

# TABLE OF AUTHORITIES

Pages

Aetna Life Ins. v. Haworth 300 US 227................. 4, 7

Buckly v. Valeo 424 US @ 123 ........................ 9

Chisholm v. Georgia 2 Dall 419.......................4, 17

Cromwell v. Benson 76 L Ed 598....................... 10

Gladdin v. Zdanok 8 L Ed 2d 715, 716................. 4. 10

In Re Sealed Case 838 F 2d 476 (D.C. Cir)........... 1, 4, 5, 8, 9

Kokkonen v. Guardian Life 76 L Ed 2d ............... 10

Montello Salt v. Utah 221 US 452..................... 8

Muskrat v. United States 219 US 452.................. 4, 7

Northern Pipe Line v. Marathon Pipeline 73 L Ed 2d598  9, 11

O'Donoghue v United States 287 US at 546 ............ 4

Rogers v. USDC for Northern District of Texas #06-5214 3, 12

Russello v. United States 464 US 16, 23............. 7, 8

Thomas v. Union Carbide 87 L Ed 2d 409............. 10

United States v. Cotton 152 L Ed 2d 860, 867....... 12

United States v. Gurr 471 F 3d 144, 154 (D.C. Cir).. 1, 2, 6, 8, 9

U.S. Parole Commission v. Geraghty 68 L Ed 2d 749    4

United States v. Wong Kim Bo 472 F 2d 720 (5th Cir)... 8

Valley v. Northern Fire and Marine 254 US 348........ 11

Will v. United States 19 L Ed 2d 305, 310........... 11

(ii)

## MOTION FOR SUSPENSION OF RULES TO GRANT JUDGMENT
## PURSUANT TO CIRCUIT'S DOCTRINE OF STARE DECISIS

Comes Now the appellants named herein and moves this Honorable Court to suspend the Rules pursuant to Appellate Rule 2 to grant judgment on the appellees for their Administrative Law Act violations of Title 5 USC §706(2)(A, B and/or C) pursuant to the Circuit's Doctrine of Stare Decisis based on this Court's prior decisions in **United States v. Gurr** 471 F 3d 144 (2006), **In Re Sealed Case** 838 F 2d 476 (1988) and **Hardin v. City Title Escrow** 797 F 2d 1037 (1988) as follows.

**1.  In Gurr at 154, this Court made a ruling on Title 18 USC §5 in which it established that the government has statutory authority over "offenses against the laws of the United States" - in a territorial sense - as enumerated in Title 18, thus limiting the statutory authority of the government to the geographical areas that §5 describes.**

For the purposes of defining the geographical areas over which the government has authority, §5 definition of the United States as it relates to all of Title 18, including those sections for which the appellants are convicted, states:  "The term United States as used in this title (18) in a territorial sense includes places and waters, continental or insular possession subject to jurisdiction of the United States - "in a territorial sense".

To comprehend the significance of Section 5's limitation of government statutory authority, the Court must also look to the Federal Criminal Rules of Procedures (FCrRP) Rules 1(b)(b) definition of "State" and 54(c) "Act Of Congress" which both corroborate that "places and waters, continental" to which §5 references.  Thus, pursuant to Rule 1(b)(9) the geographic area is restricted to

1.

only "include District of Columbia, any commonwealth, territory or possession of the United States."  Then to clarify the vernacular, "subject to jurisdiction of the United States" - in a territorial sense, the Court must reference 18 USC §7 ".....territorial jurisdiction of United States defined." Section 7 is also corroborated by FCrRP Rule 54(c) "Act of Congress", describing the geographical areas and the generic definition of all Title 18 Codes which "includes any act of Congress (federal statute) locally applicable to (cognizable) and in force (justiciable) in the District of Columbia, Puerto Rico, in a territory or insular possession" (federal states).

Therefore, by the plain language of §5 as cited by this Court in **Gurr, id.**, the statutory authority of the appellee United States Attorneys was limited to the geographical areas stated in FCrRP Rules 1(b)(9) as further corroborated by Rule 54(c) "Act of Congress"..

Accordingly, because the federal violations of law for which the appellants are convicted occurred in Colorado and Texas, under **Gurr, id.**, it is a matter of **stare decisis** that the United States Attorney appellees lacked statutory authority, thus a Title 5 USC §706(2)(A, B and/or C) violation is evidenced.

2.  **In Gurr, supra, this Court further ruled that pursuant to 18 USC §3231 'the district courts of the united States have exclusive, original jurisdiction of all offenses against the laws of the United States", and made no exception that the United States District Courts would have jurisdiction also.**

As corroborated by FCrRP Rule 1(a)(1) referencing the United States "district courts", pursuant to its "1948 Amendment" of the Judicial Code name change, Rule 1(a)(1) states:  "These

2.

rules govern procedures in all criminal proceedings in the United States district courts", an Article I court to which Congress has differentiated its name from that of a United States District Court with the lower case spelliing of "district court".

Therefore, with the **Gurr** court mandating that under §3231 the Article I "district courts of the United States shall have original jurisdiction" and with **Rogers v. USDC CA# 06-5214** concluding that the District Court was constituted under Article III of the U.S. Constitution, by statutory law, the appellee courts lacked subject matter jurisdiction is a matter of **Stare Decisis.**

**3.  The appellants contention that the appellee courts' jurisdiction could not have been substituted for the designated §3231 district courts of the United States is corroborated by Hardin v. City Title Escrow, supra.**

In **Hardin** id., in accord with the Supreme Court in **United States v. Tillamooks** 329 US 40, 45 held:

> "Jurisdictional provisions in federal statutes are to be strictly construed."

First, the "jurisdictional provisions" of 18 USC §§5 and 7 limit the statutory authority of the federal statutes for which the appellants are convicted to the geographical areas defined by FCrRP Rule 1(b)(9).  Secondly, even if the appellees had statutory authority, the only court which could have granted that jurisdiction pursuant **Gurr, supra**, in accord with the §3231, was the "district court of the United States" - which pursuant to the "1948 Amendment of the Judicial Code, the appellee courts are not. 1/

Therefore, when the Title 18 federal statutes and supporting law are "strictly construed", accordingly, the appellees lacked both statutory authority and/or subject matter jurisdiction **as** a matter of **Stare Decisis.**

3.

**4.  In your In Re Sealed Case, supra, in accord with the
Supreme Court in Aetna Life Ins. v. Haworth 300 US 227, both
citing Muskrat v. United States 219 US 346, 356, 357, which all
3 precedents stem from Chisholm v. Georgia 2 Dall 419, 431, 432,
it was decided over 200 years ago the Article III §2 of the
Constitution limits the judicial power of Article III Courts
to "cases" and "controversies" to "suits only of a civil nature."**

Citing **In Re Sealed Case** this court ruled:

Article III of the Constitution limits the judicial power
of the United States to "cases" and "controversies.  Federal
courts therefore must "carefully abstain from exercising any
power that is not strictly judicial in its character and which
is not clearly confided to them by the Constitution.

The case or controversy limit "defines the role assigned to
the judiciary in a tripartite allocation of power to assure
that federal courts will not intrude into areas commited to
other branches of government. See **U.S. Parole Commission v.
Geraghty** 68 L Ed 2d 749 (1980).

Here, the appellee courts, in complete absence of jurisdiction,
usurped the juridical power of the Article I district courts of
the United States and intruded on Congress' adminiastrative
legislation. Pursuant to **Glidden v. Zdznok** 8 L Ed 2d at 715, 716,
citing **O'Donoghue v. United States** 287 US at 546, "Article 3 Courts
could not be endowed with administrative and legeislative powers" -
intended only for the federal states.   But,  to accommodate the
appellee U.S. Attorneys, the appellee courts usurped the judicial
power of the Article I district court of the U.S. per §3231, which
would have lacked personal jurisdiction over violations of federal
statutes occurring in Colorado and Texas.

And, the appellee courts intrusion on the Article I district
courts of the United States is further corroborated by FCrRP Rule
1(a)(4), **"Removed Proceedings"**.   Beyond Rule 1(a)(4), there simply
does not exist a provision in that Rule, or any of the remaining rules

4.

for the instant indictments to have been removed from either the states of Colorado or Texas - not to mention that the judicial powers of the Article III appellee courts' jurisdiction is limited by Article III of the Constitution to "only suits of a civil nature" - as a matter of **Stare Decisis.**

Therefore, combining this Court's mandates of **Gurr and In Re Sealed Case,** supras, it is a matter of **stare decisis** that:

1) Title 18 USC §5 limited the appellee U.S. Attorneys' statutory authority for the violations of federal statutes for which the appellants are convicted to the federal states as defined by FCrRP Rule 54(c) "Act of Congress";

2) Title 18 USC §3231 in which the "district courts of the United States" shall have "exclusive originial jurisdiction" in "all criminal proceedings" per Rule 1(a)(1), which provides no exceptions and/or makes no reference to that the appellee United States District Courts can substitute their limited jurisdiction derived from the Judiciary Act of 1789; and,

3) Pursuant to Article III §2 of the Constitution it would be "inconsistent" for the Article III appellee courts to have presided over the proceedings, especially in the face of the Federal Criminal Rules not having an applicable Rule to "govern the procedures" (1(a)(1), in the appellee courts.

Accordingly, because that by the Judiciary Act of 1789, Statute I and the Constitution's Article III §2, by irrefutable law, the appellee courts lacked subject matter jurisdiction when they substituted their limited jurisdiction for that of the Article I "district courts of the United States" as designated by §3231 to have "original jurisdiction"- all the same issues to which the appellants complained, the appellee courts' usurpation

judicial power was conclusively a violation of the Administrative
Law Act of Title 5 USC §706(2)(A. B. and/or C) as contemplated by
Congress  - all as a matter of **Stare Decisis.**

## LEGAL ARGUMENT

Incorporating the appellants "Opening Brief" by reference
as if fully set forth herein, appellants further state the judgment
and/or relief sought should be entered in their favor based on
this Court's Doctrine of **Stare Decisis** as follows.

**1, It took another Rogers, in this case Circuit Judge Rogers,
to acknowledge that both the government's statutory authority
pursuant to 18 USC §5 and the district courts of the United States
§3231 jurisdiction was (1) proper to indict a federal violator in
a District of Columbia grand jury, (2) prosecute the federal
statute violation that occurred in a territory and (3) with
the adjudication in an Article I court - district court of the
United States.**

In **Gurr, supra,** the government's indictment, prosecution and
the district courts of the United States adjudication was done
exactly as Congress intended Title 18 Code violations to be enforced.
However, the indictments, prosecutions and ensuing adjudications
by the  appellees  of the appellants, were the antithesis of
not only what Congress intended, but were in direct conflict
with the appellees' statutory authorities and Constitution law.
And, the pejorative is that the statutes and Supreme Court case
law on which the appellants relied, were not ambiguous in any way.
The District Court simply legislated the appellants' claim that
the appellees violated the Administrative Law Act without basis
of one word of valid federal and/or Constitutional Law.

6.

**Kim Bo** 472 F 2d 720, 722 (CA5 1972).  Thus, because the appellee
Article III courts were not included in 18 USC §3231 with the Article I
"district courts of the United States", pursuant to **Russello, id.,**
the appellee courts were excluded from having jurisdiction to have
adjudicated the subject indictments - intentionally.

Furthermore, the doctrine of inclusion and exclusion is
also supported by the Supreme Court in **Montello Salt v. Utah**
221 US 452, 455, 456, holding:

> "Include or participal form thereof, is defined to comprise
> within, to contain, to shut up...."

A good example of this exclusion is the §5 definition of the
geographical area of the United States as corroborated by
FCrRP Rules 1(b)(9) and 54(c) "Act of Congress" in which neither
Rule "includes" the term "state of the United States", but is
included in the Title 18 USC Sections that proscribe the
constitutional violation of counterfeiting - all by the intent
of Congress, see 18 USC §513(c)(5).

Therefore, because the federal statutes for which the appellants'
were convicted, neither included the term "state of the United States",
nor did the designated §3231 district courts of the United States
state an exception that the Article III appellee courts could
alter the §3231 requirement that the district courts of the
United States "shall have original jurisdiction", accordingly,
the Doctrine of **Stare Decisis** established by **Gurr and In Re
Sealed Case,** supras, must be applied here to grant the judgment
against the appellees for their violations of the Administrative
Law Act of Title 5 USC §706(2)(A, B and/or C).

8.

## 2. The Doctrine of Stare Decisis for the appellee U.S. Attorneys' lack of statutory and the appellee courts' lack of subject matter jurisdiction is also supported by the Supreme Court in Northern Pipe Line v. Marathon Pipeline ruling Congress has "particularized tribunals" to enforce its federal statutes.

At page 618 the **Northern Pipe Line** 73 L Ed 2d 598, ruled:

> "Congress' power over District of Columbia encompasses the full authority of government and thus, necessarily the Executive and Judicial powers as well as the Legislative. This is a power that is clearly possessed by Congress only in limited geographic areas."

This ruling in **Northern Pipe Line id.**, obviously comports to the Title 18 USC §5 definition of the United States as corroborated by the FCrRP Rules 1(b)(9) and 54(c) Act of Congress" definitions of "State". And, supporting Congress' power to create Article I courts, the Court further ruled:

> "But when Congress creates a statutory right, it clearly has descretion in defining that right.....it may also provide that the persons seeking to vindicate that right must do so before particularized tribunals created to perform the specialized adjudicative tasks related to that right. 35/
>
> 35/ ....Thus where Congress creates a substantial right, pursuant to one of its broad powers to make laws, Congress may have something to say about the proper manner of adjudicating that right."

Proof of a "particularized tribunal" that Congress created and exists in no "states of the United States", as was acknowledged by this Court in **In Re Sealed Case** at 512, is that the United States District Court for the District of Columbia is both an Article I and Article III court. In accord with **Buckly v. Valeo** 424 US @ 123, the **In Re Sealed Case** Court futher held the that:

> "When an Article III court is called upon to supervise and administer the executive office, constitutional bounds are transgressed."

9.

But, with the United States District Court being constituted by the District of Columbia Code 1940 ed., Title 11 §305 to possess "the juridical power and exercise the jurisdiction of a district court of the United States" as mandated in **Glidden v. Zdanok, supra,** "Article I courts have no such restrictions" to administer the federal statutes for which the appellants are convicted - that is if the violations had occurred in the geographical areas as are designated by FCrRP Rule 1(b)(9) definition of "State".

Therefore, because the adjudication of the U.S. Attorneys' alleged violations of federal statutes that were only cognizable in the federal states defined, as found by the Supreme Court in **Kokkonen v. Guardian Life** 128 L Ed 2d 391, 395, a court's jurisdiction can "not be expanded by judicial decree" - as occurred here.

Accordingly, when the appellee courts expanded their jurisdiction by judicial decree, to accommodate the appellee U.S. Attorneys' unlawful administration of the federal statutes for which the appellants' are convicted, the usurpation of the district courts of the United States judicial power was a violation of the Administrative Law Act of Title 5 USC §706 supra.

**3.  In Thomas v. Union Carbide 87 L Ed 2d 409, recapping the Supreme Court's prior findings in Northern Pipe Line, supra it defined the three Article I exceptions to Article III adjudications.**

Indisputably, the U.S. Attorneys' federal grand jury indictments were brought to enforce federal administrative law for which the the Court in **Thomas, id.,** citing **Northern Pipe Line,** supra it deemed as "public rights", with the following explanation:

> "The **Northern Pipe Line** plurality construed the court's prior opinions to permit only three clearly defined execeptions to Article III adjudication:  Military tribunals, territorial courts, and decisions involving "public" as opposed to private rights.  Drawing on the language in **Cromwell v. Benson**

10.

76 L Ed 598, the plurality defined "public rights" as matters arising between the government and persons subject to its authority in connection with the performance of constitutional functions of the executive or legislative department".

In the instant cases, neither appellant was indicted for a violation of a federal statute proscribed by the Constitution, nor did the alleged violations occur in the geographical areas as the United States is defined in 18 USC §5 and FCrRP Rules 1(b)(9) or 54(c) Act of Congress".    Therefore, with **Northern Pipe Line,** supra, excluding the adjudication of "public rights" in Article III courts, the adjudication by the appellee courts in the appellants' cases can be determined to be no other than an "usurpation of the judicial power" of the district courts of the United States - which with no stated exception, per **Gurr supra,** had exclusive original jurisdiction.

Accordingly, because both the Supreme Court and the Title 18 Codes and Rules all deprived both the appellees statutory authority, the conviction of the appellants was not only under color of law, a violation of the Administrative Law Act, the appellee courts' judgment and commitment orders have been void **ab initio** - see **In Valley v. Northern Marine** 254 US 348.

**WHEREFORE,** it is simply not credible that the District Court or for that matter, that this Court does not know as a matter of law, that Title 18 USC §5 deprives the appellee U.S. Attorneys of statutory authority over the violations of federal statutes for which the appellants are convicted and in conflict with §3231 designating that the district courts of the United States had "exclusive original jurisdiction".  It was a classic case of "usurpation of judicial power" as contemplated by the Supreme Court in **Will v. United States** 19 L Ed 2d 305, **310.**  Further, it

was mandated in **United States v. Cotton** 152 L Ed 2d 860, 867, that "defects in jurisdiction require correction".

Therefore, if this Court is going to retain any kind of decorum and/or integrity, rather than **dodging** the jurisdictional issues as it did in **Rogers v. USDC for the Northern District of Texas**, or act as lawyers for the appellees as the District Court did, based on the irrefutable facts of law, it must find that the appellees exceeded their collective statutory authorities - all in violation of the Administrative Law Act as contemplated by Congress when it promulgated Title 5 USC §706(2), as a matter of **Stare Decisis**.

However, if the appellees desire to avoid a precedent, accordingly, they know exactly what they must do to settle this ongoing internecine legal problem without corrupting this Court.

Respectfully submitted,

Gerald L. Rogers, _In pro se_

_1/_    To corroborate that Congress distinguishes between the territorial and jurisdiction function of the Article I "district courts of the United States" and the "United States District Courts", as can be viewed in the 2007 Edition of the Federal Criminal Code, page 206, the Notes to the "1944 Adoption" in FCrRP Rule 54 concerning Alaska and Hawaii when they were territories, the courts of both territories were established as "district courts of the United States". However, when Alaska and Hawaii both became States of the United States, as can be viewed in the Notes of Title 28 USC §81A for Alaska and §91 for Hawaii, their Article I "district courts of the United States" were terminated along with the tenure of their judges and were contemporaneously, replaced with the "Article III" "United States District Courts" for their respective districts - see Hawaii Notes **"Court of the United States."**

Travel outside of your district of supervision is prohibited until such time as the Parole Commission concurs with your USPO that you can be depended upon not to abscond from parole, and that you are complying in good faith with all conditions of your parole. You shall not apply or possess a U.S. passport without the Parole Commission's written permission.

## FINDINGS OF FACT:

The Commission finds as a fact that you violated conditions of release as charged as indicated below:

Charge No. 1 - Law Violation - Fraud

Basis for the above stated finding(s): Information contained in the Texas Securities Board and the SEC complaint filed in the U.S. District Court for the Northern District of Texas, Letter dated 1/11/06 with attachments from Special Agent Neyhart, Enforcement Order No. ENF-05-CDO-1581 dated 1/25/05, ALJ Newchurch Proposal for a Decision in Docket No. 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 dated 5/28/05, Order Confirming Emergency Cease and Desist Order dated 8/15/05, testimony of IRS Special Agent Neyhart, testimony of Financial Analyst Letha Sparks and your statements during the hearing.

## REASONS:

Your parole violation behavior has been rated as criminal conduct of Category Seven severity because it involved investment fraud in excess of $5 million. Your salient factor score is 7. See the attached sheet for an explanation of your individual Salient Factor Score items. The table at the bottom presents the points for Salient Factor Score Item G. As of May 25, 2006, you have been in confinement as a result of your violation behavior for a total of 15 month(s). Guidelines established by the Commission indicate a customary range of 64-92 months to be served before release. After review of all relevant factors and information, a decision above the guidelines is warranted because you are a more serious risk than indicated by the guidelines in that you have developed a pattern of employment that is outside the perimeters of the special conditions of parole. Your original offense involved a fraudulent movie tax shelter scheme and the preparation of false income tax returns. Your supervision has been revoked on two occasions for participating in questionable business activities that involved investors and financial transactions. During this period of supervision, you created companies that provided financial advice on an investment program that guaranteed a rate of return, assured investors/victims that the investment was not speculative and assured investors/victims that there was no risk to the invested principal. You and your company made statements to investors that were misleading and failed to disclose material facts in securing these investments. As a result, your company received approximately $12 million in investments. At this time, the losses are approximately $8.5 million. A significant number of the victims were vulnerable in that they were retired and invested their life savings based on your misleading statements. In addition, some of the victims were parents of adult children who invested their parents' money. You are currently under investigation by the federal and state authorities for this scheme. By your behavior, you have shown that you are a serious monetary threat to the community and have also shown the Commission that you cannot abide by the special financial conditions of your parole. As a result, a release within the guideline range would depreciate the seriousness of your behavior and create a disrespect for the law.